NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
26636 Margarita Road, Suite 101
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff, ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual;<br><br>          Plaintiff,<br><br>     vs<br><br>LONG BEACH CONTAINER TERMINAL, INC., a Corporation; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY  INC., a Corporation; and DOES 1 through 50, inclusive;<br><br><br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA/FEHA**<br>2. **HARASSMENT IN VIOLATION OF THE ADA/FEHA**<br>3. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA/FEHA**<br>4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA/FEHA**<br>5. **RETALIATION IN VIOLATION OF 42 U.S.C. § 12203 AND CAL. LAB. CODE § 1102.5** |

**6. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**JURY TRIAL DEMANDED**

Plaintiff, ENOCH GREENE, alleges as follows,

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4) to enforce provisions of the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 12203).

2. Plaintiff, ENOCH GREENE (hereinafter referred to as "Plaintiff"), was at all times relevant to this action a resident of Riverside County, State of California.

3. Defendant, LONG BEACH CONTAINER TERMINAL, INC. (hereinafter referred to as "LBCT" or collectively as "Employers"), is a corporation and was and is at all times relevant to this action doing business in the County of Los Angeles, State of California.

4. Defendant, PACIFIC MARITIME ASSOCIATION (hereinafter referred to as "PMA" or collectively as "Employers"), is an association and was and is

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

at all times relevant to this action doing business in the County of Los
Angeles, State of California.

5. Defendant, APM TERMINALS PACIFIC LLC (hereinafter referred to as
"APM" or collectively as "Employers"), is a limited liability company and
was and is at all times relevant to this action doing business in the County of
Los Angeles, State of California.

6. Defendant, ILWU LOCAL 26 (hereinafter referred to as "ILWU" or
collectively as "Employers"), is a union and was and is at all times relevant
to this action doing business in the County of Los Angeles, State of
California.

7. Defendant, TOTAL TERMINALS INTERNATIONAL LLC (hereinafter
referred to as "TTI" or collectively as "Employers"), is a limited liability
company and was and is at all times relevant to this action doing business in
the County of Los Angeles, State of California.

8. Defendant, SSA TERMINALS LLC (hereinafter referred to as "SSA" or
collectively as "Employers"), is a limited liability company and was and is at
all times relevant to this action doing business in the County of Los Angeles,
State of California.

9. Defendant, MATSON NAVIGATION COMPANY INC (hereinafter
referred to as "MNC" or collectively as "Employers"), is a corporation and

LAW OFFICE OF
NANCYROSE
HERNANDEZ

was and is at all times relevant to this action doing business in the County of Los Angeles, State of California.

10. Plaintiff was employed by Employers, paid by PMA, and a union member of ILWU in the County of Los Angeles, State of California.

11. Under information and belief, Defendants, are and at all relevant times were, existing and doing business under the laws of the State of California, and that employed more than 100 persons and were employers as defined in the California Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA).

12. This Court has original jurisdiction and subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because (1) there is complete diversity of citizenship between Plaintiff and Defendants; and (2) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in this district.

14. Plaintiff has complied with the requirements of Code of Federal Regulations sections 1614.103 *et seq.* by exhausting his administrative remedies with the

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

## **JOINT EMPLOYERS**

15. Under information and belief, Article 25 of the Collective Bargaining Agreement (CBA) for ILWU Local 26, identifies the four signatory Employers in all labor matters with ILWU Local 26. The Four Signatory Employers, LBCT, APM, TTI, SSA. SSA is the official employer for SSA-operated terminals, including without limitation, NMC.

16. Under information and belief, each of the Defendants, LBCT, PMA, APM, TTI, SSA, NMC, and ILWU were joint employers, or alter egos of each, and in doing the acts hereinafter alleged, were acting within the scope of authority as Employers of Plaintiff.

17. Under information and belief, each of the Defendants, LBCT, PMA, APM, TTI, SSA, NMC, and ILWU instigated, encouraged, promoted, aided, and rendered the wrongdoing, conspired to commit the wrongdoing, with knowledge of the wrongful purpose, actively participated in the wrongdoing, and/or failed to prevent the wrongdoing, as alleged in this Complaint and incorporated herein by this reference.

18. Under information and belief, LBCT, PMA, APM, TTI, SSA, NMC, and ILWU had the right to terminate, transfer, promote, discipline, set the terms,

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

conditions and privileges of employment, train and pay employees, provided

benefits, administration, worker's compensation, risk management,

administration, labor relations technology and labor relations services, and

guidance to Defendants, LBCT, PMA, APM, TTI, SSA, NMC, and ILWU

creating a co-employment relationship.

19. Under information and belief, Defendants, LBCT, PMA, APM, TTI, SSA,

NMC, and ILWU had the right to control the manner and means of

accomplishing the employment result desired, as alleged in this Complaint

and incorporated herein by this reference.

## **SPECIFIC FACTUAL ALLEGATIONS**

20. Plaintiff is currently a registered Watchman under ILWU, holding an active

registration number (45496). He worked at the Ports of Los Angeles and

Long Beach since August 2004, initially as an Emergency Watchman.

21. Plaintiff became a Registered Watchman in February 2013, working under

the CBA between ILWU and the PMA. This registration entitles Plaintiff to

receive dispatches from any of the four PMA-represented Employers,

including: TTI, SSA, APM, and LBCT, as well as NMC, under the umbrella

employment through SSA.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

22. The CBA, effective July 1, 2014, is by and between Local 26 of the International Longshore and Warehouse Union and the PMA on behalf of the covered Employers of Watchmen.

23. Under information and belief, each of these Employers simultaneously employs Watchmen under the joint dispatch hall system, and they collectively provide ILWU Members with employment benefits.

24. Under information and belief, Plaintiff successfully completed the job duties of checking IDs, monitoring and processing big rig trucks in and out of the terminals, checking labor workers, transporting individuals, and maintaining safety in the various terminals, while working for Employers.

25. Plaintiff was a reliable and proficient employee, investing sixteen hours of work each day, seven days a week, for $46.00 an hour. Plaintiff's wage and extensive hours reflect Employers' recognition of his proficient role and the critical value he brought to their operations during his longstanding employment with Employers.

26. On April 15, 2023, Plaintiff submitted a formal request for reasonable accommodation to the Employers. At that time, Plaintiff was actively registered and eligible for dispatch as a Watchman; Plaintiff had recently received and completed work through the dispatch hall; and Plaintiff

remained listed for potential dispatch to all participating Employers'
terminals.

27. Plaintiff was diagnosed with qualifying physical disabilities. Plaintiff was
diagnosed with primary open angle glaucoma (POAG) of both eyes. Plaintiff
has low vision in his left eye and meets the requirements for legal blindness
in the state of California. Plaintiff's condition affects one or more specified
body systems and limits major life activities.

28. Plaintiff is informed and believes and thereon alleges that major life
activities affected by his physical disability include physical, mental, social
activities, and working. Plaintiff is unable to perform major life activities
that the average person in the general population could perform.

29. Plaintiff is a qualified individual with physical disabilities and can perform
the essential functions of his job with reasonable accommodations.

30. On April 15, 2023, Plaintiff's medical provider from the University of
California, Los Angeles (UCLA), Department of Ophthalmology, Anne L.
Coleman, MD, PHD, substantiated Plaintiff's diagnosis of a disability and
recommended Plaintiff may require extra assistance for visual tasks such as
requiring a larger computer monitor, larger print options, and/or a magnifier
to be able to complete work tasks efficiently and comfortably due to his low
vision. He may require extra time and allowances for visual tasks such as

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reading, writing, and test taking. In addition, due to his low vision and decreased peripheral vision, it was not recommended that Plaintiff drive a passenger vehicle. Due to his decreased peripheral vision, Plaintiff may not be able to maneuver an oversized vehicle such as a van or bus. Plaintiff submitted his medical note to the Employers.

