NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff, ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 5:25-cv-01359-KK-CTSx<br><br>**PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, SSA'S, MOTION FOR SUMMARY JUDGMENT**<br><br><u>Hearing on Summary Judgment</u><br><br>Date: Thursday July 16, 2026<br>Time: 9:30 a.m.<br>Place: Riverside, Courtroom<br>Honorable Kenly Kiya Kato<br>United States District Judge<br><br>Date Action Filed: June 2, 2025<br>FAC Filed: June 20, 2025<br>Trial Date: September 28, 2026 |

0

LAW OFFICE OF
NANCYROSE
HERNANDEZ

# Table of Contents

I.    FACTUAL BACKGROUND _____1

II.   ADMINISTRATIVE AND PROCEDURAL HISTORY _____11

III.  SUMMARY JUDGMENT LEGAL STANDARD_____12

  A.  Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact_____12

IV.  ARGUMENT_____13

  A.  SSA Has Not Established as a Matter of Law What the Essential Functions of Watchman Work Are._____13

  B.  SSA Has Not Established as a Matter of Law That Plaintiff Posed a Direct Threat. _____14

  C.  Genuine Issues of Material Fact Exist Regarding Pretext. _____17

  D.  SSA is Not Entitled to Summary Judgment on Plaintiff's Disability Harassment Claim. _____19

  E.  SSA is not Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim. _____21

  F.  Genuine Issues of Material Fact Exist Regarding Interactive Process Claim. _____22

  G.  Genuine Issue of Material Fact Regarding Retaliation Claim. _____23

  H.  Genuine Issues of Material Fact Regarding Wrongful Termination Claim. 25

  I.  Genuine Issues of Material Fact Preclude Summary Adjudication of Punitive Damages._____25

V.   CONCLUSION _____26

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## Cases

*Anderson*, 477 U.S ..............................................................................................12, 17

*Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) .........................................14

*Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 991 (9th Cir. 2007)....................15

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ..................................................................................................................23

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) ..................................................................................................................17

*Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001) ...................13, 18

*Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ..................21

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015)...24

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1170 (E.D. Cal. 2015)...17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ......13

*Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000)………………………………………………………………………………15

*Ray v. Henderson*, 217 F.3d 1234, 1240, 1242 (9th Cir. 2000) ..............................23

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009)..................................................................................................13, 17

*Rorrer v. City of Stow, 743 F.3d 1025 (6th Cir. 2014)* ..............................13, 16, 21

*Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) .........25

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) ..................12

## Statutes

ADA ..........................................................................................................................23, 24

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, ENOCH GREENE'S ("Plaintiff"), claims against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), include disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA), retaliation, and wrongful termination in violation of public policy.

## I.    FACTUAL BACKGROUND

Plaintiff Enoch Greene is a Registered Watchman and member of International Longshore and Warehouse Union Local 26 ("Local 26"), who worked throughout the Ports of Los Angeles and Long Beach since approximately 2004 and became a Registered Watchman in 2013. Through the dispatch system established under the Watchmen's Agreement, Plaintiff performed assignments for Long Beach Container Terminal ("LBCT"), APM Terminals Pacific LLC ("APM"), SSA Terminals LLC ("SSA"), Total Terminals International LLC ("TTI"), and other Pacific Maritime Association ("PMA") employers. His duties included gate operations, identification verification, traffic monitoring, radio-room assignments, gangway duties, transportation functions, and other security-related work. Greene Dep. 27:8-31:24.

The Watchmen's Agreement recognizes multiple classifications and terminal-specific assignments, including gangway watchmen, rover watchmen, traffic watchmen, relief watchmen, video-monitoring assignments, and other security-related functions. Grant Dep. 45:17-22; 177:20-24; Greene Dep. 97:21-98:22. The dispatch system itself operated through a common labor-relations

framework involving PMA, Local 26, participating employers, and the Joint Port Watchmen's Labor Relations Committee ("JPWLRC"). As a result, decisions concerning dispatch eligibility, accommodations, employer complaints, and labor-relations issues affected Plaintiff's ability to obtain work throughout the broader Watchman system rather than at any single terminal.

On April 15, 2023, Plaintiff disclosed that he suffered from primary open-angle glaucoma and significant vision impairment and submitted medical documentation from his treating ophthalmologist, Dr. Anne Coleman. Dr. Coleman did not conclude that Plaintiff was incapable of performing Watchman work. Coleman Dep. 54:15-20; 54:23-55:3. Rather, she identified accommodations and restrictions designed to permit continued employment, including magnification devices, enlarged displays, larger print materials, additional assistance with visual tasks, and restrictions involving oversized passenger vehicles and certain high-risk visual activities. Coleman Dep. 16:12-17:5; 17:6-18:9; 27:1-11; 42:19-43:6. Throughout 2023, Dr. Coleman consistently maintained that Plaintiff could continue working if provided appropriate accommodations.

Following disclosure of his condition, Plaintiff informed terminal supervisors of his restrictions and was reassigned. He successfully completed those assignments without incident. Greene Dep. 29:17-25; 29:1-16; Grant Dep. 127:1-11; 53:17-23. On April 29, 2023, Plaintiff formally notified PMA, Local 26, and the JPWLRC that he had already worked under reassignment following disclosure of his disability and requested accommodations that would permit him to continue performing Watchman duties. At that stage, the focus of the process was how Plaintiff could continue working rather than whether he could work at all.

