NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff, ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01359-KK-CTSx<br><br>**PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, APM'S, MOTION FOR SUMMARY JUDGMENT**<br><br><u>Hearing on Summary Judgment</u><br><br>Date: Thursday July 16, 2026<br>Time: 9:30 a.m.<br>Place: Riverside, Courtroom<br>Honorable Kenly Kiya Kato<br>United States District Judge<br><br>Date Action Filed: June 2, 2025<br>FAC Filed: June 20, 2025<br>Trial Date: September 28, 2026 |

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Table of Contents

I.    FACTUAL BACKGROUND _____4

II.   ADMINISTRATIVE AND PROCEDURAL HISTORY _____12

III.  SUMMARY JUDGMENT LEGAL STANDARD _____13

  A.  Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact _____13

IV.  ARGUMENT_____14

  A.  APM Has Not Established as a Matter of Law What the Essential Functions of Watchman Work Are._____14

  B.  APM Has Not Established as a Matter of Law That Plaintiff Posed a Direct Threat. _____16

  C.  Genuine Issues of Material Fact Exist Regarding Pretext. _____19

  D.  APM is Not Entitled to Summary Judgment on Plaintiff's Disability Harassment Claim. _____21

  E.  APM is not Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim. _____22

  F.  Genuine Issues of Material Fact Exist Regarding Interactive Process Claim. _____24

  G.  Genuine Issue of Material Fact Regarding Retaliation Claim. _____26

  H.  Genuine Issues of Material Fact Regarding Wrongful Termination Claim. 28

  I.   Genuine Issues of Material Fact Preclude Summary Adjudication of Punitive Damages._____28

V.   CONCLUSION _____30

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

**Cases**

*Anderson*, 477 U.S...............................................................................................13, 18

*Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) .......................................13

*Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 991 (9th Cir. 2007)....................16

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ...............................................................................................................23

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) ...............................................................................................................19

*Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001) .........................14

*Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) .................24

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015)...27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ......13

*Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000)…………………………………………………………………………16

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).................................................................................................14, 19

*Rorrer v. City of Stow*................................................................................14, 18, 23

*Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) .........28

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) ..................13

**Statutes**

ADA ..................................................................................................................22, 26

FEHA…………………………………………………………………………….22, 26

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, ENOCH GREENE'S ("Plaintiff"), files this opposition against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), motion for summary judgment.

## I.  FACTUAL BACKGROUND

Plaintiff Enoch Greene is a Registered Watchman and member of International Longshore and Warehouse Union Local 26 ("Local 26"), who worked throughout the Ports of Los Angeles and Long Beach since approximately 2004 and became a Registered Watchman in 2013. Through the dispatch system established under the Watchmen's Agreement, Plaintiff performed assignments for Long Beach Container Terminal ("LBCT"), APM Terminals Pacific LLC ("APM"), SSA Terminals LLC ("SSA"), Total Terminals International LLC ("TTI"), and other Pacific Maritime Association ("PMA") employers. His duties included gate operations, identification verification, traffic monitoring, radio-room assignments, gangway duties, transportation functions, and other security-related work. At APM specifically, Watchmen performed identification-verification duties, visually inspected trip cards, controlled access to the facility, and worked from fixed watchman stations. Sulzbach Dep. 76:3-12; 77:1-9. The Watchmen's Agreement recognizes multiple classifications and terminal-specific assignments, including gangway watchmen, rover watchmen, traffic watchmen, relief watchmen, video-monitoring assignments, and other security-related functions. Grant Dep. 45:17-22; 177:20-24; Greene Dep. 97:21-98:22. The dispatch system itself operated through a common labor-relations framework involving PMA, Local 26, participating employers, and the Joint Port Watchmen's Labor Relations Committee ("JPWLRC"). As a result, decisions concerning dispatch eligibility,

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

accommodations, employer complaints, and labor-relations issues affected Plaintiff's ability to obtain work throughout the broader Watchman system rather than at any single terminal.

On April 15, 2023, Plaintiff disclosed that he suffered from primary open-angle glaucoma and significant vision impairment and submitted medical documentation from his treating ophthalmologist, Dr. Anne Coleman. Dr. Coleman did not conclude that Plaintiff was incapable of performing Watchman work. Coleman Dep. 54:15-20; 54:23-55:3. Rather, she identified accommodations and restrictions designed to permit continued employment, including magnification devices, enlarged displays, larger print materials, additional assistance with visual tasks, and restrictions involving oversized passenger vehicles and certain high-risk visual activities. Coleman Dep. 16:12-17:5; 17:6-18:9; 27:1-11; 42:19-43:6. Throughout 2023, Dr. Coleman consistently maintained that Plaintiff could continue working if provided appropriate accommodations.

Following disclosure of his condition, Plaintiff informed terminal supervisors of his restrictions and was reassigned. He successfully completed those assignments without incident. Greene Dep. 29:17-25; 29:1-16; Grant Dep. 127:1-11; 53:17-23. On April 29, 2023, Plaintiff formally notified PMA, Local 26, and the JPWLRC that he had already worked under reassignment following disclosure of his disability and requested accommodations that would permit him to continue performing Watchman duties. At that stage, the focus of the process was how Plaintiff could continue working rather than whether he could work at all.

