NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 5:25-cv-01359-KK-CTSx <br><br> **PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, LBCT LLC, MOTION FOR SUMMARY JUDGMENT** <br><br> <u>Hearing on Summary Judgment</u> <br><br> Date: Thursday July 16, 2026 <br> Time: 9:30 a.m. <br> Place: Riverside, Courtroom 3 <br> Honorable Kenly Kiya Kato <br> United States District Judge <br><br> Date Action Filed: June 2, 2025 <br> FAC Filed: June 20, 2025 <br> Trial Date: September 28, 2026 |

LAW OFFICE OF
NANCYROSE
HERNANDEZ

**Table of Contents**

I.    INTRODUCTION _____6

II.    STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS_____ 7

III.    SUMMARY JUDGMENT LEGAL STANDARD_____12

A.    Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact_____12

IV.    PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION_____12

A.    Plaintiff Is A Qualified Individual With A Disability Because He Can Perform The Essential Functions Of A Watchman_____13

   1.    Driving Is A Marginal Function Of A Watchman_____13

   2.    Plaintiff Can and Did Perform the Essential Functions Of A Watchman For Nearly Twenty-Two Years_____14

B.    Plaintiff Does Not Pose A Direct Threat_____ 15

C.    LBCT Did Not Have Legitimate, Non-Discriminatory Reasons For Determining That Plaintiff Could Not Perform His Essential Functions And Plaintiff Has Evidence of Pretext___16

D.    Plaintiff Has Evidence Of Pretext_____17

V.    PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY-BASED HARASSMENT _____ 19

VI.    PLAINTIFF PROPERLY STATES A CLAIM FOR FAILURE TO ACCOMMODATE _____ 20

VII.    PLAINTIFF PROPERLY STATES A CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS_____ 23

VIII.    PLAINTIFF PROPERLY STATES A CLAIM FOR RETALIATION_____25

LAW OFFICE OF
NANCYROSE
HERNANDEZ

IX.    PLAINTIFF PROPERLY STATES A CLAIM FOR WRONGFUL TERMINATION  IN VIOLATION OF PUBLIC POLICY_____ 26

X.    PLAINTIFF PROPERLY STATES A CLAIM FOR PUNITIVE DAMAGES_____27

XI.    CONCLUSION _____ 28

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)..........................................................12

*Anthony v. Trax Int'l Corp.,* 955 F.3d 1123, 1134 (9th Cir. 2020)…………………………………23

*Arline,* 480 U.S. at 287 n.17 ......................................................................................................21

*Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000)…………………………………..23

*Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 991 (9th Cir. 2007)...........................................13

*Brooks v. Capistrano Unified Sch. Dist.,* 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014)…………..25

*Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir. 1993) ................................................21

*Cripe v. City of San Jose,* 261 F.3d 877, 888 n.12 (9th Cir. 2001) ..............................................13

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1)...........19

*Hellman v. Weisberg,* 360 F. App'x 776, 778 (9th Cir. 2009) ……………………………………..25

*Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001)…………………………..23

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ..........................................................18

*Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000)..................14

*Morton v. United Parcel Serv., Inc.,* 272 F.3d 1249, 1252, 54–56 (9th Cir. 2001).......................14

*Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000)…………………………………………...25

*Rohr v. Salt River Project Agric. Improvement & Power Dist.,* 555 F.3d 850, 864 (9th Cir. 2009)
 .................................................................................................................................................13

*School Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 287 n.17 (1987)..........................................13

*Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018)…………………………….23

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330]…………………………………………………………………………………………..27

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) .......................................12

*US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002)…………………………………………….23

*U.S. Airways, Inc. v. Barnett* (2002) 535 U.S. 391, 400–402........................................................21

*Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015)………………………….25

*Zivkovic v. So. Cal. Edison Co.,*302 F.3d at 1089 .......................................................................23

*Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1047 (9th Cir. 1999) .......................................21

Statutes

ADA................................................................................................................................................12

FEHA…………………………………………………………………………………………….19

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, ENOCH GREENE'S ("Plaintiff"), claims against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), include disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA), retaliation, and wrongful termination in violation of public policy.

Plaintiff is a Registered Watchman and member of Local 26, employed at various terminals within the Ports of Los Angeles and Long Beach. Plaintiff has maintained his position of employment since August 2004. Plaintiff became a Registered Watchman in February 2013. Throughout his nearly twenty-two years of employment with the Employers, Plaintiff successfully completed the **essential job functions** of property and cargo preservation, access control and identification verification, security incident logging and reporting, and emergency communication and sentry monitoring.

Plaintiff was diagnosed with primary open angle glaucoma (POAG) of both eyes. Plaintiff is a qualified individual with physical disabilities and can perform the essential functions of his job with reasonable accommodations.

Plaintiff alleges that, beginning in or about April 2023, he notified his employer(s) and union representatives of a qualifying disability and formally requested reasonable accommodations to continue performing his job duties.

