NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff, ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 5:25-cv-01359-KK-CTSx<br><br>**PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, PMA's, MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing on Summary Judgment<br><br>Date: Thursday July 16, 2026<br>Time: 9:30 a.m.<br>Place: Riverside, Courtroom 3<br>Honorable Kenly Kiya Kato<br>United States District Judge<br><br>Date Action Filed: June 2, 2025<br>FAC Filed: June 20, 2025<br>Trial Date: September 28, 2026 |

0

LAW OFFICE OF
NANCYROSE
HERNANDEZ

**Table of Contents**

I.    INTRODUCTION _____5

II.   STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS _____9

III.  SUMMARY JUDGMENT LEGAL STANDARD _____10

   A.   Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact_____10

   B.   PMA Representatives Had Apparent Authority To Operate In Their Official Capacity On Employer's Behalf. _____ 11

   C.   PMA Is A Joint Employer For Watchmen, Including Plaintiff. _____ 12

   D.   April 2023: Plaintiff Notifies JPWLRC Of His Disability: May 2023: JPWLRC Holds A Meeting To Discuss Plaintiff's Request For Accommodation_____ 13

   E.   PMA's Contention that It Made Efforts To Accommodate Plaintiff. _____ 14

   F.   Pretext For Discrimination, Harassment, And Retaliation. _____ 15

   G.   Plaintiff Did Not Consent To The Medical Evaluation With The Joint Medical Specialist. _____16

   H.   JPWLRC Subjects Plaintiff to Adverse Employment Action. _____ 17

   I.   Plaintiff's Claims Against PMA Are Proper Because PMA Was Plaintiff's Joint Employer And Carried Out FEHA-Regulated Activity As A Business Agent For Employers. _____ 18

   J.   PMA Is A Joint Employer, And Plaintiff Therefore Can Attribute Liability to PMA. _____ 20

   K.   PMA Carried Out FHEA and ADA-Regulated Activities On Behalf of Employers As A Agent of Employers_____ 20

   L.   Plaintiff Can Establish a Prima Facie Case For Discrimination, Harassment, And Retaliation. _____21

1

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

1.    Disability Discrimination and Retaliation Claims. _____ 22

2.    Plaintiff's Harassment Claim. _____ 23

3.    Plaintiff's Failure to Accommodate and Failure to Engage in the Interactive Process Claims. _____ 24

4.    Plaintiff's Wrongful Termination in Violation of Public Policy Claim. _____ 25

5.    Plaintiff's Punitive Damages Claim. _____ 26

IV.  CONCLUSION _____27

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## Cases

*American Soc'y of Mech. Eng'rs v. Hydrolevel, 456 U.S. 566 (1982)*.....................11

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)....................................10

*Anderson v. Pac. Maritime Ass'n,* 336 F.3d 924, 929-32 (9th Cir. 2003)...............18

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020)………………24

*Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000)………………...24

*City of Whittier v. Everest Nat'l Ins. Co.,* 97 Cal. App. 5th 895, 907 (2023) .........22

*Clackamas Gastroenterology Associates, P.C.  v.  Wells,* 538 U.S. 440, 447 (2003) .........................................................................................................12, 18, 20

*Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 355 (2000) .........................................22

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1) ..............................................................................................................23

*Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001)…………24

*McCoy v. Pacific Maritime Association,* 216 Cal. App. 4th at 301-303 .................18

*Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323 (1992)...............12

*Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992) .........12

*Reno v. Baird*, 18 Cal. 4th 640, 644 (1998)...........................................................18

*Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018)…………...24

*Stern v. California State Archives,* 982 F. Supp. 690, 692 (E.D. Cal. 1997) ..........18

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330]……………………………………………………………………26

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) .................10

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)……………………………...24

*U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.,* 915 F.3d 631, 638 (9th Cir. 2019)..................................................................................................20

*Zivkovic v. So. Cal. Edison Co.,*302 F.3d at 1089 (9th Cir. 2022) .........................24

## Statutes

LAW OFFICE OF
NANCYROSE
HERNANDEZ

ADA .......................................................................................................23, 24

FEHA…………………………………………………………………… 23, 24

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION

Plaintiff, ENOCH GREENE'S ("Plaintiff"), claims against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), include disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA), retaliation, and wrongful termination in violation of public policy.

Plaintiff is a Registered Watchman and member of Local 26, employed at various terminals within the Ports of Los Angeles and Long Beach. Plaintiff has maintained his position of employment since August 2004. Plaintiff became a Registered Watchman in February 2013, working under the CBA between ILWU and the PMA (Greene Decl., ¶ 7). This registration entitles Plaintiff to receive dispatches from any of the four PMA-represented Employers, including: TTI, SSA, APM, and LBCT (Collectively "Employers") (Greene Decl., ¶ 8). Each of these Employers simultaneously employs Watchmen under the joint dispatch hall system, and they collectively provide ILWU Members with employment benefits. Throughout his employment with the Employers, Plaintiff successfully completed the job duties of checking IDs, monitoring and processing big rig trucks in and out of the terminals, checking labor workers, transporting individuals, and maintaining safety in the various terminals (Greene Decl., ¶ 21).

