NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff ENOCH GREENE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 5:25-cv-01359-KK-CTSx <br><br> **PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, TTI'S, MOTION FOR SUMMARY JUDGMENT** <br><br> <u>Hearing on Summary Judgment</u> <br><br> Date: Thursday July 16, 2026 <br> Time: 9:30 a.m. <br> Place: Riverside, Courtroom 3 <br> Honorable Kenly Kiya Kato <br> United States District Judge <br><br> Date Action Filed: June 2, 2025 <br> FAC Filed: June 20, 2025 <br> Trial Date: September 28, 2026 |

1

LAW OFFICE OF
NANCYROSE
HERNANDEZ

**Table of Contents**

I.  INTRODUCTION _____ 6

II.  FACTUAL BACKGROUND _____ 8

III.  SUMMARY JUDGMENT LEGAL STANDARD _____ 12

A.  Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact _____ 12

B. PMA Representatives Had Apparent Authority To Operated In Their Official Capacity On Employer's Behalf _____ 12

C. Plaintiff's ADA and FEHA Claims Are Not Barred Because Plaintiff Timely Exhausted Administrative Remedies. _____ 13

D. Plaintiff's 1102.5 Retaliation Claim Is Not Time Barred _____ 16

E. Plaintiff's Wrongful Termination Claim Is Not Time Barred _____ 17

IV.  PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION _____ 17

V.  PLAINTIFF'S SECOND CAUSE OF ACTION FOR DISABILITY-BASED HARASSMENT IN VIOLATION OF ADA AND FEHA IS PROPER_____ 19

VI.  PLAINTIFF'S THIRD CAUSE OF ACTION FOR FAILURE TO ACCOMMODATE IN VIOLATION OF ADA AND FEHA IS PROPER_____ 20

VII.  PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IS PROPER _____ 21

VIII.  PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION IS PROPER ____ 23

IX.  PLAINTIFF'S SIXTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY IS PROPER _____ 24

X.  PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES IS PROPER _____ 25

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

XI.    CONCLUSION _____ 27

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Cases

*Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab.,*74 f. Supp. 3d at 1180 (N.D. Cal. 2014)….. 24

*American Soc'y of Mech. Eng'rs v. Hydrolevel, 456 U.S. 566 (1982)* ..........................................12

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)..........................................................12

*Anderson*, 477 U.S. at 249 ...........................................................................................................12

*Anthony v. Trax Int'l Corp.,* 955 F.3d 1123, 1134 (9th Cir. 2020)………………………………22

*Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000)………………………………..21

*B.K.B v. Maui Police Dept.,* 276 F.3d 1091, 1100 (9th Cir. 2002) ..............................................14

*Brooks v. Capistrano Unified Sch. Dist.,* 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014)………18, 23

*Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir. 1993)……………………………….20

*Diego v. Pilgrim United Church of Christ* (2014) 231 CA4th 913, 922, 180 CR3d 359, 365-366
    ...................................................................................................................................................16

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1)……19

*Hellman v. Weisberg,* 360 F. App'x 776, 778 (9th Cir. 2009)………………………………18, 23

*Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001)………………………..21

*Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359
(9th Cir. 1975) ..............................................................................................................................14

*Laughon v. Int'l Alliance of Theatrical Stage Employees*, 248 F.3d 931 (9th Cir. 2001) .............15

*Love v. Pullman Co.,* 404 U.S. 522, 527 (1972)..........................................................................15

*Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)..........................................................18, 23

*Richards v CH2M Hill,* Inc. (2001) 26 Cal.4th 798 [111 Cal.Rptr.2d 87] ..................................14

*Romano b. Rockwell Internat, Inc.* 14 Cal. 4th 479, 492(1996) ..................................................13

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

*Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir. 1970) ...........................................15

*School Bd. of Nassau Cnty. v. Arline,* 480 U.S. at 287 n.17……………………………………..20

*Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018)………………………….22

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330]……………………………………………………………………………………. 25

*Turner v. Anheuser-Busch* (1994) 7 Cal.4th 1238 and *California Government Code 12940* .......17

*United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam) ......................................12

*US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002)………………………………………….21

*Walton v. U.S. Marshals Serv.,* 492 F.3d at 1005 (9th Cir. 2007) ................................................18

*Yonemoto v. McDonald,* 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015)……………………...18, 23

*Zukle v. Regents of Univ. of Cal*., 166 F.3d 1041, 1047 (9th Cir. 1999)………………………...20

*Zivkovic v. So. Cal. Edison Co.,* 302 F.3d at 1089 (9th Cir. 2022)……………………………21

Statutes

ADA...................................................................................................................................17, 19

FEHA………………………………………………………………………………………….13, 17, 18

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff, ENOCH GREENE'S ("Plaintiff"), claims against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), include disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA), retaliation, and wrongful termination in violation of public policy.

