NANCYROSE HERNANDEZ 312097
LAW OFFICE OF NANCYROSE HERNANDEZ APC
38975 Sky Canyon Drive, Suite 207
Murrieta, CA 92563
Tel: (951) 708-1497
Fax: (951) 905-1632
Email: nancyrose@nrhlawoffice.com

Attorney for Plaintiff, ENOCH GREENE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ENOCH GREENE, an individual,

           Plaintiff,

     v.

LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive,

           Defendants.

Case No. 5:25-cv-01359-KK-CTSx

**PLAINTIFF, ENOCH GREENE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S, ILWU'S, MOTION FOR SUMMARY JUDGMENT**

<u>Hearing on Summary Judgment</u>

Date: Thursday July 16, 2026
Time: 9:30 a.m.
Place: Riverside, Courtroom
Honorable Kenly Kiya Kato
United States District Judge

Date Action Filed: June 2, 2025
FAC Filed: June 20, 2025
Trial Date: September 28, 2026

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Table of Contents

I.    INTRODUCTION _____4

II.   FACTUAL BACKGROUND _____4

III.  ADMINISTRATIVE AND PROCEDURAL HISTORY _____15

IV.   SUMMARY JUDGEMENT LEGAL STANDARD_____15

  A.  Summary Judgement May Not Be Granted Where There Are Triable Issues
Of Material Fact _____16

V. ARGUMENT_____16

  A.  The Watchmen's Agreement Does Not Establish, as a Matter of Law, the
Essential Functions of Every Watchman Assignment_____ 16

  B.  ILWU Has Not Established that Plaintiff's Requested Accommodations
Necessarily Violated the Watchmen's Agreement or Destroyed the Dispatch
System. _____18

  C.  Genuine Issues of Material Fact Exist Regarding Whether Plaintiff was a
Qualified Individual Capable of Performing Available Watchman Assignments
_____21

  D.  ILWU Has Not Established the Direct-Threat Defense as a Matter of Law 23

  E.  Genuine Issues of Material Fact Exist Regarding ILWU's Good-Faith
Participation in the Accommodation Process. _____24

  F.  Genuine Issues of Material Fact Exist Regarding Plaintiff's Remaining
Statutory Claims for Discrimination, Harassment, Retaliation, and Pretext. ___26

V.    CONCLUSION _____29

## Cases

*Anderson*, 477 U.S...............................................................................................16, 22

*Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) .......................................16

*Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 991 (9th Cir. 2007)....................17

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014) ..............................................................................................................28

*Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) ..............................................................................................................29

*Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001) ........................17

*Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) .................25

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015)...28

*Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1170 (E.D. Cal. 2015)...29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ......16

*Ray v. Henderson*, 217 F.3d 1234, 1240, 1242 (9th Cir. 2000) .............................28

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009).................................................................................................17, 20

*Rorrer v. City of Stow*.............................................................................................16

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) .................16

## Statutes

ADA ....................................................................................................................17, 20

FEHA…………………………………………………………………………………...17

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff, ENOCH GREENE'S ("Plaintiff"), claims against Defendants, LONG BEACH CONTAINER TERMINAL, INC. ("LBCT"), PACIFIC MARITIME ASSOCIATION ("PMA"), APM TERMINALS PACIFIC LLC ("APM"), ILWU LOCAL 26 ("ILWU"), TOTAL TERMINALS INTERNATIONAL LLC ("TTI"), and SSA TERMINALS LLC ("SSA") (Collectively "Defendants"), include disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the good faith interactive process in violation of the Fair Employment and Housing Act (FEHA) and Americans with Disabilities Act (ADA), retaliation, and wrongful termination in violation of public policy.

### II.   FACTUAL BACKGROUND

Plaintiff is a Registered Watchman and member of International Longshore and Warehouse Union ILWU Local 26 who worked throughout the Ports of Los Angeles and Long Beach since approximately 2004, and became a Registered Watchman in 2013. Through the dispatch system established under the Watchmen's Agreement, Plaintiff performed assignments for Long Beach Container Terminal ("LBCT"), APM Terminals Pacific LLC ("APM"), SSA Terminals LLC ("SSA"), Total Terminals International LLC ("TTI"), and other Pacific Maritime Association ("PMA") employers. His duties included gate operations, identification verification, traffic monitoring, radio-room assignments, gangway duties, transportation functions, and other security-related work. Greene Dep. 27:8-31:24.

The Watchmen's Agreement recognizes multiple classifications and terminal-specific assignments, including gangway watchmen, rover watchmen, traffic watchmen, relief watchmen, video-monitoring assignments, and other security-related functions. Grant Dep. 45:17-22; 177:20-24; Greene Dep. 97:21-

LAW OFFICE OF
NANCYROSE
HERNANDEZ

98:22. The dispatch system itself operated through a common labor-relations framework involving PMA, ILWU, participating employers, and the Joint Port Watchmen's Labor Relations Committee ("JPWLRC"). As a result, decisions concerning dispatch eligibility, accommodations, employer complaints, and labor-relations issues affected Plaintiff's ability to obtain work throughout the broader Watchman system rather than at any single terminal.

On April 15, 2023, Plaintiff disclosed that he suffered from primary open-angle glaucoma and significant vision impairment and submitted medical documentation from his treating ophthalmologist, Dr. Anne Coleman. Dr. Coleman did <u>not</u> conclude that Plaintiff was incapable of performing Watchman work. Coleman Dep. 54:15-20; 54:23-55:3. Rather, she identified accommodations and restrictions designed to permit continued employment, including magnification devices, enlarged displays, larger print materials, additional assistance with visual tasks, and restrictions involving oversized passenger vehicles and certain high-risk visual activities. Coleman Dep. 16:12-17:5; 17:6-18:9; 27:1-11; 42:19-43:6. Throughout 2023, Dr. Coleman consistently maintained that Plaintiff could continue working if provided appropriate accommodations.

