SEYFARTH SHAW LLP
Clifford 'Seth' Sethness (SBN 212975)
csethness@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Dana L. Peterson (SBN 178499)
dpeterson@seyfarth.com
David J. Kim (SBN 349802)
dakim@seyfarth.com
Tabitha Kwon (SBN 365915)
tkwon@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, LBCT
LLC, APM TERMINALS PACIFIC LLC,
TOTAL TERMINALS INTERNATIONAL LLC,
and SSA TERMINALS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01359-KK-CTS<br><br>HON. KENLY KIYA KATO<br><br>**DEFENDANT LBCT LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:   July 16, 2026<br>Time:   9:30 a.m.<br>Dept:   3<br><br>Date Action Filed: June 2, 2025<br>FAC Filed:   June 20, 2025<br>Trial Date:   September 28, 2026 |

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENTS ...........................................................................1

II.   THE UNDISPUTED MATERIAL FACTS ..........................................................2

    A.    Plaintiff Enoch Greene's Vision Impairment.......................................2

    B.    LBCT's First Notice of Plaintiff's Vision Impairment.................................3

    C.    LBCT Temporarily Accommodates Plaintiff. ..........................................4

    D.    Plaintiff Causes a Motor Vehicle Accident While Working At LBCT ........4

    E.    Plaintiff's Second Motor Vehicle Accident at APMT ..................................4

    F.    Joint Medical Specialist's Report..............................................................5

    G.    LBCT Determined Plaintiff Cannot Safely Perform His  Essential
          Duties...........................................................................................................5

III.  PLAINTIFF CANNOT STATE HIS PRIMA FACIE CASE FOR
      DISABILITY DISCRIMINATION .......................................................................6

    A.    Driving Is An Essential Function Of A Watchman ......................................6

    B.    Cases Cited In Support Of Plaintiff's Arguments Are Wholly
          Distinguishable...........................................................................................9

    C.    Plaintiff Was Not Performing All The Essential Functions Of His Job
          At The Time He Was Placed On Non-Dispatch .........................................12

    D.    Plaintiff Is Not A Qualified Individual With a Disability Because He
          Posed A Direct Threat..............................................................................12

IV.   LBCT HAD LEGITIMATE, NON-DISCRIMINATORY REASONS FOR
      DETERMINING THAT PLAINTIFF COULD NOT PERFORM HIS
      ESSENTIAL JOB FUNCTIONS AND PLAINTIFF HAS NO EVIDENCE
      OF PRETEXT...............................................................................................13

V.    PLAINTIFF'S SECOND CAUSE OF ACTION FOR DISABILITY-
      BASED HARASSMENT FAILS....................................................................14

VI.   PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS ....................15

VII.  PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO
      ENGAGE IN THE INTERACTIVE PROCESS FAILS.........................................16

VIII. PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION FAILS .......17

IX.   PLAINTIFF'S WRONGFUL TERMINATION IN VIOLATION OF
      PUBLIC POLICY CLAIM FAILS....................................................................18

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

X.      PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES FAILS .......................18

XI.     CONCLUSION.................................................................................................19

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)..................................................................................... 14

*Dark v. Curry County*,
 451 F.3d 1078 (9th Cir. 2006) ..................................................................... 15

*Kees v. Wallenstein*,
 161 F.3d 1196 (9th Cir. 1998) ............................................................... 6, 8, 9

*Matkovich v. Costco Wholesale Corp.*,
 No. CV 15-2057 MRW, 2020 WL 2519576 (C.D. Cal. May 14, 2020)................. 7, 12

*Miller v. California Department of Corrections*,
 225 F.3d 663, 2000 WL 689585 (9th Cir. 2000.)....................................... 9, 10

*Munoz v. Mabus*,
 630 F.3d 856 (9th Cir. 2010) ....................................................................... 14

*Neufeld v. Winco Holdings, Inc.*,
 No. 1:14-cv-1505 DAD-JLT, 2016 WL 815649 (E.D. Cal. Mar. 2, 2016),
 aff'd, 699 F. App'x 659 (9th Cir. 2017) ....................................................... 17

*Paez v. Akima Support Operations LLC*,
 No. 2:21-cv-1920 DJC AC, 2024 WL 5047031, at *9 (E.D. Cal 2024
 Dec. 9, 2024)............................................................................................... 17

*Rodriguez v. Int'l Bus. Machines*,
 960 F. Supp. 227 (N.D. Cal. 1997).............................................................. 14

*Rohr v. Salt River Project Agric. Improvement Power Dist.*,
 555 F. 3d. 850 (9th Cir. 2009) ..................................................................... 11

*Rorrer v. City of Stow*,
 743 F.3d 1025 (6th Cir. 2014) ..................................................................... 10

*Sneddon v. ABF Freight Sys.*,
 489 F. Supp. 2d 1124 (S.D. Cal. 2007)........................................................ 18

*Swonke v. Sprint Inc.*,
 327 F. Supp. 2d 1128 (N.D. Cal. 2004)........................................................ 17

*Watkins v. Ameripride Services*,
 375 F.3d 821 (9th Cir. 2004) ....................................................................... 16

*Willis v. Pac. Mar. Ass'n*,
 244 F.3d 675 (9th Cir. 2001) ....................................................................... 16

iii

326840985v.3

**State Cases**

*Barton v. Elexsys Int'l, Inc.*,
  62 Cal. App. 4th 1182 (1998) ...................................................................................... 14