31. On April 20, 2023, Plaintiff informed Sargent David Pannell and Sargent Rosetta Bourda of his disability and medical condition which limited his physical ability to perform some of his job duties. They discussed his disability related to his medical condition and accommodations options available to him.

32. Thereafter, Plaintiff requested adjustments to his work assignment related to his disability. As a reasonable accommodation, Plaintiff was reassigned to another post by Sargent David Pannell.

33. After Plaintiff was provided with reasonable accommodation, he completed his regular shifts safely and efficiently with no complaint, demonstrating that he could perform the essential functions of his job with reasonable accommodation.

34. Plaintiff understood that primarily, it was the duty and responsibility of both the company and their shift sergeant to maintain a safe working environment and address each safety concern in the workplace with seriousness and

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

professionalism. From this prospective, Plaintiff sought to have dialogue to

create solutions which would avert any serious incident in the workplace.

35. On April 29, 2023, Plaintiff requested reasonable accommodation via email

to the Joint Labor Relations Committee ("Committee") and ILWU,

including representatives, Luisa Gratz ("Gratz"), Tiyuana Blair ("Blair"),

Ryan Williams ("Williams"), and Andrew Prickett ("Prickett"). Plaintiff

informed the Committee and ILWU that he was a disabled union member,

and he was provided with reasonable accommodation, beginning on April

20, 2023, by his shift sergeants. The purpose of sending this email was 1) to

communicate with the Committee and ILWU, disclosing his disability and

safety concerns; 2) to make a request for reasonable accommodations related

to his medical condition; and 3) to advise that he will also communicate his

disability and request a reasonable accommodation from each shift Sargent

at the various terminals, as needed.

36. On May 1, 2023, Plaintiff reported to the Committee and ILWU, a complaint

of harassment and discrimination against LBCT and Sargent David Pannell.

Plaintiff disclosed that he experienced harassment and discrimination related

to his disability and medical condition at LBCT from management and

Sargent Pannell. He picked up his job assignment to work SEC 105

computer (I.D. check) and was told by Sargent Pannell to get his vehicle key

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

and patrol the yard. Plaintiff complied and while he was patrolling the yard,
he observed that he was being closely followed by another security vehicle
on the vessel highline. He was being tracked by Sargent Pannell, who then
ordered Plaintiff to stop and pull over. Sargent Pannell accused Plaintiff of
driving too slow and under cranes. Sargent Pannell stated, "You can't see,
and you shouldn't be working down here on the waterfront." He also stated,
"You need to find somewhere else to work other than LBCT because you are
a liability." Several times, Sargent Pannell told Plaintiff not to come to work
because Plaintiff has "bad vision." Sargent Pannell said that he would no
longer accommodate Plaintiff because when he broke his toe, LBCT did not
give him light duty. Sargent Pannell stated that he told other sergeants about
Plaintiff's medical condition, and they all plan not to offer him any
accommodations. Plaintiff complained that he was very concerned that
Sargent Pannell spoke with management about his disability, and in
response, LBCT management instructed Pannell to follow him around the
yard. Plaintiff requested an investigation and hearing regarding his
complaint of harassment and discrimination related to his disability and
medical condition.

37. Plaintiff's request for a fair, impartial, and timely investigation was denied.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

38. On May 8, 2023, Plaintiff requested the following accommodations from the Employers: 1) No harassment or discrimination from coworkers, sergeants, or management; 2) No driving assignment for passenger van or bus; 3) No disclosure of medical information; 4) Email and regular mail correspondence for all communications; 5) Shuttle bus transportation to and from the gangway and various assignment posts as needed; 6) Magnifiers; 7) Large print for all reading materials; 8) Extra time for reading, writing, testing, and exam; 9) Computer reader software for checking I.D.'s at terminals using computer for I.D. check; 10) Label all radio and vehicle keys in the radio rooms.

39. Under information and belief, Employers refused to accommodate Plaintiff, as requested.

40. On May 10, 2023, Plaintiff was denied work after making a request for reasonable accommodation related to his disability and medical condition in violation of the ADA.

41. On May 25, 2025, Plaintiff's medical provider, Dr. Coleman, on behalf of Plaintiff, clarified her previous letter date April 15, 2023, that a passenger vehicle refers to oversized vehicles such as a van or bus. Due to his decreased peripheral vision, Plaintiff may not be able to maneuver an oversized vehicle.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

42. By way of background, Plaintiff was involved in a minor vehicle incident in the APM Terminal parking lot while <u>off-the-clock</u>. The incident involved two private vehicles. Both vehicles sustained minor scratches, and there were no injuries or significant damage. The Port Police responded to the scene and advised both parties to exchange insurance information.

43. After the minor accident, Plaintiff was blamed for the incident because he provided his insurance, as instructed, but this was interpreted as a confession of fault. Plaintiff was reprimanded with a write-up and suspended.

44. Since June 12, 2023, LBCT has not authorized Plaintiff to return to work, preventing him from gainful employment. LBCT placed Plaintiff on non-dispatch. He was reinstated for dispatch on October 23, 2023, then placed back on non-dispatch on November 2, 2023, and he has not been authorized to return to work since June 12, 2023.

45. On June 29, 2023, PMA representative, Williams, responded to Plaintiff's request for ADA accommodations on behalf of all Employers, offering the following accommodations: 1) A PMA representative will be provided to read and clarify anything you have trouble seeing in group settings etc.; 2) All written material scanned and digitalized for Plaintiff's review at his convenience.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF NANCYROSE HERNANDEZ

46. Under information and belief, these two options would be wholly ineffective to accommodate Plaintiff's disability.

47. Under information and belief, the Employers refused to accommodate Plaintiff with any of his requests and failed to engage with Plaintiff in the good faith interactive process to access, consult, and analyze Plaintiff's requests, failing to implement reasonable accommodation.

48. Thereafter, ILWU submitted a grievance, under Article 21, on behalf of Plaintiff, due to Plaintiff requesting ADA accommodation several months prior. The Employers failed to provide light duty and/or modified duty for Plaintiff. Plaintiff was/is eligible to be a Dispatch to the LBCT, but was denied work opportunities, causing harm to Plaintiff, including but not limited to lost wages, credited hours required for welfare, pension, 401k, vacation, etc.

49. After the grievance was submitted, the Employers continued to fail to engage Plaintiff in the ongoing interactive process, refused to accommodate him, failed to engage in a timely and impartial investigation, and failed to remedy the violations under the ADA and FEHA.

50. Under information and belief, PMA and LBCT failed and refused to bargain in good faith with Plaintiff, continuing to discriminate against Plaintiff by refusing to authorize his return to work with reasonable accommodation.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

51. On July 19, 2023, Safety Committee Representative, Blair, reported to the
Committee that she was making a formal complaint and grievance against
Gratz and PMA. Blair disclosed that Gratz unilaterally decided to stop
Blair's safety investigation into the accident involving Plaintiff that occurred
on June 12, 2023, interfering with Plaintiff's right to a safety investigation
and fair due process.

52. Under information and belief, LBCT, PMA, and ILWU intentionally
interfered with Plaintiff's investigation in collusion to inhibit his ability to
return to work, demonstrating deceptive, retaliatory, and discriminatory
motives.