On May 1, 2023, before either vehicle-related incident had occurred, Plaintiff reported that LBCT supervisors questioned his ability to work because of his vision, monitored his activities, discussed his medical condition, and stated that he should not be working on the waterfront because he was a liability. Plaintiff

2

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reported these concerns through labor-relations channels and requested investigation and review. On May 2, 2023, Plaintiff requested accommodation for a shuttle-bus assignment and was instructed to leave the assignment after the request was denied. On May 8, 2023, Plaintiff submitted a detailed accommodation request that included restrictions involving passenger vans and buses, transportation assistance, magnification devices, enlarged print materials, computer-reader technology, accessible communications, identification-verification assistance, and other accommodations directed toward his visual limitations. Greene Dep. 15:14-15; 33:14-21. Two days later, Plaintiff was denied a work assignment.

By June 2023, accommodation discussions had already been underway for nearly two months. On June 12, 2023, Plaintiff was involved in a vehicle-related incident at LBCT while operating a pickup truck that collided with an Automated Guided Vehicle ("AGV"). LBCT later filed Employer Complaint EC-0008-2023 and placed Plaintiff on non-dispatch status. Plaintiff sought review through the Safety Committee process and challenged both the conclusions reached and the manner in which the investigation was conducted. Plaintiff repeatedly requested witness statements, investigative materials, safety records, video footage, accident reports, and information concerning the conduct of AGV operator Marc Policastro. Plaintiff also presented evidence that he believed raised questions regarding visibility conditions, compliance with safety procedures, and the conduct of other participants involved in the incident.

Safety Committee Representative Tiyuana Blair sought to investigate the accident and later raised concerns regarding the handling of the investigation. On July 19, 2023, Blair reported to the Committee that she was making a formal complaint concerning interference with her investigation and the decision to halt further inquiry into the incident. Plaintiff contends that Blair's investigation was curtailed before completion and that evidence favorable to Plaintiff was never

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

meaningfully considered. The interference with Blair's investigation later became the subject of a separate grievance. Blair alleged that Union President Luisa Gratz unilaterally halted the investigation, advised LBCT that Blair was not authorized to conduct further investigation, and prevented completion of the Safety Committee review. Blair further alleged that LBCT refused to cooperate with the investigation based upon Gratz's direction and denied access to information and witnesses necessary to complete the investigation. Plaintiff contends that the June 12 incident was thereafter evaluated through employer-complaint and labor-relations processes without the independent Safety Committee investigation contemplated by the collective bargaining agreement. Despite the June 12 incident, accommodation discussions, grievance proceedings, dispatch requests, and medical-review proceedings all continued.

On June 29, 2023, PMA responded to Plaintiff's accommodation request and proposed accommodations that included assistance reviewing written materials and providing documents in digital format. Plaintiff contends that those proposals did not meaningfully address the accommodations recommended by Dr. Coleman. Throughout the summer and fall of 2023, Plaintiff repeatedly requested accommodation updates, meeting minutes, investigative materials, grievance assistance, dispatch information, status updates, and clarification regarding what accommodations remained available. Plaintiff contends that many of these requests remained unanswered, were only partially addressed, or were redirected among PMA, Local 26, participating employers, and the JPWLRC without producing definitive answers.

While Plaintiff continued supplying accommodation information, PMA initiated a separate medical-review process. On July 21, 2023, the JPWLRC notified Plaintiff that it was seeking review from an industry medical specialist concerning his accommodation request. Plaintiff objected and maintained that he had already supplied sufficient medical documentation through Dr. Coleman.

4

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff further advised PMA and the Committee that he believed the requested examination and related inquiries conflicted with guidance issued under the Americans with Disabilities Act and Equal Employment Opportunity Commission regulations governing disability-related inquiries and medical examinations. Plaintiff repeatedly cited federal disability law, requested that accommodations be evaluated before exclusionary decisions were made, and objected to actions he believed conflicted with the interactive-process obligations imposed by federal law.

Nevertheless, PMA proceeded with additional review through Dr. James Deutsch. Discovery later revealed that PMA supplied Dr. Deutsch with Plaintiff's medical records and sought his opinion regarding accommodation eligibility. On August 10, 2023, Dr. Deutsch advised PMA that he required additional visual acuity information from Dr. Coleman. Dr. Coleman supplied that information on September 7, 2023. On September 20, 2023, Dr. Deutsch initially recommended restrictions that largely mirrored Dr. Coleman's recommendations, including restrictions involving driving, high-traffic areas, gangways, lighting conditions, and use of magnification devices. Grant Dep. 138:24-139:6; Coleman Dep. 32:17-33:15.

Following additional communications with PMA, however, Dr. Deutsch later issued a substantially broader report stating that Plaintiff could not perform duties involving peripheral vision, identification verification, visual inspections, or gangway work. Plaintiff contends that this later report materially departed from both Dr. Coleman's recommendations and Dr. Deutsch's initial assessment. Defendants thereafter relied heavily on the Deutsch report in concluding that Plaintiff could not perform the essential functions of Watchman work with or without accommodation. Grant Dep. 120:23-121:8.

The record simultaneously reflected materially different conclusions regarding Plaintiff's ability to work. Dr. Coleman repeatedly maintained that

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff could continue working with accommodations. Dr. Deutsch's initial September 20, 2023 restrictions largely mirrored Dr. Coleman's recommendations before later expanding substantially following additional communications with PMA. SSA subsequently accommodated Plaintiff and permitted him to continue working. Plaintiff later worked under accommodations at Matson. Plaintiff contends that these competing assessments created a factual dispute regarding whether he could perform available Watchman assignments with reasonable accommodation and whether exclusion from all dispatch opportunities was warranted.