On May 1, 2023, before either vehicle-related incident had occurred, Plaintiff reported that LBCT supervisors questioned his ability to work because of his vision, monitored his activities, discussed his medical condition, and stated that he should not be working on the waterfront because he was a liability. Plaintiff reported these concerns through labor-relations channels and requested investigation and review. On May 2, 2023, Plaintiff requested accommodation for

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

a shuttle-bus assignment and was instructed to leave the assignment after the request was denied. On May 8, 2023, Plaintiff submitted a detailed accommodation request that included restrictions involving passenger vans and buses, transportation assistance, magnification devices, enlarged print materials, computer-reader technology, accessible communications, identification-verification assistance, and other accommodations directed toward his visual limitations. Greene Dep. 15:14-15; 33:14-21. Two days later, Plaintiff was denied a work assignment.

On May 10, 2023, Plaintiff requested an accommodation from APM concerning shuttle-bus assignments. The following day, Plaintiff met with APM Labor Relations Director Steve Naumovski and Labor Relations Manager Matt Fresenius regarding that request. APM agreed that Plaintiff would not be assigned shuttle-bus duties while working at APM. Sulzbach Dep. 66:13-16; 92:6-13. Plaintiff thereafter continued accepting dispatches to APM through August 22, 2023, while the accommodation remained in place. Sulzbach Dep. 92:14-25. On June 12, 2023, Plaintiff was involved in a vehicle-related incident at LBCT while operating a pickup truck that collided with an Automated Guided Vehicle ("AGV"). LBCT later filed Employer Complaint EC-0008-2023 and placed Plaintiff on non-dispatch status.

On June 29, 2023, PMA responded to Plaintiff's accommodation request and proposed accommodations that included assistance reviewing written materials and providing documents in digital format. Plaintiff contends that those proposals did not meaningfully address the accommodations recommended by Dr. Coleman. Throughout the summer and fall of 2023, Plaintiff repeatedly requested accommodation updates, meeting minutes, investigative materials, grievance assistance, dispatch information, status updates, and clarification regarding what accommodations remained available. Plaintiff contends that many of these requests remained unanswered, were only partially addressed, or were redirected among

LAW OFFICE OF
NANCYROSE
HERNANDEZ

PMA, Local 26, participating employers, and the JPWLRC without producing definitive answers.

While Plaintiff continued supplying accommodation information, PMA initiated a separate medical-review process. On July 21, 2023, the JPWLRC notified Plaintiff that it was seeking review from an industry medical specialist concerning his accommodation request. Plaintiff objected and maintained that he had already supplied sufficient medical documentation through Dr. Coleman. Plaintiff further advised PMA and the Committee that he believed the requested examination and related inquiries conflicted with guidance issued under the Americans with Disabilities Act and Equal Employment Opportunity Commission regulations governing disability-related inquiries and medical examinations.

Nevertheless, PMA proceeded with additional review through Dr. James Deutsch. Discovery later revealed that PMA supplied Dr. Deutsch with Plaintiff's medical records and sought his opinion regarding accommodation eligibility. On August 10, 2023, Dr. Deutsch advised PMA that he required additional visual acuity information from Dr. Coleman. Dr. Coleman supplied that information on September 7, 2023. On September 20, 2023, Dr. Deutsch initially recommended restrictions that largely mirrored Dr. Coleman's recommendations, including restrictions involving driving, high-traffic areas, gangways, lighting conditions, and use of magnification devices. Grant Dep. 138:24-139:6; Coleman Dep. 32:17-33:15.

Following additional communications with PMA, however, Dr. Deutsch later issued a substantially broader report stating that Plaintiff could not perform duties involving peripheral vision, identification verification, visual inspections, or gangway work. This later report materially departed from both Dr. Coleman's recommendations and Dr. Deutsch's initial assessment. Defendants relied heavily on the Deutsch report in concluding that Plaintiff could not perform the essential

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

functions of Watchman work with or without accommodation. Grant Dep. 120:23-121:8.

The record simultaneously reflected materially different conclusions regarding Plaintiff's ability to work. Dr. Coleman repeatedly maintained that Plaintiff could continue working with accommodations. APM accommodated Plaintiff by exempting him from shuttle-bus assignments while continuing to dispatch him to work. Sulzbach admitted that Plaintiff was capable of performing his work during that period and testified that Plaintiff could perform identification-check duties because his accommodation request related only to buses and not to those duties. Sulzbach Dep. 38:25-39:4; 77:25-78:3.

Sulzbach further admitted that Plaintiff was capable of performing his work while accommodated. Sulzbach Dep. 38:25-39:4. On August 17, 2023, Plaintiff was involved in a separate off-duty vehicle incident involving his personal vehicle and a stationary vehicle belonging to an APM manager. Plaintiff contends that the incident involved minor damage, no injuries, and no citations. Although Plaintiff was initially permitted to continue working, APM later filed Employer Complaint EC-0018-2023 and placed Plaintiff on non-dispatch status. On August 25, 2023, Plaintiff requested that Union Representative Vince Ferrigno file grievances concerning disability discrimination, retaliation, harassment, denial of accommodation, and what Plaintiff viewed as double discipline arising from the same incident. Sulzbach later admitted that he was unaware of any other Local 26 member who had received an employer complaint arising from a parking-lot accident and testified that such incidents were not typically the subject of employer complaints. Sulzbach Dep. 42:10-12; 43:12-17.

The circumstances surrounding the APM complaint remain disputed. Sulzbach admitted that he did not view the accident video until the week before his deposition, had never seen photographs of the vehicles involved until his deposition, and had no personal knowledge whether Plaintiff was provided witness

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

statements, allowed to question witnesses, or provided the video during the complaint proceedings. Sulzbach Dep. 44:22-23; 78:23; 79:11-12; 124:6-12; 124:14-125:1; 125:12-16.