After submitting his medical note and requesting reasonable accommodation, Plaintiff successfully performed the job duties of a Watchman without issue until December 26, 2023, which was his final date of working at any terminal.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

On October 7, 2023, SSA granted Plaintiff accommodation, and Plaintiff worked at that terminal, performing the essential functions of his job with reasonable accommodation until December 26, 2023. On December 10, 2023, all terminal Employers determined that Plaintiff could not perform the essential functions of his job with or without reasonable accommodation, placing Plaintiff on non-dispatch status indefinitely.

In November 2023, LBCT admitted that it accommodated Plaintiff by allowing him to work in the gangway; however, LBCT then provided a pretextual reason for withdrawing his accommodation by using a minor accident that Plaintiff was involved in, five months prior. Plaintiff argues LBCT and Local 26 failed to impartially investigate this accident. LBCT falsely asserts Plaintiff "crashed the pickup truck he was driving head on into a stationary AGV, with flashing lights, in a well-lit area." Plaintiff alleges, the AGV was moving in violation of regulations without an escort as required, there were no reflective lights, it was not well lit, and in fact, was foggy and dark. This is substantiated by Elected Union Steward and Safety Committee Member, Tiyuana Blair. LBCT admits that an investigation was not initiated the night of the incident. Further, despite operating in a dangerous, noncompliant manner, the AGV operator was not disciplined, demonstrating Plaintiff was subjected to disparate treatment (DMF 29-34).

To date, the Employers refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## II.    STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Article 25 of the Collective Bargaining Agreement (CBA) for ILWU Local 26, identifies the four signatory Employers in all labor matters with ILWU Local 26: LBCT, APM, TTI, SSA (Greene Decl., ¶61, Ex.O). Plaintiff became a Registered Watchman in February 2013, working under the CBA between ILWU and the PMA (Greene Decl., ¶ 7). This registration entitles Plaintiff to receive dispatches

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

from any of the four PMA-represented Employers, including: TTI, SSA, APM, and LBCT (Collectively "Employers") (Greene Decl., ¶ 8). Each of these Employers simultaneously employs Watchmen under the joint dispatch hall system, and they collectively provide ILWU Members with employment benefits. Throughout his employment with the Employers, Plaintiff successfully completed the job duties of checking IDs, monitoring and processing big rig trucks in and out of the terminals, checking labor workers, transporting individuals, and maintaining safety in the various terminals (Greene Decl., ¶ 21).

CBA Article 2, Section C explicitly defines a Gangway Watchman as a person "employed at the gangway of a ship to control the boarding of persons and for the protection of property against loss by theft or other cause as directed by the Employer." This job is performing required access control identification checks for all individuals seeking entry to or egress from the vessel. This task is executed statically at the foot of the vessel (Greene Decl., ¶ 9).

Article 1, Section G dictates that when monitoring is required of persons or property for security purposes, it is the exclusive jurisdiction of the union. This job is serving as a fixed-point visual deterrent at the base of the gangway structure to detect and prevent unauthorized perimeter breaches, transients, or stowaways. The gangway functions as a fixed, non-moving security boundary requiring a constant stationary guard presence (Greene Decl., ¶ 10).

Article 20, Section W(2) explicitly mandates that "Gangway watchmen shall be stationed on the vessel at the top of the gangway or at the bottom of the gangway out of harms way, and shall be provided a chair." This job is maintaining a fixed position out of line of active terminal yard traffic or overhead crane swings to oversee the safe passage of shipboard personnel (Greene Decl., ¶ 11).

Article 20, Sections A and H mandate that the Employer must provide a working communication device (two-way radio or cellular phone) kept in good working order. This job is maintaining continuous radio communication with

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

terminal management, shift sergeants, and vessel crew via a designated facility emergency radio channel. Preparing and maintaining daily security logs, vessel operational logs, and reporting safety or security incidents (e.g., HAZMAT spills, accidents, broken seals). This logging is performed entirely from a fixed seating platform inside the designated stationary post (Greene Decl., ¶ 12).

Article 20, Section W(4) states: "The Employers shall provide gangway watchmen a truck when positioned on the dock." The contract's choice of syntax: it requires the employer to provide a truck, not for the watchman to drive a truck. The vehicle is contractually mandated as a piece of safety equipment serving purely as a mobile guard shack, observation platform, and climate-controlled enclosure protected from terminal traffic and adverse weather. The vehicle remains entirely stationary for the duration of the watch shift while the essential duty of observation is performed (Greene Decl., ¶ 13).

CBA "M" Language Addendums for list ancillary tasks such as picking up or delivering mail/PMA payroll, connecting shipside telephones, inventorying terminal lights, and scanning gate passes. These functions are explicitly defined as "additional duties" or tasks that "include, but are not limited to". The mere presence of a logistical task within an auxiliary job description text does not automatically transform it into an un-restructurable essential function. These secondary tasks occupy less than 5% of a standard gangway shift and can easily be shared or reallocated without eroding terminal security operations (Greene Decl., ¶ 14).

Essential functions of the Watchmen job duties include: Security Surveillance, Credential Verification, Radio Logs (Greene Decl., ¶ 16). Marginal functions of the Watchmen job duties include: Operating/Driving, Post Transit (Greene Decl., ¶ 17).