Article 25 of the Collective Bargaining Agreement (CBA) for ILWU Local 26, identifies the four signatory Employers in all labor matters with ILWU Local 26: LBCT, APM, TTI, SSA (Green Decl., ¶61, Ex. 0).

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The Joint Port Watchmen's Labor Relations Committee (JPWLRC) is made up of Employer representatives from LBCT, APM, TTI, SSA, PMA, and Local 26. The Committee meets at LRC Meetings to discuss business, including without limitation Employer Complaints and general business. The Committee was involved in all meetings held in response to Plaintiff's request for reasonable accommodation (Greene Decl., ¶ 20). PMA'a representatives, Ryan Willimas or Andrew Prickett, were present at all meetings related to Plaintiff's request for reasonable accommodation. All emails and correspondence regarding Plaintiff's request for reasonable accommodation went through PMA. PMA was responsible for communicating with Plaintiff regarding his request for accommodation. On December 10, 2024, the Committee met with Plaintiff and informed him that the Employers, including PMA placed him on non-dispatch because of his disability, effectively terminating his employment (Hernandez Decl., ¶16, Ex. N).

The ILWU Local 26 Watchmen's Agreement (CBA) between ILWU and PMA is discriminatory on its face and admittingly does not contain a written reasonable accommodation policy, nor at the relevant time, were Watchmen entitled to reasonable accommodation (Greene Decl., ¶ 22). This was negotiated by PMA and Local 26, solely by Gratz.

Plaintiff was diagnosed with primary open angle glaucoma (POAG) of both eyes. Plaintiff is a qualified individual with physical disabilities and can perform the essential functions of his job with reasonable accommodations. (Green Decl., ¶3)

Plaintiff alleges that, beginning in or about April 2023, he notified his employer(s), specifically PMA, and union representatives of a qualifying disability and formally requested reasonable accommodations to continue performing his job duties. On May 8, 2023, through PMA, Plaintiff requested accommodations. (Greene Decl., ¶ 23).

6

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff provided PMA with his medical notes from Dr. Coleman dated April 15, 2023, May 25, 2023, and September 7, 2023. (Greene Decl., ¶ 47-49, Ex. A-D).

On or about December 10, 2024, Plaintiff appeared before the Committee at a Special LRC Meeting for the JPWLRC. The Committee indicated that the Employers would not accept his dispatch to terminals for Watchman's work and no accommodation would be provided. (Hernandez Decl., ¶ 16, Ex. N).

Plaintiff responded that the Committee's decision violated his rights under the Local 26, CBA, Article 16, and Federal ADA law. Plaintiff cited Federal ADA law to support his claim that he has a "qualified" ADA disability. Plaintiff asked Williams if the Employers agree with ILWU in using the CBA to violate his rights. Willaims responded that the Employers have done the analysis per the ADA, and that their position is unchanged, regardless of the CBA.

On January 20, 2025, Plaintiff sent an email to Williams to formally renew his request for reasonable accommodations to enable him to perform the essential functions of his position as a Watchman. Plaintiff wrote that his initial request for accommodations was made in April 2023; however, no accommodations were implemented, and he has been unable to work since February 12, 2024. Plaintiff made the following requests: 1) Worksite Assessment: The Department of Rehabilitation (DOR) is prepared to conduct a thorough assessment of [his] worksite to identify appropriate accommodations that will empower [him] to perform [his] essential job functions. As noted in his previous correspondence, Plaintiff's ophthalmologist, optometrist, and occupational therapist have all provided recommendations affirming his ability to perform the essential functions of his job with the appropriate accommodations. The DOR's support, along with these professional recommendations, ensured that Plaintiff is well-equipped to fulfill his role effectively and safely. Despite these resources and professional recommendations, the Employers' failure to provide accommodations has caused severe financial injuries, significant mental health stress, physical health issues,

LAW OFFICE OF
NANCYROSE
HERNANDEZ

and other related personal challenges. All Employer PMK's admitted that they did not respond to Plaintiff's request to have the DOR perform a worksite assessment. (Greene Decl., ¶ 59-60, Ex. M, N).

On January 29, 2025, Williams responded that the Employers do not understand what he meant by renewing his request for accommodation. Williams wrote that the JPWLRC determined, based on documents it received, including the medical notes from UCLA Department of Ophthalmology that he was unable to perform the essential functions of the watchman job with or without reasonable accommodation. This statement wholly contradicts the medical documentation that the Employers identify and refer to, as Plaintiff's medical documentation specifies that he can perform the essential functions of his job as a Watchman with reasonable accommodation, demonstrating the Defendants' discriminatory pretext.

On January 29, 2025, Plaintiff provided Williams with a letter from the DOR, which stated that Plaintiff was a participant of California, DOR services. The DOR works to assist Californians with disabilities to train, obtain, and maintain employment. Plaintiff received the following services through the state which would allow him to continue his employment and excel in his job duties as a Watchman at the Port of Long Beach: Low vision aids and devices, transportation assistance, ergonomic and worksite evaluation to identify necessary tools, and assistive technology- including computer/software. Defendants did not respond to this correspondence, but again failed to engage in the continuing good faith interactive process with Plaintiff. (Greene Decl., ¶ 70, Ex. X).