Plaintiff is a Registered Watchman and member of Local 26, employed at various terminals within the Ports of Los Angeles and Long Beach. Plaintiff has maintained his position of employment since August 2004. Plaintiff became a Registered Watchman in February 2013, working under the CBA between ILWU and the PMA (Greene Decl., ¶ 7). This registration entitles Plaintiff to receive dispatches from any of the four PMA-represented Employers, including: TTI, SSA, APM, and LBCT (Collectively "Employers") (Greene Decl., ¶ 8). Each of these Employers simultaneously employs Watchmen under the joint dispatch hall system, and they collectively provide ILWU Members with employment benefits. Throughout his employment with the Employers, Plaintiff successfully completed the job duties of checking IDs, monitoring and processing big rig trucks in and out of the terminals, checking labor workers, transporting individuals, and maintaining safety in the various terminals (Greene Decl., ¶ 10).

Article 25 of the Collective Bargaining Agreement (CBA) for ILWU Local 26, identifies the four signatory Employers in all labor matters with ILWU Local 26: LBCT, APM, TTI, SSA (Green Decl., ¶ 51 Ex. O).

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The Joint Port Watchmen's Labor Relations Committee (JPWLRC) is made up of Employer representatives from LBCT, APM, TTI, SSA, PMA, and Local 26. The Committee meets at LRC Meetings to discuss business, including without limitation Employer Complaints and general business. The Committee was involved in all meetings held in response to Plaintiff's request for reasonable accommodation (Greene Decl., ¶ 9). For TTI, either representative, Blake Glassco, was present, or a representative from PMA, Ryan Willimas or Andrew Prickett. On December 10, 2024, the Committee met with Plaintiff and informed him that the Employers, including TTI placed him on non-dispatch because of his disability, effectively terminating his employment (Hernandez Decl., ¶ 16 Ex. N).

TTI's assertion that this case has nothing to do with TTI is factually incorrect. Plaintiff is a Registered Watchmen, and through the CBA, he is entitled to dispatch at the TTI terminal on any given shift. Plaintiff's claims are not time-barred, as TTI admittedly joined in the Employer's decision to refuse to accommodate him or allow him to return to work at the terminals, effective December 10, 2024. Additionally, TTI's Senior Manager, Blake Glassco, was present at the LRC meetings; therefore, TTI was involved in the refusal to accommodate and failure to engage in the good faith interactive process, as described in Plaintiff's First Amended Complaint (FAC).

From April 15, 2023 through December 10, 2024, Plaintiff was eligible to dispatch for work at TTI. Despite being eligible for dispatch as of December 10, 2024, Plaintiff was denied available work at TTI due to refusal to accommodate Plaintiff. During this time, Plaintiff had no employer complaints or performance-related issues at TTI (Greene Decl., ¶ 12).

On December 10, 2024, Plaintiff was suspended from working at TTI, placed on "Precautionary Disability Suspension," preventing his access to assignments at TTI through the standard dispatching system, effectively preventing Plaintiff from earning a living (Greene Decl., ¶ 48 Ex. L).

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## II.    FACTUAL BACKGROUND

Plaintiff was diagnosed with primary open angle glaucoma (POAG) of both eyes. Plaintiff is a qualified individual with physical disabilities and can perform the essential functions of his job with reasonable accommodations (Greene Decl., ¶38, 39, 40 Ex. B, C, D).

Plaintiff alleges that, beginning in or about April 2023, he notified all Employers of a qualifying disability and formally requested reasonable accommodations to continue performing his job duties (Greene Decl., ¶37 Ex. A).

After submitting his medical note and requesting reasonable accommodation, Plaintiff successfully performed the job duties of a Watchmen at LBCT, APM, and SSA terminals without issue until December 26, 2023, which was the last date he was authorized to work at any terminal (Greene Decl., ¶15).

On May 8, 2023, Plaintiff requested the following accommodations from the Employers: 1) No harassment or discrimination from coworkers, sergeants, or management; 2) No driving assignment for passenger van or bus; 3) No disclosure of medical information; 4) Email and regular mail correspondence for all communications; 5) Shuttle bus transportation to and from the gangway and various assignment posts as needed; 6) Magnifiers; 7) Large print for all reading materials; 8) Extra time for reading, writing, testing, and exam; 9) Computer reader software for checking I.D.'s at terminals using computer for I.D. check; 10) Label all radio and vehicle keys in the radio rooms (Greene Decl., ¶16).

To place a Watchmen on non-dispatch which means they cannot work at the terminal, an Employer must submit an Employer Complaint against a Watchmen. The Complaint is then adjudicated by the Committee, including the Employers, PMA and ILWU, to find a resolution. Once resolved, the discipline will be implemented, e.g. training, suspension, or the Complaint will be dropped, allowing the Watchman to return to dispatch and work. Each Employer does not get involved with the Complaints at other terminals, but instead, the terminal at issue

LAW OFFICE OF
NANCYROSE
HERNANDEZ

will impose the discipline and resolution with the Watchmen. Employer Complaints are a regular practice at the terminals, as a means of writing Watchmen up. For accidents, which are common and daily at the terminals, Employers typically drop the complaint, impose training, and sometimes, impose a suspension, but then ultimately resolve the Complaint to enable the Watchman to return to work. This regular practice was not implemented with Plaintiff, demonstrating discriminatory, disparate treatment against Plaintiff.