Following disclosure of his condition, Plaintiff informed terminal supervisors of his restrictions and was reassigned. He successfully completed those assignments without incident. Greene Dep. 29:17-25; 29:1-16; Grant Dep. 127:1-11; 53:17-23. On April 29, 2023, Plaintiff formally notified PMA, ILWU, and the JPWLRC that he had already worked under reassignment following disclosure of his disability and requested accommodations that would permit him to continue performing Watchman duties.

At the same time, ILWU maintained no written reasonable-accommodation policy, no formal accommodation procedure, and no training concerning disability accommodations. Plaintiff sought ILWU's assistance in obtaining reasonable accommodations through the collective bargaining process. Gratz nevertheless

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

testified that she did not assist Plaintiff with his accommodation requests and, when asked what accommodations she considered for Plaintiff, answered: "None." Gratz Dep. 40:1; 156:6-8.

On May 1, 2023, before either vehicle-related incident had occurred, Plaintiff reported that LBCT supervisors questioned his ability to work because of his vision, monitored his activities, discussed his medical condition, and stated that he should not be working on the waterfront because he was a liability. Plaintiff reported these concerns through labor-relations channels and requested investigation and review. On May 2, 2023, Plaintiff requested accommodation for a shuttle-bus assignment and was instructed to leave the assignment after the request was denied. On May 8, 2023, Plaintiff submitted a detailed accommodation request that included restrictions involving passenger vans and buses, transportation assistance, magnification devices, enlarged print materials, computer-reader technology, accessible communications, identification-verification assistance, and other accommodations directed toward his visual limitations. Greene Dep. 15:14-15; 33:14-21. Two days later, Plaintiff was denied a work assignment.

The May 8 and May 22, 2023, JPWLRC meetings became the centerpiece of Plaintiff's accommodation efforts. Plaintiff proposed accommodations, including transportation assistance, magnification devices, enlarged print materials, software assistance, assignment modifications, and other assistive technologies. Greene Dep. 15:14-15; 33:14-21. Gratz testified that ILWU attended those meetings, read provisions of the Watchmen's Agreement, she relied upon Plaintiff's work history as evidence he could work without accommodation, provided Plaintiff materials she believed limited ADA protections for security work, and proposed referral to a Joint Medical Specialist rather than advocating for any specific accommodation. Gratz Dep. 69:20-21; 78:9; 80:8-19; 81:17-23. Gratz further acknowledged that none of Plaintiff's requested accommodations were ultimately approved through

6

LAW OFFICE OF
NANCYROSE
HERNANDEZ

the JPWLRC process. Gratz Dep. 89:16-91:2; 155:5-9. Plaintiff contends that the process increasingly focused on contractual objections rather than whether available accommodations would permit continued employment.

On June 12, 2023, Plaintiff was involved in a vehicle-related incident at LBCT while operating a pickup truck that collided with an Automated Guided Vehicle ("AGV"). LBCT later filed Employer Complaint EC-0008-2023 and placed Plaintiff on non-dispatch status. Plaintiff sought review through the Safety Committee process and challenged both the conclusions reached and the manner in which the investigation was conducted. Plaintiff repeatedly requested witness statements, investigative materials, safety records, video footage, accident reports, and information concerning the conduct of AGV operator Marc Policastro. Plaintiff also presented evidence that he believed raised questions regarding visibility conditions, compliance with safety procedures, and the conduct of other participants involved in the incident. Plaintiff's requests were denied.

Safety Committee Representative Tiyuana Blair sought to investigate the accident and later raised concerns regarding the handling of the investigation. Blair later reported that her investigation had been curtailed before completion and that evidence favorable to Plaintiff had not been fully considered. Blair filed a separate grievance alleging that ILWU President Luisa Gratz unilaterally halted the investigation and prevented completion of the Safety Committee review. As accommodation discussions continued, ILWU's position regarding accommodations became increasingly clear and increasingly central to Plaintiff's ability to obtain work – ILWU overtly refused to accommodate Plaintiff.

During her deposition as ILWU's designated PMK, Gratz testified that accommodations affecting Watchman assignments constituted direct dealing, implicated collectively bargained dispatch procedures, and could not occur outside the JPWLRC process. Gratz Dep. 47:11-49:11; 57:17-58:2; 93:1-94:15. Most significantly, Gratz acknowledged that no accommodations were ultimately

7

LAW OFFICE OF
NANCYROSE
HERNANDEZ

approved for Plaintiff despite repeated requests, multiple meetings, extensive medical documentation, and Dr. Coleman's opinion that Plaintiff could function safely and effectively with accommodations. Gratz Dep. 89:16-91:2; 135:6-136:22; 155:5-9. Plaintiff contends that ILWU increasingly evaluated accommodation requests through the lens of contractual compliance rather than through the individualized accommodation analysis required by the ADA and FEHA.

Gratz further testified that she personally contacted SSA after receiving complaints from other Watchmen and advised that Plaintiff could no longer be accommodated because other members believed their contractual rights were being violated. Gratz Dep. 141:1-20. Plaintiff contends that this testimony demonstrates ILWU actively opposed accommodations after other members objected rather than advocating on Plaintiff's behalf as his exclusive bargaining representative.

On June 29, 2023, PMA responded to Plaintiff's accommodation request and proposed accommodations that included assistance reviewing written materials and providing documents in digital format. Plaintiff contends that those proposals did not meaningfully address the accommodations recommended by Dr. Coleman. Plaintiff continued requesting accommodation updates, grievance assistance, dispatch information, and clarification regarding available accommodations, but contends many requests remained unanswered or were redirected among PMA, ILWU, participating employers, and the JPWLRC.

While Plaintiff continued supplying accommodation information, PMA initiated a separate medical-review process. On July 21, 2023, the JPWLRC notified Plaintiff that it was seeking review from an industry medical specialist concerning his accommodation request. Plaintiff objected and maintained that he had already supplied sufficient medical documentation through Dr. Coleman.