*Basich v. Allstate Insurance Co.*,
  87 Cal. App. 4th 1112 (2001) ...................................................................................... 18

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal. 4th 317 (2000) ................................................................................................ 13

*Horn v. Cushman & Wakefield Western, Inc.*,
  72 Cal. App. 4th 798 (1999) ....................................................................................... 13

*Loggins v. Kaiser Permanente Internat.*,
  151 Cal. App. 4th 1102 (2007) .................................................................................... 17

*Lui v. City & County of San Francisco*,
  211 Cal. App. 4th 962 (2012) ............................................................................... 6, 7, 8, 9

*Muzquiz v. City of Emeryville*,
  79 Cal. App. 4th 1106 (2000) ...................................................................................... 13

*Nealy v. City of Santa Monica*,
  234 Cal. App. 4th 359 (2015) ...................................................................................... 15

*Raine v. City of Burbank*,
  135 Cal. App. 4th 1215 (2006) .................................................................................... 15

**Federal Statutes**

42 U.S.C. § 12111(8) ...................................................................................................... 7

**State Statutes**

Cal. Civ. Code § 3294(b) ............................................................................................... 18

Cal. Gov. Code § 12926(f)(2) ......................................................................................... 6

Cal. Gov. Code § 12940(n) ............................................................................................ 17

**Rules**

Rule 56(c) ....................................................................................................................... 14

Rule 56(e) ....................................................................................................................... 14

**Regulations**

29 C.F.R. § 1630.2(n)(3) ................................................................................................. 6

29 C.F.R. § 1630.2(r) .................................................................................................... 13

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

## I.    SUMMARY OF ARGUMENTS

In his Memorandum of Points and Authorities, Plaintiff asserts multiple arguments without citing to any supporting legal authority or admissible evidence, relying instead on Plaintiff's largely objectionable, self-serving Declaration and Response to Defendant's Separate Statement of Uncontroverted Facts that is chocked full of argument without citations to controverted facts.  Plaintiff is so loathe to admit *anything*, he attempts to dispute facts here that he admits in response to the MSJ filings of other terminal employers.  For example, in Plaintiff's Responsive Separate Statement to SSA's Motion for Summary Judgment, "Plaintiff does not dispute that Article 2 contains the cited language," (Dkt. No. 102-4, p. 4:22-24.)  But in Plaintiff's Responsive Separate Statement to LBCT's Motion, in response to the exact same Fact "**Disputed;** LBCT's presentation of Article 2 selectively isolates clauses to falsely imply that roving and bus driving are inseparable, universal mandates for every shift . . . [followed by more argument that doesn't belong in the Response Separate Statement.]"  (Dkt. No. 104-4, p. 3:11-24.)  In response to SSA's Separate Statement, Fact 19: "A visual field of 10 degrees or less meant that Plaintiff had not peripheral vision." (Dkt. No. 102-4, p. 25:16-17). Plaintiff responded "Plaintiff does not dispute Dr. Coleman's testimony regarding Plaintiff's visual field limitations."  (Dkt. No. 102-4, p. 25:22-23.)  But here, in response to the exact same Fact "**Disputed;** Moving Party's assertion that Plaintiff's visual parameters present a total operational barrier is a deceptive, bad faith distortion  . . . [followed by more argument that doesn't belong in the Response Separate Statement.]"[1] (Dkt. No. 104-4, p. 18:10-26.)

Ultimately, Plaintiff's strategy of disputing every fact fails because he neglects to cite to any relevant, admissible evidence in support of his claimed disputed facts. Plaintiff's "disputes" are based on pure argument and conjecture, not facts, or he cites to evidence that doesn't support the proposition for which it is cited.

---

[1]These are just a few examples.  There are several others.

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

In his Opposition, Plaintiff attempts to create the false illusion that the facts here are simply too involved or complex for the Court to award summary judgment.  He takes very straightforward facts related to his claims against LBCT and mixes them up with facts related to his claims against the Union and other employers, or argues facts for which there is no evidentiary support.  This strategy is also unavailing, and based on Plaintiff's deposition testimony and the uncontroverted material facts, his claims for disability discrimination, harassment, failure to accommodate, failure to engage in the interactive process, retaliation, wrongful termination in violation of public policy and claim for punitive damages, fail as a matter of law.

Accordingly, LBCT respectfully requests that the Court grant summary judgment in its favor.

## II.    THE UNDISPUTED MATERIAL FACTS

### A.    Plaintiff Enoch Greene's Vision Impairment

At deposition, Plaintiff admitted that he has primary open-angle glaucoma in both eyes and sometime in 2022, he began experiencing episodes of blurry vision in both eyes that occur without warning once or twice a week and last anywhere from a few minutes to hours. (UFs 17, 18.)  It is undisputed that in her April 15, 2023 letter, Plaintiff's treating ophthalmologist, Dr. Coleman, explained Plaintiff  met the requirements for legal blindness and had a visual filed of 10 degrees or less. (UF 20, Dkt. No. 104-4, p. 15:12-14.)  At her deposition, Dr. Coleman testified that a visual field of 10 degrees or less meant that Plaintiff had no peripheral vision.  (UF 21.) According to Dr. Coleman's April 15, 2023 letter "due to his low vision and decreased peripheral vision, it is not recommended that he drive a passenger vehicle and may not be able to maneuver an oversized vehicle such as a van or bus." (UF 22.)  Plaintiff does not dispute what Dr. Coleman's note states, or that Dr. Coleman clarified in her May 25, 2023 note that Plaintiff was restricted from driving vans and buses. (UF 23.)  Dr. Coleman testified that Plaintiff's vision loss is permanent, and there is no medical procedure for regaining vision that has already been lost due to primary open angle glaucoma.  (UF 24.)