53. On July 21, 2023, the Committee sent a notice to Plaintiff, requesting an
opinion from its medical specialist concerning Plaintiff's request for
reasonable accommodation, and unilaterally scheduled an appointment with
their selected medical provider on August 1, 2023.

54. On July 22, 2023, Plaintiff wrote a correspondence to Williams indicating
that the request to participate in Special Medical Examination/Opinion by
the Committee's choice of doctor was a violation of the ADA. Plaintiff
explained that the Enforcement Guidance on Disability Related Inquiries and
Medical Examination under the ADA, and under the EEOC's Enforcement
Guidance about the ADA rules for when an employer may and may not

obtain medical information about their employees was being violated by the

Committee's requests for a Special Medical Examination/Opinion.

55. Plaintiff provided sufficient documentation from his health care

professional, a physician from UCLA, Anne L. Coleman, MD, PHD,

Bradley R. Straatsma, MD, Endowed Chair in Ophthalmology Chair,

Department of Ophthalmology, Director, Stein Eye Institute, Affiliation

Chair, Doheny Eye Institute. Plaintiff's health care provider was in the best

position to provide information about Plaintiff's limitations; therefore, the

Committee's request to seek a doctor of their choice was inappropriate and

unfounded, further demonstrating discriminatory motives and delay tactics,

obstructing the good faith interactive process. Plaintiff informed the

Employers and the Committee that this conduct was considered retaliation.

56. On July 26, 2023, Plaintiff requested the minutes from the LRC Meeting

held on July 24, 2023. Plaintiff requested all information used by LBCT

against Plaintiff. Plaintiff also provided the Committee with evidence that

the PCMC mechanic, Marc Policastro ("Policastro"), was in all black

clothing without a high visibility vest, operating the AGV in an unsafe

manner at the time of the accident. Because Policastro was also at fault for

the accident, Plaintiff inquired whether a complaint was filed against

Policastro and whether he was also placed on non-dispatch at the LBCT.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

57. Under information and belief, Policastro, a similarly situated employee, was treated differently than Plaintiff and provided more lenient treatment than Plaintiff despite being partially at fault for the accident that occurred on June 12, 2023, demonstrating disparate, unfair treatment toward Plaintiff.

58. On August 10, 2023, Plaintiff notified the Committee that PMA, ILWU, and LBCT continued to refuse to bargain with Plaintiff in good faith by refusing to provide him with documentation that he was entitled to, refusing to accommodate him, refusing to engage him in the good faith interactive process, and refusing to authorize him to return to work thereby terminating his employment.

59. On August 17, 2023, Plaintiff was working at the APM Terminal in the Rail Radio room, and he was approached by Manager, Charles Gray ("Gray"), Sargent Angela West ("West"), and Ms. Lisa Sullivan. Gray wrongfully accused Plaintiff of damaging APM Terminal Manager, Jason Cotter Wells', vehicle in the Rail operation parking lot. Gray said, "[Plaintiff] stepped on the gas of his private vehicle and slammed into another vehicle which caused damage to that vehicle." Gray also shared Plaintiff's private employee record with his coworkers and tried to tarnish Plaintiff's reputation by providing misleading information about Plaintiff to his coworkers, specifically his accident history at APM Terminal.

Case No.
COMPLAINT FOR DAMAGES

60. Under information and belief, the accident was caused by APM Terminal's continuous safety negligence, and after an investigation, Plaintiff was not found to be at fault.

61. Since August 21, 2023, Plaintiff has been prevented from working at the APM Terminal whereby APM placed Plaintiff on non-dispatch. Following the vehicle incident, Plaintiff met with APM Safety and was cleared to continue working; however, APM refused to authorize Plaintiff to return to work, causing significant financial injuries.

62. On August 25, 2023, Plaintiff sent a letter to Vince Ferrigno, requesting that his union file a grievance on his behalf against APM for disability discrimination, double jeopardy violation, harassment, retaliation, wrongful termination, denied workers' compensation benefits, and denied LS-1 form, specifically for being punished twice for the same incident whereby Plaintiff was reprimanded on August 17, 2023, by APM manager, Gray. Gray informed Plaintiff that the matter was resolved and returned Plaintiff to work in the Rail Radio room. Then, on August 22, 2023, Plaintiff was disciplined a second time when a complaint was filed against him for the same incident, his second shift job was taken away from him, and he was placed on non-dispatch at APM Terminal. Plaintiff made several attempts to obtain the LS-1 form for examination and/or treatment from managers at APM Terminal;

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

however, he did not receive a response. Plaintiff reported the retaliation and
harassment, all to no avail or remedial action.

63. On September 7, 2023, Plaintiff's medical provider, Dr. Coleman, wrote a
letter on Plaintiff's behalf, who had been under her care since November 28,
2016, that he was diagnosed with POAG of both eyes and legally blind.
Plaintiff's medical provider recommended that Plaintiff not drive oversized
vehicles, work in an area where there is uncontrolled high traffic, or climb
gangways due to his peripheral vision. Dr. Coleman confirmed that Plaintiff
was/is able to verify identification against individuals seeking to gain access
to a marine terminal, conduct visual inspections of work trucks and with the
proper magnifier, identify individuals from a distance who should not be
present on the terminal. As long as Plaintiff was/is working in a safe and
hazard-free environment, he should be able to work in proximity to large
machinery. In order for Plaintiff to achieve these and other tasks effectively,
he requires proper lighting during the day and night. Dr. Coleman noted that
in accordance with the ADA Title I, Plaintiff meets the requirements for
reasonable accommodation related to his disability and medical condition. It
was Dr. Coleman's professional opinion that with all the necessary
accommodations implemented by the Employers, Plaintiff should be able to

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

function safely and effectively at work. Dr. Coleman provided the Employers with an opportunity to contact her if they had any questions.

64. On September 18, 2023, Plaintiff contacted Williams to confirm that he received Plaintiff's medical examination letter from his Ophthalmologist. He also requested the Employers provide him with temporary accommodations during this period while the Parties were in discussions about his eligibility for reasonable accommodation under the ADA. Plaintiff also reminded Williams that due to his disability and medical condition, he was requesting that he provide Plaintiff with all notifications by mail or email, providing Plaintiff with the opportunity to respond and meet his obligations under the ADA in a timely manner.

65. The Employers denied Plaintiff's request for temporary accommodations and made this decision without engaging in good faith dialogue with Plaintiff, once again, obstructing and delaying the interactive process.

66. Because Plaintiff did not receive a response from Williams, he again, sent an email to Williams, on September 22, 2023, requesting confirmation that he received Plaintiff's medical examination letter from his Ophthalmologist, he requested temporary accommodations, requested notifications and information be sent via email and mail, and requested all classes and trainings be provide to him with large print materials, audio recordings of

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

the lectures, an electronically formatted lecture, and an assistant to help him with reading material, writing, and taking tests.

67. Under information and belief, despite Plaintiff's medical providers' recommendations, the Employers refused to accommodate Plaintiff.

68. Under information and belief, the Employers did not consult with Dr. Coleman or consider the medical documentation provided, which ultimately obstructed and delayed the good faith interactive process, resulting in significant financial hardship to Plaintiff.

69. On October 7, 2023, SSA's MNC granted Plaintiff accommodation, and Plaintiff worked at that terminal, performing the essential functions of his job with reasonable accommodation until December 26, 2024.

70. On October 24, 2023, Plaintiff requested an arbitration hearing through ILWU, and in response, Gratz indicated that his grievance was resolved, and Plaintiff was eligible to work at LBCT as Dispatch, effective October 23, 2023.