A recurring theme throughout discovery is that Defendants frequently treated contractual assumptions as if they resolved the accommodation inquiry. Plaintiff repeatedly requested accommodations, supplied medical documentation, cited Americans with Disabilities Act requirements, proposed assistive technologies, and identified assignments he believed he could perform. In response, discussions repeatedly returned to whether accommodations were permissible under the Watchmen's Agreement, whether assignment modifications constituted direct dealing, whether accommodations would create precedent for other workers, and whether accommodations could exist within the dispatch system. Plaintiff contends that these contractual assumptions increasingly displaced the individualized assessment required by federal and state disability law.

At the same time, other participants reached materially different conclusions. SSA explored temporary accommodations and permitted Plaintiff to continue working while management assessed what duties he could safely perform. Grant Dep. 24:23-29:5; 41:14-42:6; 47:11-48:6. Plaintiff successfully performed assignments during this period and accommodations remained under consideration. Greene Dep. 138:17-139:6; Grant Dep. 127:1-11; 53:17-23. On August 17, 2023, Plaintiff was involved in a separate off-duty vehicle incident involving his personal

6

LAW OFFICE OF
NANCYROSE
HERNANDEZ

vehicle and a stationary vehicle belonging to an APM manager. Plaintiff contends that the incident involved minor damage, no injuries, and no citations. Although Plaintiff was initially permitted to continue working, APM later filed Employer Complaint EC-0018-2023 and placed Plaintiff on non-dispatch status. On August 25, 2023, Plaintiff requested that Union Representative Vince Ferrigno file grievances concerning disability discrimination, retaliation, harassment, denial of accommodation, and what Plaintiff viewed as double discipline arising from the same incident.

Even after the June and August incidents, accommodation discussions remained active. On September 18 and September 22, 2023, Plaintiff again requested temporary accommodations and accessible communications while the medical-review process remained pending. Beginning on October 7, 2023, Plaintiff worked under accommodations at SSA's Matson operation and continued performing assignments through December 26, 2023. Greene Dep. 35:11-25; 36:9-17; 37:19-20; 37:24-38:1; 199:2-6. Plaintiff points to this work as evidence that accommodation-based employment remained possible even after the incidents and while the Deutsch review process remained ongoing.

On October 23, 2023, Plaintiff was advised that he was again eligible for dispatch at LBCT. On October 30, 2023, Plaintiff reported for a properly dispatched assignment at LBCT but was turned away and denied the opportunity to work. On November 2, 2023, LBCT again placed Plaintiff on non-dispatch status. During the same period, Plaintiff continued pursuing grievance relief, dispatch eligibility, accommodations, and authorization to return to work.

The inconsistency between Plaintiff's reinstatement and subsequent exclusion became the subject of additional grievance activity. Following Plaintiff's reinstatement to dispatch eligibility effective October 23, 2023, Plaintiff reported for dispatched assignments but was denied work opportunities and later returned to non-dispatch status. Local 26 grievance materials acknowledged that Plaintiff was

7

LAW OFFICE OF
NANCYROSE
HERNANDEZ

eligible to dispatch to LBCT while simultaneously disputing the denial of work opportunities following his reinstatement. Plaintiff contends that these events reflected continuing disagreement regarding what assignments he could perform, whether accommodations remained available, and whether Defendants had already reached conclusions regarding his ability to work notwithstanding accommodations that had previously been implemented.

As accommodation discussions continued, labor-relations concerns increasingly entered the process. Plaintiff contends that Local 26's position toward accommodations became increasingly significant as the process unfolded. During her deposition as the designated Person Most Knowledgeable for Local 26, Union President Luisa Gratz repeatedly testified that accommodations affecting Watchman assignments could not occur outside the JPWLRC process, that individual supervisors lacked authority to provide accommodations, that employees could not negotiate individualized arrangements, and that assignment modifications implicated direct dealing and unilateral changes to collectively bargained terms and conditions of employment. Gratz further testified that Local 26 had no written accommodation policy, no accommodation process, no light-duty program, and no modified-duty assignments for Watchmen. She repeatedly characterized Plaintiff's accommodation requests as requests for "light duty" rather than accommodations arising under federal disability law.

Gratz further testified that all eight terminals operated under the same collective bargaining agreement and dispatch structure and that JPWLRC determined terms and conditions of employment for all Watchmen. Although Gratz expressed concerns that accommodations created dissatisfaction among members and could create precedent for other workers seeking accommodations, she was unable to identify specific members who had been harmed by Plaintiff's accommodations or specific instances in which Plaintiff had injured another employee. At the same time, she acknowledged that Plaintiff had worked for years

8

LAW OFFICE OF
NANCYROSE
HERNANDEZ

with a vision condition and was unaware of any instance in which Plaintiff had killed or physically harmed another worker.

In November 2023, LBCT acknowledged that it had accommodated Plaintiff through gangway assignments but later withdrew or refused those accommodations and relied on the June 12 incident as justification. Plaintiff continued working under accommodations at Matson until December 26, 2023. He remained on medical leave from December 28, 2023 through February 12, 2024. Upon his return, accommodations that had previously permitted him to continue working were no longer available. Plaintiff contends that previously granted accommodations were revoked and that he was effectively excluded from dispatch opportunities despite continuing requests for accommodation and reinstatement.