Even after the June and August incidents, accommodation discussions remained active. On September 18 and September 22, 2023, Plaintiff again requested temporary accommodations and accessible communications while the medical-review process remained pending. Beginning on October 7, 2023, Plaintiff worked under accommodations at SSA's Matson operation and continued performing assignments through December 26, 2023. Greene Dep. 35:11-25; 36:9-17; 37:19-20; 37:24-38:1; 199:2-6. Plaintiff points to this work as evidence that accommodation-based employment remained possible even after the incidents and while the Deutsch review process remained ongoing.

On October 23, 2023, Plaintiff was advised that he was again eligible for dispatch at LBCT. On October 30, 2023, Plaintiff reported for a properly dispatched assignment at LBCT but was turned away and denied the opportunity to work. On November 2, 2023, LBCT again placed Plaintiff on non-dispatch status. During the same period, Plaintiff continued pursuing grievance relief, dispatch eligibility, accommodations, and authorization to return to work.

The inconsistency between Plaintiff's reinstatement and subsequent exclusion became the subject of additional grievance activity. Following Plaintiff's reinstatement to dispatch eligibility effective October 23, 2023, Plaintiff reported for dispatched assignments but was denied work opportunities and later returned to non-dispatch status. Local 26 grievance materials acknowledged that Plaintiff was eligible to dispatch to LBCT while simultaneously disputing the denial of work opportunities following his reinstatement. Plaintiff contends that these events reflected continuing disagreement regarding what assignments he could perform, whether accommodations remained available, and whether Defendants had already

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reached conclusions regarding his ability to work notwithstanding accommodations that had previously been implemented.

In November 2023, LBCT acknowledged that it had accommodated Plaintiff through gangway assignments but later withdrew or refused those accommodations and relied on the June 12 incident as justification. Plaintiff continued working under accommodations at Matson until December 26, 2023. He remained on medical leave from December 28, 2023 through February 12, 2024. Upon his return, accommodations that had previously permitted him to continue working were no longer available. Plaintiff contends that previously granted accommodations were revoked and that he was effectively excluded from dispatch opportunities despite continuing requests for accommodation and reinstatement.

Throughout 2024, Plaintiff continued participating in the process. He submitted additional medical documentation, accommodation proposals, specialist evaluations, rehabilitation recommendations, and assistive technology requests. On or about November 16, 2024, Plaintiff submitted additional recommendations involving screen magnification, text-to-speech technology, optical character recognition tools, digital note-taking assistance, and professional note-taking support.

On December 10, 2024, Plaintiff appeared before the JPWLRC concerning his accommodation request. Plaintiff requested accommodations including screen magnification, text-to-speech functionality, voice-command features, digital note-taking, optical character recognition technology, and a professional note-taker. The Committee ultimately communicated the employers' determination that Plaintiff could not perform the essential functions of Watchman work with or without accommodation and that dispatch opportunities would no longer be available. Grant Dep. 118:18-121:8. Plaintiff objected and maintained that the determination was inconsistent with Dr. Coleman's recommendations, his successful performance

LAW OFFICE OF
NANCYROSE
HERNANDEZ

of accommodated assignments, and the accommodations that had previously been implemented. Coleman Dep. 54:15-20; 54:23-55:3.

In response, Gratz expressly stated that "the law does not permit ADA accommodations for security work" and further confirmed that granting accommodations would violate the Watchmen's Agreement. Gratz Dep. 177:22-178:3. She stated that there had been no accommodations or light-duty assignments granted during her tenure and that Watchmen unable to perform all duties could not be dispatched. Plaintiff contends that these statements reflected a categorical position regarding accommodations rather than an individualized assessment of available work, accommodations, or assignment-specific duties.

On January 20, 2025, Plaintiff renewed his accommodation request and sought involvement from the California Department of Rehabilitation ("DOR"), including a worksite assessment, assistive technology, transportation assistance, ergonomic evaluation, and low-vision accommodations. On January 29, 2025, Plaintiff supplied additional DOR documentation identifying resources that could facilitate continued employment. Plaintiff contends that these proposals were never meaningfully evaluated and that Defendants instead adhered to the conclusion already reached by the JPWLRC.

The chronology reflects a process that began with accommodation and ended with exclusion. Plaintiff disclosed his disability, worked under reassignment, continued working after disclosure, repeatedly supplied medical documentation, proposed accommodations, identified assistive technologies, worked under accommodations at multiple terminals, and sought continued employment. Plaintiff contends that accommodations were identified, proposed, discussed, implemented, and successfully utilized before gradually becoming unavailable as employer complaints, accident investigations, labor-relations concerns, dispatch restrictions, and medical-review conclusions increasingly dominated the process. At APM specifically, the accommodation was not merely

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

proposed but actually implemented. Plaintiff continued dispatching to APM while exempted from shuttle-bus duties, and APM's own PMK admitted that Plaintiff remained capable of performing his work during that period. Sulzbach Dep. 38:25-39:4; 66:8-18; 92:6-25. Plaintiff further contends that Defendants prematurely adopted conclusions regarding the essential functions of Watchman work, the flexibility of assignments, the availability of accommodations, and the impact of Plaintiff's disability, ultimately resulting in his exclusion from a dispatch system spanning multiple employers, multiple terminals, and a common labor-relations framework.

To date, the Employers refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## II. ADMINISTRATIVE AND PROCEDURAL HISTORY

Beginning in 2023, Plaintiff pursued accommodation requests, grievance procedures, labor-relations remedies, and administrative complaints arising from Defendants' handling of his disability, accommodation requests, dispatch eligibility, and continued employment as a Watchman.