On April 15, 2023, Plaintiff's medical provider from the University of California, Los Angeles, Department of Ophthalmology, Anne L. Coleman, MD,

LAW OFFICE OF
NANCYROSE
HERNANDEZ

PHD, substantiated Plaintiff's diagnosis of a disability and recommended Plaintiff be provided with reasonable accommodation (DMF 37-44).

On July 21, 2023, the Committee sent a notice to Plaintiff, requesting an opinion from its medical specialist concerning Plaintiff's request for reasonable accommodation, and unilaterally scheduled an appointment with their selected medical provider on August 1, 2023. Plaintiff refused to see this medical specialist because he was not an Ophthalmologist, nor was he familiar with Plaintiff's medical condition, and most importantly, Plaintiff had already submitted medical notes from his treating Ophthalmologist (DMF 37-44).

On July 22, 2023, Plaintiff wrote a correspondence to PMA indicating that the request to participate in Special Medical Examination/Opinion by the Committee's choice of doctor was a violation of the ADA (DMF 37-44).

Without Plaintiff's written consent, PMA sent Dr. Deutsch Plaintiff's medical notes, and Dr. Deutsch performed an examination (DMF 37-44).

Plaintiff discovered that on September 20, 2023, Dr. Deutsch wrote to PMA, Mr. Williams: "Based on the letter from Mr. Greene's treating physician, I would recommend the following restrictions. 'No driving in areas where lack of peripheral vision endangers Mr. Greene or others. No working in high traffic areas. No climbing ladders or gangways. Work only in areas that are well lit. Use magnifier as needed'" These initial restrictions that Dr. Deutsch provided mirrored the recommendation from Dr. Coleman. (DMF 22, 24, 37-46).

Under Article 20 (N) of the CBA, any employee who identifies an operational safety boundary must report it immediately. Plaintiff complied with this rule. Because watchman posts are structurally isolated shift-by-shift under Article 3, Section C, LBCT possessed the direct administrative capacity to assign Plaintiff strictly to station-bound, indoor identification verification desks or console rooms. (DMF 25-27)

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff was involved in a minor accident at the LBCT terminal on June 12, 2023. Plaintiff requested a fair investigation by the authorized Safety Committee pursuant to his CBA rights as a Watchmen. Both LBCT and ILWU intentionally prevented the Safety Committee personnel from investigating the accident. The LBCT PMK admitted that Gratz directed LBCT to refuse access to the Safety Committee representative, Ms. Blair, inhibiting her ability to investigate the accident, as required under the CBA. LBCT submitted an Employer Complaint against Plaintiff, and Plaintiff was then placed on non-dispatch. He was reinstated for dispatch on October 23, 2023. Plaintiff properly dispatched to work at LBCT after the Complaint was resolved; however, upon arriving at the terminal to work, he was denied work in violation of the CBA. LBCT then placed Plaintiff back on non-dispatch on November 2, 2023, indefinitely. This Employer Complaint did not involve a performance issue or accident, but instead, was solely submitted because of Plaintiff's disability, demonstrating LBCT took adverse action against Plaintiff (DMF 29-34).

Plaintiff also provided the Committee with evidence that the PCMC mechanic who was involved in the June 12, 2023 accident, was in all black clothing without a high visibility vest, operating the AGV in an unsafe manner at the time of the accident. The alleged investigation by LBCT, ILWU, and the Committee was unfair, as Plaintiff was prohibited from introducing evidence and from having the Safety Committee investigate the accident (DMF 29-34).

On August 16, 2023, Plaintiff was involved in a minor vehicle incident in the APM Terminal parking lot while off-the-clock. The incident was a "fender-bender" with very minimal damage, involving two private vehicles during non-working hours (DMF 35-36).

On May 1, 2023, Plaintiff reported to the JPWLRC, a complaint of harassment and discrimination against LBCT and Sargent David Pannell. Sargent Pannell stated, "You can't see, and you shouldn't be working down here on the

11

LAW OFFICE OF
NANCYROSE
HERNANDEZ

waterfront." He also stated, "You need to find somewhere else to work other than LBCT because you are a liability." Several times, Sargent Pannell told Plaintiff not to come to work because Plaintiff has "bad vision." (DMF 51-56) (FAC ¶36)

## III.    SUMMARY JUDGMENT LEGAL STANDARD

### A. Summary Judgment May Not Be Granted Where There Are Triable Issues Of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Contrary to Defendant's argument, Plaintiff has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

## IV.    PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." Id. § 12112(b)(5)(A). An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## A. Plaintiff Is A Qualified Individual With A Disability Because He Can Perform The Essential Functions Of A Watchman

"In the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question," with or without reasonable accommodation. *School Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 287 n.17 (1987) (quoting 45 C.F.R. § 84.3(k)); 29 C.F.R. § 1630.2(m). The "burden of production" lies with the "employer to come forward with evidence of those essential functions," even though "the plaintiff bears the ultimate burden of persuading the fact finder that he can perform the job's essential functions." *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 991 (9th Cir. 2007). A court does "not reach the issue of reasonable accommodation unless the court first finds that an individual cannot perform the essential functions of her job" without an accommodation. *Lucero v. Hart*, 915 F.2d 1367 1372 (9th Cir. 1990).