On January 29, 2025, after Plaintiff and ILWU made multiple requests for the December 10, 2025, minutes transcript, Gratz wrote a letter regarding PMA's Conduct, Credibility, Practices, and Records to Williams, writing that she would NOT sign dishonest minutes drafted by PMA staff or unknown others. Gratz reiterated that ILWU had requested a duplicate of the testimonies provided by all participants of the meeting. Gratz continued her letter with reflecting on the

LAW OFFICE OF
NANCYROSE
HERNANDEZ

missing information from the minutes including when Prickett stood her up for a scheduled meeting, and Williams left Gratz in a locked PMA office because he had a dinner date with his wife. Willimas also showed Gratz a photograph of her house on his cell phone, which she explicitly wrote was illegal surveillance and a violation of the law. Gratz wrote that Williams summarized the meeting without the Union's permission, calling the draft PMA's "script," as opposed to the minutes. Gratz specified that any minutes or other JPWLRC documents that were not signed were disingenuous and self-serving. (Hernandez Decl. ¶ 5, Ex. F).

To date, Defendants refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## II.    STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

PMA was a joint employer where it meaningfully controlled the terms and conditions of Watchmen work, including hiring/assignment, discipline, accommodation/return to work determinations, and continued access to work opportunities (DMF 3-10). The ILWU Local 26 Watchmen's Agreement is negotiated between ILWU and PMA (DMF 10, 12). PMA was involved in the decision to place Plaintiff on non-dispatch, controlling the employment status of Plaintiff (DMF 11). Plaintiff remains employed as a Watchman, per the CBA, for the four signatory Employers until terminated (14-15). PMA's role extends far beyond ministerial wage processing. PMA was the labor-relations representative and administrator for the Employers whose work Plaintiff performed, and it acted as the point of contact and gatekeeper for the accommodation process and the employment-status determinations that dictated whether Plaintiff could work at all (DMF 16-25). PMA communicated positions about whether accommodations were available, whether Plaintiff could perform essential functions, and whether prior committee determinations would stand, topics that are inherently discretionary and

LAW OFFICE OF
NANCYROSE
HERNANDEZ

central to employer liability (DMF 26-31). PMA acted as a decision-maker, not a clerical intermediary in all communications with Plaintiff regarding his request for accommodations (DMF 26-34). Plaintiff communicated all complaints of disability-based harassment to PMA (DMF 32). Plaintiff's request for accommodations was not limited to "assistance with the Watchman trainings," but rather, Plaintiff made several requests for accommodations, all directed to PMA (DMF 38). Plaintiff was directed to make all requests for accommodations through PMA, and PMA was responsible for responding to Plaintiff's request, not as a secretary, but as a controlling Committee member for the JPWLRC (DMF 50-52). Plaintiff's communications concerning accommodations for participation in the interactive process meeting were addressed to PMA's representative, Williams, with coordination involving ILWU Local 26. Williams acknowledged the request and proposed addressing accommodations at the meeting or rescheduling - conduct that is not consistent with a secretary position, but rather with the entity managing the interactive process and exercising discretion over how the process would proceed (53-56).

## III.    SUMMARY JUDGMENT LEGAL STANDARD
### A. Summary Judgment May Not Be Granted Where There Are Triable Issues Of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Contrary to Defendant's argument, Plaintiff

10

LAW OFFICE OF
NANCYROSE
HERNANDEZ

has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

### B. PMA Representatives Had Apparent Authority To Operated In Their Official Capacity On Employer's Behalf

In *American Soc'y of Mech. Eng'rs v. Hydrolevel, 456 U.S. 566 (1982)*, the Supreme Court upheld apparent authority as a legitimate doctrine under agency law, holding, "Under general rules of agency law, principals are liable when their agents act with apparent authority . . . An agent who appears to have authority to make statements for his principal gives to his statements the weight of the principal's reputation" Under the doctrine of apparent authority, when an individual acts on behalf of an employer and the employer permits or causes a third party to reasonably believe the individual has authority, the employer is bound by that individual's representations and conduct. As is the case here, PMA representatives operated in official capacity on the Employers' behalf, and Plaintiff, as the requesting employee, had reasonable grounds to believe the representatives, including PMA's representatives, Williams and Pickett, were acting as authorized intermediaries in employment matters for the Employers, including as a representative for all Employers (FAC ¶106).

PMA cannot evade liability by labeling itself a "payroll agent" when the record demonstrates that PMA functioned as the operative decision-maker, either directly or through the joint committee structure it administered in the employment actions challenged here. Under the "principal guidepost" framework, an entity is a joint employer where there is an element of control that the employer has over the individuals' work, *i.e.*, it meaningfully controls, or shares control over, the terms and conditions of work, including hiring/assignment, discipline, accommodation/return-to-work determinations, and continued access to work opportunities. See *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318,

11

LAW OFFICE OF
NANCYROSE
HERNANDEZ

323-24 (1992). As is the case here, an individual can have more than one employer, and the common-law agency test is appropriate for determining whether an entity may be liable as a joint employer under FEHA and the ADA since the statute gives circular definitions of "employer" and "employee" (42 U.S.C. § 12112).