On July 21, 2023, the Committee, which included a representative from TTI, sent a notice to Plaintiff, requesting an opinion from its medical specialist concerning Plaintiff's request for reasonable accommodation, and unilaterally scheduled an appointment with their selected medical provider on August 1, 2023. Plaintiff refused to see this medical specialist because he was not an Ophthalmologist, nor was he familiar with Plaintiff's medical condition, and most importantly, Plaintiff had already submitted medical notes from his treating Ophthalmologist from the University of California, Los Angeles, Department of Ophthalmology (Greene Decl., ¶¶17, 18).

On July 22, 2023, Plaintiff wrote a correspondence to PMA indicating that the request to participate in Special Medical Examination/Opinion by the Committee's choice of doctor was a violation of the ADA. Plaintiff explained that the Enforcement Guidance on Disability Related Inquiries and Medical Examination under the ADA, and under the EEOC's Enforcement Guidance about the ADA rules for when an employer may and may not obtain medical information about their employees was being violated by the Committee's requests for a Special Medical Examination/ Opinion (Greene Decl., ¶19).

Plaintiff did not consent to this evaluation, and he wrote that he would not consent to this evaluation; however, without his written consent, PMA, specifically Ryan Williams, sent Dr. Deutsch Plaintiff's medical notes, and Dr. Deutsch performed an examination of Plaintiff, using the medical notes from Dr. Coleman

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

(Greene Decl., ¶20). Plaintiff did not attend the appointment, nor did he sign a release or consent for Dr. Deutsch to evaluate him.

On September 18, 2023, Plaintiff contacted Williams to confirm that he received Plaintiff's medical examination letter from his Ophthalmologist. He also requested the Employers provide him with temporary accommodations during this period while the Parties were in discussions about his eligibility for reasonable accommodation under the ADA.

On October 7, 2023, SSA's MNC granted Plaintiff accommodation, and Plaintiff worked at that terminal, performing the essential functions of his job with reasonable accommodation until December 26, 2023 (Greene Decl., ¶22). On December 10, 2023, all terminal Employers, including TTI determined that Plaintiff could not perform the essential functions of his job with or without reasonable accommodation and have refused to authorize Plaintiff to return to work.

Plaintiff was working 112 hours a week, making approximately $250,000 in 2022(Greene Decl., ¶25). However, after disclosure of his medical condition and request for reasonable accommodations, to which he was denied, Plaintiff's hours were reduced to seventy (70) hours per week for yearly pay of $160,000.00 (Greene Decl., ¶26). Since February 12, 2024, Plaintiff has been denied the opportunity to return to work, resulting in no income (Greene Decl., ¶27). Plaintiff has suffered significant financial injuries from the Employers' refusal to accommodate, resulting in his termination from his employment (Greene Decl., ¶31). Plaintiff suffers from severe emotional distress, sleepless nights, anxiety, depression, diarrhea, suicidal ideation, physical and emotional pain and suffering, resulting from the Employer's unlawful acts (Greene Decl., ¶33).

On January 20, 2025, Plaintiff sent an email to Employers to formally renew his request for reasonable accommodations to enable him to perform the essential functions of his position as a Watchman at the Port of Los Angeles and Long

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Beach. Plaintiff wrote that his initial request for accommodations was made in April 2023; however, no accommodations were implemented, and he has been unable to work since February 12, 2024. Plaintiff made the following requests: 1) Worksite Assessment: The Department of Rehabilitation (DOR) is prepared to conduct a thorough assessment of [his] worksite to identify appropriate accommodations that will empower [him] to perform [his] essential job functions (Greene Decl., ¶29). As noted in his previous correspondence, Plaintiff's ophthalmologist, optometrist, and occupational therapist have all provided recommendations affirming his ability to perform the essential functions of his job with the appropriate accommodations. The DOR's support, along with these professional recommendations, ensured that Plaintiff is well-equipped to fulfill his role effectively and safely. Despite these resources and professional recommendations, the Employers' failure to provide accommodations has caused severe financial injuries, significant mental health stress, physical health issues, and other related personal challenges. All Employer refused to respond to Plaintiff's request to have the DOR perform a worksite assessment (Greene Decl., ¶30).

Despite TTI's contention that it has a reasonable accommodation policy in place prohibiting unlawful discrimination, harassment, and retaliation, this policy is specifically for TTI employee, not Local 26 Watchmen. Watchman are not entitled to this policy, nor did TTI engage Plaintiff in the reasonable accommodation policy despite his multiple requests, spanning three years from April 2023 to present. TTI cannot argue that it would have accommodated Plaintiff in a hypothetical scenario when its own designated administrative agents co-signed a permanent port-wide lockout that operationally banned Plaintiff from entering TTI's terminal footprint. Plaintiff maintains his Registered Watchmen status to date; therefore, since TTI asserts it would have utilized this process with Plaintiff had he dispatched, Plaintiff is presently ready, willing, and able to participate in

LAW OFFICE OF
NANCYROSE
HERNANDEZ

this interactive process in good faith, and to cooperate with TTI in identifying, evaluating, and implementing reasonable accommodations, if TTI is agreeable.