Nevertheless, PMA proceeded with additional review through Dr. James Deutsch. Discovery later revealed that PMA supplied Dr. Deutsch with Plaintiff's medical records and sought his opinion regarding accommodation eligibility. On

8

LAW OFFICE OF
NANCYROSE
HERNANDEZ

August 10, 2023, Dr. Deutsch advised PMA that he required additional visual acuity information from Dr. Coleman. Dr. Coleman supplied that information on September 7, 2023. On September 20, 2023, Dr. Deutsch initially recommended restrictions that largely mirrored Dr. Coleman's recommendations, including restrictions involving driving, high-traffic areas, gangways, lighting conditions, and use of magnification devices. Grant Dep. 138:24-139:6; Coleman Dep. 32:17-33:15.

Following additional communications with PMA, however, Dr. Deutsch later issued a substantially broader report stating that Plaintiff could not perform duties involving peripheral vision, identification verification, visual inspections, or gangway work. Plaintiff contends that this later report materially departed from both Dr. Coleman's recommendations and Dr. Deutsch's initial assessment. Defendants thereafter relied heavily on the Deutsch report in concluding that Plaintiff could not perform the essential functions of Watchman work with or without accommodation. Grant Dep. 120:23-121:8.

The record reflected competing medical opinions. Dr. Coleman maintained Plaintiff could continue working with accommodations, while Dr. Deutsch later expanded his restrictions following additional communications with PMA. Other employers subsequently accommodated Plaintiff and permitted him to continue working. Plaintiff later worked under accommodations at SSA. Plaintiff contends that these competing assessments created a factual dispute regarding whether he could perform available Watchman assignments with reasonable accommodation and whether exclusion from all dispatch opportunities was warranted.

Throughout the accommodation process, ILWU repeatedly treated contractual concerns as dispositive. Discussions repeatedly focused on whether accommodations constituted direct dealing, whether assignment modifications were permissible under the Watchmen's Agreement, and whether accommodations could exist within the dispatch system. Plaintiff contends that ILWU's focus on

9

LAW OFFICE OF
NANCYROSE
HERNANDEZ

contractual compliance displaced the individualized accommodation analysis required by the ADA and FEHA. Plaintiff further contends that ILWU never meaningfully evaluated whether particular accommodations could be implemented consistently with the Watchmen's Agreement. Instead, ILWU repeatedly concluded that accommodations constituted direct dealing, impermissible modifications of the CBA, or favoritism toward Plaintiff without separately evaluating whether individual accommodations could be implemented without disrupting the dispatch system.

At the same time, other participants reached materially different conclusions. Other employers explored temporary accommodations and permitted Plaintiff to continue working while management assessed what duties he could safely perform. Grant Dep. 24:23-29:5; 41:14-42:6; 47:11-48:6. Plaintiff successfully performed assignments during this period and accommodations remained under consideration. Greene Dep. 138:17-139:6; Grant Dep. 127:1-11; 53:17-23. On August 17, 2023, Plaintiff was involved in a separate off-duty vehicle incident involving his personal vehicle and a stationary vehicle belonging to an APM manager. Plaintiff contends that the incident involved minor damage, no injuries, and no citations. Although Plaintiff was initially permitted to continue working, APM later filed Employer Complaint EC-0018-2023 and placed Plaintiff on non-dispatch status. On August 25, 2023, Plaintiff requested that Union Representative Vince Ferrigno file grievances concerning disability discrimination, retaliation, harassment, denial of accommodation, and what Plaintiff viewed as double discipline arising from the same incident.

Even after the June and August incidents, accommodation discussions continued, as Plaintiff remained persistent in his requests. On September 18 and September 22, 2023, Plaintiff again requested temporary accommodations and accessible communications while the medical-review process remained pending. Beginning on October 7, 2023, Plaintiff worked under accommodations at SSA's

10

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Matson operation and continued performing assignments through December 26, 2023. Greene Dep. 35:11-25; 36:9-17; 37:19-20; 37:24-38:1; 199:2-6. Plaintiff points to this work as evidence that accommodation-based employment remained possible even after the incidents.

On October 23, 2023, Plaintiff was advised that he was again eligible for dispatch at LBCT. On October 30, 2023, Plaintiff reported for a properly dispatched assignment at LBCT but was turned away and denied the opportunity to work. On November 2, 2023, LBCT again placed Plaintiff on non-dispatch status, **not because of an employer complaint, but because of his disability**. During the same period, Plaintiff continued pursuing grievance relief, dispatch eligibility, accommodations, and authorization to return to work.

The inconsistency between Plaintiff's reinstatement and subsequent exclusion became the subject of additional grievance activity. Following Plaintiff's reinstatement to dispatch eligibility effective October 23, 2023, Plaintiff reported for dispatched assignments but was denied work opportunities and later returned to non-dispatch status. ILWU grievance materials acknowledged that Plaintiff was eligible to dispatch to LBCT while simultaneously disputing the denial of work opportunities following his reinstatement. Plaintiff contends that these events reflected continuing disagreement regarding what assignments he could perform, whether accommodations remained available, and whether Defendants had already reached conclusions regarding his ability to work notwithstanding accommodations that had previously been implemented.

Gratz further testified that all eight terminals operated under the same CBA and dispatch structure. Although Gratz expressed concerns that accommodations created dissatisfaction among members and could create precedent for other workers seeking accommodations, she was unable to identify specific members who had been harmed by Plaintiff's accommodations or specific instances in which Plaintiff had injured another employee. At the same time, she acknowledged that

11

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Plaintiff had worked for years with a vision condition and was unaware of any instance in which Plaintiff had killed or physically harmed another worker.

In November 2023, LBCT acknowledged that it had accommodated Plaintiff through gangway assignments but later withdrew or refused those accommodations and relied on the June 12 incident as justification. Plaintiff continued working under accommodations at SSA until December 26, 2023. He remained on medical leave from December 28, 2023 through February 12, 2024. Upon his return, accommodations that had previously permitted him to continue working were no longer available. Plaintiff contends that previously granted accommodations were revoked and that he was effectively excluded from dispatch opportunities despite continuing requests for accommodation and reinstatement.