2

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

**B.     LBCT's First Notice of Plaintiff's Vision Impairment**

It is also undisputed that the first time Plaintiff mentioned having any difficulty performing his job was on April 20, 2023. (UF 25.) That day, Plaintiff dispatched to LBCT and was assigned to drive the Shuttle Bus.  (UF 25.)  Plaintiff informed the Shift Seargent that he had a vision impairment and requested reassignment to something other than driving the shuttle bus. (UF 25.)  Plaintiff testified that in response, he was allowed to work at the Security Center and was permitted to work assignments located at the gangway. (UF 60, Dkt. No. 96-3, pp. 21-22, Pl. Dep. 30:20-31:2.)

On April 29, 2023, Plaintiff sent a letter to the Joint Labor Relations Committee regarding what happened at LBCT and stating that he had a "medical condition which limits my physical ability to perform some of my job duties safely and effectively."  (UF 62, Dkt. No. 96-3, p. 319, Willaims Decl., Ex. B.)  He went on to state:

> I am seeking to have a dialogue in order to create solutions which will avert any serious incident.
>
> My three main purpose for writing this letter is: (1) to communicate with the Joint Labor Relations Committee and ILWU Local 26 Safety Representative of my disability and safety concerns; (2) to make a request for reasonable accommodations related to my medical condition and (3) to advise that I will also communicate my disability and request a reasonable accommodation from each shift Sargent at the various terminals as needed."

(UF 62, Dkt. No. 96-3, p. 319, Willaims Decl., Ex. B..)

According to Plaintiff, this prompted the JPWLRC to schedule an interactive process meeting on May 8 and May 22, 2023.  (UF 63, Dkt. No. 96-3, pp. 27-28, Pl. Dep. 57:24-58:19.)  May 8th was the first time LBCT learned the extent of Plaintiff's visual impairment and doctor issued work restrictions.  (UF 64, Dkt, No. 96-3, pp. 147-148, Naefke Decl., ¶ 25.)  At the meeting, Dr. Coleman's April 15, 2023 letter, Plaintiff's visual impairment, and his accommodation requests were discussed.  (UF 65.)  Plaintiff said he had difficulty seeing in the rain, fog, and other low-visibility situations, and asked to be excused from driving a bus or shuttle bus. (UF 65.)  He requested being excused from driving a bus/shuttle-bus due to his poor vision. (UF 27.)

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

### C.    LBCT Temporarily Accommodates Plaintiff.

Starting May 8, 2023, whenever Plaintiff dispatched to LBCT, he was assigned to either the Gangway or the Security Center, except on one occasion when he was assigned to rover patrol. (UF 66.) Plaintiff claims that sometime around June 12, 2023, Shift Sergeant Dennis Williams pulled him off his assigned gangway shift and reassigned him to drive the shuttle bus (UF 67.)  Despite his pledge to "communicate my disability and request a reasonable accommodation from each shift Sargent at the various terminals as needed," Plaintiff admits that he didn't tell Williams that he had work restrictions precluding him from driving the bus, didn't turn down or refuse the assignment, and never spoke with LBCT management about the issue.[2]  (UF 69.)

### D.    Plaintiff Causes a Motor Vehicle Accident While Working At LBCT

According to Plaintiff's own deposition testimony, on June 12, 2023, Plaintiff was in a motor vehicle accident while driving a pickup truck on the job at LBCT.  (UF 29.) Security video shows Plaintiff driving head on into an Automated Guided Vehicle (AGV) that was stopped with its lights flashing.  (UF 30.)  The AGV was over five times the size of Plaintiff's pickup truck.  (UF 30.)  Plaintiff did nothing to slow his speed or avert his truck from the head-on impact.  (UF 30.)  Pictures taken at the scene of the accident confirm the intersection is well-lit, Plaintiff's headlights were on, and the AGV had reflectors on top of its bumper.  (UFs 31, 33.)  The union reviewed the  accident video and agreed the terminal lighting was adequate, the AGV was well lit with retroreflective markings, and was stopped when Plaintiff struck it.  (UF 34.)

### E.    Plaintiff's Second Motor Vehicle Accident at APMT

Just two months later, on August 16, 2023, Plaintiff was in a second motor vehicle accident at APM Terminals.  (UF 35.)  Plaintiff was leaving one post and driving to his next assignment when he turned into the wrong lane of traffic and collided head on with another vehicle.  (UF 36.)

---

[2] Plaintiff's attempt to dispute these facts (UFs 66 – 69) with pure argument unsupported by any citation to admissible evidence creating a dispute is unavailing.