71. To Plaintiff's detriment, since February 12, 2024, and continuing to the date of filing this Complaint, the Employers have refused to authorize Plaintiff to return to work thereby terminating his employment.

72. On October 30, 2023, Plaintiff was turned away from his properly dispatched job at LBCT, causing Plaintiff significant financial hardship.

Case No.
COMPLAINT FOR DAMAGES

73. On October 31, 2023, LBCT failed and/or refused to respond to Vice President and Union Steward, Victor Gasset's ("Gasset"), inquiry about paying Plaintiff for his properly dispatched job on October 30, 2023, to which management denied Plaintiff the opportunity to work.

74. Thereafter, LBCT continued to deny Plaintiff the opportunity to work, and by November 12, 2023, LBCT denied Plaintiff the opportunity to work on five dispatched jobs. A grievance was thereafter submitted on behalf of Plaintiff.

75. In or around November 2023, LBCT documented an Employer Complaint against Plaintiff to address the dispatch of Plaintiff, who was currently, as LBCT alleged, unable to perform the essential duties of the job. LBCT alleged it was doing the interactive process with Plaintiff; however, this assertion was <u>false</u>, as LBCT did not engage Plaintiff in the good faith interactive process, but instead, obstructed the process by refusing to consider Plaintiff's medical documentation and recommendations.

76. In this complaint, LBCT admitted that it accommodated Plaintiff by authorizing him to work in the gangway; however, LBCT then provided a pretextual reason for withdrawing his accommodation by attempting to justify its refusal to accommodate with bringing up a minor accident that Plaintiff was involved in, *five months prior*, which he was found not at fault.

LAW OFFICE OF NANCYROSE HERNANDEZ

*Additionally, any alleged investigation was obstructed with and ceased at the instruction of Employers and Gratz.* LBCT falsely claimed that Plaintiff was at fault and that the accident was caused while Plaintiff was filling the job assignment. Because of the <u>false</u> assertion, LBCT refused to accommodate Plaintiff, using this as pretext to deny Plaintiff the ability to return to work. To be clear, this accident was not at issue until after Plaintiff submitted grievances, evidencing the retaliatory motives and adverse action, springing on the heels of Plaintiff's formal complaints of harassment and discrimination in violation of the ADA and FEHA.

77. LBCT refused to accommodate Plaintiff and failed to engage Plaintiff in the good faith interactive process, continuing to date.

78. On November 30, 2023, Plaintiff requested reasonable accommodations and an arbitration hearing for his grievance. Plaintiff disclosed that LBCT falsely stated that Plaintiff was unable to perform the essential functions of the job with reasonable accommodations, which was contrary to his medical documentation. Plaintiff reported that since making his request for reasonable accommodations in April of 2023, the Employers refused to accommodate him and failed to work with him to identify and implement reasonable accommodations, but instead, sent him home and fired him. Additionally, Plaintiff reported that he was given a verbal warning on May

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

3, 2023, because he requested reasonable accommodations, demonstrating the retaliatory, discriminatory motives.

79. LBCT falsely found Plaintiff was at fault for a minor accident; however, he was denied a fair investigation in accordance with the CBA and the law. LBCT and ILWU refused to cooperate by refusing to hear Blair, on behalf of Plaintiff. Prior to the meeting regarding the accident, Plaintiff was denied evidence, witness statements, a copy of the video, and an opportunity to question any witness in connection with the accident. LBCT and ILWU improperly used this minor accident as pretext to deny Plaintiff of his reasonable accommodation.

80. Plaintiff alleges that he can safely and effectively perform his job duties with the reasonable accommodations, which is substantiated by his medical provider.

81. On Monday, November 27, 2023, at the Labor Relations Committee meeting (LRC), Eric Naefke ("Naefke"), LBCT Senior Manager, Labor Relations, refused to remove Plaintiff's name from their unwarranted non-dispatch list which he was placed on by LBCT on November 2, 2023. LBCT refused to allow Plaintiff to return to work at the LBCT terminal as agreed upon on October 23, 2023, at the LRC meeting, even though Plaintiff was/is able to safely and effectively work with reasonable accommodations at the

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Gangway, NOIT 104 computer, NOIT 105 computer, and several other assignments. Naefke also stated that Plaintiff must be able to perform all duties without any medical restrictions before LBCT will allow him to return to work at their terminal.

82. At the LCR meeting, Gratz demanded that PMA and all the Employers deny Plaintiff's request for reasonable accommodation because in her words, "reasonable accommodation is a violation of the CBA" and would open the door for other ILWU Local 26 watchmen to make requests for reasonable accommodations.

83. Gratz also advised Plaintiff in the lobby that he needed to consider disability retirement, coercing him to end his employment with Employers. Plaintiff rejected this discriminatory request.

84. On November 30, 2023, Plaintiff demanded that ILWU, and more specifically, Gratz, cease and desist dishonest practice, disability discrimination, and unfair representation.

85. On November 30, 2023, Plaintiff, again, requested reasonable accommodations from the Employers, all to no avail, as the Employers refused to authorize Plaintiff's return to work.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF NANCYROSE HERNANDEZ

86. On December 7, 2023, Plaintiff requested an update on his request for reasonable accommodation, which he made on April 20, 2023. The Employers failed to respond.

87. Between April 2023 and December 10, 2024, Plaintiff fully retained his right—under both ADA and the union agreement—to select assignments at Employers' terminals and request reasonable accommodations. Despite multiple requests, the Employers failed to implement the accommodations necessary for Plaintiff to continue performing essential job functions. The Employer's inaction directly interfered with Plaintiff's ability to work.

88. The Employers' failure to engage Plaintiff in a timely interactive process and provide accommodations denied Plaintiff the opportunity to use his dispatch privileges, ultimately leading to their unjust decision to place him on non-dispatch status. The Employers later attempted to blame his absence from work on his own conduct, ignoring the fact that it was their refusal to accommodate his disability that caused the barrier to return to work.

89. The terminals Plaintiff worked at had computers, which Plaintiff had worked on for several years without complaints. Plaintiff's doctor informed Employers that Plaintiff should not be placed on oversized vehicles due to challenges with his peripheral vision; however, Plaintiff could perform the

Case No.
COMPLAINT FOR DAMAGES

essential functions of his position on the computers, as well as with the equipment that he requested as reasonable accommodations.

90. Plaintiff was working 112 hours a week, making approximately $250,000 in 2022. However, after disclosure of his medical condition and request for reasonable accommodations, to which he was denied, Plaintiff's hours were reduced to seventy (70) hours per week for yearly pay of $160,000.00. Since February 12, 2024, Plaintiff has been denied the opportunity to return to work, resulting in no income. Plaintiff has suffered significant financial injuries from the Employers' refusal to accommodate, resulting in his termination from his employment.

91. Plaintiff has three children and a mortgage to pay, and the termination has severely impacted his finances. Plaintiff has missed payments on his mortgage, as a result.

92. Plaintiff suffers from severe emotional distress, sleepless nights, anxiety, depression, physical and emotional pain and suffering, resulting from the Employer's unlawful acts, as stated in this Complaint and incorporated herein by this reference.

93. From December 28, 2023 through February 12, 2024, Plaintiff was placed on a medical leave of absence by his medical provider, with a return date of February 12, 2024.