Throughout 2024, Plaintiff continued participating in the process. He submitted additional medical documentation, accommodation proposals, specialist evaluations, rehabilitation recommendations, and assistive technology requests. On or about November 16, 2024, Plaintiff submitted additional recommendations involving screen magnification, text-to-speech technology, optical character recognition tools, digital note-taking assistance, and professional note-taking support.

On December 10, 2024, Plaintiff appeared before the JPWLRC concerning his accommodation request. Plaintiff requested accommodations including screen magnification, text-to-speech functionality, voice-command features, digital note-taking, optical character recognition technology, and a professional note-taker. The Committee ultimately communicated the employers' determination that Plaintiff could not perform the essential functions of Watchman work with or without accommodation and that dispatch opportunities would no longer be available. Grant Dep. 118:18-121:8. Plaintiff objected and maintained that the determination was inconsistent with Dr. Coleman's recommendations, his successful performance

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

of accommodated assignments, and the accommodations that had previously been implemented. Coleman Dep. 54:15-20; 54:23-55:3.

In response, Gratz expressly stated that "the law does not permit ADA accommodations for security work" and further confirmed that granting accommodations would violate the Watchmen's Agreement. Gratz Dep. 177:22-178:3. She stated that there had been no accommodations or light-duty assignments granted during her tenure and that Watchmen unable to perform all duties could not be dispatched. Plaintiff contends that these statements reflected a categorical position regarding accommodations rather than an individualized assessment of available work, accommodations, or assignment-specific duties.

On January 20, 2025, Plaintiff renewed his accommodation request and sought involvement from the California Department of Rehabilitation ("DOR"), including a worksite assessment, assistive technology, transportation assistance, ergonomic evaluation, and low-vision accommodations. On January 29, 2025, Plaintiff supplied additional DOR documentation identifying resources that could facilitate continued employment. Plaintiff contends that these proposals were never meaningfully evaluated and that Defendants instead adhered to the conclusion already reached by the JPWLRC.

The chronology reflects a process that began with accommodation and ended with exclusion. Plaintiff disclosed his disability, worked under reassignment, continued working after disclosure, repeatedly supplied medical documentation, proposed accommodations, identified assistive technologies, worked under accommodations at multiple terminals, and sought continued employment. Plaintiff contends that accommodations were identified, proposed, discussed, implemented, and successfully utilized before gradually becoming unavailable as employer complaints, accident investigations, labor-relations concerns, dispatch restrictions, and medical-review conclusions increasingly dominated the process. Plaintiff further contends that Defendants prematurely

10

LAW OFFICE OF
NANCYROSE
HERNANDEZ

adopted conclusions regarding the essential functions of Watchman work, the flexibility of assignments, the availability of accommodations, and the impact of Plaintiff's disability, ultimately resulting in his exclusion from a dispatch system spanning multiple employers, multiple terminals, and a common labor-relations framework.

To date, the Employers refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## II. ADMINISTRATIVE AND PROCEDURAL HISTORY

Beginning in 2023, Plaintiff pursued accommodation requests, grievance procedures, labor-relations remedies, and administrative complaints arising from Defendants' handling of his disability, accommodation requests, dispatch eligibility, and continued employment as a Watchman.

Plaintiff filed administrative charges alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and related violations of federal and state law. Plaintiff also pursued relief through labor-relations channels, including grievances, arbitration requests, requests for committee review, and proceedings before the Joint Port Watchmen's Labor Relations Committee.

Throughout 2023, 2024, and 2025, Plaintiff continued seeking accommodations, challenging employer complaints, requesting reinstatement to dispatch eligibility, requesting records and meeting minutes, and pursuing review of decisions affecting his ability to continue working as a Watchman.

After exhausting his administrative remedies, Plaintiff commenced this action asserting claims for disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the interactive process, retaliation, and wrongful termination in violation of public policy.

Case No. 5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

On June 20, 2025, Plaintiff filed the operative First Amended Complaint. The First Amended Complaint alleges that Defendants unlawfully denied accommodations, interfered with the interactive process, improperly excluded Plaintiff from dispatch opportunities, and ultimately prevented him from continuing his employment because of his disability and accommodation requests.

Following discovery, Defendants filed motions for summary judgment challenging Plaintiff's claims. Defendants contend that Plaintiff could not perform the essential functions of the Watchman position with or without accommodation and that no triable issues of material fact exist. Plaintiff disputes those contentions and maintains that the record contains substantial evidence creating genuine disputes concerning the essential functions of Watchman work, the availability of accommodations, the adequacy of the interactive process, the significance of competing medical opinions, the role of Local 26 and the JPWLRC in accommodation decisions, and Plaintiff's ability to perform Watchman duties with reasonable accommodation.

## III.    SUMMARY JUDGMENT LEGAL STANDARD
### A. Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable

12

LAW OFFICE OF
NANCYROSE
HERNANDEZ

to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Contrary to Defendant's argument, Plaintiff has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

## IV.   ARGUMENT

### A. SSA Has Not Established as a Matter of Law What the Essential Functions of Watchman Work Are.

SSA's motion fails at the threshold because it assumes, rather than proves, what the essential functions of Watchman work are. Courts routinely reject attempts to define a position solely by reference to selected duties while ignoring actual workplace practice. In *Rorrer v. City of Stow*, the Sixth Circuit reversed summary judgment where the employer asserted that emergency vehicle driving was an essential function of firefighting, but evidence showed that firefighters routinely divided driving responsibilities, some firefighters never drove apparatus, and accommodations could have been implemented without eliminating the position itself. 743 F.3d 1025, 1043-45 (6th Cir. 2014). The Ninth Circuit has made clear that determining whether a particular duty is essential is a "highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). Although an employer's judgment and job descriptions may be considered, they are not dispositive. An employer "may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009). Where there is conflicting