Plaintiff filed administrative charges alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and related violations of federal and state law.

Throughout 2023, 2024, and 2025, Plaintiff continued seeking accommodations, challenging employer complaints, requesting reinstatement to dispatch eligibility, requesting records and meeting minutes, and pursuing review of decisions affecting his ability to continue working as a Watchman.

On June 20, 2025, Plaintiff filed the operative First Amended Complaint. The First Amended Complaint alleges that Defendants unlawfully denied accommodations, interfered with the interactive process, improperly excluded

Case No. 5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff from dispatch opportunities, and ultimately prevented him from continuing his employment because of his disability and accommodation requests.

Defendants filed motions for summary judgment challenging Plaintiff's claims. Defendants contend that Plaintiff could not perform the essential functions of the Watchman position with or without accommodation and that no triable issues of material fact exist. Plaintiff disputes those contentions and maintains that the record contains substantial evidence creating genuine disputes concerning the essential functions of Watchman work, the availability of accommodations, the adequacy of the interactive process, the significance of competing medical opinions, the role of Local 26 and the JPWLRC in accommodation decisions, and Plaintiff's ability to perform Watchman duties with reasonable accommodation.

## III. SUMMARY JUDGMENT LEGAL STANDARD
### A. Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

13

LAW OFFICE OF
NANCYROSE
HERNANDEZ

(1986). Contrary to Defendant's argument, Plaintiff has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

## IV.    ARGUMENT

### A. APM Has Not Established as a Matter of Law What the Essential Functions of Watchman Work Are.

APM's motion fails at the threshold because it assumes, rather than proves, what the essential functions of Watchman work are. Courts routinely reject attempts to define a position solely by reference to selected duties while ignoring actual workplace practice. In *Rorrer v. City of Stow*, the Sixth Circuit reversed summary judgment where the employer asserted that emergency vehicle driving was an essential function of firefighting, but evidence showed that firefighters routinely divided driving responsibilities, some firefighters never drove apparatus, and accommodations could have been implemented without eliminating the position itself. 743 F.3d 1025, 1043-45 (6th Cir. 2014). The Ninth Circuit has made clear that determining whether a particular duty is essential is a "highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). Although an employer's judgment and job descriptions may be considered, they are not dispositive. An employer "may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009). Where there is conflicting evidence regarding essential functions, a factual dispute exists that must be resolved by the jury. *Id.*

APM does not identify a single Watchman position. Instead, the record reflects multiple classifications, multiple assignments, terminal-specific duties, and multiple work locations. SSUF Nos. 1-6. APM's argument improperly assumes that

LAW OFFICE OF
NANCYROSE
HERNANDEZ

every duty listed throughout the Watchmen's Agreement is an essential function of every Watchman assignment at every terminal. The record demonstrates otherwise. Watchmen are dispatched to different terminals, assigned different posts, and reassigned throughout a shift based upon operational needs. SSUF Nos. 1-6.

Most significantly, APM's own PMK admitted that Plaintiff requested an accommodation limited to shuttle-bus assignments, that APM granted the accommodation, and that the accommodation remained in place through Plaintiff's final day working at APM. Sulzbach Dep. 66:8-18; 92:6-25. Sulzbach further admitted that Plaintiff was capable of performing his work while accommodated. Sulzbach Dep. 38:25-39:4.

Sulzbach also testified that Plaintiff could perform duties at the ID-check post because Plaintiff's accommodation request related only to buses and not to those duties. Sulzbach Dep. 77:25-78:3. APM's own evidence therefore demonstrates that Plaintiff was able to perform at least some Watchman assignments while exempted from shuttle-bus duties. A reasonable jury could conclude from this evidence that driving every vehicle, performing every assignment, and performing every terminal-specific duty are not essential functions of every Watchman assignment.

Dr. Coleman likewise concluded that Plaintiff could function safely and effectively at work if appropriate accommodations were implemented and repeatedly maintained that Plaintiff remained capable of performing Watchman duties with accommodation. Coleman Dep. 54:15-20; 54:23-55:3.

Here, there is conflict in the evidence regarding essential functions of the Watchman position. The essential functions of the Watchmen job duties include: Security Surveillance, Credential Verification, Radio Logs. The marginal functions of the Watchmen job duties include: Operating/Driving, Post Transit.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff has been employed as a Watchman, performing the essential functions of the job since 2004; therefore, has extensive knowledge and experience on what job duties a Watchman performs daily.

Plaintiff has raised a factual dispute from which a reasonable jury could conclude that the "the relevant 'position' is not the specific to driving but rather than the general category of a Watchman." *Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000).

Since the record contains competing evidence regarding the essential functions of available Watchman assignments, the significance of shuttle-bus duties, and Plaintiff's ability to perform available work with accommodation, APM cannot establish as a matter of law that Plaintiff was not a qualified individual.

### B. APM Has Not Established as a Matter of Law That Plaintiff Posed a Direct Threat.

APM's direct-threat argument rests on the same faulty premise as its essential-functions argument: that Plaintiff was required to perform every Watchman duty at every terminal, including unrestricted driving, in order to remain qualified for employment. SSA has not established that proposition as a matter of law.

The Ninth Circuit has held that "the burden of production lies with the employer to come forward with evidence of those essential functions." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007). Yet SSA simply assumes that driving every vehicle, performing every transportation assignment, and performing every terminal-specific duty were essential functions of every Watchman assignment. As discussed above, the record reflects multiple classifications, multiple assignments, terminal-specific duties, reassignment throughout shifts, and accommodations that were actually implemented in practice.