### 1. Driving Is A Marginal Function Of A Watchman

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). It "does not include the marginal functions of the position." Id. The determination of a job's essential functions is "[a] highly fact-specific inquiry." *Cripe v. City of San Jose,* 261 F.3d 877, 888 n.12 (9th Cir. 2001). A court "shall" consider "the employer's judgment as to what functions of a job are essential," including any "written description" of the job prepared by an employer for advertisement or interview purposes. 42 U.S.C. § 12111(8). "Such evidence, however, is not conclusive: 'an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.'" *Rohr v. Salt River Project Agric. Improvement & Power Dist.,* 555 F.3d 850, 864 (9th Cir. 2009) (quoting Cripe, 261 F.3d at 887). "Where there is conflict in the evidence regarding the essential functions of a position, we conclude that there is a factual dispute,

LAW OFFICE OF
NANCYROSE
HERNANDEZ

notwithstanding the job descriptions that an employer has prepared." Id. (internal alterations and citation omitted).

Here, there is conflict in the evidence regarding essential functions of the Watchman position; therefore, there is a factual dispute. The essential functions of the Watchmen job duties include: Security Surveillance, Credential Verification, Radio Logs. The marginal functions of the Watchmen job duties include: Operating/Driving, Post Transit.

Plaintiff has been employed as a Watchman, performing the essential functions of the job since 2004; therefore, has extensive knowledge and experience on what job duties a Watchman performs daily.

Plaintiff has raised a factual dispute from which a reasonable jury could conclude that the "the relevant 'position' is not the specific post of driving but rather than the general category of a Watchman." *Miller v. Cal. Dep't of Corr.,* 225 F.3d 663, 2000 WL 689585, at *2 (9th Cir. 2000).

Viewing these facts in the light most favorable to Plaintiff, a reasonable jury may find that Plaintiff's duties as driving are marginal and that his principal duties are those of Security Surveillance, Credential Verification, Radio Logs. See *Morton v. United Parcel Serv., Inc.,* 272 F.3d 1249, 1252, 54–56 (9th Cir. 2001).

### 2. Plaintiff Can and Did Perform the Essential Functions Of A Watchman For Nearly Twenty-Two Years

Plaintiff could and did perform the essential functions of his job duties as a Watchman. To date, Plaintiff has never been restricted from driving *any* vehicle, and in fact, maintains a valid drivers' license and can and does drive a vehicle

Plaintiff performed his essential job duties without any major incidents for nearly twenty-two years. Even after requesting reasonable accommodation, Plaintiff continued to perform his job duties without issue, creating triable issues of fact.

14

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff's Ophthalmologist, Dr. Coleman, determined that in her professional opinion, "with all the necessary accommodations implemented by the employer, [Plaintiff] should be able to function safely and effectively at work." (DMF 37-44). Dr. Coleman further determined, "[Plaintiff] is able to verify identification against individuals seeking to gain access to a marine terminal, conduct visual inspections of work trucks and with the proper magnifier identify individuals from a distance who should not be present on the terminal." On September 20, 2023, Dr. Deutsch wrote: "Based on the letter from Mr. Greene's treating physician, I would recommend the following restrictions. 'No driving in areas where lack of peripheral vision endangers Mr. Greene or others. No working in high traffic areas. No climbing ladders or gangways. Work only in areas that are well lit. Use magnifier as needed,'" agreeing with Dr. Coleman that Plaintiff could perform the essential functions of his job with reasonable accommodations (DMF 37-44). Both medical providers agree that Plaintiff could perform the essential functions of his job with reasonable accommodations, creating triable issues of fact for the jury.

After requesting accommodations in April 2023, Plaintiff successfully performed the job duties of a Watchman without issue until he was abruptly placed on non-dispatch.

**B. Plaintiff Does Not Pose A Direct Threat**

The "direct threat" defense is a narrow, fact-intensive affirmative defense. It requires an individualized assessment of the employee's present ability to safely perform the essential functions of the job, based on reasonable medical judgment and the best available objective evidence. It does not permit an employer to rely on generalized assumptions, stereotypes, or selectively framed incidents to manufacture a safety rationale. Where the employer's stated safety concern is disputed, or where the employer's decision rests on contested interpretations of events rather than objective evidence, the "direct threat" defense cannot be

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

resolved on summary judgment. In his nearly twenty-two years as a Watchman, Plaintiff did not cause injury to any person while performing his job duties.

LBCT's reliance on the APM accident is factually overstated. The record supports that this event was a minor "fender-bender," not a serious safety incident indicative of an ongoing workplace risk. Critically, the incident occurred while Plaintiff was off-the-clock. Defendants' attempt to treat an off-the-clock minor incident as dispositive evidence of a workplace "direct threat" is precisely the kind of generalized, result-driven reasoning the law forbids. (DMF 35-36)

LBCT mischaracterizes the LBCT accident as though it were solely attributable to Plaintiff. At most, the evidence supports a conclusion of joint fault. Further, LBCT and Local 26 intentionally obstructed a fair and impartial investigation. This obstruction deprived Plaintiff of an objective fact-finding process and undercuts Defendants' claim that their decision was grounded in "the best available objective evidence." An employer cannot both block an impartial investigation and then claim certainty about fault or risk as a basis for invoking "direct threat."