### C. PMA Is A Joint Employer For Watchmen, Including Plaintiff

The Supreme Court has held that, when confronted with "completely circular" definitions like these, courts should use common-law agency principles to analyze the existence of an employer-employee relationship. *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323 (1992). As the Court has noted, a lack of congressional guidance "often reflects an expectation that courts will look to the common law to fill gaps in statutory text, particularly when an undefined term has a settled meaning at common law." *Clackamas Gastroenterology Associates, P.C. v. Wells,* 538 U.S. 440, 447 (2003). The Court has relied on common-law agency principles to flesh out the meaning of "employer" and "employee" when construing other statutes that contain the same circular definitions as those found in Title VII. *See id.* at 444–45(Americans with Disabilities Act); *Darden,* 503 U.S. at 322–23 (Employee Retirement Income Security Act).

Under the common-law test, "the principal guidepost" is the element of control, that is, "the extent of control that one may exercise over the details of the work of the other." *Clackamas,* 538 U.S. at 448 (internal quotation marks omitted).

PMA was not merely a passive "secretary," but an integrated actor that (1) participated in and facilitated the JPWLRC meetings that addressed Plaintiff's ability to work; (2) handled and transmitted Plaintiff's sensitive medical information to the Joint Port Medical Specialist; (3) controlled the accommodation process and the flow of communications; and (4) ratified and maintained Plaintiff's port-wide non-dispatch status - an ongoing denial of Plaintiff's right to work. PMA is the direct entity contractually charged with administering and co-managing the

LAW OFFICE OF
NANCYROSE
HERNANDEZ

database systems, credential tracking, and registration access that drive the dispatch network. At minimum, these facts create a triable issue as to PMA's liability as an employer, joint employer, or joint tortfeasor.

Plaintiff's ability to work was directly tied to decisions made through the committee process referenced in the record, including placement on "non-dispatch" status following a committee decision. Functionally, a decision that removes a worker from dispatch is tantamount to termination in a system where work is obtained through dispatch and access is controlled through committee determinations. (DMF 18-24)

**D. April 2023: Plaintiff Notifies JPWLRC Of His Disability: May 2023: JPWLRC Holds A Meeting To Discuss Plaintiff's Request For Accommodation**

Beginning in or about April 2023, Plaintiff notified his employer(s), through PMA, of a qualifying disability and formally requested reasonable accommodations to continue performing his job duties. On April 15, 2023, Plaintiff's medical provider from the University of California, Los Angeles (UCLA), Department of Ophthalmology, Anne L. Coleman, MD, PHD, substantiated Plaintiff's diagnosis of a disability and recommended reasonable accommodation. Plaintiff submitted his medical note to PMA.

On May 1, 2023, Plaintiff reported to the Committee and ILWU, a complaint of harassment and discrimination against LBCT and Sargent David Pannell. On May 8, 2023, Plaintiff requested accommodations, directed to PMA. On May 8, 2023, Plaintiff attended a meeting with the LPWLRC, and PMA was present.

The JPWLRC process was not an abstract or ministerial function. PMA's personnel were physically present at the key JPWLRC meeting that culminated in a decision barring Plaintiff's dispatch and, as reflected in the meeting materials, PMA was part of the operational group deciding whether Plaintiff could work.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

On December 10, 2024, the JPWLRC convened a special meeting to address Plaintiff's ADA accommodation request. The meeting notes and minutes reflect that multiple PMA representatives, Ryan Williams, Martin Cresmer, and Muny Chan, were present "on behalf of PMA," alongside "Employers" representatives and Local 26 representatives. At that same meeting, the committee addressed Plaintiff's ADA status and his ability to perform the job; the record reflects that the Employers' position, advanced and maintained through the committee structure, was that Plaintiff could not perform the essential functions of the Watchman position with or without accommodation, and that dispatch to any terminal would pose safety concerns.

Critically, the December 10, 2024, minutes reflect a definitive operational outcome: the Committee determined Plaintiff would not be dispatched to any terminal, while keeping his registration intact. That outcome is not a neutral, administrative recordkeeping act; it is a work-preclusive decision that directly affects Plaintiff's access to employment and wages. PMA's presence and role in the committee process supports a reasonable inference of concerted action with the Employers to remove Plaintiff from work opportunities. (DMF 26, 27)

**E. PMA's Contention that It Made Efforts To Accommodate Plaintiff**

PMA's own admission that it provided Plaintiff with assistance and accommodations during "watchman trainings" is powerful evidence of employer status under the "the principal guidepost". By controlling or administering the training environment and by providing employment-related accommodations in connection with that training, PMA did more than act as a passive third party. It exercised employer-like authority and assumed employer-like responsibilities, precisely the kind of conduct that supports a reasonable inference that PMA functioned as an employer with corresponding statutory duties.

PMA cannot simultaneously claim it lacks employer status while also claiming credit for providing accommodations in the course of mandatory or job-related

LAW OFFICE OF
NANCYROSE
HERNANDEZ

training. The latter is not incidental; it is a direct exercise of control over an essential term or condition of employment, training and qualification, and it reflects PMA's involvement in, and responsibility for, ensuring equal access to that employment-related program.