To date, the Employers, including TTI refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## III.    SUMMARY JUDGMENT LEGAL STANDARD

### A. Summary Judgment May Not Be Granted Where There Are Triable Issues Of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Contrary to Defendant's argument, Plaintiff has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

### B. PMA Representatives Had Apparent Authority To Operated In Their Official Capacity On Employer's Behalf

In *American Soc'y of Mech. Eng'rs v. Hydrolevel, 456 U.S. 566 (1982)*, the Supreme Court upheld apparent authority as a legitimate doctrine under agency law, holding, "Under general rules of agency law, principals are liable when their agents act with apparent authority . . . An agent who appears to have authority to make statements for his principal gives to his statements the weight of the principal's reputation" Under the doctrine of apparent authority, when an individual acts on behalf of an employer and the employer permits or causes a third party to

LAW OFFICE OF
NANCYROSE
HERNANDEZ

reasonably believe the individual has authority, the employer is bound by that individual's representations and conduct. As is the case here, PMA representatives operated in official capacity on the Employers' behalf, and Plaintiff, as the requesting employee, had reasonable grounds to believe the representatives, including PMA's representatives, Williams and Pickett, were acting as authorized intermediaries in employment matters for the Employers, including as a representative for TTI (FAC ¶106).

### C. Plaintiff's ADA and FEHA Claims Are Not Barred Because Plaintiff Timely Exhausted Administrative Remedies.

The requirements of Title VII of the Civil Rights Act of 1964 apply to claims brought under the ADA. A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). This notice is accomplished through a right-to-sue letter that is issued when the EEOC does not bring suit based on the charge. (Id. at § 2000e-5(f)(1).)

ADA and FEHA claims require timely exhaustion of administrative remedies through an administrative charge filed with the relevant administrative agency before a lawsuit may be filed. *Romano b. Rockwell Internat, Inc.* 14 Cal. 4th 479, 492(1996) ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA"). California provides three years from the date of the **last discriminatory act** to file a complaint with the state's Civil Rights Department (CRD) under the FEHA (*See California Government Code 12960)*, and with a federal claim, the deadline is 300 days to file with the Equal Employment Opportunity Commission (EEOC) (*See 42 US Code 2000e-5*). Plaintiff complied with both deadlines. The last documented discriminatory act was December 10, 2024. Additionally, the Employers, including TTI continue to refuse to authorize Plaintiff to dispatch to work at the various terminals; thus, the discriminatory act and harm continue to date.

13

LAW OFFICE OF
NANCYROSE
HERNANDEZ

On May 16, 2024, Plaintiff timely filed his EEOC complaint: EEOC Charge No. 480-2024-02584 with a dual filing with the Civil Rights Department (CRD) in accordance with California Government Code section 12960 (Greene Decl., ¶34).

Contrary to TTI's assertion that Plaintiff filed nearly five years too late, from April 15, 2023 through December 10, 2024, Plaintiff was eligible to dispatch for work at TTI. Despite being eligible for dispatch at TTI since the onset of his employment in August 2004, on December 10, 2024, TTI joined all Employers in denying Plaintiff of work through the standard dispatch procedures, terminating his employment. The date of last harm to Plaintiff by TTI was December 10, 2024.

Under the continuous violation doctrine of the ADA and FEHA, *Richards v CH2M Hill,* Inc. (2001) 26 Cal.4th 798 [111 Cal.Rptr.2d 87], the filing of the Complaint on June 2, 2025, represents a timely, direct challenge to a live, ongoing industry-wide lockout. Plaintiff filed his formal EEOC Charge No. 480-2024-02584 against TTI on May 16, 2024, explicitly marking the discrimination as a "Continuing Action." This administrative baseline was fully codified on December 10, 2024, when TTI's co-managed grievance machinery, operating via the JPWLRC under Article 18 of the CBA, officially issued and signed Special LRC Minutes No. SCWM-0015-2024, declaring that the employers *"would not accept Mr. Greene's dispatch to any terminal."* Because Plaintiff's continuous registration status under Article 9 was preserved while this blanket dispatch freeze was actively enforced, the civil filing on June 2, 2025, falls squarely within all applicable federal and state statutory windows following a bad-faith breakdown of the interactive process. During this time, Plaintiff had no employer complaints or performance-related issues at TTI (Greene Decl., ¶35)

In *B.K.B v. Maui Police Dept.,* 276 F.3d 1091, 1100 (9th Cir. 2002), the Court construed the language of EEOC charges "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir. 1975)

14

LAW OFFICE OF
NANCYROSE
HERNANDEZ

abrogated on other grounds by *Laughon v. Int'l Alliance of Theatrical Stage Employees*, 248 F.3d 931 (9th Cir. 2001); cf. *Love v. Pullman Co.,* 404 U.S. 522, 527 (1972) (stating that "technicalities are particularly inappropriate in a statutory scheme [such as Title VII] in which laymen, unassisted by trained lawyers, initiate the process"). "[T]the crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir. 1970); accord *Kaplan*, 525 F.2d at 1359. As stated in *B.K.B,* in determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case. See *Farmer Bros.* , 31 F.3d at 899 (ruling that plaintiff exhausted her claim for discriminatory layoff since that claim was always a part of the plaintiff's theory of the case as expressed in her explicit allegations of discriminatory failure to recall and to rehire laid-off female employees).