Throughout 2024, Plaintiff continued participating in the process. He submitted additional medical documentation, accommodation proposals, specialist evaluations, rehabilitation recommendations, and assistive technology requests. On or about November 16, 2024, Plaintiff submitted additional recommendations involving screen magnification, text-to-speech technology, optical character recognition tools, digital note-taking assistance, and professional note-taking support.

On December 10, 2024, Plaintiff appeared before the JPWLRC concerning his accommodation request. Plaintiff requested accommodations including screen magnification, text-to-speech functionality, voice-command features, digital note-taking, optical character recognition technology, and a professional note-taker. The Committee ultimately communicated the Employers' determination that Plaintiff could not perform the essential functions of Watchman work with or without accommodation and that dispatch opportunities would no longer be available. Grant Dep. 118:18-121:8. Plaintiff objected and maintained that the determination was inconsistent with Dr. Coleman's recommendations, his successful performance of accommodated assignments, and the accommodations that had previously been

LAW OFFICE OF
NANCYROSE
HERNANDEZ

implemented. Coleman Dep. 54:15-20; 54:23-55:3. In response, Gratz expressly stated that "the law does not permit ADA accommodations for security work" and further confirmed that granting accommodations would violate the Watchmen's Agreement. Gratz Dep. 177:22-178:3. She stated that there had been no accommodations or light-duty assignments granted during her tenure and that Watchmen unable to perform <u>all</u> duties could not be dispatched. Plaintiff further contends that ILWU's position hardened despite additional resources becoming available. On January 29, 2025, the California Department of Rehabilitation ("DOR") offered worksite evaluations, assistive technology, low-vision aids, and other resources intended to facilitate continued employment. Gratz testified that she nevertheless informed the Department that the requested accommodations were not reasonable and that Plaintiff could not perform security work with his limitations. Gratz Dep. 177:22-178:6. **Plaintiff contends that this response reflects Gratz's personal categorical opposition to accommodations rather than an individualized assessment of available accommodations.**

Plaintiff renewed his accommodation request through the CDR which offered worksite evaluations, assistive technology, low-vision aids, transportation assistance, ergonomic evaluations, and other services intended to facilitate Plaintiff's continued employment. The DOR specifically expressed its willingness to collaborate regarding Plaintiff's return to work and stated its view that Plaintiff remained capable of performing his job duties with appropriate supports. Gratz testified that, rather than pursuing the DOR's offer, she contacted the agency and advised that Plaintiff's requested accommodations were not reasonable, that the ADA did not permit a person with Plaintiff's limitations to perform security work, and that the DOR did not understand the nature of waterfront operations. Gratz Dep. 176:24-177:3; 177:9-178:19; 179:2-7. Plaintiff contends that ILWU rejected the DOR's proposed accommodations without permitting the individualized worksite evaluation or collaborative process the agency had offered.

13

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Viewed as a whole, the record reflects repeated accommodation requests, repeated medical support for accommodation, repeated proposals for assistive technology and assignment modifications, and repeated contractual objections from ILWU. Plaintiff contends that ILWU maintained no accommodation framework, approved none of Plaintiff's proposed accommodations, opposed accommodations implemented by other employers, rejected assistance offered by the CDR, and increasingly evaluated Plaintiff's requests through the lens of the CBA rather than the individualized accommodation analysis required by the ADA and FEHA, blatantly <u>obstructing</u> the interactive process. According to Plaintiff, that approach ultimately resulted in his exclusion from the dispatch system despite competing medical evidence and successful accommodated work.

To date, the Employers refuse to accommodate Plaintiff, refuse to authorize Plaintiff's return to work, have obstructed and delayed the good faith interactive process, and have ultimately terminated Plaintiff's employment.

## III.    ADMINISTRATIVE AND PROCEDURAL HISTORY

Beginning in 2023, Plaintiff pursued accommodation requests, grievance procedures, labor-relations remedies, and administrative complaints arising from Defendants' handling of his disability, accommodation requests, dispatch eligibility, and continued employment as a Watchman.

Plaintiff filed administrative charges alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and related violations of federal and state law. Plaintiff also pursued relief through labor-relations channels, including grievances, arbitration requests, requests for committee review, and proceedings before the Joint Port Watchmen's Labor Relations Committee.

Throughout 2023, 2024, and 2025, Plaintiff continued seeking accommodations, challenging employer complaints, requesting reinstatement to

14

LAW OFFICE OF
NANCYROSE
HERNANDEZ

dispatch eligibility, requesting records and meeting minutes, and pursuing review of decisions affecting his ability to continue working as a Watchman.

After exhausting his administrative remedies, Plaintiff commenced this action asserting claims for disability discrimination, harassment, failure to provide reasonable accommodation, failure to engage in the interactive process, retaliation, and wrongful termination in violation of public policy.

On June 20, 2025, Plaintiff filed the operative First Amended Complaint (FAC). The FAC alleges that Defendants unlawfully denied accommodations, interfered with the interactive process, improperly excluded Plaintiff from dispatch opportunities, and ultimately prevented him from continuing his employment because of his disability and accommodation requests.

Following discovery, Defendants filed motions for summary judgment challenging Plaintiff's claims. Defendants contend that Plaintiff could not perform the essential functions of the Watchman position with or without accommodation and that no triable issues of material fact exist. Plaintiff disputes those contentions and maintains that the record contains substantial evidence creating genuine disputes concerning the essential functions of Watchman work, the availability of accommodations, the adequacy of the interactive process, the significance of competing medical opinions, the role of ILWU and the JPWLRC in accommodation decisions, and Plaintiff's ability to perform Watchman duties with reasonable accommodation.