4

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

**F.      Joint Medical Specialist's Report**

According to Dr. Coleman's September 7, 2003 letter, Plaintiff's vision had *deteriorated further*. His best-corrected visual acuity was 20/25 in the right eye, 20/400 in the left eye and he had a visual field of 10 degrees or less in both eyes[3]. (UF 37.)  The note, again, confirmed that Plaintiff was legally blind in both eyes with a "severely constricted visual field." (UF 37.)  She recommended he not drive oversized vehicles, work in areas with uncontrolled high traffic, or climb gangways due to his impaired peripheral vision. (UF 37.)

On October 12, 2023, Dr. James Deutsch issued a medical opinion based upon his review of Dr. Coleman's April 15, 2023, May 25, 2023, and September 7, 2023 letters and his knowledge of terminal operations. (UF 39.) Both Local 26 and PMA have agreed upon Dr. Deutsch to complete assessments regarding dockworkers' functional capacity due in part to his familiarity with marine terminal operations. (UF 38.) Dr. Coleman, on the other hand, admitted at her deposition that she has never been on a marine terminal and didn't and still doesn't know what Plaintiff's Watchman's duties are. (UF 41.)

In his report, Dr. Deutsch stated Plaintiff is "precluded from working in any capacity that requires peripheral vision," including, "driving any vehicles on terminal property[,]" "performing any tasks that require verification of identification and conducting visual inspections[,]" and "climbing ladders or gangways." (UF 40.)

**G.      LBCT Determined Plaintiff Cannot Safely Perform His  Essential Duties**

On October 28, 2023, LBCT provided Plaintiff a letter informing him that, due to safety concerns for Plaintiff and others at the terminal, it could not accept Plaintiff's dispatch under his current work restrictions. (UF 47.)  On November 6, 2023, LBCT filed a non-disciplinary Employer Complaint to place Plaintiff on non-dispatch to LBCT due to his inability to perform his essential job duties and to protect the health and safety of persons at the terminal. (UF 48.)

---

[3] Since then, Plaintiff's eyesight has gotten even worse and by April 2024, Dr. Coleman had formed the opinion that Plaintiff should not be driving any vehicle. (UF 43.)

5

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

## III.    PLAINTIFF CANNOT STATE HIS *PRIMA FACIE* CASE FOR DISABILITY DISCRIMINATION

### A.    Driving Is An Essential Function Of A Watchman

Plaintiff claims, without citing to any evidence, that driving is a marginal function of a Watchman's job.  That is wholly incorrect. The factors for determining whether a job duty is essential are codified under both federal and California law. Under the ADA, 29 C.F.R. § 1630.2(n)(3) sets forth seven non-exclusive factors, and under FEHA, Cal. Gov. Code § 12926(f)(2) sets forth a substantially identical list. Courts apply these factors under both statutes, see *Kees v. Wallenstein,* 161 F.3d 1196, 1199 (9th Cir. 1998); *Lui v. City & County of San Francisco*, 211 Cal. App. 4th 962, 971–72 (2012), and California courts recognize that federal ADA decisions are "instructive in applying [the] FEHA," *Lui* at 971 n.9.

The seven factors are: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3); Cal. Gov. Code § 12926(f)(2). "[N]o one listed factor will be dispositive," and a function "need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential." *Lui*, 211 Cal. App. 4th at 977–78. Here, all seven factors point in the same direction – that driving is an essential function of the Watchman position.

First, the CBA expressly provides that Watchmen's duties include traveling within the confines of the terminal to protect the property and to transport longshore workers, clerks, and other persons on the terminal. (UF 4 & 5.)  The CBA's language makes it mandatory for Watchmen to operate vehicles on the terminals.  Article 2 states:

- Rover watchmen to travel within the confines of the installation for protection of property against loss by theft or fire and against unauthorized person or persons

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

gaining entrance to the property. When directed by the Employer, rover watchmen **shall be assigned to travel** outside terminal boundaries.

- **Bus drivers and/or vehicle operators to transport** authorized personnel to and from the vessels and/or other point as authorized by the company.

- When directed by the Employer, traffic watchmen **shall be assigned to travel** outside the terminal boundaries or within the facility to regulate vehicular and pedestrian traffic.

(UF 4; Dkt. No. 96-3, page ID 2545, Naefke Decl. ¶ 8, Ex. A.) (emphasis added). Further, the CBA makes it clear that Watchmen need to be able to perform all of the job duties enumerated in the CBA, Watchman cannot opt out of driving as a personal choice. The CBA's Dispatch Procedures clearly states that "Watchmen will be **required to accept the job** they are dispatched to. **Picking and choosing jobs is prohibited** …." (Dkt. No. 94-3, page ID 1592, Bartelson Decl., ¶ 10, Ex. B.)

Second, LBCT considers driving an essential function of every Watchman. The ADA mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). *Lui,* 211 Cal. App. 4th at 977 ("Formal adoption of the [essential job functions] List itself reflects such a judgment."); *Matkovich v. Costco Wholesale Corp.*, No. CV 15-2057 MRW, 2020 WL 2519576, at *5 (C.D. Cal. May 14, 2020) (essential function established where store manager provided "logical, supportable, and sensible testimony about the role of these tasks in [the employer's] business operations"). It is undisputed that Watchmen select the shift time and the employer they want to work for. (UF 11) They report to the terminal at the start of their shift, and that's when they are assigned to a post based upon the needs of the terminal at the time. (UF 12.) LBCT has four different posts that Watchmen fill: Security Center, Gangway, Shuttle Bus and Rover. (UF 6, Dkt. No. 96-3, p. 144, Naefke Decl. ¶ 9, and Ex. B) The only post that does not require driving is the Security Center. (Naefke Decl. ¶ 9.) When assigned to the Gangway, the Watchman drives a pickup truck