Case No.
COMPLAINT FOR DAMAGES

94. Prior to taking his medical leave of absence, Plaintiff was accommodated to work at SSA's MNC. Upon his return from medical leave, on February 12, 2024, Plaintiff was told by Manager, Josh Machnick ("Machnick"), that his accommodation was revoked.

95. Under information and belief, revoking Plaintiff's reasonable accommodation was in retaliation for Plaintiff filing a complaint with the National Labor Relations Board (NLRB) and the EEOC.

96. Beginning on February 12, 2024, and continuing to date, Plaintiff has been prevented from returning to work by the Employers, all conspiring to refuse to accommodate him, despite previously being accommodated and performing his job duties efficiently.

97. Under information and belief, the Employers refused to communicate with Plaintiff in good faith to provide him with reasonable accommodation in retaliation for Plaintiff filing complaints with the NLRB and EEOC.

98. On or around March 1, 2024, the Employers confirmed the permanent denial of Plaintiff's request for reasonable accommodation thereby terminating his employment at all terminals.

99. On March 22, 2024, Plaintiff sought resolution and requested accommodation which was revoked by MNC and all Employers whereby Plaintiff was prevented from working at the MNC terminal due to disability

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

discrimination by the Employers, conspiring to prevent Plaintiff from working at all terminals.

100.    On or around November 16, 2024, Plaintiff submitted his medical note from Belmont Shore Optometric, which indicated that Plaintiff was experiencing a decline in his vision due to his eye condition and listed option that he would benefit from as reasonable accommodations, including 1) Screen Magnification, Text-To-Speech, and Voic Command Features to enable him to read, navigate documents, and participate in real time; 2) Digital Note Taking and Optical Character Recognition (OCR) which allows access to printed text with larger print and efficient note-taking, ensuing involvement in tasks requiring written material; 3) Professional Note Taker if other options were not available. These accommodation requests were denied by the Employers without engaging Plaintiff in good faith interactive dialogue.

101.    Under information and belief, the Employers have proceeded to completely bar Plaintiff from working, pretextually indicating that he could not return to work until he was fully released from his doctor.

102.    Under information and belief, the PMA advised the Employers not to work with Plaintiff, obstructing the interactive process.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

103.    Since April 15, 2023, Plaintiff has continuously requested reasonable accommodation pursuant to his medical providers' recommendation, and he asked for updates regarding his employment. Plaintiff sent multiple letters from his doctor regarding his ability to work with reasonable accommodations; however, the Employers continually failed to engage Plaintiff in a good faith interactive process and refuse to accommodate him.

104.    Plaintiff's union, ILWU, refused to represent him with the reasoning that there was not an ADA clause in the union contract, therefore claiming Plaintiff's representation was not within his agreement. Most alarming, ILWU has instructed the PMA and Employers not to accommodate Plaintiff thereby intentionally thwarting Plaintiff's right to accommodation under the ADA and FEHA.

105.    Williams, a PMA Labor Relations Representative, and Prickett, PMA's Assistant Director of Contract Administration and Arbitration, have consistently served as direct liaisons and points of contact for labor relations on behalf of PMA and its member Employers. Williams' and Prickett's roles involve negotiating, administering, and enforcing provisions of the ILWU Local 26 Watchmen and PMA CBA, addressing grievances, and handling matters involving worker accommodations and workplace policies.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

106.     Under the doctrine of apparent authority, when an individual acts on behalf of an employer and the employer permits or causes a third party to reasonably believe the individual has authority, the employer is bound by that individual's representations and conduct. As is the case here, PMA representatives operated in official capacity on the Employers' behalf, and Plaintiff, as the requesting employee, had reasonable grounds to believe the representatives, including Williams and Pickett, were acting as authorized intermediaries in employment matters for the Employers.

107.     On or about December 10, 2024, Plaintiff appeared before the Committee at a Special LRC Meeting for the JPWLRC. Prior to the meeting, Plaintiff requested reasonable accommodation, including screen magnification, the ability to text-to-speech, and voice command features, the use of digital note-taking and optical character recognition (OCR) program, or as an alternative to the first two requests, the Employers provide him with a professional note-taker. The Employers denied Plaintiff's request and instead, provided the following options: 1) the Employers would provide Plaintiff with a PMA laptop with the ability to connect to a screen that was more than 100 inches large to better assist him in typing and then viewing his typewritten notes in real-time on the screen, 2) Employers would provide Plaintiff with a dedicated desktop to use during the meeting where he would

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

have the ability to enlarge items on the desktop monitor. Plaintiff responded that the Employers' options were inadequate.

108.    At the meeting, Plaintiff again requested reasonable accommodations, and the Committee unilaterally selected its employee, Muny Chan, from PMA as the professional notetaker.

109.    Plaintiff explained to the Committee that he was granted reasonable accommodations and was working with those accommodations when Employers revoked them on February 12, 2024, necessitating the meeting.

110.    At the meeting, the Committee addressed Plaintiff's current ADA status. The Committee understood that Plaintiff was off work because of the pending status of his working accommodations. The Committee indicated that the Employers stated that based on the report form the Joint Medical Specialist and the medical documentation form the UCLA Department of Ophthalmology provided to Plaintiff, the JPWLRC determined that Plaintiff cannot perform the essential functions of a Watchmen with or without reasonable accommodation. The Committee indicated that the Employers would not accept his dispatch to terminals for Watchman's work and no accommodation would be provided.

111.    The denial was wholly contradictory to Plaintiff's medical documentation which indicated that Plaintiff could perform the essential

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

functions of his job as a Watchman with reasonable accommodations, demonstrating the refusal to accommodate and/or engage in the good faith interactive process.

112.    Plaintiff asked whether the Employers were revoking his temporary "working accommodations" at the Terminals.

113.    The ILWU President, Gratz, responded to the Employers' position by stating that all Watchmen are required to perform the essential functions of the jobs, or they cannot be dispatched to Watchmen work. Gratz stated that "the law does not permit ADA accommodations for security work." There are no exceptions to this rule, and any changes or modifications to the Local 26 Watchmen contract are not allowed and would be unfair to the men and women who ratified the contract and work under the Local 26 CBA. Gratz's statements overtly evidence the discriminatory motives and disparate treatment toward Plaintiff, a qualified individual with a disability, as defined by the ADA/FEHA.

114.    Plaintiff responded that the Committee's decision violated his rights under the Local 26, CBA, Article 16, and Federal ADA law. Plaintiff cited Federal ADA law to support his claim that he has a "qualified" ADA disability. Plaintiff stated that Article 16 of the ADA supported his request for accommodation. He said he had a "qualified" accommodation, which

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

should not be treated as a routine accommodation. Williams, on behalf of PMA, noted that there were twenty-one (21) categories of "qualified" disabilities under the ADA, but it did not change the decision of the Committee. Plaintiff replied that Local 26 and the Employers violated his rights based upon their interpretation of the CBA, and that he was not properly represented by ILWU, as the Union was opposed to his request for accommodation since April 15, 2023. He stated ILWU was opposed to representing him fairly and adequately to protect his rights under the ADA, and it was clear to him that ILWU would not be representing his interests at all. Plaintiff asked Williams if the Employers agree with ILWU in using the CBA to violate his rights. Willaims responded that the Employers have done the analysis per the ADA, and that their position is unchanged, regardless of the CBA.

115.    The Employers December 10, 2024, decision to place Plaintiff on non-dispatch status constitutes a discrete and adverse retaliatory act in direct response to Plaintiff's accommodation request, and is not a neutral administrative decision, as pretextually guised.