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

evidence regarding essential functions, a factual dispute exists that must be resolved by the jury. *Id.*

SSA does not identify a single Watchman position. Instead, the record reflects multiple classifications, multiple terminals, multiple assignments, and terminal-specific duties. SSUF Nos. 3-4; CBA Article 2. SSA's argument improperly assumes that every duty listed throughout the Watchmen's Agreement is an essential function of every Watchman assignment at every terminal. The record demonstrates otherwise. Watchmen are dispatched to different terminals, assigned different posts, and reassigned throughout a shift based upon operational needs. SSUF Nos. 8-15. SSA not only identified accommodations, it implemented them. SSA excused Plaintiff from driving assignments, provided transportation assistance, assigned him to gate and gangway positions, and allowed him to continue working for months thereafter. SSUF Nos. 53-56; Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. A reasonable jury could conclude from this evidence that driving every vehicle, performing every assignment, and performing every terminal-specific duty are not essential functions of every Watchman assignment.

Dr. Coleman likewise concluded that Plaintiff could function safely and effectively at work if appropriate accommodations were implemented and repeatedly maintained that Plaintiff remained capable of performing Watchman duties with accommodation. Coleman Dep. 54:15-20; 54:23-55:3

Beginning in October 2023, SSA accommodated Plaintiff by excusing him from driving assignments, providing transportation assistance, and assigning him to gangway and gate positions. Greene Dep. 35:11-25; 36:9-17; 136:15-138:16; SSUF Nos. 53-56. Plaintiff testified that he worked safely under those accommodations. Greene Dep. 138:17-139:6. SSA therefore cannot establish as a matter of law that Plaintiff was not a qualified individual.

Here, there is conflict in the evidence regarding essential functions of the Watchman position; therefore, there is a factual dispute. The essential functions of

the Watchmen job duties include: Security Surveillance, Credential Verification, Radio Logs. The marginal functions of the Watchmen job duties include: Operating/Driving, Post Transit.

Plaintiff has been employed as a Watchman, performing the essential functions of the job since 2004; therefore, has extensive knowledge and experience on what job duties a Watchman performs daily.

Plaintiff has raised a factual dispute from which a reasonable jury could conclude that the "the relevant 'position' is not the specific to driving but rather than the general category of a Watchman." *Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000).

## B. SSA Has Not Established as a Matter of Law That Plaintiff Posed a Direct Threat.

SSA's direct-threat argument rests on the same faulty premise as its essential-functions argument: that Plaintiff was required to perform every Watchman duty at every terminal, including unrestricted driving, in order to remain qualified for employment. SSA has not established that proposition as a matter of law.

The Ninth Circuit has held that "the burden of production lies with the employer to come forward with evidence of those essential functions." *Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 991 (9th Cir. 2007). Yet SSA simply assumes that driving every vehicle, performing every transportation assignment, and performing every terminal-specific duty were essential functions of every Watchman assignment. As discussed above, the record reflects multiple classifications, multiple assignments, terminal-specific duties, reassignment throughout shifts, and accommodations that were actually implemented in practice. Since the parties dispute what duties were essential, what assignments remained available.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Moreover, the significance of the June 2023 LBCT incident and August 2023 APM incident is itself disputed. Plaintiff challenged the conclusions reached, requested witness statements, video evidence, safety records, and investigative materials, and sought review through the Safety Committee process. Plaintiff further presented evidence questioning the adequacy of the investigations and whether all relevant information was considered. At minimum, genuine disputes exist regarding the circumstances and significance of both incidents.

SSA's own conduct further undermines its direct-threat defense. Following both incidents, SSA accommodated Plaintiff, provided transportation assistance, assigned him to gangway and gate positions, and permitted him to continue working through December 2023. Grant Dep. 41:14-42:6; Greene Dep. 35:11-25; 36:9-17. A reasonable jury could conclude that if Plaintiff posed the severe and unavoidable safety threat SSA now describes, SSA would not have continued assigning him work under accommodations for nearly three months. Greene Dep. 199:2-6; Grant Dep. 85:6-86:9.

SSA's treatment of Plaintiff further undermines its position that he posed an immediate and unavoidable safety threat. SSAT's PMK repeatedly admitted that Plaintiff was never placed on formal non-dispatch status at any time. Grant Dep. 24:8-11; 124:10-18. Instead, Plaintiff continued accepting dispatches and working assignments at SSA facilities through December 26, 2023. Grant Dep. 85:6-86:9. Grant admitted Plaintiff was never formally placed on non-dispatch status, continued working through December 2023, and accumulated no documented safety concerns, performance issues, injuries, or harm to others. Grant Dep. 24:8-11; 124:10-18; 127:1-11; 53:17-23. Grant further acknowledged that the only SSA employer complaint drafted against Plaintiff arose from the October 3, 2023 shuttle-bus incident and that the complaint was never filed. Grant Dep. 171:10-172:8. A reasonable jury could conclude that if Plaintiff truly posed the severe and unavoidable safety threat SSA now describes, SSA would have formally removed

16

LAW OFFICE OF
NANCYROSE
HERNANDEZ

him from dispatch eligibility rather than continuing to permit him to work under accommodation for months thereafter.