16

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Most importantly, APM's own PMK admitted that Plaintiff was capable of performing his work while dispatched to APM. Sulzbach Dep. 38:25-39:4. Sulzbach further admitted that APM accommodated Plaintiff by exempting him from shuttle-bus assignments and continued dispatching him to work through August 22, 2023. Sulzbach Dep. 66:8-18; 92:6-25. APM's direct-threat theory is difficult to reconcile with its own admission that Plaintiff remained capable of performing his work while accommodated.

Moreover, the significance of the June 2023 LBCT incident and August 2023 APM incident is itself disputed. Plaintiff challenged the conclusions reached, requested witness statements, video evidence, safety records, and investigative materials, and sought review through the Safety Committee process. Plaintiff further presented evidence questioning the adequacy of the investigations and the significance of the incident itself.

The record contains substantial evidence from which a reasonable jury could question the reliability of APM's investigation and subsequent conclusions. Sulzbach admitted that he did not view the accident video until the week before his deposition, had never seen photographs of the vehicles involved until his deposition, and had no personal knowledge whether Plaintiff was provided witness statements, permitted to question witnesses, or provided the accident video during the complaint proceedings. Sulzbach Dep. 44:22-23; 78:23; 79:11-12; 124:6-12; 124:14-125:1; 125:12-16.

APM's own conduct further undermines its direct-threat defense. After Plaintiff disclosed his disability and requested accommodations, APM granted those accommodations, continued assigning Plaintiff work, and allowed him to perform duties at APM facilities for more than three months. Sulzbach Dep. 66:8-18; 92:6-25. A reasonable jury could conclude that if Plaintiff posed the severe and unavoidable safety threat APM now describes, APM would not have

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

accommodated him, continued dispatching him, and permitted him to work throughout the summer of 2023.

The medical evidence is likewise disputed. Dr. Coleman repeatedly concluded that Plaintiff could continue working with accommodations and specifically clarified that her driving concerns related to oversized vehicles such as vans and buses, not all vehicle operation. SSUF Nos. 20-21. Plaintiff also identified numerous accommodations, assistive technologies, transportation modifications, and assignment restrictions that he contends would permit continued employment.

APM's own PMK further admitted that Plaintiff could perform duties at the ID-check post because Plaintiff's accommodation request related only to buses and not to those duties. Sulzbach Dep. 77:25-78:3. APM's identification-check stations required Watchmen to visually inspect credentials and grant access to terminal facilities. Sulzbach Dep. 76:3-12; 77:1-9. This testimony directly conflicts with APM's position that Plaintiff was incapable of safely performing available Watchman assignments.

*Rorrer* is particularly instructive because the employer relied upon a vision-related restriction involving emergency vehicle operation to argue that the plaintiff posed a safety risk and was therefore unqualified. The Sixth Circuit nevertheless found triable issues of fact because the plaintiff produced evidence regarding accommodations, actual workplace practices, and the disputed significance of the driving function. *Id.* at 1043-47.

At summary judgment, the Court may not weigh competing medical opinions, resolve factual disputes regarding the accidents, or choose between competing inferences arising from the evidence. *Anderson*, 477 U.S. at 248. Because genuine disputes exist regarding the causes and significance of the incidents, the effectiveness of accommodations, and Plaintiff's ability to safely

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

perform available assignments, APM has not established a direct-threat defense as a matter of law.

### C. Genuine Issues of Material Fact Exist Regarding Pretext.

APM's proffered explanation depends on three disputed premises: (1) that driving shuttle buses and vehicles is an essential function of every Watchman assignment; (2) that Plaintiff could not safely perform available assignments with accommodation; and (3) that the August 2023 parking-lot incident justified Plaintiff's removal from APM dispatch opportunities.

The record contains substantial evidence creating triable issues as to each premise. As discussed above, APM has not established that driving a shuttle bus is an essential function of every Watchman assignment at every terminal. The Ninth Circuit has repeatedly rejected efforts to define a position solely by reference to selected duties while ignoring the broader position and available assignments. See *Cripe*, 261 F.3d at 889; *Rohr*, 555 F.3d at 864. To defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered non-retaliatory reason for the adverse action is unworthy of credence; or (2) retaliation was the more likely motivation." *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014).

Most importantly, APM's own PMK admitted that Plaintiff was capable of performing his work while dispatched to APM. Sulzbach Dep. 38:25-39:4. Sulzbach further admitted that APM granted Plaintiff's request not to drive shuttle buses, maintained that accommodation through August 22, 2023, and continued dispatching Plaintiff to work while the accommodation remained in place. Sulzbach Dep. 66:8-18; 92:6-25. A reasonable jury could conclude that APM's contemporaneous treatment of Plaintiff is inconsistent with the categorical position advanced in this litigation.

The circumstances surrounding the August 2023 parking-lot incident likewise create substantial factual disputes. Plaintiff testified that he had already

LAW OFFICE OF
NANCYROSE
HERNANDEZ

been relieved from duty, was off duty, and was operating his personal vehicle in the employee parking lot at the time of the incident. Greene Dep. 31:1-3; 32:1-22. Plaintiff further testified that he was initially informed that the matter was resolved and that he could return to work. Greene Dep. 31:24-32:16; 35:7-15.

APM's own PMK admitted that he was not aware of any other Local 26 member who had received an employer complaint arising from a parking-lot accident and testified that such incidents were not typically the subject of employer complaints. Sulzbach Dep. 42:10-12; 43:12-17. A reasonable jury could view this evidence as supporting an inference of selective enforcement and pretext.