LBCT's inflation of contested events into a purported "direct threat," combined with the intentional obstruction of a fair investigation evidences discriminatory motive. At minimum, there are competing inferences: that LBVT's stated safety rationale is exaggerated, selectively applied, and inconsistent with an individualized, objective assessment; and that their obstruction of an impartial investigation reflects pretext rather than legitimate safety concerns. Those issues of motive, credibility, and intent are for the jury, not the Court on summary judgment.

### C. LBCT Did Not Have Legitimate, Non-Discriminatory Reasons For Determining That Plaintiff Could Not Perform His Essential Functions And Plaintiff Has Evidence of Pretext

The sole purpose for the November 2, 2023, LBCT Employer Complaint against Plaintiff was to prevent Plaintiff's ability to dispatch at LBCT because of

LAW OFFICE OF
NANCYROSE
HERNANDEZ

his disability; therefore, LBCT cannot provide a legitimate, non-discriminatory reason for its determination that Plaintiff could not perform the essential functions of his job. Even after Plaintiff's accident at LBCT on June 12, 2023, Plaintiff continued to dispatch at terminals without any incident or issue while performing his job duties. LBCT claims Plaintiff poses a significant risk of substantial harm to the health and safety of himself and other persons on the terminal; however, Plaintiff never harmed himself or anyone else while working. LBCT claims that there are no reasonable accommodations that can eliminate or reduce the risk to a safe level; however, even after June 12, 2023, Plaintiff continued performing the essential functions of his job without posing any risk to himself or others. LBCT's refusal to dispatch Plaintiff is wholly discriminatory, and the Employer Complaint supports Plaintiff's claim of pretext; therefore, creating triable issues of fact.

## D. Plaintiff Has Evidence Of Pretext

"To defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered non-retaliatory reason for the adverse action is unworthy of credence; or (2) retaliation was the more likely motivation." *Brooks,* 1 F. Supp. 3d at 1038. The plaintiff need not "introduce evidence beyond that already offered to establish their prima facie case, although they may provide additional proof of the defendants' unlawful motivation." *Lee,* 93 F. Supp. 3d at 1170.

Plaintiff has produced sufficient evidence to satisfy the *McDonnell Douglas* burden-shifting framework and to raise, at minimum, a triable issue of fact that LBCT's decision to place, and keep, Plaintiff on non-dispatch status was discriminatory, and that LBCT's proffered non-discriminatory reasons are pretext. Under *McDonnell Douglas,* Plaintiff need only establish a prima facie case and then show that the employer's stated reason is not the true reason, but instead a pretext for discrimination. Pretext may be shown by evidence that the stated reason is factually false, did not actually motivate the challenged action, or was

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

insufficient to justify the adverse action. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

LBCT's asserted justification is that it did not "discipline or discharge" Plaintiff, but instead implemented a CBA process to stop dispatch because Plaintiff allegedly (i) could not perform essential Watchman functions, (ii) posed a "significant risk of substantial harm," and (iii) could not be reasonably accommodated. LBCT attributed this to Plaintiff's vision-related restrictions and to the June 12, 2023 incident. A reasonable jury could find this explanation unworthy of credence for multiple reasons.

LBCT's rationale depends on an overbroad "essential functions" premise that is disputed by Plaintiff's evidence showing he could safely perform Watchman work, particularly computer and NOIT-related duties and other assignments with reasonable accommodations. Plaintiff has evidence that he could "safely and effectively work with reasonable accommodations" at the Gangway and NOIT computer assignments, and that LBCT nevertheless refused to allow him to work even when dispatched.

LBCT's "no reasonable accommodation" and "direct threat" framing is undermined by evidence that LBCT and related entities had already engaged in temporary accommodation assignments and had, for a period, placed Plaintiff in assignments designed to avoid or minimize disputed duties. That prior course of conduct supports an inference that LBCT's later insistence that Plaintiff must perform all duties "without any medical restrictions" is not a neutral safety assessment, but a categorical exclusion based on disability.

LBCT's continued non-dispatch was not actually motivated by a contemporaneous safety necessity, but instead functioned as a de facto suspension triggered and maintained in the wake of Plaintiff's accommodation requests. Plaintiff contends the relevant accident had been addressed and then later repurposed as an ongoing bar to work.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff disputes the adequacy and fairness of the asserted "individualized assessment" that LBCT claims supported non-dispatch. Plaintiff contends he was denied a fair investigation, including lack of access to evidence and an opportunity to challenge it in the manner contemplated by governing procedures, and that LBCT later leveraged the outcome of that disputed process to justify denying accommodations and continued non-dispatch. A jury may treat such evidence as probative of pretext because it suggests the "safety" narrative was selected to justify a predetermined exclusion rather than to implement a good-faith, individualized accommodation analysis.