PMA's defensive strategy in asserting that it provided accommodations during two specific "watchman training" sessions does not entitle it to judgment as a matter of law. Two isolated instances, even if true, do not establish that PMA met an ongoing duty to participate in the interactive process or to provide reasonable accommodations as circumstances required. An employer cannot satisfy its mandatory obligations under the FEHA and ADA by pointing to a limited number of accommodations while ignoring whether it consistently engaged in the interactive process or whether the accommodations were effective, timely, and responsive to the Plaintiff's needs.

Moreover, PMA's reliance on those two sessions underscores, rather than defeats, Plaintiff's theory. The fact that PMA says it provided accommodations during trainings demonstrates that PMA understood it had the ability to alter training conditions, provide support, and implement accommodation measures. That asserted capacity and exercise of control is evidence from which a jury can infer PMA's employer status. In other words, PMA's attempt to cabin its role to two training sessions is a liability-evasion tactic that raises factual disputes: if PMA had the authority to accommodate during training, then a jury may conclude it had a continuing duty to do so in good faith, not merely in selectively chosen instances.

## F.  Pretext For Discrimination, Harassment, And Retaliation

PMA's mention of the two accidents, which are heavily disputed, supports Plaintiff's claim of pretext – Defendants guising their discriminatory motives by using the accidents as an excuse for Plaintiff's termination.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## G. Plaintiff Did Not Consent To The Medical Evaluation With The Joint Medical Specialist

On July 21, 2023, the Committee sent a notice to Plaintiff, requesting an opinion from its medical specialist concerning Plaintiff's request for reasonable accommodation, and unilaterally scheduled an appointment with their selected medical provider on August 1, 2023. Plaintiff refused to see this medical specialist because he was not an Ophthalmologist, nor was he familiar with Plaintiff's medical condition, and most importantly, Plaintiff had already submitted medical notes from his treating Ophthalmologist from the University of California, Los Angeles, Department of Ophthalmology.

On July 22, 2023, Plaintiff wrote a correspondence to PMA indicating that the request to participate in Special Medical Examination/Opinion by the Committee's choice of doctor was a violation of the ADA. Plaintiff explained that the Enforcement Guidance on Disability Related Inquiries and Medical Examination under the ADA, and under the EEOC's Enforcement Guidance about the ADA rules for when an employer may and may not obtain medical information about their employees was being violated by the Committee's requests for a Special Medical Examination/ Opinion.

Plaintiff did not consent to this evaluation, and he wrote that he would not consent to this evaluation; however, without his written consent, PMA, specifically Williams, sent Dr. Deutsch Plaintiff's medical notes, and Dr. Deutsch performed an examination of Plaintiff, using the medical notes from Dr. Coleman. To be clear, Plaintiff did not attend the appointment, nor did he sign a release or consent for Dr. Deutsch to evaluate him. Willaims knew this and still disseminated Plaintiff's confidential medical information. This was an overt violation of Plaintiff's HIPAA rights.

On September 20, 2023, Dr. Deutsch wrote to PMA, Mr. Williams: "Based on the letter from Mr. Greene's treating physician, I would recommend the following

16

LAW OFFICE OF
NANCYROSE
HERNANDEZ

restrictions. 'No driving in areas where lack of peripheral vision endangers Mr. Greene or others. No working in high traffic areas. No climbing ladders or gangways. Work only in areas that are well lit. Use magnifier as needed'" These initial restrictions that Dr. Deutsch provided mirrored the recommendation from Dr. Coleman. Williams never shared this email with Plaintiff, concealing its contents.

In his declaration, Williams affirms that during his call with Dr. Deutsch, he asked Dr. Deutsch for clarification regarding his initial documented restrictions, and in response, Dr. Deutsch asked for details about Watchmen duties. Williams admits, *under oath*, that he only provided **driving duties**. This influenced Dr. Deutsch to change his initial restrictions, demonstrating PMA's discriminatory motives. (Williams Decl,. ¶39)

Williams did not merely "relay" information. The record supports that Williams personally transmitted Plaintiff's medical notes to Dr. Deutsch even though Plaintiff objected to and did not consent to a special medical examination or employer-directed medical review, and Williams caused/influenced Dr. Deutsch to change his initial recommendation after asking for a phone call.

A reasonable jury may view this conduct as an exercise of control over Plaintiff's employment-related medical information and a direct role in the process that led to the adverse determination about Plaintiff's fitness to work. At minimum, it creates a triable dispute as to PMA's direct participation in and responsibility for conduct that materially affected Plaintiff's employment status.

### H. JPWLRC Subjects Plaintiff to Adverse Employment Action

Plaintiff engaged in protected activity beginning in April 2023 and continuing to date, when he disclosed his disability to all Defendants, requested reasonable accommodations, reported discrimination, harassment, and retaliation, submitted a grievance, and demanded a cease and desist from sharing his confidential medical information without his consent. Thereafter, Plaintiff was subjected to adverse

17

LAW OFFICE OF
NANCYROSE
HERNANDEZ

employment action. The JPWLRC's December 10, 2024, decision to place Plaintiff on non-dispatch status constitutes a discrete and adverse retaliatory act in direct response to Plaintiff's accommodation request, and is not a neutral administrative decision, as pretextually guised (FAC ¶115).