Here, in Plaintiff's EEOC rebuttal to TTI's Position Statement, Plaintiff wrote: "On December 10, 2024, during my last interactive process meeting with the employers, I was notified that I was being placed on non-dispatch status by all four employers, including TTI. This decision barred me from receiving any further dispatches for work, despite my registration status remaining active. This action effectively placed me in a "precautionary disability suspension"—a status in which I remained employed under union registration but was prevented from working due to my documented disability and my request for reasonable accommodations. TTI's position mischaracterizes my employment by focusing solely on my most recent dispatch assignment, ignoring the structure of our union dispatch system. As

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

a registered ILWU Watchman, I am jointly employed by multiple PMA member employers. My registration was never revoked or suspended. I was—and continue to be—ready, willing, and able to work, yet I was systemically blocked from doing so due to the refusal to implement accommodations." (Greene Decl., ¶36).

In his dual EEOC and CRD charge against TTI, Plaintiff properly alleged his basis of the discrimination (refusal to accommodate, discrimination, harassment, and retaliation), dates of discriminatory acts (December 10, 2024 and continuing), perpetrators of discrimination named in the charge (TTI, as well as PMA, acting on behalf of TTI), and any locations at which discrimination was alleged to have occurred (TTI terminal and at the LRC meeting held on December 10, 2024).

## D. Plaintiff's 1102.5 Retaliation Claim Is Not Time Barred

California "Whistleblower" Statutes, including Labor Code §1102.5 forbid retaliation if the employee disclosed, or the employer believes he/she disclosed or may disclose, information to certain government agencies, to those with authority over the employee or authority to investigate, discover, or correct the employer's "violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." The statute reflects "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation;" *Diego v. Pilgrim United Church of Christ* (2014) 231 CA4th 913, 922, 180 CR3d 359, 365-366. California employees who face retaliation for blowing the whistle on workplace misconduct generally have three years to file a civil lawsuit under Labor Code Section 1102.5. *See* Code of Civil Procedure Section 338(a), which sets a three-year window for any claim based on a right created by statute.

16

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Because Plaintiff was eligible to dispatch for work at TTI from the onset of his employment on August 2004 to December 10, 2024, the last date of harm was December 10, 2024, when TTI joined all Employers in denying Plaintiff of work through the standard dispatch procedures, terminating his employment. The date of last harm to Plaintiff by TTI was December 10, 2024, *arguably continuing to date*. Plaintiff opposed and disclosed discrimination, harassment, and retaliation in violation of the FEHA and ADA, *inter alia*, including his right to privacy under HIPPA. Therefore, Plaintiff's retaliation claim is not time barred.

### E. Plaintiff's Wrongful Termination Claim Is Not Time Barred

In California, the statute of limitations for wrongful termination is either two years for public policy violations, or three years for FEHA violations or whistleblower retaliation. *See Turner v. Anheuser-Busch* (1994) 7 Cal.4th 1238 and *California Government Code 12940*.

Plaintiff was eligible to dispatch for work at TTI from the onset of his employment on August 2004 to December 10, 2024, and he was effectively terminated from his employment with TTI on December 10, 2024, when TTI joined all Employers in denying Plaintiff of work through the standard dispatch procedures. Plaintiff timely filed his Complaint on June 2, 2025. Therefore, Plaintiff's wrongful termination claim is not time barred.

## IV.   PLAINTIFF CAN STATE A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." Id. § 12112(b)(5)(A). An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform

LAW OFFICE OF
NANCYROSE
HERNANDEZ

the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

The third prong of a disability discrimination claim requires a plaintiff to show that he or she "suffered discrimination because of [his or] her disability." *Walton v. U.S. Marshals Serv.,* 492 F.3d at 1005 (9th Cir. 2007). Discrimination occurs when an employer fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); 29 U.S.C. § 791(f).

In the Ninth Circuit, "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Brooks v. Capistrano Unified Sch. Dist.,* 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ("The Ninth Circuit takes an expansive view of the types of action that qualify as an adverse employment action."). Actions may be adverse even if they do not "materially affect the terms and conditions of employment." *Ray,* 217 F.3d at 1242. The test is whether an action "is reasonably likely to deter employees from engaging in protected activity." Id. at 1243. Of course, "not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce an injury or harm." *Hellman v. Weisberg,* 360 F. App'x 776, 778 (9th Cir. 2009). "Context matters." *Yonemoto v. McDonald,* 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 69 (2006)).