## IV.   SUMMARY JUDGMENT LEGAL STANDARD

### A. Summary Judgment May Not Be Granted Where There Are Triable Issues of Material Fact

Summary Judgment is an appropriate procedure to dispose of claims only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The trial court reviewing a claim at the summary judgment stage should

LAW OFFICE OF
NANCYROSE
HERNANDEZ

not attempt to resolve disputed factual issues. Rather, it should only determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curiam). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Contrary to Defendant's argument, Plaintiff has genuine issues of material fact as to each cause of action, established by his deposition testimony, declaration, Defendant's Person Most Knowledgeable ("PMK") deposition testimony, and admissible documentary evidence.

## V.    ARGUMENT

### A. The Watchmen's Agreement Does Not Establish, as a Matter of Law, the Essential Functions of Every Watchman Assignment.

ILWU's motion begins with the premise that the Watchmen's Agreement itself conclusively establishes the essential functions of every Watchman assignment and therefore resolves Plaintiff's ADA and FEHA claims as a matter of law. That premise is both legally and factually incorrect.

Courts routinely reject attempts to define a position solely by reference to selected duties while ignoring actual workplace practice. In *Rorrer v. City of Stow*, the Sixth Circuit reversed summary judgment where the employer asserted that emergency vehicle driving was an essential function of firefighting, but the record demonstrated that firefighters routinely divided driving responsibilities, some firefighters never drove apparatus, and accommodations could have been implemented without eliminating the position itself. 743 F.3d 1025, 1043-45 (6th

16

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Cir. 2014). Likewise, the Ninth Circuit has emphasized that determining whether a duty constitutes an essential function is a "highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). Although collectively bargained job duties are relevant evidence, they are not dispositive under either the ADA or FEHA. An employer "may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009). Moreover, the Ninth Circuit has held that "the burden of production lies with the employer to come forward with evidence of those essential functions." *Bates v. United Parcel Serv.*, Inc., 511 F.3d 974, 991 (9th Cir. 2007).

ILWA does not meet that burden. Instead, it simply assumes that because various duties appear throughout the Watchmen's Agreement, every listed duty necessarily constitutes an essential function of every Watchman assignment at every terminal. ILWU's own evidence demonstrates otherwise. Gratz testified that Watchmen are not dispatched to specific jobs, that there is no guarantee a Watchman will perform any particular assignment, and that Watchmen frequently perform multiple assignments during a single shift depending on operational needs. Gratz Decl. ¶ 9. Likewise, Article 1 of the CBA provides that Watchmen "may" be assigned to perform certain duties, reflecting flexibility in assignments rather than a requirement that every watchman perform every listed task during every shift. Gratz Decl. ¶ 12.

These admissions directly undermine ILWU's contention that driving every vehicle, performing every transportation assignment, and completing every listed task constitute essential functions of every Watchman assignment as a matter of law. Instead, they demonstrate that Watchman duties vary depending upon the terminal, the assignment, and operational needs, precisely the type of factual dispute that precludes summary judgment.

17

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The factual record likewise reflects that Plaintiff continued performing Watchman work after disclosing his disability. Following reassignment, Plaintiff successfully performed accommodated work, and participating employers implemented temporary accommodations while evaluating available assignments. Plaintiff's treating ophthalmologist, Dr. Coleman, repeatedly concluded that Plaintiff could continue working if appropriate accommodations were implemented and specifically stated that Plaintiff should be able to function safely and effectively at work with accommodations. Coleman Dep. 54:15-20; 54:23-55:3.

Viewed in the light most favorable to Plaintiff, the record presents competing evidence regarding the actual duties performed by Watchmen, the flexibility of those assignments, and Plaintiff's ability to perform available work with reasonable accommodation. Because those issues remain genuinely disputed, ILWU has failed to establish that the CBA conclusively defines the essential functions of every Watchman assignment or that Plaintiff was incapable of performing available Watchman work as a matter of law.

**B. ILWU Has Not Established that Plaintiff's Requested Accommodations Necessarily Violated the Watchmen's Agreement or Destroyed the Dispatch System.**

ILWU's motion next assumes that every accommodation requested by Plaintiff necessarily required bypassing the collectively bargained dispatch system, permanently assigning Plaintiff to a preferred position, and infringing upon the contractual rights of other Watchmen. The record does not support that characterization.

Throughout the accommodation process, Plaintiff proposed numerous accommodations designed to enable him to continue performing Watchman work, including transportation assistance, magnification devices, enlarged print materials, screen-reading software, optical character recognition technology, digital note-taking assistance, assignment modifications, and later the worksite evaluations,

18

LAW OFFICE OF
NANCYROSE
HERNANDEZ

assistive technology, and low-vision resources offered through the DOR. Greene Dep. 15:14-15; 33:14-21; 39:2-25; 40:1-19.

Rather than evaluating those proposed accommodations individually, ILWU repeatedly characterized accommodations as direct dealing, unilateral changes, light duty, favoritism, or violations of dispatch rules. Gratz Dep. 47:11-49:11; 57:17-58:2; 93:1-94:15. Gratz further testified that ILWU maintained no written accommodation policy, considered no accommodations for Plaintiff, and ultimately approved none despite repeated requests and meetings. Gratz Dep. 23:17-24:21; 25:14-21; 40:1; 89:16-91:2; 155:5-9; 156:6-8.

ILWU likewise relies heavily upon generalized assertions that accommodations would undermine the dispatch system and violate the contractual rights of other members. Those assertions, however, remain disputed factual questions rather than established facts. Although Gratz testified that other members complained about Plaintiff's accommodations and believed they affected dispatch rights, she was unable to identify any specific contractual provision that prohibited every accommodation Plaintiff proposed, any individualized analysis evaluating whether particular accommodations could be implemented consistently with the CBA, or any accommodation that ILWU actually attempted to negotiate before concluding that accommodations were unavailable.