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

to the gangway.[4] (*Id.,* UF 7)  The Shuttle Bus and Rover assignments require driving throughout the duration of the shift. (UF 8, Dkt. No. 96-3, p. 144, Naefke Decl. ¶ 9, Ex. B, and Dkt. No. 96-3, p. 48-51, Pl. Dep. 97:5-98:7, 102:6-12. 102:25-103:7.)  To be clear, the Gangway and Security Center posts are not independent stand-alone jobs.  They are two of the four assignments that every Watchman must be able to cover.  LBCT needs the flexibility to assign Watchman dispatching to their terminal to whatever open post is needed and available, and to reassign Watchmen during a shift as necessary.  LBCT maintains that since three of the four posts require driving, the ability to drive is an essential function of the Watchman job.  Even if only one or two of the posts required driving, driving would still be an essential function of the job.

Third, driving is a recurring part of every Watchman's shift when assigned to Roving Patrol or the Shuttle bus.  Plaintiff agreed at his deposition then when you're assigned to drive the bus, you have to drive the bus. (Dkt. No. 96-3, p. 50, Pl. Dep. 102:6-12.)  He also admitted that the Rover assignment requires driving -- no walking around the terminal is allowed. (Dkt. No. 96-3, p. 48-49, Pl. Dep. 97:5-98:3.)  Even if the precise amount of time were disputed, that would not defeat essentiality. *See Lui,* 211 Cal. App. 4th at 978 ("[w]here other considerations support a finding that a function is essential, the function 'need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential'"); *Kees*, 161 F.3d at 1199 ("Although corrections officers assigned to the control room are not expected to have inmate contact on a regular basis, plaintiffs acknowledged that some incidental contact is inevitable.").

Fourth, if LBCT did not require Watchmen to drive, it could not patrol its federally regulated terminal, transport longshore workers, or respond to emergencies. See *Lui,* 211 Cal. App. 4th at 978 ("the consequence of not requiring that officers in administrative positions be able to perform the duties in the [essential job functions] List ... is a

---

[4] This is the assignment Plaintiff was working on the day of his June accident. (Dkt. No. 96-3, p. 257-259, Naefke Decl. ¶ 26, Ex. E, Daily Security Schedules and Security Payroll, D showing Plaintiff was assigned to Gangway from 10:00 pm – 6:00 am.)

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

significantly diminished pool of officers available for deployment in emergency situations and other situations requiring mass mobilization"); *Kees,* 161 F.3d at 1199 ("their ability to restrain inmates during an emergency is critical to jail security ... jail safety is currently jeopardized by appellants' inability to respond to emergencies").

Lastly, every Watchman who previously held this position, and every current Watchman at LBCT and the other terminals operating under the same CBA, was and is required to perform the same driving duties. (*See* Dkt. No. 96-3, p. 148, Naefke Decl., ¶ 26, Ex. E.) *See Lui*, 211 Cal. App. 4th at 979 ("the evidence of the work experiences of nondisabled past and current police officers in administrative positions ... demonstrates that such officers periodically have been expected to perform the duties in the [essential job functions] List").

Based on the above, driving *is* an essential job duty of a Watchman.

## B.    Cases Cited In Support Of Plaintiff's Arguments Are Wholly Distinguishable

The cases cited by Plaintiff in support of his argument that driving is not an essential job function miss the mark.  Plaintiff cites *Miller v. California Department of Corrections*, 225 F.3d 663, 2000 WL 689585 (9th Cir. 2000.)  But the holding in *Miller* defeats, rather than supports, Plaintiff's argument.  In *Miller*, a correctional sergeant injured her back and was temporarily reassigned to a Central Control Sergeant post, where direct inmate contact was rare.  She argued that the relevant position was that specific post, and that inmate contact therefore was not an essential function of her role. The Ninth Circuit rejected that argument and held that the relevant position was the broader category of Correctional Sergeant, because sergeants were treated as fungible and could be assigned to any post.  The court explained: "the relevant 'position' is not the specific post of Central Control Sergeant but rather the general category of Correctional Sergeants." *Id.* at *2.  The essential functions were those required of all Correctional Sergeants including responding to emergencies that involved inmate contact. The Ninth

9

326840985v.3

Circuit affirmed summary judgment because the plaintiff "is unable to perform an essential function of the job." *Id.*

The same result follows here. Watchmen are dispatched on a per shift basis to any of eight terminals and assigned posts by the Shift Lead at the start of each shift depending on business needs. No Watchman holds a permanent gate or gangway post. The CBA requires every Watchman to be able to perform the duties of the general category, including driving. Plaintiff's argument that he can avoid the driving requirement by pointing to specific posts where driving is not needed is the same argument the Ninth Circuit rejected in *Miller*.