116.    On December 10, 2024, TTI placed Plaintiff on non-dispatch for precautionary disability suspension. There were no active employer complaints on file with TTI or any new incident that would justify this

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

action. Following Plaintiff's disability-related request for accommodations, TTI refused to provide the necessary adjustments. From April 15, 2023, to December 10, 2024, despite being eligible for dispatch, Plaintiff was unable to pick up assignments due to TTI's failure to accommodate his disability.

117.    On December 10, 2024, Plaintiff was placed on non-dispatch status for all terminals, effective immediately, for precautionary disability suspension, demonstrating the Employers' discrimination and retaliation against Plaintiff.

118.    On January 17, 2025, Gratz requested the minutes of the JPWLRC Meeting at PMA on December 10, 2024, regarding Plaintiff's request for accommodation issue. Gratz wrote that each time she requested the transcript, she was denied, and she requested the document without further delay.

119.    On January 20, 2025, Plaintiff sent an email to Employers to formally renew his request for reasonable accommodations to enable him to perform the essential functions of his position as a Watchman at the Port of Los Angeles and Long Beach. Plaintiff wrote that his initial request for accommodations was made in April 2023; however, no accommodations were implemented, and he has been unable to work since February 12, 2024. Plaintiff made the following requests: 1) Worksite Assessment: The

Case No.
COMPLAINT FOR DAMAGES

Department of Rehabilitation (DOR) is prepared to conduct a thorough assessment of [his] worksite to identify appropriate accommodations that will empower [him] to perform [his] essential job functions. As noted in his previous correspondence, Plaintiff's ophthalmologist, optometrist, and occupational therapist have all provided recommendations affirming his ability to perform the essential functions of his job with the appropriate accommodations. The DOR's support, along with these professional recommendations, ensured that Plaintiff is well-equipped to fulfill his role effectively and safely. Despite these resources and professional recommendations, the Employers' failure to provide accommodations has caused severe financial injuries, significant mental health stress, physical health issues, and other related personal challenges.

120.    Additionally, Plaintiff requested to include the California DOR in the ADA process, and this request was denied by Williams on behalf of the PMA and the Employers.

121.    On January 29, 2025, Williams responded that the Employers do not understand what he meant by renewing his request for accommodation. Williams wrote that the JPWLRC determined, based on documents it received, including the medical notes from UCLA Department of Ophthalmology that he was unable to perform the essential functions of the

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

watchman job with or without reasonable accommodation. This statement wholly contradicts the medical documentation that the Employers identify and refer to, as Plaintiff's medical documentation specifies that *he can perform the essential functions of his job as a Watchman with reasonable accommodation*, demonstrating the Employers' discriminatory pretext.

122.    Employers denied Plaintiff the opportunity to renew his request for accommodation, demonstrating the Employers' failure to engage in the continuing good faith interactive process.

123.    On January 29, 2025, Plaintiff submitted a letter from the DOR, which stated that Plaintiff was a participant of California, DOR services. The DOR works to assist Californians with disabilities to train, obtain, and maintain employment. Plaintiff received the following services through the state which would allow him to continue his employment and excel in his job duties as a Watchman at the Port of Long Beach: Low vision aids and devices, transportation assistance, ergonomic and worksite evaluation to identify necessary tools, and assistive technology- including computer/software. Employers did not respond to this correspondence, but again, failed to engage in the continuing good faith interactive process with Plaintiff.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

124.     On January 29, 2025, after Plaintiff and ILWU made multiple requests for the December 10, 2025, minutes transcript, Gratz wrote a letter regarding PMA's Conduct, Credibility, Practices, and Records to Williams, writing that she would NOT sign dishonest minutes drafted by PMA staff or unknown others. Gratz reiterated that ILWU had requested a duplicate of the testimonies provided by all participants of the meeting. Gratz continued her letter with reflecting on the missing information from the minutes including when Prickett stood her up for a scheduled meeting, and Williams left Gratz in a locked PMA office because he had a dinner date with his wife. Willimas also showed Gratz a photograph of her house on his cell phone, which she explicitly wrote was illegal surveillance and a violation of the law. Gratz wrote that Williams summarized the meeting without the Union's permission, calling the draft PMA's "script," as opposed to the minutes. Gratz specified that any minutes or other JPWLRC documents that were not signed were disingenuous and self-serving.

125.     On or about March 20, 2025, Plaintiff followed up on his previous correspondence dated January 24, 2025, with the JPWLRC and Employers via email, regarding his formal request for specific meeting minutes and documents related to the interactive process concerning his request for reasonable accommodation under the ADA and the FEHA. Plaintiff

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

disclosed that although he was denied reasonable accommodation, he was still actively pursuing reasonable accommodation. Additionally, Plaintiff informed the Employers that he was working with the DOR counselor to develop an informed and effective plan for addressing his disability-related needs. Plaintiff requested the following documents: 1) For the March 25, 2024, Employer Complaint 24-23 (LBCT), the official record of the complaint and any notes or findings generated from this proceeding; 2) For the March 25, 2024, Employer Complaint 18-23 (APM), the official record of the complaint and any notes or findings generated from this proceeding; 3) For the Special LRC Meeting on May 8, 2023, the notice detailing the purpose of obtaining information regarding Plaintiff's reasonable accommodation request; 4) For the Special LRC Meeting on May 22, 2023, the notice clarifying accommodations discussed during the May 8, 2023, meeting. Plaintiff requested these documents to confirm his participation, to address his disability-related needs through the DOR, and to demonstrate the Employers' refusal to provide reasonable accommodations and failure to engage in the interactive process in good faith. To date, the Employers have refused to provide Plaintiff with the requested documents, demonstrating the Employers' overt obstruction of the good faith interactive process.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

126.    To date, the Employers refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

127.    Under information and belief, Plaintiff was not provided with a fair investigation. Employers' failure to conduct a rigorous investigation into his discrimination and harassment complaint demonstrates its blatant failure to take remedial action.

128.    Under information and belief, similarly situated employees were not subjected to similar discriminatory, disparate treatment, and they were provided more lenient treatment than Plaintiff, demonstrating Employers' discriminatory and harassing motives.

129.    The Employers' unlawful conduct, as stated herein, has caused Plaintiff to suffer significant financial hardship and severe emotional trauma.

130.    Plaintiff has filed his Complaint with the EEOC and received his right to file a civil action. Plaintiff has complied with all administrative prerequisites to suit.

## FIRST CAUSE OF ACTION

## (DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA/FEHA)

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

(As to All Defendants)

131.    Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

132.    At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., was in full force and effect and was binding upon Employers. These sections, and specifically 42 U.S.C. §§ 12112(a) and (b)(1), prohibited Employers from discriminating against an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C).

133.    Defendant violated 42 U.S.C. § 12101 *et seq.,* and specifically 42 U.S.C. §§ 12112(a) and (b)(1), in numerous respects as alleged herein, including, but not necessarily limited to, discriminating against Plaintiff because of his physical disability; stripping Plaintiff of all his ability to work, despite the fact that he had successfully performed his job duties during his employment with Employers with reasonable accommodation, denying Plaintiff available work beginning from in or about February 2024 to present, withdrawing Plaintiff's reasonable accommodation to work in dispatch, denying Plaintiff of the right to work in other terminals of Employers when there was available work, denying Plaintiff reasonable

Case No. _____
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

accommodations pursuant to his health care providers' recommendation, refusing to modify and/or adjust Plaintiff's job duties and/or schedules, and ostracizing Plaintiff to make an example of him to deter other employees from requesting reasonable accommodations. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

134.    Within the time provided by law, Plaintiff filed a complaint with the EEOC in full compliance with these sections, and he received his right to file a civil action.