The medical evidence is likewise disputed. Dr. Coleman repeatedly concluded that Plaintiff could continue working with accommodations and specifically clarified that her driving concerns related to oversized vehicles such as vans and buses, not all vehicle operation. SSUF Nos. 20-21. Plaintiff also identified numerous accommodations, assistive technologies, transportation modifications, and assignment restrictions that he contends would permit continued employment.

*Rorrer* is particularly instructive because the employer relied upon a vision-related restriction involving emergency vehicle operation to argue that the plaintiff posed a safety risk and was therefore unqualified. The Sixth Circuit nevertheless found triable issues of fact because the plaintiff produced evidence regarding accommodations, actual workplace practices, and the disputed significance of the driving function. *Id*. at 1043-47.

At summary judgment, the Court may not weigh competing medical opinions, resolve factual disputes regarding the accidents, or choose between competing inferences arising from the evidence. *Anderson*, 477 U.S. at 248. Because genuine disputes exist regarding the causes and significance of the incidents, the effectiveness of accommodations, and Plaintiff's ability to safely perform available assignments, SSA has not established a direct-threat defense as a matter of law.

**C. Genuine Issues of Material Fact Exist Regarding Pretext.**

SSA's proffered explanation depends on three disputed premises: (1) that driving shuttle buses and vehicles is an essential function of every Watchman assignment; (2) that accommodations conflicted with the Watchmen's Agreement; and (3) that Plaintiff could not safely perform available assignments with accommodation.

17

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The record contains substantial evidence creating triable issues as to each premise. As discussed above, SSA has not established that driving a shuttle bus is an essential function of every Watchman assignment at every terminal. The Ninth Circuit has repeatedly rejected efforts to define a position solely by reference to selected duties while ignoring the broader position and available assignments. See *Cripe*, 261 F.3d at 889; *Rohr*, 555 F.3d at 864. To defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered non-retaliatory reason for the adverse action is unworthy of credence; or (2) retaliation was the more likely motivation." *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014). The plaintiff need not "introduce evidence beyond that already offered to establish their prima facie case, although they may provide additional proof of the defendants' unlawful motivation." *Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1170 (E.D. Cal. 2015).

Likewise, SSA's reliance on the Watchmen's Agreement creates factual disputes rather than resolves them. Plaintiff presented evidence that union officials repeatedly took the position that accommodations were unavailable because the contract did not provide for them. Gratz testified that accommodations constituted light duty, direct dealing, and impermissible unilateral changes, that Plaintiff should not be accommodated at LBCT, and that accommodations could not occur unless approved through the JPWLRC and PMA process. Gratz Dep. 25:10-21, 47:11-49:11, 57:17-58:2, 88:12-14, 93:1-94:15. Yet SSA simultaneously accommodated Plaintiff by excusing him from driving assignments, providing transportation assistance, assigning him to gangway and gate positions, and permitting him to continue working through December 2023. SSUF Nos. 53-56; Grant Dep. 41:14-42:6; Greene Dep. 136:15-139:6.

Most importantly, SSA's conduct is difficult to reconcile with its present explanation. The inconsistency extends beyond accommodations. Although SSA now contends Plaintiff could not safely perform Watchman work, Grant admitted

18

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff was never formally placed on non-dispatch status and continued working at SSA facilities through December 2023 without documented safety concerns, performance issues, injuries, or harm to others. Grant Dep. 24:8-11; 53:17-23; 127:1-11. A reasonable jury could conclude that SSA's contemporaneous treatment of Plaintiff is inconsistent with the categorical position advanced in this litigation. If Plaintiff truly could not safely perform available Watchman work, then SSA would not have accommodated him and allowed him to continue working after learning of his disability and after both vehicle incidents. A reasonable jury could conclude that the issue was not whether accommodations were possible, but whether decisionmakers believed accommodations were permissible under their interpretation of the Watchmen's Agreement.

Since the record contains competing medical opinions, evidence of successful accommodated work, disputes regarding essential functions, and conflicting evidence regarding the role of the collective bargaining agreement in the accommodation process, a reasonable jury could find SSA's explanation unworthy of credence. Summary judgment therefore must be denied.

**D. SSA is Not Entitled to Summary Judgment on Plaintiff's Disability Harassment Claim.**

SSA attempts to isolate individual incidents and individual actors. Viewed as a whole, however, the record permits a very different inference. Following disclosure of his disability in April 2023, Plaintiff encountered a recurring pattern across multiple terminals, multiple employers, union representatives, and the JPWLRC process. Accommodation requests were questioned. Assignments were denied. Medical documentation prompted additional review rather than implementation. Accommodations that were approved at one location became the subject of objections elsewhere. Plaintiff was repeatedly directed from one entity to another while seeking answers regarding accommodations, dispatch eligibility, and work opportunities. A reasonable jury

19

LAW OFFICE OF
NANCYROSE
HERNANDEZ

could conclude that Plaintiff was subjected to a continuous pattern of second-guessing, heightened scrutiny, and resistance because of his disability and accommodation requests.

The record further reflects evidence from which a jury could infer coordinated decision-making. Local 26 President Luisa Gratz testified that accommodations could not occur outside the JPWLRC process, that accommodations constituted direct dealing, that employees could not negotiate individualized arrangements, and that accommodations required approval through the JPWLRC and PMA framework. Gratz Dep. 47:11-49:11, 57:17-58:2, 93:1-94:15. She further testified that members were upset by Plaintiff's accommodations and that accommodations affecting assignments created concerns within the dispatch system. Gratz Dep. 62:17-64:17. At the same time, Plaintiff presented evidence that accommodations implemented at certain terminals were later challenged, withdrawn, or denied after discussions involving PMA, Local 26, and participating employers.