The record also contains evidence calling into question the thoroughness and reliability of APM's investigation. Sulzbach admitted that he did not view the accident video until the week before his deposition, had never seen photographs of the vehicles involved until his deposition, and had no personal knowledge whether Plaintiff was provided witness statements, permitted to question witnesses, or provided the accident video during the complaint proceedings. Sulzbach Dep. 44:22-23; 78:23; 79:11-12; 124:6-12; 124:14-125:1; 125:12-16.

Moreover, Plaintiff remained unable to dispatch to APM long after the August 2023 incident, not because APM determined that accommodations were impossible, but because APM and Local 26 had not agreed upon a penalty. Sulzbach Dep. 73:24-74:18. A reasonable jury could conclude that the accommodation process effectively ended for reasons unrelated to Plaintiff's ability to perform available work.

The medical evidence is likewise disputed. Dr. Coleman repeatedly concluded that Plaintiff could continue working with accommodations and specifically clarified that her driving concerns related to oversized vehicles such as vans and buses, not all vehicle operation. SSUF Nos. 13, 25. Plaintiff also identified numerous accommodations, assistive technologies, transportation

20

LAW OFFICE OF
NANCYROSE
HERNANDEZ

modifications, and assignment restrictions that he contends would permit continued employment.

The record therefore contains competing medical opinions, evidence of successful accommodated work, disputes regarding essential functions, evidence of selective enforcement, and evidence calling into question the adequacy of APM's investigation and decision-making process. A reasonable jury could find APM's explanation unworthy of credence. Summary judgment therefore must be denied.

### D. APM is Not Entitled to Summary Judgment on Plaintiff's Disability Harassment Claim.

APM attempts to isolate individual incidents and individual actors. Viewed as a whole, however, the record permits a very different inference. Following disclosure of his disability and requests for accommodation, Plaintiff encountered a recurring pattern of scrutiny, questioning, investigation, and adverse treatment connected to his disability and accommodation requests. Plaintiff testified that information concerning his disability and accidents was discussed with others, that his accommodation requests became the subject of ongoing review, and that he was subjected to conduct that he believed questioned his ability to perform his work because of his disability.

The record further reflects evidence from which a jury could conclude that Plaintiff's complaints regarding harassment were not meaningfully investigated. APM's own PMK admitted that APM never spoke directly with Plaintiff regarding his complaints that information about him was being shared with coworkers and that false or misleading information concerning him was being disseminated in the workplace. Sulzbach Dep. 50:6-23. Sulzbach further admitted that APM conducted no meaningful investigation and nevertheless concluded that Plaintiff's allegations lacked merit. Sulzbach Dep. 53:1-24; 55:5-6.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff also testified that Charles Gray told him he had a "history of getting in accidents" during discussions surrounding the August 2023 parking-lot incident. Greene Dep. 125:20-126:17. A reasonable jury could view that comment, together with the subsequent complaint process and non-dispatch decision, as evidence of hostility toward Plaintiff's disability and accommodation requests.

The record further reflects that Plaintiff complained about information concerning him being posted on bulletin boards and disseminated within the workplace. Although APM later directed that the postings be removed, APM's own PMK admitted that APM never meaningfully investigated Plaintiff's complaints regarding the dissemination of information about him. Sulzbach Dep. 50:6-23; 53:1-24; 55:5-6. A reasonable jury could also conclude that APM relied upon the accounts of management personnel without meaningfully considering Plaintiff's version of events. Sulzbach admitted that APM concluded Plaintiff's complaints lacked merit after discussions with Charles Gray and without speaking directly to Plaintiff. Sulzbach Dep. 50:6-23; 53:1-24.

At minimum, the record permits competing inferences regarding the nature of the challenged conduct, the adequacy of APM's response to Plaintiff's complaints, the significance of the August 2023 interactions, and whether Plaintiff was subjected to disability-based hostility after asserting his rights under the ADA and FEHA. Those issues are for a jury to decide.

### E. APM is not Entitled to Summary Judgment on Plaintiff's Failure to Accommodate Claim.

APM's failure-to-accommodate argument fails for many of the same reasons its discrimination claim fails. As discussed above, genuine disputes of material fact exist regarding the essential functions of Watchman work, the assignments available to Plaintiff, and Plaintiff's ability to perform those assignments with reasonable accommodation.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

More importantly, the record contains evidence that accommodations were not merely proposed they were implemented. Grant Dep. 24:23-29:5; 41:14-42:6; Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. APM's own PMK admitted that Plaintiff requested an accommodation exempting him from shuttle-bus assignments, that APM granted the accommodation, and that the accommodation remained in place through Plaintiff's final day working at APM. Sulzbach Dep. 66:8-18; 92:6-25. Sulzbach further admitted that Plaintiff continued accepting dispatches to APM while accommodated and that Plaintiff was capable of performing his work during that period. Sulzbach Dep. 38:25-39:4; 92:14-25. *Rorrer* further recognized that reasonable accommodation may include modification of existing responsibilities or reassignment to available work and rejected the employer's effort to terminate the accommodation inquiry by simply declaring disputed duties essential. *Id*. at 1047-49.

APM now argues that Plaintiff's requested accommodation was unreasonable because it eliminated essential functions or conflicted with the collective bargaining agreement. Yet APM itself implemented the accommodation, continued dispatching Plaintiff to work under that accommodation, and maintained the accommodation for more than three months. At a minimum, this creates a genuine dispute regarding whether the accommodation was effective, whether it was compatible with Watchman work, and whether it actually conflicted with the collective bargaining framework.