Taken together, Plaintiff has introduced evidence from which a jury could reasonably conclude that LBCT's stated justification is not the real reason and is therefore pretextual.

## V.    PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY-BASED HARASSMENT

To prevail on a disability-based harassment claim under FEHA or the ADA, Plaintiff must show that he was subjected to unwelcome conduct because of his disability that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1).

The FAC alleges that LBCT personnel, particularly Sergeant David Pannell, made disability-focused comments and engaged in disability-focused conduct directed at Plaintiff. The FAC alleges Sergeant Pannell told Plaintiff: "You can't see, and you shouldn't be working down here," and that Plaintiff "need[s] to find somewhere else to work other than LBCT because you are a liability," and that he told Plaintiff not to come to work because Plaintiff has "bad vision." The FAC further alleges Plaintiff was singled out, monitored, and treated as a "liability" due to his vision impairment (FAC ¶ 36).

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The FAC alleges LBCT management instructed Pannell to follow Plaintiff around the yard and monitor him, and that Plaintiff's medical condition was discussed/shared such that multiple supervisors allegedly planned not to provide accommodations. These allegations plead a basis for employer liability and provide a foundation for the hostile work environment claim.

Plaintiff's evidence includes a subsequent incident on May 2, 2023 in which Sergeant Pannell assigned Plaintiff to drive a shuttle bus; when Plaintiff requested accommodation, the request was declined and Plaintiff was told to go home. Plaintiff then received a written notice on May 3, 2023, accusing him of walking off/failing to fill the job. A reasonable jury could view this sequence assignment inconsistent with known vision limitations, denial of accommodation, being sent home, and threats/discipline as part of a pattern of disability-driven hostility and pressure intended to force Plaintiff out rather than accommodate him.

The harassment altered the conditions of employment by interfering with Plaintiff's ability to perform his job and remain working at LBCT, including being sent home, threatened with discipline, and subjected to ongoing disability-centered scrutiny and hostility. Plaintiff's FAC and evidentiary record further describe denial of work opportunities and non-dispatch status, which a jury could view as a continuation and escalation of the hostile environment and a means of excluding Plaintiff due to his disability.

Plaintiff did not consent to the medical evaluation by Dr. Deutsch, Defendants overtly disregarded this, and without permission, authorized the medical evaluation of Plaintiff, violating his right to privacy. (DMF 51-56)

Plaintiff has presented evidence creating genuine disputes of material fact regarding the existence, nature, motivation, and impact of the harassing conduct at LBCT.

## VI. PLAINTIFF PROPERLY STATES A CLAIM FOR FAILURE TO ACCOMMODATE

20

LAW OFFICE OF
NANCYROSE
HERNANDEZ

If an employee requires an accommodation to perform the essential functions of his job, a court must "consider whether any 'reasonable accommodation' by the employer would enable the [employee] to perform those functions." *Arline,* 480 U.S. at 287 n.17. Plaintiff bears the "initial burden" of "showing the existence of a reasonable accommodation." *Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1047 (9th Cir. 1999) (internal citations omitted). He need "only provide evidence sufficient to make 'at least a facial showing that reasonable accommodation is possible.'" *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir. 1993). Once Plaintiff "establishe[s] the existence of a reasonable accommodation," then "the burden switches to the defendant to show that this accommodation would constitute an undue hardship." *Zukle,* 166 F.3d at 1047.

Reasonable accommodation expressly includes modifications or adjustments to the manner in which a job is customarily performed, including job restructuring and reassignment of marginal functions. Once Plaintiff identifies evidence that a reasonable accommodation would enable performance of essential functions, the burden shifts to the employer to prove undue hardship. *U.S. Airways, Inc. v. Barnett* (2002) 535 U.S. 391, 400–402.

LBCT treats "Watchman" as a monolithic role in which every listed duty and every possible assignment is "essential." That is not the legal test. The essential-functions inquiry focuses on the fundamental duties of the position, not every conceivable duty that "may" occur. Where a job encompasses multiple posts and assignments, the question is what is fundamentally required and what can be restructured without removing the job's core.

The written "Watchmen's duties" provisions reflect a broad, non-exhaustive list of duties, many of which are contingent ("as needed," "when required") and therefore, by their own terms, not uniformly essential for every shift or assignment. The existence of a long list does not establish that each item is essential in every instance.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Watchmen may perform a wide range of tasks, including controlling access, checking identification, ensuring entrances/exits are locked/unlocked, preparing reports, and responding to incidents. These functions can be performed at fixed posts and do not inherently require Plaintiff to operate a vehicle.

Defendant's own narrative acknowledges variability in assignments: LBCT references dispatching Watchmen to different assignments and concedes that, during the interactive process, Plaintiff sought assignment to a specific post, gangway, because it was compatible with his restrictions, and LBCT did, in fact, temporary accommodation him.