## I. Plaintiff's Claims Against PMA Are Proper Because PMA Was Plaintiff's Joint Employer And Carried Out FEHA-Regulated Activity As A Business Agent For Employers

[T]o recover under the discrimination in employment provisions of the FEHA, the aggrieved plaintiff must be an employee."; *Stern v. California State Archives,* 982 F. Supp. 690, 692 (E.D. Cal. 1997) ("Section 12112(a) prohibits discrimination by any covered entity. The ADA defines covered entity as an employer, employment agency, labor organization, or joint labor-management committee.") (internal quotations omitted); *Clackamas Gastroenterology Assocs., P.C. v. Wells,* 538 U.S. 440, 446 & n.6 (2003). ("the meaning of the term 'employee' comes into play when determining whether an individual is an 'employee' who may invoke the ADA's protections against discrimination in 'hiring, advancement, or discharge'); *Reno v. Baird*, 18 Cal. 4th 640, 644 (1998) (citing Cal. Gov. Code § 12940(a)) ("FEHA . . . prohibits only 'an employer' from engaging in improper discrimination.").

PMA was a covered agency and controlled the mechanics of Plaintiff's accommodation process in a manner consistent with a functional decision-maker.

This case differs from PMA's cited authorities, in *Anderson v. Pac. Maritime Ass'n,* 336 F.3d 924, 929-32 (9th Cir. 2003) and *McCoy v. Pacific Maritime Association,* 216 Cal. App. 4th at 301-303. Both cases similarly found that PMA did not have "the requisite right to control the manner and means by which [the plaintiff] performed work for Member Employers." However, here, PMA controlled the manner and means of the accommodation process with Plaintiff and directly communicated with Plaintiff and medical providers to make decisions.

LAW OFFICE OF
NANCYROSE
HERNANDEZ

PMA joined in the December 10, 2023, decision to place Plaintiff on non-dispatch, terminating his employment, because all Defendants determined that Plaintiff could not perform the essential functions of his job duties with reasonable accommodation. PMA's letter dated January 29, 2025, and additional letter dated February 7, 2025, demonstrate Williams utilized this centralized platform to operate authoritatively as "The Employers," executing a permanent, port-wide dispatch lockout and flatly rejecting the collaborative intervention of the DOR. Because PMA administers the CBA that dictates whether a worker has an active career on the waterfront, a triable issue of material fact exists as to its joint-employer liability.

PMA's own separate statement materials characterize PMA as performing centralized operational functions for member companies and the JPWLRC, including "scheduling JPWLRC meetings," "preparing and sending communications," and "serving as the centralized recordkeeper maintaining personnel, medical, and training records." These are not trivial functions where the subject matter is an employee's eligibility to work; they are the administrative levers by which the interactive process is conducted and by which work status is implemented and enforced.

Consistent with that central role, Plaintiff's communications regarding accommodations for participation in the interactive process meetings were directed to PMA's representative, Williams, with coordination involving Local 26. The record reflects Williams acknowledged Plaintiff's requests, proposed how accommodations would be handled, and indicated the meeting would be rescheduled if Plaintiff did not accept PMA's proposed accommodations - conduct reflecting discretion and control over the process rather than mere ministerial note-taking.

For example, Williams wrote to Plaintiff, *copying Local 26 and PMA representatives*, in connection with accommodations and meeting scheduling,

19

LAW OFFICE OF
NANCYROSE
HERNANDEZ

emphasizing the Committee's proposed accommodations and indicating that if Plaintiff found them unacceptable the committee would reschedule and continue discussing the request. That record supports a reasonable inference that PMA, through Williams, managed the interactive process communications and controlled how and when Plaintiff's accommodation requests would be heard and processed.

### J. PMA Is A Joint Employer, And Plaintiff Therefore Can Attribute Liability to PMA

*U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.,* 915 F.3d 631, 638 (9th Cir. 2019) (holding that the common-law test focused on "the element of control" determine whether a joint employment relationship exists in Title VII cases) (citing *Clackamas*, 538 U.S. at 448).

"The broad purpose of the ADA," 271 F. 3d, at 905, is consistent with the statutory purpose of ridding the Nation of the evil of discrimination. See 42 U. S. C. § 12101(b).

Under the ADA and FEHA, joint employer status is established where an entity, even if not the direct payroll employer, retains or exercises the right to control the worker's employment, particularly the authority to control the manner and means of work and to affect the worker's continued access to employment opportunities.

Here, PMA was involved in all meetings addressing Plaintiff's request for reasonable accommodation and joined in all decisions. That authority is quintessential control over a material term and condition of employment: the ability to obtain assignments and earn wages. When an entity controls the gatekeeping mechanism that determines whether a worker may work, that entity necessarily controls a core incident of the employment relationship.

### K. PMA Carried Out FHEA and ADA-Regulated Activities On Behalf of Employers As A Agent of Employers

PMA was the controlling entity carrying out the FEHA and ADA-related activities on behalf of Employers.