TTI does not dispute whether Plaintiff was in fact a "qualified" individual, but instead argues that there is no evidence that Plaintiff suffered an adverse employment action during the time he worked at TTI. Plaintiff was eligible to dispatch for work at TTI from the onset of his employment on August 2004 to December 10, 2024, and he was effectively terminated from his employment with TTI on December 10, 2024, when TTI joined all Employers in denying Plaintiff of work through the standard dispatch procedures. Plaintiff has demonstrated adverse

18

LAW OFFICE OF
NANCYROSE
HERNANDEZ

employment action because of his disability, specifically on December 10, 2024, when TTI confirmed that it would not accept Plaintiff's dispatch at its terminal, terminating his employment because of his disability. Plaintiff never worked again because the Employers, including TTI refused to authorize his return to work through dispatch.

TTI's conduct materially affected the terms and conditions of Plaintiff's employment. Specifically, TTI's conduct of joining the Employers' and Local 26's position that the CBA does not provide for reasonable accommodations to Watchmen and refusing to accommodate him is an action that "is reasonably likely to deter employees from engaging in protected activity," like requesting reasonable accommodation.

Plaintiff can state a *prima facie* case for disability discrimination against TTI under the ADA and FEHA.

## V.   PLAINTIFF'S SECOND CAUSE OF ACTION FOR DISABILITY-BASED HARASSMENT IN VIOLATION OF ADA AND FEHA IS PROPER

To prevail on a disability-based harassment claim under FEHA or the ADA, Plaintiff must show that he was subjected to unwelcome conduct because of his disability that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); Cal. Gov. Code section 12940(j)(1).

TTI's sole argument is that Plaintiff's EEOC charge contains no allegation of disability-based harassment, and to the extent that Plaintiff alleges his charge does reflect allegations of disability-based harassment, his charge has nothing to do with TTI. First, TTI specifically responded to Plaintiff's harassment claim in its Position Statement submitted in response to his EEOC charge by providing its policy prohibiting harassment, demonstrating TTI had knowledge that Plaintiff was alleging disability-based harassment. Second, TTI was involved in the LRC

19

LAW OFFICE OF
NANCYROSE
HERNANDEZ

meetings regarding Plaintiff's request for accommodations, and specifically joined in the decision to place Plaintiff on non-dispatch, altering the conditions of his employment. TTI was involved in this decision and cannot evade liability by simply asserting that Plaintiff did not work at TTI, which is nonsensical and false, since TTI intentionally joined in the decision to not accept Plaintiff's dispatch to any terminal, including TTI.

## VI.    PLAINTIFF'S THIRD CAUSE OF ACTION FOR FAILURE TO ACCOMMODATE IN VIOLATION OF ADA AND FEHA IS PROPER

If an employee requires an accommodation to perform the essential functions of his job, a court must "consider whether any 'reasonable accommodation' by the employer would enable the [employee] to perform those functions." *School Bd. of Nassau Cnty. v. Arline,* 480 U.S. at 287 n.17. Plaintiff bears the "initial burden" of "showing the existence of a reasonable accommodation." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir. 1999) (internal citations omitted). He need "only provide evidence sufficient to make 'at least a facial showing that reasonable accommodation is possible.'" *Buckingham v. United States,* 998 F.2d 735, 740 (9th Cir. 1993). Once Plaintiff "establishe[s] the existence of a reasonable accommodation," then "the burden switches to the defendant to show that this accommodation would constitute an undue hardship." *Zukle*, 166 F.3d at 1047. An "[a]ccommodation is not reasonable if it either imposes undue financial and administrative burdens on [the employer]" or "requires a fundamental alteration in the nature of the program." *Arline*, 480 U.S. at 287 n.17 (internal citations omitted)

As stated by TTI, Plaintiff's EEOC charge contends that on April 29, 2023, he requested and was refused accommodation. This request was made at several LRC meetings with TTI's representative, Mr. Glassco, present. At the LRC meetings, Plaintiff requested reasonable accommodations from all Employers, including TTI. During this time and until December 10, 2024, Plaintiff was eligible to dispatch at

20

LAW OFFICE OF
NANCYROSE
HERNANDEZ

TTI; however, since December 10, 2024, TTI joined all Employers in the position that Plaintiff was ineligible for dispatch because of his disability, hence naming TTI as a joint defendant in this action.

TTI asserts that had Plaintiff attempted to work at TTI, it would have engaged in the interactive process with him to determine whether there was a reasonable accommodation that would permit him to perform the essential functions of the job position. First, TTI confirmed that this policy was not part of the CBA for Local 26 Watchmen. This is a policy for its internal employees. Second, TTI was present at the LRC meetings held on May 8, 2023 and May 22, 2023, addressing Plaintiff's request for reasonable accommodation; therefore, it had knowledge Plaintiff was requesting reasonable accommodation, it utterly failed to go through its alleged policy with Plaintiff, and most importantly, it denied Plaintiff's request for accommodation by placing him on non-dispatch, effective December 10, 2024 (Hernandez Decl., ¶ Ex. E, F).  Plaintiff has sufficiently stated a claim for failure to accommodate.