ILWU similarly rejected assistance offered by the DOR. The DOR proposed worksite evaluations, assistive technology, transportation assistance, low-vision aids, and other resources intended to facilitate Plaintiff's continued employment while specifically expressing its willingness to collaborate regarding Plaintiff's return to work. Rather than participating in that process, Gratz testified that she informed the DOR that Plaintiff's requested accommodations were not reasonable and that the ADA did not permit a person with Plaintiff's limitations to perform security work. Gratz Dep. 176:24-177:3; 177:9-178:19; 179:2-7.

19

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

A reasonable jury could conclude from this record that ILWU rejected accommodations because of contractual assumptions rather than because the proposed accommodations actually conflicted with the CBA or would have dismantled the dispatch system. Whether one or more of Plaintiff's proposed accommodations could have been implemented consistently with the CBA presents a genuine issue of material fact that cannot be resolved on summary judgment.

The Ninth Circuit has repeatedly rejected efforts to define a position solely by reference to selected duties while ignoring the broader position and available assignments. See *Cripe*, 261 F.3d at 889; *Rohr*, 555 F.3d at 864.

ILWU's position is further undermined by evidence that accommodations were actually implemented at various points during the process. Plaintiff worked under reassigned duties, gangway assignments, transportation assistance, and other modified arrangements after disclosing his disability. Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. Yet ILWU simultaneously maintained that accommodations were unavailable because they constituted direct dealing or conflicted with dispatch procedures. A reasonable jury could conclude that ILWU's contemporaneous conduct is inconsistent with the categorical position advanced in this litigation.

Finally, ILWU's own PMK testimony permits a reasonable inference that contractual concerns predominated over accommodation analysis. Gratz testified that accommodations could not occur outside the JPWLRC process, that Watchmen could not negotiate individualized arrangements, and that accommodations implicated dispatch rights of other members. Gratz Dep. 47:11-49:11; 57:17-58:2; 62:17-64:17. A reasonable jury could conclude that ILWU rejected accommodations because of perceived contractual concerns rather than because accommodations were ineffective or unavailable.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

## C. Genuine Issues of Material Fact Exist Regarding Whether Plaintiff was a Qualified Individual Capable of Performing Available Watchman Assignments.

ILWU next argues that Plaintiff was not a qualified individual because he could not perform the essential functions of Watchman work with or without reasonable accommodation. That argument improperly resolves disputed factual and medical issues that must be decided by the jury.

To establish that Plaintiff was not a qualified individual, ILWU must demonstrate that Plaintiff could not perform the essential functions of the position even with reasonable accommodation. That showing has not been made. Instead, the record contains competing medical opinions, competing evidence regarding available assignments, and evidence that Plaintiff successfully continued working after disclosing his disability.

Plaintiff's treating ophthalmologist, Dr. Coleman, repeatedly concluded that Plaintiff could continue working if provided appropriate accommodations and specifically stated that Plaintiff should be able to function safely and effectively at work with accommodations. Coleman Dep. 54:15-20; 54:23-55:3. Rather than concluding that Plaintiff could not perform Watchman work, Dr. Coleman identified restrictions involving oversized vehicles and certain high-risk visual tasks while recommending accommodations including magnification devices, enlarged print materials, assistive technology, and other modifications intended to permit continued employment. Coleman Dep. 16:12-17:5; 17:6-18:9; 27:1-11; 42:19-43:6.

ILWU instead relies primarily upon the later conclusions of Dr. Deutsch. Yet the record reflects that Dr. Deutsch's opinions expanded significantly after additional communications with PMA and materially departed from both his earlier recommendations and Dr. Coleman's conclusions. Plaintiff contends that these competing medical opinions create a classic factual dispute inappropriate for summary judgment. Gratz herself acknowledged reviewing Dr. Coleman's opinions

21

LAW OFFICE OF
NANCYROSE
HERNANDEZ

while nevertheless maintaining that Plaintiff could not perform Watchman work. Gratz Dep. 135:6-136:22.

The factual record likewise undermines ILWU's contention that Plaintiff was incapable of performing available Watchman assignments. Following disclosure of his disability, Plaintiff continued working under reassigned duties and temporary accommodations. That evidence directly contradicts ILWU's contention that Plaintiff was categorically incapable of performing Watchman work. Participating employers implemented transportation assistance, gangway assignments, reassigned duties, and other modified work arrangements that allowed Plaintiff to continue performing Watchman work. Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. Plaintiff points to this successful accommodated work as evidence that he remained capable of performing available assignments notwithstanding his visual limitations.

ILWU's own evidence further demonstrates that Watchman assignments vary depending upon terminal operations and that no Watchman is guaranteed any particular assignment following dispatch. Gratz testified that assignments frequently change during a shift depending upon operational needs. Gratz Decl. ¶ 9. A reasonable jury could therefore conclude that Plaintiff remained capable of performing at least some available Watchman assignments with reasonable accommodation, even if certain assignments or duties required modification.

At summary judgment, the Court may not weigh competing medical opinions, resolve disputed facts concerning Plaintiff's ability to perform available assignments, or choose between competing inferences arising from the evidence. *Anderson*, 477 U.S. at 248. Since genuine disputes exist regarding competing medical opinions, evidence of successful accommodated work, ILWU has failed to establish that Plaintiff was not a qualified individual as a matter of law.

**D. ILWU Has Not Established the Direct-Threat Defense as a Matter of Law.**

LAW OFFICE OF
NANCYROSE
HERNANDEZ

ILWU's direct-threat argument rests almost entirely on Plaintiff's diagnosis and two vehicle-related incidents. That evidence does not establish the statutory direct-threat defense as a matter of law.

The ADA requires an individualized assessment based upon reasonable medical judgment and the best available objective evidence, not categorical assumptions regarding disability. ILWU instead asks the Court to conclude that because Plaintiff is "legally blind" and was involved in two vehicle-related incidents, he necessarily posed an unavoidable threat under all circumstances and with every potential accommodation. The record does not support that conclusion.