Similarly, Plaintiff's reliance on *Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014) is misplaced.  In *Rorrer*, a firefighter lost vision in one eye after an off-duty accident and was terminated because the City maintained that driving emergency vehicles was an essential function of the firefighter position that Plaintiff could no longer safely perform. *Rorrer*, 743 F.3d at 1031-32.  The Sixth Circuit reversed summary judgment for the City based upon facts that are not present in our case.  First, the court relied on sworn statements from other firefighters that driving was rotated and "there are some firefighters who never drive the apparatus as a matter of choice."  *Id.* at 1034.  The Court also noted that in the firefighter job description, the City had intentionally used permissive "may" language for driving only. This was the only change to a task list that otherwise mirrored the NFPA's mandatory language[5],  which the court found reflected "the peculiarity of the Department's rotation policy." *Id.* at 1043.  Based upon these facts, the Sixth Circuit found  a reasonable jury could conclude that  it was "essential for some firefighters to drive an apparatus but not necessary that every firefighter do so." *Id.* at 1043. Here,  there is no evidence that Watchman can opt out of driving as a personal choice or that driving is treated differently than the other job duties required of

---

[5] The NFPA refers to the National Fire Protection Association, which publishes NFPA 1582, the standard listing essential firefighter job tasks, including operating fire apparatus in emergency mode. *Id.* at 1031-32.

10

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

Watchman described in the CBA.  (UFs 3, 4.) Plaintiff's testimony, in fact, confirms this requirement:

> Q: Okay. But when you're assigned to drive the bus, you have to drive the bus, correct?
>
> A:  I would say yes.
>
> Q:  And one of the job duties of a security watchman is to drive a bus? That's one of the – one of the job duties?
>
> A:  Correct.
>
> ***
>
> Q:  Are there different sizes of buses and vans? . . .
>
> A:  The sizes varies from soccer mom minivan to a Greyhound bus, something similar to a Greyhound bus or one of the bigger buses.
>
> Q:  And security watchmen are assigned to drive both kinds of vehicles?
>
> A:  They can be, yes.
>
> Q:  That's one of the job duties?
>
> A:  Yes.

(UF 7, Dkt. No. 96-3, p. 50-51, Pl. Dep. 102:6-12, 102:25-103:7.)

If driving a shuttle bus was not one of the job duties expected of a Watchman, why would Plaintiff have gone out of his way to specifically request, repeatedly, that he be excused from performing this job duty?  Why would Dr. Coleman spell out in her letters that it was not recommended that he drive a shuttle bus or large passenger vehicles?

The last case cited by Plaintiff in support of his argument, *Rohr v. Salt River Project Agric. Improvement Power Dist.*, 555 F. 3d. 850 (9th Cir. 2009) is also unavailing. In *Rohr*, the job duty Plaintiff was precluded from performing was infrequent overnight outage work. *Id.* at 854, 856.  The court found a triable issue as to whether the overnight outage duty was essential because there was evidence that Plaintiff had performed that duty only "about a dozen times" over twenty-three years and not at all since 2001.  *Id.* at 854, 864.  In sharp contrast here, driving is not a rare Watchman job duty.  It is a daily duty performed by Watchmen across all terminals.  Plaintiff does not

11

326840985v.3

dispute this – he merely points out that Watchmen perform other job duties as well.  That does not make driving a marginal or non-essential job duty.

### C.    Plaintiff Was Not Performing All The Essential Functions Of His Job At The Time He Was Placed On Non-Dispatch

Plaintiff claims that "[a]fter requesting accommodations in April 2023, Plaintiff successfully performed the job duties of a Watchman without issue until he was abruptly placed on non-dispatch." (Dkt. No. 104, Opp. at 15:17-19.)  This is incorrect.  LBCT temporarily accommodated Plaintiff by excusing him from performing the essential function of driving a bus. *See Matkovich*, 2020 WL 2519576, at *7 ("Plaintiff did not perform all of the essential functions of the job during the two-year 'temporary' disability period. Rather, other employees did them instead.")  Plaintiff's inability to perform the essential function of driving a bus, transport longshore workers, and later, conduct roving patrols, is sufficient basis to grant summary judgment as to Plaintiff's disability discrimination claim because he cannot, either with or without reasonable accommodation, perform the essential functions of the Watchman job.

### D.    Plaintiff Is Not A Qualified Individual With a Disability Because He Posed A Direct Threat

Plaintiff's argument that he does not pose a direct threat is unsupported by *any* legal authority.  Plaintiff doesn't cite to a single case or statutory provision.  Instead, he downplays his accident at APMT as a "minor 'fender-bender'" that shouldn't count because he was "off the clock" (which isn't true.)  He discounts his accident at LBCT based on bogus claims that it was not adequately investigated.  But most shockingly, he repeatedly points out that he didn't injure anyone, so no big deal.  Plaintiff misses the point.  In both instances, Plaintiff ran **head on** into large vehicles that were stationary at the time, as if he did not see them before running into them. At APMT, he turned into the wrong lane of traffic as if he could not differentiate between the ingress and the egress lanes.  LBCT was on notice that he was legally blind and had no peripheral vision, and was now on notice of these two accidents occurring within two months of each other, the first less than two months after Plaintiff returned to work with significant restrictions.

12

326840985v.3

Plaintiff faults LBCT for not allowing him to continue as he was, putting himself and others at risk, and potentially causing a more serious accident where someone was injured or killed.  This is the exact scenario that the direct threat defense is intended to address. In determining whether an individual would pose a direct threat, the factors to be considered include: (1) the duration of the risk; (2) the nature and severity of the potential harm;  (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm.  (29 C.F.R. § 1630.2(r).  Here, Plaintiff's eyesight was not going to improve, the potential harm (severe injury or death) was severe, and given that two accidents had already occurred within a short period of time the likelihood of another at any time could not be ruled out.  This meets the direct threat standard and accordingly, Plaintiff is not a qualified individual.