135.    Employers incurred a duty to its employees to maintain a work environment that provided reasonable accommodations, was free from wrongful conduct of discrimination against a disabled employee due to a request for accommodation, and to hire and supervise employees in a manner likely to achieve that end.  These duties were breached by Employers.

136.    As a proximate result of Employers' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

137.    Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

leave of court to amend this complaint when said amounts are more fully known.

138.     In the acts alleged hereinabove, Employers have engaged in unlawful discrimination and otherwise engaged in the wrongful acts and omissions herein alleged. Employers acted with oppression, fraud, and malice and accordingly an award of exemplary and punitive damages should be assessed based upon its relative fault in committing the acts as alleged herein and made in favor of Plaintiff as an example and deterrent to Employers and others not to engage in such predatory practices and other wrongful conduct such as alleged in this Complaint.

## SECOND CAUSE OF ACTION

## (HARASSMENT BASED ON PHYSICAL DISABILITY IN VIOLATION OF THE ADA/FEHA)

(As to All Defendants)

139.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

140.     At all times herein mentioned, 42 U.S.C. § 12101 *et seq*. was in full force and effect and was binding upon Employers. These sections, and specifically 42 U.S.C. § 12112(a), required Employers to refrain from harassing an employee, such as Plaintiff, who is a qualified individual as

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical

disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C),

on the basis of a physical disability.

141.    During the course of Plaintiff's employment, Employers harassed

Plaintiff based on his physical disability, in numerous respects as alleged

herein, including, but not necessarily limited to, ostracized him, singled him

out, misrepresenting his disability in an offensive manner, prevented him

from working his regular shifts, prevented him from any and all reasonable

accommodations, management ignored Plaintiff and dismissed him, making

him feel isolated in his employment, management and representatives were

dishonest and deceitful during the interactive process, management and

representatives refused to engage with Plaintiff in a good faith manner

because Plaintiff was an employee with a physical disability, management

and representatives instructed Plaintiff to find a new job, Plaintiff was told

that he could not work because he could not see, the Employers,

management, and representatives mocked his disability, and the Employers,

management, and representatives obstructed the good faith interactive

process and denied Plaintiff of a fair, impartial investigation.

142.    Such harassment was in violation of 42 U.S.C. § 2000e *et seq.* and has

resulted in damage and injury to Plaintiff as alleged herein.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

143.    Within the time provided by law, Plaintiff filed a complaint with the EEOC in full compliance with these sections, and he received a right to file a civil action.

144.     As a proximate result of Employers' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

145.    Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays leave of court to amend this complaint when said amounts are more fully known.

146.    In the acts alleged hereinabove, Employers have engaged in unlawful discrimination and otherwise engaged in the wrongful acts and omissions herein alleged. Employers acted with oppression, fraud, and malice and accordingly an award of exemplary and punitive damages should be assessed based upon its relative fault in committing the acts as alleged herein and made in favor of Plaintiff as an example and deterrent to Employers and others not to engage in such predatory practices and other wrongful conduct such as alleged in this Complaint.

### THIRD CAUSE OF ACTION

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF NANCYROSE HERNANDEZ

## (FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA/FEHA)

### (As to All Defendants)

147.　　Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

148.　　At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., was in full force and effect and was binding upon Employers. These sections, and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), required Employers to provide reasonable accommodation to an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C).

149.　　Employers violated 42 U.S.C. § 12101 *et seq*., and specifically 42 U.S.C. § 12112(a) and (b)(5)(A) and/or (B), in numerous respects as alleged herein, including, but not necessarily limited to, failing to provide Plaintiff with reasonable accommodations for his known physical disability, refusing to allow Plaintiff to work his guaranteed contracted shifts, stripping Plaintiff of all his ability to work, despite the fact that he had successfully performed his job duties during his employment with Employers with reasonable accommodation, denying Plaintiff available work beginning from in or about

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

February 2024 to present, withdrawing Plaintiff's reasonable accommodation to work in dispatch, denying Plaintiff of the right to work in other terminals of Employers when there was available work, denying Plaintiff reasonable accommodations pursuant to his health care providers' recommendation, refusing to modify and/or adjust Plaintiff's job duties and/or schedules, and ostracizing Plaintiff to make an example of him to deter other employees from requesting reasonable accommodations. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

150.    Management withdrew Plaintiff's reasonable accommodation of working in dispatch. Withdrawing the accommodation previously provided by Employers violates the ADA. The fact that the accommodation was previously offered to Plaintiff shows that the accommodation was reasonable, and work was available. Plaintiff could perform the essential functions of his job with reasonable accommodation in a safe and efficient manner. The Employers withdrew the accommodation without engaging in a good faith interactive meeting, but instead, obstructed the interactive process and provided <u>false</u>, <u>pretextual</u> reasons for refusing to accommodate Plaintiff.

151.    Within the time provided by law, Plaintiff filed a complaint with the EEOC in full compliance with these sections and received a right to file a civil action.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

152.    As a proximate result of Employers' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

153.    Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses, and fees and prays leave of court to amend this complaint when said amounts are more fully known.

154.    In the acts alleged hereinabove, Employers have engaged in unlawful discrimination and otherwise engaged in the wrongful acts and omissions herein alleged. Employers acted with oppression, fraud, and malice and accordingly an award of exemplary and punitive damages should be assessed based upon its relative fault in committing the acts as alleged herein and made in favor of Plaintiff as an example and deterrent to Employers and others not to engage in such predatory practices and other wrongful conduct such as alleged in this Complaint.

**FOURTH CAUSE OF ACTION**

**(FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE ADA/FEHA)**

(As to All Defendants)

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCY ROSE
HERNANDEZ

155.    Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

156.    At all times herein mentioned, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., was in full force and effect and was binding upon Employers. These sections, and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), and 29 C.F.R. § 1630.2(o)(3), required Employers to engage in an informal, interactive process with an employee, like Plaintiff, who is a qualified individual as defined in 42 U.S.C. § 12131(2), and who, like Plaintiff, has a physical disability as that term is defined in 42 U.S.C. § 12102(2)(A), (B), and/or (C), in order identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

157.    Employers violated 42 U.S.C. § 12101 *et seq.,* and specifically 42 U.S.C. §§ 12112(a) and (b)(5)(A) and/or (B), and 29 C.F.R. § 1630.2(o)(3), in numerous respects as alleged herein, including, but not necessarily limited to, failing to engage in an informal, interactive process with Plaintiff in order identify the precise limitations resulting from his physical disability and potential reasonable accommodations that could overcome those limitations; failing to engaging in such an interactive process with Plaintiff prior to stripping Plaintiff of all his ability to work, withdrawing Plaintiff's

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reasonable accommodation of working in dispatch, denying Plaintiff the ability to work in other terminals of Employers when there was available work, denying Plaintiff reasonable accommodations pursuant to his health care providers' recommendation, refusing to modify and/or adjust Plaintiff's job duties and/or schedules, and ostracizing Plaintiff to make an example of him to deter other employees from requesting reasonable accommodations. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

158.    At no time relevant to this complaint did Employers' management engage in dialogue with Plaintiff to analyze the particular job involved and determine its purpose and essential functions, consult with Plaintiff to ascertain the precise job-related limitations imposed by his disability and how those limitations could be overcome with a reasonable accommodation, management failed to identify potential accommodations and assess the effectiveness each would have in enabling Plaintiff to perform the essential functions of the position, and management refused to consider Plaintiff's preferred accommodation and select the most appropriate one for all parties.