A reasonable jury could conclude from this evidence that Plaintiff was not merely encountering isolated decisions by independent actors, but rather a common response to his disability and accommodation requests that followed him from terminal to terminal. Whether that response reflected legitimate safety concerns, coordinated resistance to accommodations, retaliation for asserting disability rights, or some combination of those factors presents classic questions of fact that cannot be resolved on summary judgment.

At minimum, the record permits competing inferences regarding the relationships among the relevant actors, the role of the JPWLRC process, the reasons accommodations were challenged or withdrawn, and whether Plaintiff was subjected to disability-based hostility after asserting his rights under the ADA and FEHA. Those issues are for a jury to decide.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

### E. SSA is not Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim.

SSA's failure-to-accommodate argument fails for many of the same reasons its discrimination claim fails. As discussed above, genuine disputes of material fact exist regarding the essential functions of Watchman work, the assignments available to Plaintiff, and Plaintiff's ability to perform those assignments with reasonable accommodation.

More importantly, the record contains evidence that accommodations were not merely proposed they were implemented. Grant Dep. 24:23-29:5; 41:14-42:6; Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. SSA excused Plaintiff from driving assignments, provided transportation assistance, assigned him to gangway and gate positions, and permitted him to continue working through December 2023. Plaintiff testified that he worked safely under those accommodations. SSUF No. 56. *Rorrer* further recognized that reasonable accommodation may include modification of existing responsibilities or reassignment to available work and rejected the employer's effort to terminate the accommodation inquiry by simply declaring disputed duties essential. *Id*. at 1047-49.

SSA now argues that Plaintiff's requested accommodations were unreasonable because they conflicted with the Watchmen's Agreement or eliminated essential functions. Yet SSA itself implemented those accommodations for months. At minimum, this creates a genuine dispute regarding whether the accommodations were effective, whether they were compatible with Watchman work, and whether they actually conflicted with the collective bargaining framework.

As there are genuine disputes existing regarding available assignments, essential functions, and the effectiveness of proposed accommodations, the record here presents factual questions that cannot be resolved as a matter of law. A reasonable jury could conclude that accommodations existed, were workable, and

LAW OFFICE OF
NANCYROSE
HERNANDEZ

enabled Plaintiff to continue performing available assignments. Accordingly, summary judgment on Plaintiff's failure-to-accommodate claim must be denied.

### F. Genuine Issues of Material Fact Exist Regarding Interactive Process Claim.

SSA argues that it satisfied its obligations by participating in accommodation discussions and obtaining medical reviews. The record permits a reasonable jury to conclude otherwise.

The interactive process requires "communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Both sides must exchange information, explore alternatives, and continue the process where additional accommodations remain under consideration. *Id*. at 1138. An employer cannot prevail on summary judgment where a genuine dispute exists regarding whether it participated in the process in good faith.

Here, Plaintiff repeatedly identified accommodations, supplied additional medical documentation, proposed assistive technologies, requested temporary accommodations, sought transportation modifications, requested reassignment to available assignments, and later sought Department of Rehabilitation involvement. Greene Dep. 15:14-15; 33:14-21; 39:2-25; 40:1-19.

Rather than narrowing the issues and identifying workable accommodations, the process expanded. Accommodation requests led to additional review. Additional medical documentation led to additional restrictions. Requests for accommodation led to additional committee proceedings. Plaintiff presented evidence that requests for updates frequently went unanswered, accommodations previously implemented were later withdrawn, and discussions increasingly focused on whether accommodations were permissible under the Watchmen's Agreement rather than whether accommodations would permit continued employment.

22

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The record further reflects disputes regarding the role of the JPWLRC process itself. Gratz testified that accommodations could not occur unless approved through the JPWLRC and PMA framework, repeatedly characterized accommodations as direct dealing, and took the position that accommodations affecting assignments could not occur outside that process. Gratz Dep. 47:11-49:11, 57:17-58:2, 93:1-94:15. A reasonable jury could conclude that the accommodation process became focused on committee approval and contractual concerns rather than identifying accommodations that would permit Plaintiff to continue working.

As disputes exist regarding whether requested accommodations were meaningfully discussed, whether alternatives were explored, and whether the process was pursued in good faith a reasonable jury could conclude that Defendants delayed, obstructed, narrowed, or prematurely terminated the interactive process and summary judgment must be denied.

**G. Genuine Issue of Material Fact Regarding Retaliation Claim.**

Plaintiff engaged in protected activity throughout the relevant period by requesting reasonable accommodations, opposing disability discrimination, seeking union representation, filing grievances, challenging accommodation denials, and repeatedly asserting rights under the ADA and FEHA. The record reflects that adverse actions followed those requests. Greene Dep. 15:1-15; 57:24-58:19; 174:16-175:5.

The Ninth Circuit takes an expansive view of adverse employment actions. "A wide array of disadvantageous changes in the workplace constitute adverse employment actions," and actions need not materially affect the terms and conditions of employment to be actionable. *Ray v. Henderson*, 217 F.3d 1234, 1240, 1242 (9th Cir. 2000). Rather, the relevant inquiry is whether the challenged conduct is reasonably likely to deter protected activity. *Id*. at 1243.

Viewed as a whole, the record reflects far more than a single employment decision.