Moreover, Plaintiff's inability to continue dispatching to APM arose after the August 2023 parking-lot incident and resulting nondispatch status, not because the accommodation proved ineffective. Sulzbach admitted that Plaintiff remained unable to dispatch to APM because APM and Local 26 had not agreed upon a penalty, not because APM determined that accommodations were unavailable or unsuccessful. Sulzbach Dep. 73:24-74:18.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

As there are genuine disputes regarding available assignments, essential functions, the effectiveness of accommodations, and Plaintiff's ability to perform available work with accommodation, the record presents factual questions that cannot be resolved as a matter of law. A reasonable jury could conclude that accommodations existed, were workable, and enabled Plaintiff to continue performing available assignments. Accordingly, summary judgment on Plaintiff's failure-to-accommodate claim must be denied.

### F. Genuine Issues of Material Fact Exist Regarding Interactive Process Claim.

APM argues that it satisfied its obligations by participating in accommodation discussions and conducting a single interactive-process meeting. The record permits a reasonable jury to conclude otherwise.

The interactive process requires "communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Both sides must exchange information, explore alternatives, and continue the process where additional accommodations remain under consideration. *Id*. at 1138. An employer cannot prevail on summary judgment where a genuine dispute exists regarding whether it participated in the process in good faith.

Here, Plaintiff repeatedly identified accommodations, supplied additional medical documentation, proposed assistive technologies, requested temporary accommodations, sought transportation modifications, requested reassignment to available assignments, and later sought Department of Rehabilitation involvement. Greene Dep. 15:14-15; 33:14-21; 39:2-25; 40:1-19.

Although APM ultimately granted Plaintiff's request not to drive shuttle buses, APM's own PMK admitted that he could identify only a single direct interactive-process meeting between APM and Plaintiff. Sulzbach Dep. 67:4-7. A

24

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reasonable jury could conclude that APM's obligations did not end after one meeting and one temporary accommodation.

Rather than narrowing the issues and identifying permanent solutions, the process expanded. Additional medical documentation led to additional review which then led to additional restrictions. Plaintiff presented evidence that accommodations previously implemented were later withdrawn and that discussions increasingly focused on whether Plaintiff could continue working at all rather than on identifying available accommodations.

The record further reflects that the accommodation was successful while it remained in place. APM's own PMK admitted that Plaintiff was capable of performing his work while accommodated. Sulzbach Dep. 38:25-39:4. Sulzbach further testified that Plaintiff could perform duties at the ID-check post because Plaintiff's accommodation request related only to buses and not to those duties. Sulzbach Dep. 77:25-78:3. A reasonable jury could conclude that the existence of a successful accommodation required continued exploration of whether additional or permanent accommodations remained available.

Finally, the record reflects that Plaintiff's inability to continue dispatching to APM arose after the August 2023 parking-lot incident and resulting nondispatch status, not because the accommodation proved ineffective. Sulzbach admitted that Plaintiff remained unable to dispatch because APM and Local 26 had not agreed upon a penalty, not because accommodations had failed. Sulzbach Dep. 73:24-74:18. A reasonable jury could conclude that the accommodation process was effectively terminated for reasons unrelated to Plaintiff's ability to perform available work.

As disputes exist regarding whether requested accommodations were meaningfully discussed, whether alternatives were explored, and whether the process was pursued in good faith a reasonable jury could conclude that

25

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Defendants delayed, obstructed, narrowed, or prematurely terminated the interactive process and summary judgment must be denied.

### G. Genuine Issue of Material Fact Regarding Retaliation Claim.

Plaintiff engaged in protected activity throughout the relevant period by requesting reasonable accommodations, opposing disability discrimination, seeking union representation, filing grievances, challenging accommodation denials, and repeatedly asserting rights under the ADA and FEHA. The record reflects that adverse actions followed those requests. Greene Dep. 15:1-15; 57:24-58:19; 174:16-175:5. Viewed as a whole, the record reflects far more than a single employment decision.

Plaintiff requested accommodations from APM in May 2023, participated in the interactive process, and obtained an accommodation exempting him from shuttle-bus assignments. APM's own PMK admitted that the accommodation remained in place through August 22, 2023 and that Plaintiff was capable of performing his work while accommodated. Sulzbach Dep. 38:25-39:4; 66:8-18; 92:6-25.

Despite the success of the accommodation, Plaintiff was later subjected to an employer complaint and nondispatch status following an off-duty parking-lot incident involving personal vehicles. Plaintiff testified that he had already been relieved from duty, was off duty, and was operating his personal vehicle at the time of the incident. Greene Dep. 31:1-3; 32:1-22. Plaintiff further testified that he was initially informed that the matter was resolved and that he could return to work. Greene Dep. 31:24-32:16; 35:7-15.

The temporal relationship between Plaintiff's protected activity and the challenged actions further creates a triable issue regarding causation. Retaliation claims require but-for causation. *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014). However, courts routinely recognize that causation may be inferred where adverse actions closely follow protected activity.

26

LAW OFFICE OF
NANCYROSE
HERNANDEZ

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015). Here, Plaintiff requested accommodations directly from APM on May 10, 2023, participated in the interactive process on May 11, 2023, and continued working under accommodation thereafter. As Plaintiff continued requesting accommodations and asserting disability-related rights, he was subjected to additional review, additional medical scrutiny, employer-complaint proceedings and ultimately nondispatch status and blacklisting. A reasonable jury could conclude that the adverse actions followed, rather than preceded, Plaintiff's protected activity.