LBCT's attempt to transform the ability to drive *any* vehicle, in *any* location, at *any* time, into an essential function of the job is a disputed, fact-intensive claim, not a basis for summary judgment. At minimum, there is a triable dispute as to whether the truly essential functions are (1) security observation and reporting; (2) access control and verification; (3) communication and response; and (4) safe presence and situational awareness functions Plaintiff can perform with accommodation.

Plaintiff worked Watchman duties with reasonable accommodation at SSA, including restriction to certain posts and arranged shuttle transport so Plaintiff did not need to drive, and that Plaintiff completed his duties "with no issues" during the accommodation period.

This evidence supports a reasonable inference that the Watchman role's core security functions can be performed without requiring Plaintiff to personally perform all forms of terminal driving, particularly where the employer already has transportation infrastructure and assignment flexibility.

The record reflects that, as a reasonable accommodation, Plaintiff could be assigned to compatible posts (including main gate and gangway-related security) and provided transportation so he could navigate the terminal without operating vehicles himself. This is a paradigmatic reasonable accommodation: it does not

LAW OFFICE OF
NANCYROSE
HERNANDEZ

eliminate the job's fundamental security functions; it <u>modifies</u> *how* Plaintiff gets to and within the terminal and *which* posts he is assigned, while keeping him within the Watchman classification and performing Watchman security work.

This evidence is sufficient to create a triable issue that Plaintiff is a qualified individual capable of performing the essential functions with reasonable accommodation.

LBCT argues Plaintiff must be able to perform all watchman assignments, including those involving driving various vehicles, at all times. But that is an argument about *LBCT's preferred structure* of the job, not an undisputed legal conclusion. The evidence of Plaintiff's successful, accommodated performance defeats summary judgment.

## VII.    PLAINTIFF PROPERLY STATES A CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

"[O]nce an employee requests an accommodation … , the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. So. Cal. Edison Co.,* 302 F.3d at 1089. "The interactive process requires communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001); *Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000), vacated on other grounds sub nom., *US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002) ("Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process."). This process allows the employer and employee to "come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodation the employee." *Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018). The employer's obligation to engage is "mandatory." *Anthony v. Trax Int'l Corp.,* 955 F.3d 1123, 1134 (9th Cir. 2020). It also "extends beyond the first attempt at accommodation and continues when the

23

LAW OFFICE OF
NANCYROSE
HERNANDEZ

employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey,* 239 F.3d at 1138. "An employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." Id. (quoting *Barnett*, 288 F.3d at 1116). "[I]f an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." Snapp, 889 F.3d at 1095.

LBCT had a duty to engage Plaintiff in a timely, good-faith, and meaningful interactive process to identify and implement reasonable accommodations that would enable Plaintiff to perform the essential functions of his position. Rather than communicating promptly and substantively with Plaintiff, LBCT failed to participate in an effective dialogue, failed to explore accommodations in a manner reasonably calculated to succeed, and failed to make a good-faith effort to identify workable solutions.

Instead, Defendants obstructed and delayed the interactive process. Defendants' conduct included, without limitation: (a) failing to timely respond to Plaintiff's accommodation requests; (b) demanding unnecessary, duplicative, or shifting medical documentation; (c) failing to provide clear information regarding the accommodation evaluation timeline or decision-making criteria; (d) postponing meetings or refusing to meet with Plaintiff and/or his healthcare provider(s) as needed; (e) rejecting proposed accommodations without adequate explanation or without offering alternatives; and (f) taking adverse action and/or maintaining Plaintiff out of work while the accommodation request was pending, rather than implementing interim accommodations. This obstruction and delay undermined the purpose of the interactive process and deprived Plaintiff of a fair opportunity to obtain reasonable accommodation.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

In its argument, LBCT admits that it provided Plaintiff with "temporary accommodations while Plaintiff was employed by LBCT," assigned to either the gangway or the security center, except on one occasion when he was assigned to rover patrol, evidencing Plaintiff could perform the essential functions of his position, the accommodations were *reasonable*, and that Plaintiff, was an employee of LBCT.

## VIII.    PLAINTIFF PROPERLY STATES A CLAIM FOR RETALIATION

In the Ninth Circuit, "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000); *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ("The Ninth Circuit takes an expansive view of the types of action that qualify as an adverse employment action."). Actions may be adverse even if they do not "materially affect the terms and conditions of employment." Ray, 217 F.3d at 1242. The test is whether an action "is reasonably likely to deter employees from engaging in protected activity." *Id.* at 1243. Of course, "not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce an injury or harm." *Hellman v. Weisberg*, 360 F. App'x 776, 778 (9th Cir. 2009). "Context matters." *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

Plaintiff engaged in protected activity beginning in April 2023 and continuing to date, when he disclosed his disability to <u>all</u> Defendants, requested reasonable accommodations, reported discrimination, harassment, and retaliation, submitted a grievance, and demanded a cease and desist from sharing his confidential medical information without his consent (Greene Decl., ¶16). Thereafter, Plaintiff was subjected to adverse employment action. Employers' December 10, 2024, decision to place Plaintiff on non-dispatch status constitutes a discrete and adverse

LAW OFFICE OF
NANCYROSE
HERNANDEZ

retaliatory act in direct response to Plaintiff's accommodation request, and is not a neutral administrative decision, as pretextually guised (FAC ¶115).