20

LAW OFFICE OF
NANCYROSE
HERNANDEZ

This case involves coordinated decision-making among Defendants regarding Plaintiff's purported inability to perform the job's essential functions with reasonable accommodation, followed by a unilateral placement of Plaintiff on non-dispatch status. This is not a series of isolated decisions by separate actors; it is a concerted employment determination that directly controlled Plaintiff's access to work. Where entities jointly participate in an employment decision and the decision is implemented through a shared or centralized system controlled by one of those entities, each participating entity bears responsibility for the resulting discriminatory or unlawful outcome.

PMA's involvement is particularly significant because the consequence of the collective determination of Plaintiff's non-dispatch status operates through a mechanism over which PMA possesses authority. PMA cannot claim it was merely a bystander while simultaneously controlling the instrumentality that effectuated the adverse action. By administering or controlling all communications with Plaintiff, gathering information, and sharing Plaintiff's medical records demonstrates that PMA is a co-decisionmaker and a necessary link in the chain of causation.

As documented in an email thread on October 20, 2023, Plaintiff explicitly challenged PMA regarding the stall on his September 11, 2023, medical examination files, demanding to know: *"What is the status of my request for reasonable accommodations for work?"* Rather than engaging in a good-faith interactive process, PMA utilized classroom logistics to mask an ongoing, multi-year administrative deep-freeze of LBCT Complaint EC-0024-2023 and APMT Complaint EC-0018-2023, which directly culminated in the absolute lockout finalized in ADA Joint Committee Minutes dated December 10, 2024, leaving triable issues of material fact.

### L. Plaintiff Can Establish a Prima Facie Case For Discrimination, Harassment, And Retaliation

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." Id. § 12112(b)(5)(A).

### 1. Disability Discrimination and Retaliation Claims

A prima facie case of discrimination requires Plaintiff to show that (1) he is a member of a protected class (disabled); (2) his employer subjected him to an adverse employment action; and (3) other circumstances suggesting discriminatory motive. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 355 (2000).

To establish a prima facie case for retaliation under Lab. Cd. § 1102.5, plaintiff "must prove that he engaged in protected activity, such as a disclosure under subdivision (b) or a refusal to participate under subdivision (c), that he was subjected to adverse employment action by his employer, and that there was a causal link between the [protected activity] and the adverse action." *City of Whittier v. Everest Nat'l Ins. Co.,* 97 Cal. App. 5th 895, 907 (2023), as modified on denial of reh'g (Dec. 26, 2023)

PMA argues there is "zero evidence" it subjected Plaintiff to an adverse employment action. That assertion cannot be reconciled. PMA participated in, took, and caused adverse actions that were ruinous to Plaintiff's ability to work, his economic security, and his professional standing in the dispatch-based system that governs Watchmen employment.

Plaintiff's communications memorialize that the Committee's December 10, 2024 decision both (1) denied his ADA accommodations and (2) placed him on non-dispatch "across all ILWU Local 26 and PMA terminals," i.e., the very system through which watchmen obtain work. Plaintiff's subsequent written demands sought clarification from Williams of whether the Committee "stand[s] by its

LAW OFFICE OF
NANCYROSE
HERNANDEZ

December 10 decision" to deny accommodations and impose non-dispatch status, and whether that decision had been lifted or modified - requests that underscore the seriousness and ongoing effect of the exclusion from dispatch.

PMA attempts to avoid adverse-action liability by characterizing itself as powerless: it "does not assign jobs," has "no power to hire or fire," and had "no vote" on whether Plaintiff would be accepted for dispatch. But the evidence permits a contrary inference: that PMA, through its representative(s), participates in and effectuates decisions through the joint port labor relations apparatus that controls whether a watchman can return to work.

Plaintiff's record identifies Williams as part of the Committee composition at the time of the December 10, 2024 non-dispatch placement. Plaintiff also documents communications directed to "Mr. Williams, Ms. Gratz, and Committee Members" demanding clarification about the Committee's decision to deny accommodations and impose non-dispatch across PMA terminals - communications that, viewed in the light most favorable to Plaintiff, reflect PMA's operational involvement in the very process that excluded Plaintiff from work.

### 2. Plaintiff's Harassment Claim

To prevail on a disability-based harassment claim under FEHA or the ADA, Plaintiff must show that he was subjected to unwelcome conduct because of his disability that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1).

PMA contends the harassment "basis" is limited to an isolated incident involving a statement at a training concerning checking driver's licenses; however, Plaintiff's FAC alleges a broader disability-based hostile environment encompassing derogatory statements about Plaintiff's vision, mockery, ostracism, interference with investigation, and ongoing denial/withdrawal of accommodations resulting in exclusion from work. (FAC ¶¶ 36, 37, 76, 139-146) Plaintiff alleges

23

LAW OFFICE OF
NANCYROSE
HERNANDEZ

he is disabled within the meaning of the ADA/FEHA; he alleges unwelcome conduct explicitly targeting his disability, statements and actions centered on his inability to "see," ridicule and ostracism, and a pattern of conduct excluding him from work; he alleges resulting harm including humiliation, emotional distress, and loss of work opportunities; and he alleges PMA's involvement and notice through PMA's role in administering and communicating positions on behalf of the Employers and through receipt of Plaintiff's harassment/discrimination complaints and requests for investigation.