## VII.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IS PROPER

"[O]nce an employee requests an accommodation … , the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. So. Cal. Edison Co.,* 302 F.3d at 1089 (9th Cir. 2022). "The interactive process requires communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Assp'n,* 239 F.3d 1128, 1137 (9th Cir. 2001); *Barnett v. US Air, Inc.,* 288 F.3d 1105, 1114–15 (9th Cir. 2000), vacated on other grounds sub nom., *US Airways, Inc. v. Barnett,* 535 U.S. 391 (2002) ("Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process."). This process allows the employer and employee to "come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle

LAW OFFICE OF
NANCYROSE
HERNANDEZ

ground for accommodation the employee." *Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018). The employer's obligation to engage is "mandatory." *Anthony v. Trax Int'l Corp.,* 955 F.3d 1123, 1134 (9th Cir. 2020). It also "extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphrey,* 239 F.3d at 1138. "An employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." Id. (quoting *Barnett*, 288 F.3d at 1116). "[I]f an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." Snapp, 889 F.3d at 1095.

Plaintiff's response is the same as the analysis in Plaintiff's failure to accommodate claim. As stated by TTI, Plaintiff's EEOC charge contends that on April 29, 2023, he requested and was refused accommodation. This request was made at several LRC meetings with TTI's representative, Mr. Glassco, present. At the LRC meetings, Plaintiff requested reasonable accommodations from all Employers, including TTI. During this time and until December 10, 2024, Plaintiff was eligible to dispatch at TTI; however, since December 10, 2024, TTI joined all Employers in the position that Plaintiff was ineligible for dispatch because of his disability, hence naming TTI as a joint defendant in this action.

TTI asserts that had Plaintiff attempted to work at TTI, it would have engaged in the interactive process with him to determine whether there was a reasonable accommodation that would permit him to perform the essential functions of the job position. This is an admission that TTI failed to engage in communication and good-faith exploration of possible accommodations with Plaintiff. Both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process. TTI admits it did not communicate directly with Plaintiff, it

LAW OFFICE OF
NANCYROSE
HERNANDEZ

did not exchange essential information, and it delayed and obstructed the process by joining in the determination that Plaintiff be placed on non-dispatch at <u>all</u> terminals because of his disability without going through its written reasonable accommodation policy with Plaintiff. TTI confirmed that this policy was not part of the CBA for Local 26 Watchmen. TTI was present at the LRC meetings held on May 8, 2023 and May 22, 2023, addressing Plaintiff's request for reasonable accommodation; therefore, it had knowledge Plaintiff was requesting reasonable accommodation, it utterly failed to go through its alleged policy with Plaintiff, and most importantly, it denied Plaintiff's request for accommodation by placing him on non-dispatch, effective December 10, 2024. Plaintiff has sufficiently stated a claim for failure to engage in the interactive process.

## VIII.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION IS PROPER

In the Ninth Circuit, "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Brooks v. Capistrano Unified Sch. Dist.,* 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ("The Ninth Circuit takes an expansive view of the types of action that qualify as an adverse employment action."). Actions may be adverse even if they do not "materially affect the terms and conditions of employment." Ray, 217 F.3d at 1242. The test is whether an action "is reasonably likely to deter employees from engaging in protected activity." Id. at 1243. Of course, "not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce an injury or harm." *Hellman v. Weisberg,* 360 F. App'x 776, 778 (9th Cir. 2009). "Context matters." *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1103 (D. Haw. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

LAW OFFICE OF
NANCYROSE
HERNANDEZ

"Courts have generally held that causation can be inferred from timing alone where the adverse action follows closely on the heels of the protected activity." *Lee v. Natomas Unified Sch. Dist.,* 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015). "When an adverse action closely follows a complaint, retaliatory intent may be inferred." Id. "The plaintiff has the burden to present evidence that establishes a link between his protected activity and any adverse employment action." *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab.,*74 f. Supp. 3d at 1180 (N.D. Cal. 2014).

Plaintiff engaged in protected activity beginning in April 2023 and continuing to date, when he disclosed his disability to <u>all</u> Defendants, including TTI, requested reasonable accommodations, reported discrimination, harassment, and retaliation, submitted a grievance, and demanded a cease and desist from sharing his confidential medical information without his consent (Greene Decl., ¶16). Thereafter, Plaintiff was subjected to adverse employment action. Employers' December 10, 2024, decision to place Plaintiff on non-dispatch status constitutes a discrete and adverse retaliatory act in direct response to Plaintiff's accommodation request, and is not a neutral administrative decision, as pretextually guised (FAC ¶115). On December 10, 2024, TTI placed Plaintiff on non-dispatch for precautionary disability suspension. There were no active employer complaints on file with TTI or any new incident that would justify this action. Following Plaintiff's disability-related request for accommodations, TTI refused to provide the necessary adjustments. From April 15, 2023, to December 10, 2024, despite being eligible for dispatch, Plaintiff was unable to pick up assignments due to TTI's failure to accommodate his disability (FAC ¶116).