The medical evidence remains sharply disputed. Plaintiff's treating ophthalmologist, Dr. Coleman, repeatedly concluded that Plaintiff could continue working if appropriate accommodations were implemented and specifically stated that Plaintiff should be able to function safely and effectively at work with accommodations. Coleman Dep. 54:15-20; 54:23-55:3. Rather than concluding Plaintiff could never perform Watchman work, Dr. Coleman identified restrictions and accommodations intended to permit continued employment. ILWU instead relies primarily upon the later conclusions of Dr. Deutsch, creating competing medical evidence that cannot be resolved on summary judgment.

Nor do the June and August 2023 incidents conclusively establish the direct-threat defense. Plaintiff disputed both investigations, challenged the conclusions reached, requested witness statements, accident reports, investigative materials, and video evidence, and presented evidence questioning whether all relevant information had been considered before employer complaints were sustained. All requests were denied, and more importantly, there is evidence to support Gratz's interference with fair investigation. The significance of those incidents, the adequacy of the investigations, and the extent to which they demonstrate an ongoing safety risk remain genuinely disputed.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The record further reflects that Plaintiff continued working after disclosure of his disability and after accommodations were implemented. LBCT, SSA, and APM reassigned Plaintiff, provided transportation assistance, implemented modified assignments, and permitted Plaintiff to continue working under accommodations. Greene Dep. 35:11-25; 36:9-17; 136:15-139:6. A reasonable jury could conclude that Plaintiff's successful accommodated work undermines ILWU's assertion that no accommodation could reduce any alleged safety risk to an acceptable level.

ILWU's own evidence also undercuts its position. Gratz acknowledged that Watchman assignments vary depending upon operational needs and that Watchmen are not dispatched to specific jobs. Gratz Decl. ¶ 9. She further acknowledged that she was unaware of any instance in which Plaintiff had killed or physically harmed another worker despite years of employment with his vision condition. Gratz Dep. 120:11-121:7. Those admissions are inconsistent with ILWU's contention that Plaintiff necessarily posed an unavoidable threat in every assignment.

Competing medical opinions, disputed investigations, successful accommodated work, varying Watchman assignments, and ILWU's own admissions create genuine issues of material fact regarding whether Plaintiff posed a direct threat. Summary judgment on that defense must therefore be denied.

**E. Genuine Issues of Material Fact Exist Regarding ILWU's Good-Faith Participation in the Accommodation Process.**

Although ILWU devotes substantial attention to the Watchmen's Agreement, the dispatch system, and Plaintiff's alleged inability to perform certain duties, its motion largely ignores its own statutory obligations during the accommodation process. The existence of collective bargaining obligations does not relieve a labor organization of its independent obligations under the ADA and FEHA to participate in the interactive process in good faith.

24

LAW OFFICE OF
NANCYROSE
HERNANDEZ

The interactive process requires "communication and good-faith exploration of possible accommodations." *Humphrey v. Mem. Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Both sides must exchange information, explore alternatives, and continue the process where additional accommodations remain under consideration. *Id*. at 1138. An employer or labor organization cannot prevail on summary judgment where a genuine dispute exists regarding whether it meaningfully participated in that process.

Here, Plaintiff repeatedly identified accommodations, supplied updated medical documentation, proposed assistive technology, requested transportation assistance, sought assignment modifications, and later involved the DOR to identify additional resources. Greene Dep. 15:14-15; 33:14-21; 39:2-25; 40:1-19.

Rather than evaluating Plaintiff's requested accommodations, ILWU maintained no written accommodation policy, no formal accommodation procedure, and no training regarding disability accommodations. Gratz Dep. 23:17-24:21; 25:14-21. When asked what accommodations she considered for Plaintiff, Gratz answered, "None." Gratz Dep. 156:6-8. She likewise acknowledged that she did not assist Plaintiff with his accommodation requests. Gratz Dep. 40:1.

Rather than narrowing the issues and identifying workable accommodations, the process increasingly focused on whether accommodations were compatible with the Watchmen's Agreement. Gratz repeatedly characterized accommodations as direct dealing, unilateral changes, favoritism, and violations of dispatch procedures. Gratz Dep. 47:11-49:11; 57:17-58:2; 93:1-94:15. Despite multiple meetings, multiple accommodation requests, and extensive medical documentation supporting accommodation, Gratz acknowledged that no accommodations were ultimately approved through the JPWLRC process. Gratz Dep. 89:16-91:2; 155:5-9.

The record further reflects that ILWU opposed accommodations that had already been implemented by participating employers. Gratz testified that after

25

LAW OFFICE OF
NANCYROSE
HERNANDEZ

receiving complaints from other Watchmen, she contacted SSA and advised that Plaintiff could no longer be accommodated because other members believed their contractual rights were being violated. Gratz Dep. 141:1-20. A reasonable jury could conclude that ILWU actively opposed accommodations rather than exploring whether those accommodations could coexist with the CBA.

The DOR likewise offered to provide worksite evaluations, assistive technology, transportation assistance, low-vision aids, and other resources intended to facilitate Plaintiff's continued employment. Rather than collaborating with the Department as requested, Gratz testified that she informed the Department that Plaintiff's requested accommodations were not reasonable, that the ADA did not permit a person with Plaintiff's limitations to perform security work, and that the Department did not understand waterfront operations. Gratz Dep. 176:24-177:3; 177:9-178:19; 179:2-7. Plaintiff contends that ILWU rejected the Department's proposed accommodations without permitting the individualized worksite evaluation the Department sought to perform. When asked what accommodations she considered for Plaintiff, Gratz answered: "None." Gratz Dep. 156:6-8.

Viewed in the light most favorable to Plaintiff, the record supports a reasonable inference that ILWU approached the interactive process from the premise that accommodations were unavailable rather than engaging in the good-faith exploration required by the ADA and FEHA. Whether ILWU meaningfully participated in the interactive process therefore presents a genuine issue of material fact precluding summary judgment.