## IV.   LBCT HAD LEGITIMATE, NON-DISCRIMINATORY REASONS FOR DETERMINING THAT PLAINTIFF COULD NOT PERFORM HIS ESSENTIAL JOB FUNCTIONS AND PLAINTIFF HAS NO EVIDENCE OF PRETEXT

Even if Plaintiff could state a *prima facie* case (he cannot), LBCT had legitimate, non-discriminatory reasons for determining he could not safely perform the Watchman role. Plaintiff doesn't dispute that he could not and cannot safely drive shuttle buses to transport longshore workers to their job posts. LBCT had no obligation to permanently remove essential job functions and its refusal to risk Plaintiff's safety, his coworkers' safety, and the security of the terminal is a legitimate, non-discriminatory reason for not accepting Plaintiff's dispatch.

To overcome LBCT's legitimate, non-discriminatory reason, Plaintiff must submit specific and substantial evidence that the proffered nondiscriminatory reason is pretextual, and the true reason for the adverse employment action is, in fact, discrimination based on his disability.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354-58 (2000); *Horn v. Cushman & Wakefield*, 72 Cal. App. 4th 798, 806-7 (1999).  "At all times, the burden of persuasion remains firmly on the employee to establish that the

13

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

employer intentionally discriminated against the employee." *Muzquiz v. City of Emeryville*, 79 Cal. App. 4th 1106, 1117 (2000).

Pretext cannot be shown by "[m]erely denying the credibility of the employer's proffered reasons" for a decision. *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010); *see also Rodriguez v. Int'l Bus. Machines*, 960 F. Supp. 227, 231 (N.D. Cal. 1997) ("Plaintiff's subjective belief that [his employer's] actions were discriminatorily motivated is not sufficient to withstand summary judgment."); *Barton v. Elexsys Int'l, Inc.*, 62 Cal. App. 4th 1182, 1192 (1998) ("[the employee's] belief without more," does not create a triable issue of fact). That is all Plaintiff has offered here: his own subjective belief that LBCT's decision was discriminatory, and his erroneous assertion that LBCT insisted that Plaintiff perform all duties "without medical restrictions." That never happened. Plaintiff can point to no evidence that LBCT's decision was based on anything other than the CBA, Plaintiff's accidents, Plaintiff's medical records, and Dr. Deutsch's expert medical opinion. Because there is no triable issue as to pretext, Plaintiff's discrimination claim fails.

## V. PLAINTIFF'S SECOND CAUSE OF ACTION FOR DISABILITY-BASED HARASSMENT FAILS

Plaintiff attempts to make a showing of "severe" harassing conduct by referring to the allegations of his FAC. As the U.S. Supreme Court has made clear, a party cannot rely on its pleadings alone to defeat summary judgment. In *Celotex Corp. v. Catrett*, the court stated, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), ***except the mere pleadings themselves*** . . .'" 477 U.S. 317, 324 (1986).

According to Plaintiff's deposition testimony, he was subject to the following "harassment" at LBCT:

14

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

- Plaintiff was followed on the job by fellow Local 26 member Sergeant David Pannell while working at LBCT, who allegedly stated, "you shouldn't be down here because you can't see" and was sent home after showing up for work (UF 51.);

- Plaintiff received write-ups from LBCT and PMA, but Plaintiff later clarified that the write-ups were Employer Complaints he received for accidents at LBCT and APMT.  (UF 51.);

- Another Local 26 member, Tiyuana Blair, was not permitted to investigate Plaintiff's accident at LBCT by both Luisa Gratz and LBCT management (UF 51.); and

- Plaintiff was asked to be evaluated by the Joint Port Medical Specialist (UF 51.).

As explained in LBCT's opening brief, none of this conduct rises to the level of severe or pervasive harassment. (Dkt. No. 96-1, Mot. at 20:15-22:15.) Accordingly, Plaintiff's harassment claim against LBCT fails as a matter of law.

## VI.    PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS

Plaintiff could not—and cannot—perform his essential driving duties, and has not identified a single accommodation that would have enabled him to perform that essential function.  Instead, he (again) attempts to argue that driving is not an essential job duty and he should therefore be excused from doing it altogether.  He also argues that because SSAT temporarily accommodated him by restricting him to working only certain posts and arranging shuttle transport for him so that he didn't have to drive, "the Watchman role's core security functions can be performed without requiring Plaintiff to personally perform all forms of terminal driving . . ." (Dkt. No. 104, Opp. at 22:17-24.)  Plaintiff cites to no supporting statutory authority or case law, and his arguments are unavailing.

As explained above in section I.A., driving is an essential function of the Watchman job. Employers are not required to exempt employees from performing essential job functions, reallocate essential functions to other employees, or eliminate the essential functions of any job as a reasonable accommodation.  *See Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees"); *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359,

15

326840985v.3

375 (2015) ("elimination of an essential function is not a reasonable accommodation"). Even if an employer temporarily removes essential job duties as an accommodation, that does not create a legal obligation to continue to do so either temporarily or permanently. *See Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1224, (2006) ("Federal courts of appeals interpreting the ADA, upon which FEHA's accommodation requirements are modeled have similarly held . . . that an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position once it is informed the employee's disability has become permanent.")