159.    Within the time provided by law, Plaintiff filed a complaint with the EEOC in full compliance with these sections, and he received a right to file a civil action.

Case No.
COMPLAINT FOR DAMAGES

160.    As a proximate result of Employers' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

161.    Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses, and fees and prays leave of court to amend this complaint when said amounts are more fully known.

162.    In the acts alleged hereinabove, Employers have engaged in unlawful discrimination and otherwise engaged in the wrongful acts and omissions herein alleged. Employers acted with oppression, fraud, and malice and accordingly an award of exemplary and punitive damages should be assessed based upon its relative fault in committing the acts as alleged herein and made in favor of Plaintiff as an example and deterrent to Employers and others not to engage in such predatory practices and other wrongful conduct such as alleged in this Complaint.

## FIFTH CAUSE OF ACTION

## (RETALIATION IN VIOLATION OF 42 U.S.C. § 12203 AND CALIFORNIA LABOR CODE § 1102.5)

### (As to All Defendants)

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

163.    Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

164.    At all times herein mentioned, 42 U.S.C. §§ 12203 and 2000e-3(a) were in full force and effect and were binding upon Employers. This section prohibited Employers from retaliating against an employee, such as Plaintiff, on the basis of a complaint of discrimination and/or harassment based on physical disability.

165.    At all times mentioned herein, *California Labor Code* §1102.5 was in full force and effect and was binding upon Employers. This section prohibits Employers from retaliating against an employee who has disclosed information to, *inter alia*, a person with authority over the employee; information that the employee has reasonable cause to believe violates, *inter alia*, a local, state, and/or federal statute, rule, and/or regulation.

166.    Plaintiff opposed and disclosed the Employers' discriminatory practices, as stated herein and incorporated by this reference. Plaintiff made formal complaints to Employers regarding discrimination, harassment, and retaliation in violation of state and federal laws. Plaintiff made formal complaints to the NLRB and EEOC. In retaliation for making complaints, Plaintiff was denied the opportunity to return to work. Employers subjected Plaintiff to adverse employment action, including but not limited to,

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

unwarranted disciplinary action, suspension, refusal to accommodate, and wrongful termination.

167.    During the course of Plaintiff's employment, Employers retaliated against Plaintiff because he made complaints of discrimination and failure to accommodate based on his physical disability, in numerous respects as alleged herein, including, but not necessarily limited to, failing to engage in an interactive process with Plaintiff, stripping Plaintiff of all his ability to work, withdrawing Plaintiff's reasonable accommodation of working in dispatch, denying Plaintiff the ability to work in other terminals of Employers when there was available work, denying Plaintiff reasonable accommodations pursuant to his health care providers' recommendation, refusing to modify and/or adjust Plaintiff's job duties and/or schedules, and ostracizing Plaintiff to make an example of him to deter other employees from requesting reasonable accommodations. Such conduct has resulted in damage and injury to Plaintiff as alleged herein.

168.    After Plaintiff submitted grievances, he was subjected to adverse employment action, disciplined, scrutinized, denied accommodations, and ultimately terminated, springing on the heels of Plaintiff's formal complaints of harassment and discrimination in violation of the ADA and FEHA.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

169.     Employers retaliated against Plaintiff by subjecting Plaintiff to adverse employment action, including without limitation, excessive scrutiny, unwarranted disciplinary action, deceitful dissemination of false statements damaging Plaintiff's professional reputation, refusal to accommodate, refusal to authorize Plaintiff to return to work, and ultimately terminating Plaintiff's employment by not allowing him to return to work.

170.     Such retaliation was in violation of 42 U.S.C. §§ 12203 and/or 2000e3(a) and *California Labor Code* §1102.5 has resulted in damage and injury to Plaintiff, as alleged herein.

171.     Within the time provided by law, Plaintiff filed a complaint with the EEOC in full compliance with these sections, and he received a right to file a civil action.

172.     As a proximate result of Employers' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

173.     Plaintiff has incurred and continues to incur lost wages (back pay and front pay), benefits, legal expenses and attorney's fees. Plaintiff is presently unaware of the precise amount of said damages, expenses and fees and prays leave of court to amend this complaint when said amounts are more fully known.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

174.     In the acts alleged hereinabove, Employers have engaged in unlawful discrimination and otherwise engaged in the wrongful acts and omissions herein alleged. Employers acted with oppression, fraud, and malice and accordingly an award of exemplary and punitive damages should be assessed based upon its relative fault in committing the acts as alleged herein and made in favor of Plaintiff as an example and deterrent to Employers and others not to engage in such predatory practices and other wrongful conduct such as alleged in this Complaint.

## SIXTH CAUSE OF ACTION

## (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)

### (As to All Defendants)

175.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

176.     Employers' wrongful termination of Plaintiff was in violation of fundamental public policies of the State of California as it included illegal conduct and other wrongful activity of harassment, discrimination, and retaliation. Said policies are stated in ADA and FEHA, as well as the ADA's and FEHA's prohibition of discrimination and harassment and the *California Labor Code*.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

177.     Employers' termination of Plaintiff was wrongful and in violation of the fundamental principles of the public policy of the State of California as reflected in its laws, objectives and policies.

178.     Employers, by and through, Employers' officers, directors, managing agents, and supervisory employees, intentionally created or knowingly permitted the termination of Plaintiff's employment with Employers. Under information and belief, the Employers acted in conspiracy by refusing to accommodate Plaintiff and by placing Plaintiff on precautionary disability suspension thereby terminating his employment with all Employers.

179.     As a result of said employment relationship, Employers were obligated to refrain from wrongfully terminating Plaintiff, or any employee, for reasons which violate or circumvent said policy, law, or the objectives which underlie each and not to compound their illegal conduct.

180.     As a direct and foreseeable result of the aforesaid acts of Employers, its agents and employees, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff has also incurred attorney fees. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to *Code of Civil Procedure* §3287 and/or any other provision of law providing for pre-judgment interest.

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

181.    As a result of the aforesaid acts of Employers, Plaintiff has suffered financial damages and has become mentally depressed, upset, distressed, and aggravated. Plaintiff claims general damages for such financial loss and mental and emotional distress and aggravation in an amount to be proven at trial.

182.    Employers' actions were malicious, despicable, fraudulent, willful, and reckless, and exhibited a conscious disregard of the rights of Plaintiff and therefore warrants the imposition of punitive damages against Employers pursuant to statute and *Civil Code* §3294.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF Prays for judgment against all Defendants and each of them, according to proof as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For special damages in an amount to be proven at trial;

3. For general damages in an amount to be proven at trial;

4. For compensatory damages for emotional distress, humiliation, and mental anguish on all causes of action;

5. For punitive and exemplary damages;

6. For interest, including prejudgment interest at the legal rate on all causes of action;

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ

7.  For costs of suit, incurred herein on all causes of action;

8.  For attorneys' fees on all causes of action pursuant to 29 U.S.C. § 794(b) and/or 42 U.S.C. §§ 2000e-5(k) and/or 12117;

9.  For such other and further relief as this Court deems just and proper.

**Plaintiff demands a jury trial.**

Dated: June 2, 2025                    LAW OFFICE OF NANCYROSE HERNANDEZ


                              By: /s/ Nancyrose Hernandez
                                  Nancyrose Hernandez
                                  Attorney for Plaintiff
                                  ENOCH GREENE

Case No.
COMPLAINT FOR DAMAGES

LAW OFFICE OF
NANCYROSE
HERNANDEZ