23

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff was sent home after requesting accommodations, denied assignments, subjected to heightened scrutiny following disclosure of his disability, repeatedly required to justify accommodations that had already been approved, subjected to additional medical review, denied work opportunities after dispatching, returned to non-dispatch status, and ultimately excluded from work entirely. Plaintiff further presented evidence that accommodations implemented at one terminal became the subject of objections elsewhere and that accommodation requests were repeatedly redirected through additional layers of review rather than implemented.

The temporal relationship between Plaintiff's protected activity and the challenged actions further creates a triable issue regarding causation. Retaliation claims require but-for causation. *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014). However, courts routinely recognize that causation may be inferred where adverse actions closely follow protected activity. *Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015). Here, Plaintiff disclosed his disability and requested accommodations in April 2023. Within days, Plaintiff reported hostility regarding his disability, was denied assignments, was sent home after requesting accommodation for a shuttle-bus assignment, and was advised that accommodations were unavailable because of the nature of the work. As Plaintiff continued requesting accommodations, challenging accommodation denials, seeking representation, filing grievances, objecting to the handling of investigations, and asserting rights under the ADA and FEHA, the restrictions placed upon him increased rather than decreased.

The record also contains evidence from which a reasonable jury could conclude that Plaintiff's accommodation requests became increasingly controversial within the labor-relations framework. Gratz testified that members were upset by Plaintiff's accommodations, believed accommodations constituted improper direct dealing, and objected to Plaintiff receiving assignment

24

LAW OFFICE OF
NANCYROSE
HERNANDEZ

modifications that were unavailable to other Watchmen. Gratz Dep. 62:17-64:17. Plaintiff further presented evidence that accommodations previously implemented were later challenged, withdrawn, or subjected to additional approval requirements. A reasonable jury could conclude that Plaintiff's persistent efforts to secure accommodations and enforce disability rights contributed to the adverse actions that followed.

At minimum, genuine disputes exist regarding whether the challenged actions were motivated solely by legitimate safety concerns or whether Plaintiff's repeated requests for accommodation, grievances, and disability-related complaints were a but-for cause of at least some of the actions taken against him. Those issues are for a jury to decide and cannot be resolved on summary judgment.

### H. Genuine Issues of Material Fact Regarding Wrongful Termination Claim.

SSA's argument is entirely derivative of its arguments regarding Plaintiff's disability discrimination, failure-to-accommodate, failure-to-engage-in-the-interactive-process, and retaliation claims. Because genuine disputes of material fact preclude summary judgment on those underlying claims, summary judgment on Plaintiff's derivative wrongful termination claim likewise must be denied. See *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007). As discussed above, the record contains substantial disputes regarding the essential functions of Watchman work, the availability and effectiveness of accommodations, the adequacy of the interactive process, the role of the Watchmen's Agreement in accommodation decisions, and the reasons Plaintiff was ultimately excluded from work. Those disputes necessarily preclude summary judgment on Plaintiff's wrongful termination claim.

### I.  Genuine Issues of Material Fact Preclude Summary Adjudication of Punitive Damages.

25

LAW OFFICE OF
NANCYROSE
HERNANDEZ

SSA's request to eliminate punitive damages is premature. At the summary judgment stage, the Court's role is not to weigh evidence or determine whether Plaintiff ultimately will satisfy the clear-and-convincing standard at trial. Rather, the question is whether the record would permit a reasonable jury to find oppression, fraud, or malice.

Here, Plaintiff has presented evidence that accommodations were implemented and functioning, that accommodations were later challenged or withdrawn, that decisionmakers repeatedly characterized accommodations as impermissible direct dealing or contractual violations, that Plaintiff was repeatedly placed on and removed from no-dispatch status, and that accommodations were subjected to increasing restrictions despite repeated medical support and successful accommodated work. Plaintiff has further presented evidence that key participants in the process believed accommodations could not occur outside the JPWLRC framework and repeatedly opposed accommodations on contractual grounds. Whether Mr. Grant exercised sufficient discretionary authority to qualify as a managing agent presents a disputed issue of fact. The record reflects that he personally decided not to submit the October 3, 2023 employer complaint, directed SSA's accommodation efforts, instructed Field Security Officers concerning Plaintiff's dispatches, participated in the determination that Plaintiff could not continue working at SSA facilities, and signed the February 15, 2024 letter informing Plaintiff that SSA would no longer accept his dispatch. Grant Dep. 24:23-29:5; 118:18-121:8; 123:13-16; 124:6-125:13. From this evidence, a reasonable jury could conclude that Defendants acted with conscious disregard of Plaintiff's disability rights.

## V. CONCLUSION

For the foregoing reasons, Plaintiff has presented substantial evidence creating genuine disputes of material fact regarding the essential functions of Watchman work, Plaintiff's ability to perform available assignments with

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reasonable accommodation, the existence and effectiveness of accommodations, the adequacy of the interactive process, Defendants' stated reasons for excluding Plaintiff from work, retaliation, and pretext. As these disputes require credibility determinations, weighing of evidence, and resolution of competing factual inferences, they are properly reserved for a jury. Accordingly, Plaintiff respectfully requests that the Court deny SSA's Motion for Summary Judgment in its entirety.

Dated: June 25, 2026          LAW OFFICE OF NANCYROSE HERNANDEZ


By: /s/ Nancyrose Hernandez
Nancyrose Hernandez
Attorney for Plaintiff
ENOCH GREENE


### Local Rule 11-6.1 Certification

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,933 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
SSA'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