The record also contains evidence of selective enforcement. Sulzbach admitted that he was not aware of any other Local 26 member who had received an employer complaint arising from an off-duty parking lot accident and testified that such incidents were not typically the subject of employer complaints. Sulzbach Dep. 42:10-12; 43:12-17. A reasonable jury could conclude that Plaintiff's was treated differently from other employees because of his persistent efforts to secure accommodations and enforce disability rights contributed to the adverse actions that followed.

The record further contains evidence calling into question the legitimacy of APM's stated reasons. Sulzbach admitted that he did not view the accident video until the week before his deposition, had never seen photographs of the vehicles involved until his deposition, and had no personal knowledge whether Plaintiff was provided witness statements, permitted to question witnesses, or provided the video during the complaint proceedings. Sulzbach Dep. 44:22-23; 78:23; 79:11-12; 124:6-12; 124:14-125:1; 125:12-16. A reasonable jury could view these deficiencies as evidence that the stated rationale for Plaintiff's continued exclusion is unworthy of credence.

Finally, Plaintiff remained unable to dispatch to APM long after the August 2023 incident because APM and Local 26 had not agreed upon a penalty. Sulzbach

27

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Dep. 73:24-74:18. A reasonable jury could conclude that the continuation of Plaintiff's exclusion was not driven solely by legitimate safety concerns.

At minimum, genuine disputes exist regarding whether the challenged actions were motivated solely by legitimate safety concerns or whether Plaintiff's repeated requests for accommodation, grievances, and disability-related complaints were a but-for cause of at least some of the actions taken against him. Those issues are for a jury to decide and cannot be resolved on summary judgment.

**H. Genuine Issues of Material Fact Regarding Wrongful Termination Claim.**

APM's argument is entirely derivative of its arguments regarding Plaintiff's disability discrimination, failure-to-accommodate, failure-to-engage-in-the-interactive-process, and retaliation claims. Because genuine disputes of material fact preclude summary judgment on those underlying claims, summary judgment on Plaintiff's derivative wrongful termination claim likewise must be denied. See *Sneddon v. ABF Freight Sys*., 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007). As discussed above, the record contains substantial disputes regarding the essential functions of Watchman work, the availability and effectiveness of accommodations, the adequacy of the interactive process, the legitimacy of APM's investigation, and the reasons Plaintiff was ultimately excluded from APM dispatch opportunities.

A reasonable jury could conclude that Plaintiff's later exclusion from APM dispatch opportunities was not the result of an inability to perform available work but Those disputes preclude summary judgment on Plaintiff's wrongful termination claim and are matters for a jury to decide.

**I. Genuine Issues of Material Fact Preclude Summary Adjudication of Punitive Damages.**

APM's request to eliminate punitive damages is premature. At the summary judgment stage, the Court's role is not to weigh evidence or determine whether

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff ultimately will satisfy the clear-and-convincing standard at trial. Rather, the question is whether the record would permit a reasonable jury to find oppression, fraud, or malice.

Here, Plaintiff has presented evidence that accommodations were implemented and functioning, that he successfully worked under those accommodations, and that they were subsequently withdrawn and he was excluded from APM dispatch opportunities despite APM's admission that he was capable of performing his work while accommodated. Sulzbach Dep. 38:25-39:4; 66:8-18; 92:6-25.

T The record further contains evidence from which a reasonable jury could conclude that APM disregarded Plaintiff's complaints and accommodation requests. Sulzbach admitted that APM never spoke directly with Plaintiff regarding his complaints that information concerning him was being shared in the workplace, conducted no meaningful investigation into those complaints, and nevertheless concluded that Plaintiff's allegations lacked merit. Sulzbach Dep. 50:6-23; 53:1-24; 55:5-6.

Whether Steve Naumovski exercised sufficient discretionary authority to qualify as a managing agent presents a disputed issue of fact. The record reflects that Naumovski served as APM's Director of Labor Relations, reported directly to Sulzbach, personally participated in Plaintiff's interactive-process meeting, approved Plaintiff's accommodation, participated in investigations concerning Plaintiff's complaints, represented APM in labor-relations proceedings, and exercised authority concerning matters affecting Plaintiff's ability to continue working. Greene Dep. 207:10-208:8; Sulzbach Dep. 50:6-23; 53:1-24; 66:8-18.

From this evidence, a reasonable jury could conclude that APM's decisionmakers acted with conscious disregard of Plaintiff's disability rights and that punitive damages should remain available for determination by the trier of

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

fact. Accordingly, summary adjudication of Plaintiff's punitive-damages request should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff has presented substantial evidence creating genuine disputes of material fact regarding the essential functions of Watchman work, Plaintiff's ability to perform available assignments with reasonable accommodation, the existence and effectiveness of accommodations, the adequacy of the interactive process, Defendants' stated reasons for excluding Plaintiff from work, retaliation, and pretext. As these disputes require credibility determinations, weighing of evidence, and resolution of competing factual inferences, they are properly reserved for a jury. Accordingly, Plaintiff respectfully requests that the Court deny APM's Motion for Summary Judgment or Partial Summary Judgment in the alternative in its entirety.

Dated: June 25, 2026                    LAW OFFICE OF NANCYROSE HERNANDEZ


By: /s/ Nancyrose Hernandez
    Nancyrose Hernandez
    Attorney for Plaintiff
    ENOCH GREENE

### Local Rule 11-6.1 Certification

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
APM'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