A reasonable worker could be dissuaded from requesting accommodation or complaining about discrimination if doing so results in being barred from dispatch at the terminal and, practically, from working and earning wages. The non-dispatch action is not a minor inconvenience; it is the functional equivalent of being removed from work opportunities at LBCT and is therefore materially adverse. LBCT's attempt to characterize its conduct as "non-disciplinary" does not eliminate adversity. The non-dispatch status is, by definition, intended to prevent Plaintiff from working at LBCT; that is materially adverse.

Temporal proximity is not limited to counting days between a complaint and a discipline letter. Where an adverse action follows protected activity in a continuous course of escalating scrutiny, disputes, and adverse decisions, a jury may infer causation. Here, the protected activity and the adverse action are embedded in a tight timeline in which LBCT undisputedly had knowledge of Plaintiff's disability and accommodation request before taking steps that culminated in non-dispatch.

LBCT argues causation is absent because it acted for "safety reasons." But at summary judgment, the question is not whether LBCT has articulated a reason; it is whether Plaintiff has produced evidence that permits a reasonable inference that the stated reason is not the true reason or that retaliation was at least a contributing factor. The timing and sequence of events, knowledge of protected activity, heightened attention to Plaintiff's restrictions, and eventual non-dispatch satisfy Plaintiff's de minimis prima facie burden and support an inference of retaliatory motive.

## IX.    PLAINTIFF PROPERLY STATES A CLAIM FOR WRONGFUL TERMINATION  IN VIOLATION OF PUBLIC POLICY

The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary

26

LAW OFFICE OF
NANCYROSE
HERNANDEZ

to fundamental norms that the termination inflicted an injury sounding in tort. See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330].

Plaintiff's complaints went beyond his claims under the ADA and FEHA. He submitted grievances, demanded the cease and desist from sharing his confidential medical information, disclosed and opposed the cancelation of his health insurance. As a result of said employment relationship, Employers were obligated to refrain from wrongfully terminating Plaintiff, or any employee, for reasons which violate or circumvent said policy, law, or the objectives which underlie each and not to compound their illegal conduct.

## X.    PLAINTIFF PROPERLY STATES A CLAIM FOR PUNITIVE DAMAGES

Plaintiff is entitled to seek punitive damages where Plaintiff proves by clear and convincing evidence that Defendant engaged in "oppression, fraud, or malice." (Cal. Civ. Code § 3294(a).) Under § 3294(c), "malice" means (i) conduct intended by the defendant to cause injury, or (ii) "despicable conduct" carried on by the defendant with a willful and conscious disregard of the rights or safety of others. "Oppression" means "despicable conduct" that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (Cal. Civ. Code § 3294(c).) "Despicable" conduct is conduct that is base, vile, or contemptible—conduct that ordinary decent people would regard as atrocious and utterly intolerable in a civilized community.

Defendants' conduct was a deliberate course of conduct undertaken with willful and conscious disregard for Plaintiff's protected rights and safety. By choosing to ignore or shut down the accommodation process, Defendants knowingly exposed Plaintiff to foreseeable harm: deterioration of health, increased risk of injury, and loss of employment-related stability. This is "malice" within the meaning of §

LAW OFFICE OF
NANCYROSE
HERNANDEZ

3294(c) because it reflects despicable conduct carried out with a willful and conscious disregard of Plaintiff's statutory rights and well-being.

Defendants' conduct also meets the definition of "oppression" under § 3294(c) because Defendant subjected Plaintiff to cruel and unjust hardship, in conscious disregard of Plaintiff's rights, through a pattern of actions that compounded Plaintiff's vulnerability and undermined Plaintiff's ability to protect basic interests. Plaintiff alleges that Defendants shared Plaintiff's confidential medical information without Plaintiff's consent. Medical information is inherently private, and employees have a fundamental right to be free from unjustified disclosure of sensitive health data. Disseminating such information without authorization is a serious invasion of privacy that predictably results in humiliation, stigma, and fear of further misuse. Such conduct is despicable because it exploits an employee's medical vulnerability and disregards the employee's dignity and legal rights.

Plaintiff further alleges that Defendant's conduct inhibited Plaintiff's right to earn a living. An employer's conscious disregard of statutory accommodation duties paired with actions that impair an employee's continued work imposes acute hardship by jeopardizing wages, job security, and long-term employability. When an employer knowingly places an employee's livelihood at risk rather than comply with basic legal obligations, the resulting hardship is cruel and unjust.

## XI.    CONCLUSION

In short, Plaintiff has shown that there are triable issues as to material facts and that the moving party is not entitled to a judgment as a matter of law. Discovery and argument will add further detail later. Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment with Prejudice.

28

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Dated: June 25, 2026                LAW OFFICE OF NANCYROSE HERNANDEZ


By: /s/ Nancyrose Hernandez
Nancyrose Hernandez
Attorney for Plaintiff
ENOCH GREENE


**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,855 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