### 3. Plaintiff's Failure to Accommodate and Failure to Engage in the Interactive Process Claims

"[O]nce an employee requests an accommodation … , the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. So. Cal. Edison Co.,* 302 F.3d at 1089 (9th Cir. 2022). "The interactive process requires communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001); *Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000), vacated on other grounds sub nom., *US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002) ("Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process."). This process allows the employer and employee to "come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodation the employee." *Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018). The employer's obligation to engage is "mandatory." *Anthony v. Trax Int'l Corp.,* 955 F.3d 1123, 1134 (9th Cir. 2020). It also "extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey,* 239 F.3d at 1138. "An employer cannot prevail at the summary

24

LAW OFFICE OF
NANCYROSE
HERNANDEZ

judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." Id. (quoting *Barnett,* 288 F.3d at 1116). "[I]f an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." Snapp, 889 F.3d at 1095.

PMA positioned itself as the entity through which the accommodation request must be submitted, acknowledged, discussed, and resolved. PMA assumed a central role in the interactive process and cannot now disclaim responsibility for how that process was conducted or why it failed. The December 10, 2024, JPWLRC minutes establish that the "Employers" reached and communicated a determination that Plaintiff could not perform the essential functions of a watchman "with or without a reasonable accommodation," and that the Employers "would not accept" Plaintiff's dispatch "to any terminal at this time." Those minutes reflect that PMA's representative participated in the meeting and that PMA approved the minutes memorializing the committee's decision. This is not a record of an independent terminal employer acting alone. It is a record of a joint committee process -one that PMA staffs, hosts, and approves - making a collective determination that foreclosed accommodations and prevented Plaintiff from working.

Plaintiff made several requests for accommodation, directed to Williams, including a specific request for the DOR to perform a worksite assessment at the terminals. There is a question of whether Williams obstructed and/or delayed the interactive process by not forwarding all Plaintiff's requests for accommodations to the Employers, demonstrating a genuine issue of material fact exist.

### 4. Plaintiff's Wrongful Termination in Violation of Public Policy Claim

The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury sounding in tort. See

25

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330].

Plaintiff's complaints went beyond his claims under the ADA and FEHA. He submitted grievances, demanded the cease and desist from sharing his confidential medical information, disclosed and opposed the cancelation of his health insurance. PMA representative, Willimas, was responsible for disclosing Plaintiff's confidential medical information without Plaintiff's consent – an act that violates strong public policy. As a result of said employment relationship, Employers were obligated to refrain from wrongfully terminating Plaintiff, or any employee, for reasons which violate or circumvent said policy, law, or the objectives which underlie each and not to compound their illegal conduct.

### 5.  Plaintiff's Punitive Damages Claim

Plaintiff is entitled to seek punitive damages where Plaintiff proves by clear and convincing evidence that Defendant engaged in "oppression, fraud, or malice." (Cal. Civ. Code § 3294(a).) Under § 3294(c), "malice" means (i) conduct intended by the defendant to cause injury, or (ii) "despicable conduct" carried on by the defendant with a willful and conscious disregard of the rights or safety of others. "Oppression" means "despicable conduct" that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (Cal. Civ. Code § 3294(c).) "Despicable" conduct is conduct that is base, vile, or contemptible— conduct that ordinary decent people would regard as atrocious and utterly intolerable in a civilized community.

Defendants' conduct was a deliberate course of conduct undertaken with willful and conscious disregard for Plaintiff's protected rights and safety. By choosing to ignore or shut down the accommodation process, Defendants knowingly exposed Plaintiff to foreseeable harm: deterioration of health, increased risk of injury, and loss of employment-related stability. This is "malice" within the meaning of §

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

3294(c) because it reflects despicable conduct carried out with a willful and conscious disregard of Plaintiff's statutory rights and well-being.

Defendants' conduct also meets the definition of "oppression" under § 3294(c) because Defendant subjected Plaintiff to cruel and unjust hardship, in conscious disregard of Plaintiff's rights, through a pattern of actions that compounded Plaintiff's vulnerability and undermined Plaintiff's ability to protect basic interests. Plaintiff alleges that Defendants shared Plaintiff's confidential medical information without Plaintiff's consent. Medical information is inherently private, and employees have a fundamental right to be free from unjustified disclosure of sensitive health data. Disseminating such information without authorization is a serious invasion of privacy that predictably results in humiliation, stigma, and fear of further misuse. Such conduct is despicable because it exploits an employee's medical vulnerability and disregards the employee's dignity and legal rights.

Plaintiff further alleges that Defendant's conduct inhibited Plaintiff's right to earn a living. An employer's conscious disregard of statutory accommodation duties paired with actions that impair an employee's continued work imposes acute hardship by jeopardizing wages, job security, and long-term employability. When an employer knowingly places an employee's livelihood at risk rather than comply with basic legal obligations, the resulting hardship is cruel and unjust.

## IV.   CONCLUSION

In short, Plaintiff has shown that there are triable issues as to material facts and that the moving party is not entitled to a judgment as a matter of law. Discovery and argument will add further detail later. Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment with Prejudice.

//

//

27

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Dated: June 25, 2026

LAW OFFICE OF NANCYROSE HERNANDEZ

By: /s/ Nancyrose Hernandez
Nancyrose Hernandez
Attorney for Plaintiff
ENOCH GREENE

**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,766 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S, PMA,
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