## IX.    PLAINTIFF'S SIXTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY IS PROPER

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury sounding in tort. *See Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330].

California's public policies protecting employees who report workplace concerns would be rendered meaningless if employers were permitted to encourage employees to utilize internal complaint mechanisms and then punish those same employees for doing so. Employees must be free to raise concerns regarding management conduct, discrimination, harassment, retaliation, inconsistent treatment, denial of fair investigation, disclosure of confidential medical information without consent, and workplace conditions without fear that their complaints will become the basis for disciplinary action or termination.

That is precisely the case here. Plaintiff's complaints went beyond his claims under the ADA and FEHA. He submitted grievances, demanded the cease and desist from sharing his confidential medical information, disclosed and opposed the cancelation of his health insurance. As a result of said employment relationship, Employers were obligated to refrain from wrongfully terminating Plaintiff, or any employee, for reasons which violate or circumvent said policy, law, or the objectives which underlie each and not to compound their illegal conduct.

## X.   PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES IS PROPER

Plaintiff is entitled to seek punitive damages where Plaintiff proves by clear and convincing evidence that Defendant engaged in "oppression, fraud, or malice." (Cal. Civ. Code § 3294(a).) Under § 3294(c), "malice" means (i) conduct intended by the defendant to cause injury, or (ii) "despicable conduct" carried on by the defendant with a willful and conscious disregard of the rights or safety of others. "Oppression" means "despicable conduct" that subjects a person to cruel and

LAW OFFICE OF
NANCYROSE
HERNANDEZ

unjust hardship in conscious disregard of that person's rights. (Cal. Civ. Code § 3294(c).) "Despicable" conduct is conduct that is base, vile, or contemptible—conduct that ordinary decent people would regard as atrocious and utterly intolerable in a civilized community.

Plaintiff alleges that Defendants refused to engage in the interactive process and thereafter refused to provide reasonable accommodations despite being on notice of Plaintiff's medical condition and the need for accommodation. The interactive process and provision of reasonable accommodations are not discretionary courtesies; they are statutory protections designed to safeguard employees' health, continued employment, and equal access to the workplace.

Defendants' conduct was a deliberate course of conduct undertaken with willful and conscious disregard for Plaintiff's protected rights and safety. By choosing to ignore or shut down the accommodation process, Defendants knowingly exposed Plaintiff to foreseeable harm: deterioration of health, increased risk of injury, and loss of employment-related stability. This is "malice" within the meaning of § 3294(c) because it reflects despicable conduct carried out with a willful and conscious disregard of Plaintiff's statutory rights and well-being.

Defendants' conduct also meets the definition of "oppression" under § 3294(c) because Defendant subjected Plaintiff to cruel and unjust hardship, in conscious disregard of Plaintiff's rights, through a pattern of actions that compounded Plaintiff's vulnerability and undermined Plaintiff's ability to protect basic interests.

Plaintiff alleges that Defendants shared Plaintiff's confidential medical information without Plaintiff's consent. Medical information is inherently private, and employees have a fundamental right to be free from unjustified disclosure of sensitive health data. Disseminating such information without authorization is a serious invasion of privacy that predictably results in humiliation, stigma, and fear of further misuse. Such conduct is despicable because it exploits an employee's medical vulnerability and disregards the employee's dignity and legal rights.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff further alleges that Defendant's conduct inhibited Plaintiff's right to earn a living. An employer's conscious disregard of statutory accommodation duties paired with actions that impair an employee's continued work imposes acute hardship by jeopardizing wages, job security, and long-term employability. When an employer knowingly places an employee's livelihood at risk rather than comply with basic legal obligations, the resulting hardship is cruel and unjust.

Taken together, these actions demonstrate oppressive conduct under § 3294(c): despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights to privacy, equal treatment, and continued access to essential employment benefits.

Punitive damages are designed to punish and deter conduct that transcends ordinary wrongdoing. Here, the alleged acts in refusing to engage in the interactive process, refusing reasonable accommodations, disclosing confidential medical information, inhibiting Plaintiff's ability to earn a living, and canceling health coverage during a medical crisis are not isolated technical violations. They are a coordinated sequence of choices that predictably inflicted severe harm.

## XI.   CONCLUSION

In short, Plaintiff has shown that there are triable issues as to material facts and that the moving party is not entitled to a judgment as a matter of law. Discovery and argument will add further detail later. Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment with Prejudice.

//
//
//
//
//

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Dated: June 25, 2026                LAW OFFICE OF NANCYROSE HERNANDEZ


By: /s/ Nancyrose Hernandez
    Nancyrose Hernandez
    Attorney for Plaintiff
    ENOCH GREENE


**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,747 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S,
TTI'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