## F. Genuine Issues of Material Fact Exist Regarding Plaintiff's Remaining Statutory Claims for Discrimination, Harassment, Retaliation, and Pretext.

ILWU's remaining arguments likewise fail because they depend upon the same disputed factual premise advanced throughout its motion: that Plaintiff could not be accommodated without violating the CBA. As discussed above, the record

LAW OFFICE OF
NANCYROSE
HERNANDEZ

contains substantial evidence from which a reasonable jury could conclude otherwise.

The record further contains substantial evidence from which a reasonable jury could conclude that ILWU's stated justification for opposing Plaintiff's accommodations is unworthy of credence. Throughout the accommodation process, ILWU repeatedly characterized accommodations as direct dealing, unilateral changes, favoritism, light duty, or violations of dispatch procedures. Gratz Dep. 47:11-49:11; 57:17-58:2; 93:1-94:15. At the same time, ILWU maintained no accommodation policy, considered no accommodations for Plaintiff, approved none of Plaintiff's proposed accommodations, and rejected assistance offered by the DOR. Gratz Dep. 23:17-24:21; 25:14-21; 40:1; 89:16-91:2; 155:5-9; 176:24-177:3.

Gratz testified that accommodations could not occur unless approved through the JPWLRC and PMA framework, repeatedly characterized accommodations as direct dealing, and took the position that accommodations affecting assignments could not occur outside that process. Gratz Dep. 47:11-49:11, 57:17-58:2, 93:1-94:15. A reasonable jury could conclude that ILWU opposed accommodations because it believed they conflicted with its interpretation of the CBA rather than because Plaintiff could not safely perform available Watchman assignments with reasonable accommodation.

The record likewise supports Plaintiff's harassment claim. Following disclosure of his disability, Plaintiff repeatedly encountered heightened scrutiny regarding his ability to work, repeated objections to accommodations that had previously been implemented, repeated references to direct dealing, and repeated assertions that accommodations were unavailable. Gratz further testified that other Watchmen complained about Plaintiff's accommodations and believed accommodations affected dispatch rights. Gratz Dep. 62:17-64:17. Plaintiff

27

LAW OFFICE OF
NANCYROSE
HERNANDEZ

contends that his accommodation requests became a continuing source of hostility within the labor-relations process.

The retaliation claim presents similar factual disputes. The Ninth Circuit takes an expansive view of adverse employment actions. "A wide array of disadvantageous changes in the workplace constitute adverse employment actions," and actions need not materially affect the terms and conditions of employment to be actionable. *Ray v. Henderson*, 217 F.3d 1234, 1240, 1242 (9th Cir. 2000). Rather, the relevant inquiry is whether the challenged conduct is reasonably likely to deter protected activity. *Id*. at 1243. Viewed as a whole, the record reflects far more than a single employment decision. Plaintiff repeatedly engaged in protected activity by requesting accommodations, supplying additional medical documentation, challenging accommodation denials, requesting grievance assistance, and asserting rights under the ADA and FEHA. The record reflects that as Plaintiff continued requesting accommodations, ILWU's opposition intensified. The temporal relationship between Plaintiff's protected activity and the challenged actions further creates a triable issue regarding causation. Retaliation claims require but-for causation. *Brooks v. Capistrano Unified Sch. Dist*., 1 F. Supp. 3d 1029, 1037 (C.D. Cal. 2014). However, courts routinely recognize that causation may be inferred where adverse actions closely follow protected activity. *Lee v. Natomas Unified Sch. Dist*., 93 F. Supp. 3d 1160, 1169 (E.D. Cal. 2015). Plaintiff presented evidence that accommodations previously implemented were challenged, withdrawn, or opposed, that ILWU advised SSA to discontinue accommodations after receiving complaints from other members, and that ILWU later rejected the assistance offered by the DOR. A reasonable jury could conclude that Plaintiff's repeated requests for accommodation contributed to the adverse treatment that followed.

To defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered non-retaliatory reason for the

28

LAW OFFICE OF
NANCYROSE
HERNANDEZ

adverse action is unworthy of credence; or (2) retaliation was the more likely motivation." *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014). The plaintiff need not "introduce evidence beyond that already offered to establish their prima facie case, although they may provide additional proof of the defendants' unlawful motivation." *Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1170 (E.D. Cal. 2015). Gratz acknowledged that she did not assist Plaintiff with his accommodation requests, considered no accommodations for Plaintiff, and filed no grievance concerning the denial of accommodations because she concluded there had been no contractual violation. Gratz Dep. 40:1; 101:21-22; 103:20-24; 156:6-8. A reasonable jury could conclude ILWU evaluated Plaintiff's requests exclusively through the lens of contractual rights while giving insufficient consideration to its independent statutory obligations under the ADA and FEHA. Those issues require credibility determinations and competing factual inferences that are properly reserved for the jury. Summary judgment on Plaintiff's remaining statutory claims therefore must be denied.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff has presented substantial evidence creating genuine disputes regarding the essential functions of Watchman work, the availability of reasonable accommodations, Plaintiff's ability to perform available assignments, ILWU's obstruction of the interactive process, and the reasons ILWU opposed Plaintiff's accommodation requests.  Those disputes require credibility determinations, resolution of competing medical opinions, and the weighing of conflicting factual inferences, all of which are reserved for a jury. Accordingly, ILWU's Motion for Summary Judgment should be denied.

//

//

//

29

LAW OFFICE OF
NANCYROSE
HERNANDEZ

Dated: June 25, 2026          LAW OFFICE OF NANCYROSE HERNANDEZ


By:  /s/ Nancyrose Hernandez
     Nancyrose Hernandez
     Attorney for Plaintiff
     ENOCH GREENE


**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,830 words, which complies with the word limit of L.R. 11-6.1.

Case No.  5:25-cv-01359-KK-CTSx
PLAINTIFF, ENOCH GREENE'S,
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S,
ILWU'S, MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
NANCYROSE
HERNANDEZ