What Plaintiff suggests is letting him pick and choose amongst the many tasks performed by a Watchman which ones he believes he can do and excuse him from performing all others.  That is not the job of a Watchman.  That is a job that currently does not exist and is not provided for in the CBA.  LBCT has no obligation to create a job that doesn't already exist to accommodate Plaintiff.  *Watkins v. Ameripride Services*, 375 F.3d 821, 828 (9th Cir. 2004) (the employer "was not required to create a new position to accommodate [the employee.])

Moreover, Plaintiff's accommodation request asks LBCT to violate the CBA by allowing him to perform only limited duties of a Watchman.  This request is unreasonable *per se*.  *See Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 681 (9th Cir. 2001), as amended (Mar. 27, 2001) ("A plain reading of the ADA supports the conclusion that an accommodation that would compel an employer to violate a CBA is unreasonable.") While the holding in *Willis* was limited to bona fide seniority rights established in a CBA, the same reasoning applies in this case.

## VII.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS FAILS

Plaintiff argues that LBCT obstructed and delayed the interactive process, but fails to cite to any supporting evidence. Also conspicuously missing from Plaintiff's opposition is the identification of what reasonable accommodation could have been made that would have permitted him to safely drive. The "interactive process" requirement

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

only applies where the employee can perform essential job functions with or without accommodation. *Id.* ("The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made… [and thus,] we conclude that section 12940(n) imposes liability only if a reasonable accommodation was possible."); *Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128,1137 (N.D. Cal. 2004) ("there were no accommodations that could have possibly been consistent with the medical opinion that he was totally disabled from any employment. The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile."); *Paez v. Akima Support Operations LLC*, No. 2:21-cv-1920 DJC AC, 2024 WL 5047031, at *9 (E.D. Cal 2024 Dec. 9, 2024) ("a plaintiff cannot prevail on an interactive process claim unless he can identify an actual, available accommodation that could have arisen from the process and allowed plaintiff to resume employment."); *Neufeld*, 2016 WL 815649, at *5 ("This section imposes liability only if a reasonable accommodation was possible. That is, the ability to perform the essential functions of a job—with or without a reasonable accommodation—is an element of a claim under section 12940(n)."). Accordingly, Plaintiff's interactive process claim fails.

## VIII.  PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION FAILS

Plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish a causal link between his alleged protected activity (request for accommodation) and LBCT's decision to place him on non-dispatch because LBCT reasonably concluded that Plaintiff could not safely perform all of the essential duties of a Watchman.  When a defendant has articulated a legitimate, non-discriminatory reason, the burden then shifts to a plaintiff to submit specific and substantial evidence that the proffered non-retaliatory reason is pretextual, and the true reason for the adverse employment action is, in fact, retaliation for engaging in protected activity. *See Loggins v. Kaiser Permanente Internat.*, 151 Cal. App. 4th 1102, 1109 (2007).

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

Here, Plaintiff has offered no evidence of pretext. Instead, he alludes to "the timing and sequence of events, knowledge of protected activity, heightened attention to Plaintiff's restrictions, and eventual non-dispatch" which he claims "support an inference of retaliatory motive." (Dkt. No. 104, Opp. at 26:21-24.) These bare-bones allegations do not support such an inference. Accordingly, Plaintiff's retaliation claim fails.

## IX. PLAINTIFF'S WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM FAILS

Plaintiff's wrongful termination claim is premised on his ADA and FEHA claims. Because his ADA and FEHA claims fail, so too do his derivative claim for wrongful termination. *See, e.g.*, *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) ("[I]f the claim for . . . discrimination fails, plaintiff's cause of action for wrongful termination in violation of public policy fails because it is derivative of plaintiff's statutory claim….")

## X. PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES FAILS

For LBCT to be liable for punitive damages, Plaintiff must prove by clear and convincing evidence that one of LBCT's officers, directors, or managing agents personally engaged in oppressive, fraudulent, or malicious conduct towards Plaintiff. Cal. Civ. Code § 3294(b); *Basich v. Allstate Insurance Co.*, 87 Cal. App. 4th 1112, 1121 (2001) (clear and convincing evidence must be shown even in opposition to a motion for summary adjudication of punitive damages.) Here, no such fact exists. In his opposition, Plaintiff merely reiterates his conclusory arguments without citing to *any* supporting evidence that *any* of LBCT's employees personally engaged in oppressive, fraudulent or malicious conduct towards Plaintiff, let alone an officer, director, or managing agent of LBCT. Thus, Plaintiff's punitive damages claim fails as a matter of law.

/ / /

/ / /

/ / /

/ / /

18

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

## XI.   CONCLUSION

For the foregoing reasons, LBCT respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

DATED: July 2, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By:*/s/ Dana L. Peterson*
Clifford 'Seth' Sethness
Dana L. Peterson
David J. Kim
Tabitha Kwon
Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, LBCT LLC, APM TERMINALS PACIFIC LLC, TOTAL TERMINALS INTERNATIONAL LLC, and SSA TERMINALS LLC

19

LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3

## **Local Rule 11-6.2 Certification**

The undersigned, counsel of record for LBCT, certifies that this brief contains 6,322 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Dana L. Peterson*
Dana L. Peterson

20
LBCT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326840985v.3