SEYFARTH SHAW LLP
Clifford 'Seth' Sethness (SBN 212975)
csethness@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile:   (213) 270-9601

Dana L. Peterson (SBN 178499)
dpeterson@seyfarth.com
David J. Kim (SBN 349802)
dakim@seyfarth.com
Tabitha Kwon (SBN 365915)
tkwon@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, LBCT
LLC, APM TERMINALS PACIFIC LLC,
TOTAL TERMINALS INTERNATIONAL LLC,
and SSA TERMINALS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01359-KK-CTS<br><br>**DEFENDANT APM TERMINALS PACIFIC LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:       July 16, 2026<br>Time:      9:30 a.m.<br>Dept:      3<br><br>Complaint Filed:    June 2, 2025<br>FAC Filed:           June 20, 2025<br>Trial Date:          September 28, 2026 |

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENTS ................................................................................1

II.     PLAINTIFF CANNOT STATE HIS PRIMA FACIE CASE FOR DISABILITY DISCRIMINATION ...............................................................................2

    A.   Driving Is An Essential Function Of A Watchman .......................................2

    B.   Cases Cited In Support Of Plaintiff's Argument Are Wholly Distinguishable ...............................................................................................6

    C.   The Fact That APMT Temporarily Excused Plaintiff From Driving Does Not Establish That Driving Was Not An Essential Job Duty ...............8

III.    PLAINTIFF DOES NOT MEANINGFULLY DISPUTE THAT ALLOWING HIM TO CONTINUE TO DISPATCH TO APMT POSED A DIRECT THREAT ...............................................................................................9

IV.     PLAINTIFF FAILS TO PRESENT SUBSTANTIAL AND SPECIFIC EVIDENCE THAT APMT'S LEGITIMATE, NON-DISCRIMINATORY REASON WAS PRETEXTUAL ...............................................................................10

V.      PLAINTIFF FAILS TO PRESENT ANY SEVERE OR PERVASIVE CONDUCT BY AN APMT EMPLOYEE AND HIS HARASSMENT CLAIM FAILS ...............................................................................................13

VI.     PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS .....................14

VII.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS FAILS .........................................15

VIII.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION FAILS ........16

IX.     PLAINTIFF'S WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM FAILS ..................................................................17

X.      PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES FAILS .........................17

XI.     CONCLUSION ...............................................................................................18

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anthony v. Trax Int'l Corp.*,
   955 F.3d 1123 (9th Cir. 2020) ...................................................................... 2

*Burch v. Regents of Univ. of Cal.*,
   433 F. Supp. 2d 1110 (E.D. Cal. 2006) ........................................................ 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................... 14

*Dark v. Curry Cnty.*,
   451 F.3d 1078 (9th Cir. 2006) ................................................................... 14

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ................................................................................... 13

*Foster v. City of Oakland*,
   649 F. Supp. 2d 1008 (N.D. Cal. 2009) ........................................................ 2

*Fox v. Gen. Motors Corp.*,
   247 F.3d 169 (4th Cir. 2001) ..................................................................... 14

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ..................................................................................... 14

*Kees v. Wallenstein*,
   161 F.3d 1196 (9th Cir. 1998) ............................................................. 2, 5, 6

*Matkovich v. Costco Wholesale Corp.*,
   No. CV 15-2057 MRW, 2020 WL 2519576 (C.D. Cal. May 14, 2020) ...................... 4

*Miller v. Cal. Dep't. of Corrections*,
   225 F.3d 663, 2000 WL 689585 (9th Cir. 2000) ...................................... 7, 8

*Munoz v. Mabus*,
   630 F.3d 856 (9th Cir. 2010) ..................................................................... 11

*Neufeld v. Winco Holdings, Inc.*,
   No. 1:14-cv-1505 DAD-JLT, 2016 WL 815649 ....................................... 16

*Paez v. Akima Support Operations LLC*,
   No. 2:21-cv-1920 DJC AC, 2024 WL 5047031 (E.D. Cal 2024 Dec. 9,
   2024) ........................................................................................................... 16

*Rodriguez v. Int'l Bus. Machines*,
   960 F. Supp. 227 (N.D. Cal. 1997) ........................................................... 11

*Rohr v. Salt River Project Agric. Improvement Power Dist.*,
   555 F. 3d. 850 (9th Cir. 2009) ..................................................................... 7

ii

326841944v.2

*Rorrer v. City of Stow*,
743 F.3d 1025 (6th Cir. 2014) ..............................................................................6, 7

*Sanders v. Arneson Prods., Inc.*,
91 F.3d 1351 (9th Cir. 1996) ....................................................................................2

*Sneddon v. ABF Freight Sys.*,
489 F. Supp. 2d 1124 (S.D. Cal. 2007)...................................................................17

*Swonke v. Sprint Inc.*,
327 F. Supp. 2d 1128,1137 (N.D. Cal. 2004).........................................................16

*Watkins v. Ameripride Services*,
375 F.3d 821 (9th Cir. 2004) ..................................................................................15

*Willis v. Pac. Mar. Ass'n*,
244 F.3d 675 (9th Cir. 2001) ..................................................................................15

**State Cases**

*Barton v. Elexsys Int'l, Inc.*,
62 Cal. App. 4th 1182 (1998) .................................................................................11

*Basich v. Allstate Insurance Co.*,
87 Cal. App. 4th 1112 (2001) .................................................................................17

*Green v. State of California*,
42 Cal. 4th 254 (2007) ..............................................................................................2

*Loggins v. Kaiser Permanente Int'l.*,
151 Cal. App. 4th 1102 (2007) ...............................................................................17

*Lui v. City & Cnty. of San Francisco*,
211 Cal. App. 4th 962 (2012) ..........................................................................*passim*

*Martin v. Bd. of Trustees of Cal. State Univ.*,
97 Cal. App. 5th 149 (2023) ...................................................................................14

*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*,
166 Cal. App. 4th 952 (2008) .................................................................................16

*Nealy v. City of Santa Monica*,
234 Cal. App. 4th 359 (2015) .................................................................................14

*Raine v. City of Burbank*,
135 Cal. App. 4th 1215 (2006) ...........................................................................8, 15

**Federal Statutes**

42 U.S.C. § 12111(8) .......................................................................................................4

ADA .................................................................................................................*passim*

iii

326841944v.2

**State Statutes**

Cal. Civ. Code § 3294(b) ...................................................................................... 17

Cal. Gov. Code § 12926(f)(2) .............................................................................. 2, 3

Cal. Gov. Code § 12940(n) .................................................................................... 16

**Rules**

Rule 56(e) .............................................................................................................. 14

**Regulations**

29 C.F.R. § 1630.2(n)(3) ...................................................................................... 2, 3

**Other Authorities**

https://portoflosangeles.org/business/terminals/container/apm-terminals-pacific ................................................................................................................ 1

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

## I.    SUMMARY OF ARGUMENTS

Plaintiff does not deny that he is legally blind and unable to drive.  He didn't "request[] an accommodation for a shuttle-bus assignment." (Dkt. No. 102, Opp. at pp. 5:28-6:2.)  He demanded he be relieved from performing this essential duty entirely.

As a matter of common sense, marine terminals are massive logistical gateways that handle the majority of global trade by volume, spanning hundreds of acres.  In fact, APMT's Pier 400 is the largest container terminal at the Port of Los Angeles[1].  Plaintiff admits that there was no walking around the terminal.  (Dkt No. 99-3, pp. 97-98, Pl. Dep. 97:5-98:3.)  Consequently, most dockworkers, including Plaintiff, are required to travel by vehicle, and as a Watchman, Plaintiff had to operate van/shuttle bus to transport those dockworkers.  None of the accommodations he requested (magnifiers, enlarged print, identification verification assistance, computer-reader technology, accessible communications, rehabilitation requests, digital note-taking assistance, professional not-taking support, text-to-speech technology, ergonomic evaluation, a worksite assessment by the California Department of Rehabilitation, etc.) would have enabled him to drive a shuttle bus or passenger van.  Plaintiff therefore resorts to arguing that because he was able to work for a couple of months performing only some of the essential functions of a Watchman, the temporary accommodations implemented by APMT should have been implemented permanently. He also argues, without any evidentiary support, that driving was only a "marginal" duty of the Watchman job.  None of these claims have any merit.

The facts relevant to Plaintiff's claims against APMT are straightforward and undisputed.  As further explained below, based upon these undisputed facts, Plaintiff's claims for disability discrimination, harassment, failure to accommodate, failure to engage in the interactive process, retaliation, wrongful termination in violation of public policy and claim for punitive damages, fail as a matter of law.

---

[1] *See* https://portoflosangeles.org/business/terminals/container/apm-terminals-pacific

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

## II.    PLAINTIFF CANNOT STATE HIS *PRIMA FACIE* CASE FOR DISABILITY DISCRIMINATION

To state a *prima facie* case of discrimination under the ADA and the FEHA, "a plaintiff must prove that he is a qualified individual with a disability who suffered an adverse employment action because of his disability." *Sanders v. Arneson Prods., Inc.,* 91 F.3d 1351, 1353 (9th Cir. 1996); *Green v. State of California*, 42 Cal. 4th 254, 258 (2007) ("we conclude the FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires").  "Under the ADA and FEHA, a qualified individual is one with a disability who, with or without reasonable accommodation, can perform the essential functions of the job the individual holds." *Foster v. City of Oakland,* 649 F. Supp. 2d 1008, 1018 (N.D. Cal. 2009).  Plaintiff carries the "initial burden of establishing that [he] is a qualified individual[.]"  *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1127 (9th Cir. 2020).  Because Plaintiff cannot perform the essential function of driving with or without reasonable accommodation, he is not a "qualified individual" under either the ADA or FEHA.

### A.    Driving Is An Essential Function Of A Watchman

Plaintiff claims that driving is a marginal function of a Watchman's job, but offers no evidentiary support for these conclusory statements.  Accordingly, they need not be considered on a motion for summary judgment.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment.").

In fact, Plaintiff's conclusory statement is wholly unsupported by any fact or law.  The factors for determining whether a job duty is essential are codified under both federal and California law.  Under the ADA, 29 C.F.R. § 1630.2(n)(3) sets forth seven non-exclusive factors, and under the FEHA, Cal. Gov. Code § 12926(f)(2) sets forth a substantially identical list.  Courts apply these factors under both statutes.  *See Kees  v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir. 1998); *Lui v. City & Cnty. of San Francisco*,

2

326841944v.2

211 Cal. App. 4th 962, 971–72 (2012).  California courts recognize that federal ADA decisions are "instructive in applying [the] FEHA[.]" *Lui*, 211 Cal. App. 4th at 971 n.9.

The seven factors are: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3); Cal. Gov. Code § 12926(f)(2).  "[N]o one listed factor will be dispositive[,]" and a function "need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential."  *Lui*, 211 Cal. App. 4th at 977–78. Here, all seven factors point in the same direction – that driving is an essential function of the Watchman position.

First, the CBA expressly provides that Watchmen's duties include traveling within the confines of the terminal to protect the property and to transport longshore workers, clerks, and other persons on the terminal. (UFs 3, 4, Dkt. No. 99-3 , page ID. 3643-3644, 3656, Sulzbach Dep. ¶ 9, Ex. A.) The CBA's language makes it ***mandatory*** for Watchmen to operate vehicles on the terminals.  Article 2 states that the following are Watchmen's job duties:

- Rover watchmen to travel within the confines of the installation for protection of property against loss by theft or fire and against unauthorized person or persons gaining entrance to the property. When directed by the Employer, rover watchmen **shall be assigned to travel** outside terminal boundaries.

- **Bus drivers and/or vehicle operators to transport** authorized personnel to and from the vessels and/or other point as authorized by the company.

- When directed by the Employer, traffic watchmen **shall be assigned to travel** outside the terminal boundaries or within the facility to regulate vehicular and pedestrian traffic.

(Dkt. No. 99-3, page ID 3644, Sulzbach Dep. ¶ 9, Ex. A.) (emphasis added).  Further, the CBA makes it clear that Watchmen need to be able to perform **all** of the job duties enumerated in the CBA, Watchman cannot opt out of driving as a personal choice.  The

3

326841944v.2

CBA's Dispatch Procedures clearly state that "Watchmen will be **required to accept the job** they are dispatched to. **Picking and choosing jobs is prohibited** . . ." (Dkt. No. 94-3, page ID 1592, Bartelson Decl., ¶ 10, Ex. B.)

Second, APMT considers driving an essential function of every Watchman. The ADA mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). *Lui*, 211 Cal. App. 4th at 977 ("Formal adoption of the [essential job functions] List itself reflects such a judgment."); *Matkovich v. Costco Wholesale Corp.*, No. CV 15-2057 MRW, 2020 WL 2519576, at *5 (C.D. Cal. May 14, 2020) (essential function established where store manager provided "logical, supportable, and sensible testimony about the role of these tasks in [the employer's] business operations"). It is undisputed that Watchmen select the shift time and the employer they want to work for. (Dkt. No. 99-3, p. 105, Sulzbach Dep. ¶ 10.) They report to the terminal at the start of their shift, and that's when they are assigned to a post based upon the needs of the terminal at the time. (Dkt. No. 99-3, p. 105, Sulzbach Dep. ¶ 11.) To be clear, the specific assignments listed in the CBA, such as rover watchmen, Gangway watchmen, bus drivers, etc., are not independent stand-alone jobs. They are part of job duties that every Watchman must be able to cover. APMT needs the flexibility to assign Watchman dispatching to its terminal to whatever open post is needed and available, and to reassign Watchmen during a shift as necessary. APMT maintains that since Watchmen are required to transport longshore workers to their jobs, travel within the terminals, and travel outside the terminals for security measures, the ability to drive is an essential function of the Watchman job. Even if only one or two of the posts required driving, driving would still be an essential function of the job.

Third, driving is a recurring part of every Watchman's shift when assigned to Roving Patrol or the Shuttle bus. Plaintiff agreed at his deposition then when you're assigned to drive the bus, you have to drive the bus:

> Q: Okay. But when you're assigned to drive the bus, you have to drive the bus, correct?

4

326841944v.2

A:  I would say yes.

Q:  And one of the job duties of a security watchman is to drive a bus? That's one of the – one of the job duties?

A:  Correct.

***

Q:  Are there different sizes of buses and vans? . . .

A:  The sizes varies from soccer mom mini van to a Greyhound bus, something similar to a Greyhound bus or one of the bigger buses.

Q:  And security watchmen are assigned to drive both kinds of vehicles?

A:  They can be, yes.

Q:  That's one of the job duties?

A:  Yes.

(UF 5, Dkt No. 99-3, pp. 41-42, Pl. Dep. 102:6-12, 102:25-103:7.)  He also admitted that the Rover assignment requires driving -- no walking around the terminal is allowed. (Dkt No. 99-3, pp. 97-98, Pl. Dep. 97:5-98:3.)  Even if the precise amount of time were disputed, that would be irrelevant since the amount of time would not defeat essentiality. *See Lui*, 211 Cal. App. 4th at 978 ("[w]here other considerations support a finding that a function is essential, the function 'need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential'"); *Kees*, 161 F.3d at 1199 ("Although corrections officers assigned to the control room are not expected to have inmate contact on a regular basis, plaintiffs acknowledged that some incidental contact is inevitable.").

Fourth, if APMT did not require Watchmen to drive, it could not patrol its federally regulated terminal, transport longshore workers, or respond to emergencies. *See Lui*, 211 Cal. App. 4th at 978 ("the consequence of not requiring that officers in administrative positions be able to perform the duties in the [essential job functions] List ... is a significantly diminished pool of officers available for deployment in emergency situations and other situations requiring mass mobilization"); *Kees*, 161 F.3d

5

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

at 1199 ("their ability to restrain inmates during an emergency is critical to jail security ... jail safety is currently jeopardized by appellants' inability to respond to emergencies").

Lastly, every Watchman who previously held this position, and every current Watchman at APMT and the other terminals operating under the same CBA, was and is required to perform the same driving duties. (Dkt. No. 99-3, p. 104, Sulzbach Decl. ¶¶ 6, 7.) *See Lui*, 211 Cal. App. 4th at 979 ("the evidence of the work experiences of nondisabled past and current police officers in administrative positions ... demonstrates that such officers periodically have been expected to perform the duties in the [essential job functions] List"). Notably, Plaintiff testified that he had to drive as part of his job duties. (Dkt. No. 99-3, p. 41, Pl. Dep. 102:6-12.)

### B.    Cases Cited In Support Of Plaintiff's Argument Are Wholly Distinguishable

The cases cited by Plaintiff in support of his argument that driving is not an essential job function miss the mark. In *Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014), a firefighter lost vision in one eye after an off-duty accident and was terminated because the City maintained that driving emergency vehicles was an essential function of the firefighter position that Plaintiff could no longer safely perform. *Rorrer* at 1031-32. The Sixth Circuit reversed summary judgment for the City based upon facts that are not present in our case. First, the court relied on sworn statements from other firefighters that driving was rotated and "there are some firefighters who never drive the apparatus as a matter of choice." *Id.* at 1034. The Court also noted that in the firefighter job description, the City had intentionally used permissive "may" language for driving only. This was the only change to a task list that otherwise mirrored the NFPA's mandatory language,[2] which the court found reflected "the peculiarity of the Department's rotation policy." *Id.* at 1043. Based upon these facts, the Sixth Circuit found a reasonable jury could conclude that it was "essential for some firefighters to drive an apparatus but not necessary that

---

[2] The NFPA refers to the National Fire Protection Association, which publishes NFPA 1582, the standard listing essential firefighter job tasks, including operating fire apparatus in emergency mode. *Id*. at 1031-32.

6

326841944v.2

every firefighter do so." *Id.* at 1043.  Here, there is no evidence that Watchman can opt out of driving as a personal choice or that driving is treated differently than the other job duties required of Watchman described in the CBA.  (UFs 3, 4.)  Plaintiff's testimony, in fact, confirms this requirement.  (UF 5, Dkt. No. 99-3, Pl. Dep. 102:6-12, 102:25-103:7.)

If driving a shuttle bus was not one of the job duties expected of a Watchman, why would Plaintiff have gone out of his way to specifically request, repeatedly, that he be excused from performing this job duty?  Why would Dr. Coleman spell out in her letters that it was not recommended that he drive a shuttle bus or large passenger vehicles?

*Rohr v. Salt River Project Agric. Improvement Power Dist.*, 555 F. 3d. 850 (9th Cir. 2009), is also unavailing. In *Rohr,* the job duty Plaintiff was precluded from performing was infrequent overnight outage work. *Id.* at 854, 856. The court found a triable issue as to whether the overnight outage duty was essential because there was evidence that Plaintiff had performed that duty only "about a dozen times" over twenty-three years and not at all since 2001. *Id.* at 854, 864.  In sharp contrast here, driving is not a rare Watchman job duty.  It is a *daily duty* performed by Watchmen across all terminals.  Plaintiff does not dispute this – he merely points out that Watchman perform other job duties as well.  That does not make driving a marginal or non-essential job duty.

Plaintiff also cites to *Miller v. Cal. Dep't. of Corrections,* 225 F.3d 663, 2000 WL 689585 (9th Cir. 2000), in support of his argument. But the holding in *Miller* defeats, rather than supports, Plaintiff's argument.  In *Miller*, a correctional sergeant injured her back and was temporarily reassigned to a Central Control Sergeant post, where direct inmate contact was rare. *Id.* at *1-2. She argued that the relevant position was that specific post, and that inmate contact therefore was not an essential function. *Id.* at *1. The Ninth Circuit rejected that argument and held that the relevant position was the broader category of Correctional Sergeant, because all sergeants were treated as fungible and could be assigned to any post. *Id.* at *2. The court explained: "the relevant 'position' is not the specific post of Central Control Sergeant but rather the general category of Correctional Sergeants." *Id.* .  The essential functions were those required of *all*

7

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

Correctional Sergeants including responding to emergencies that involved inmate contact. The Ninth Circuit affirmed summary judgment because the plaintiff "is unable to perform an essential function of the job." *Id.*

The same result follows here. Watchmen are dispatched on a per shift basis to any of eight terminals and assigned posts by the Shift Lead at the start of each shift depending on business needs.  No Watchman holds a permanent post that doesn't require driving. The CBA requires every Watchman to be able to perform the duties of the general category, including driving.  Plaintiff's argument that he can avoid the driving requirement by pointing to specific posts where driving is not needed is the same argument the Ninth Circuit rejected in *Miller*.

Based on the above, the fact that driving is an essential job duty of a Watchman cannot be reasonably disputed.

### C.   The Fact That APMT Temporarily Excused Plaintiff From Driving Does Not Establish That Driving Was Not An Essential Job Duty

Plaintiff's second argument is that APMT's temporary accommodation excusing him from working assignments requiring driving is evidence that driving is not an essential job duty.  Plaintiff cites no legal authority for this proposition.  In fact, controlling case law stands for the *opposite*.  Temporarily removing an essential function does not equate to a finding that the function is not essential. *See Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1224 (2006) ("Federal courts of appeals interpreting the ADA, upon which FEHA's accommodation requirements are modeled have similarly held not only that an employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired, but also that an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position once it is informed the employee's disability has become permanent.").

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

## III.   PLAINTIFF DOES NOT MEANINGFULLY DISPUTE THAT ALLOWING HIM TO CONTINUE TO DISPATCH TO APMT POSED A DIRECT THREAT

Plaintiff does not and cannot dispute that he could not safely drive a bus or truck on the marine terminal.  Instead, he argues that he did not pose a direct threat because he was capable of performing his work when APMT *temporarily waived the shuttle bus assignments*.  (Dkt. No. 103, Opp. at 17.)

This argument fails for the same reasons stated in section II.A above.  Driving *is* an essential function of the Watchman job.  Indeed, Plaintiff himself acknowledged the danger of driving a shuttle bus on the marine terminals.  It is undisputed that Plaintiff wrote a letter to the JPWLRC to communicate his "safety concerns."  (UF 15, Dkt. No. 103-4, p. 19:24-25.)  In that letter, he characterized his visual impairment as a "medical condition which limits my physical ability to perform some of my job duties safely and effectively . . . I am seeking to have a dialogue in order to create solutions which will **avert any serious incident.**" (UF 15.)  Moreover, it is also undisputed that when APMT met with Plaintiff to discuss his disability and request for accommodation on May 11, 2023, Plaintiff stated that "the shuttle bus assignment was his most serious challenge and **safety concern** due to his disability and medical condition."  (UFs 18, 19, Dkt No. 103-4, pp. 23:27-24-5, 24:26-25:5.)  Plaintiff himself recognized the peril of a legally blind person with no peripheral vision driving through an active marine terminal around large machinery, vehicles and other dock workers.  (*See* UF 1.)

Plaintiff downplays the significance of his two auto accidents at LBCT and APMT, but the surveillance videos speaks for itself and is an indisputable account of what happened.  Plaintiff's complaints about the adequacy of the investigations and disagreement with the ultimate conclusions reached regarding fault are red herrings, as is Plaintiff's argument that "if Plaintiff posed the severe and unavoidable safety threat APM now describes, APM would not have accommodated him, continued dispatching him, and permitted him to work under" accommodations for nearly three months fails. (Dkt. No.

9

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

103, Opp. at 17:26-18-2.)  This argument ignores that APMT temporarily accommodated Plaintiff by relieving him of all driving duties, thus eliminating the risk.

## IV. PLAINTIFF FAILS TO PRESENT SUBSTANTIAL AND SPECIFIC EVIDENCE THAT APMT'S LEGITIMATE, NON-DISCRIMINATORY REASON WAS PRETEXTUAL

It is undisputed that APMT's legitimate non-discriminatory and non-retaliatory reason for placing Plaintiff on non-dispatch was for safety on a federally regulated marine terminal and for the safety of Plaintiff, and his coworkers.

Plaintiff's Opposition presents no evidence that APMT's decision was based on anything other than the non-discriminatory evidence before it: the CBA, Plaintiff's accidents, including the one at APMT's parking lot, Plaintiff's medical notes, and Dr. Deutsch's expert medical opinion.  Instead, Plaintiff reiterates his arguments about driving not being an essential function of the job (addressed above), the fact that APMT accommodated Plaintiff and he was able to work with the proffered accommodation (addressed above), and the fact that he received Employer Complaint for the accident at the APMT parking lot.

With respect to the Employer Complaint issued to Plaintiff, he egregiously mischaracterizes the deposition testimony when he argues that APMT's PMK "was not aware of any other Local 26 member who had received an employer complaint from a parking-lot accident and testified that such incidents were not typically the subject of employer complaints." (Dkt. No. 103, Opp. at 20:5-8.)  The actual testimony reads as follows:

> Q.  Okay.  And does APM typically get involved when there's accidents in the APM parking lot?
>
> THE WITNESS:  So we will -- APMT, we will get involved in items or issues at times, not necessarily just an accident, that do happen in the parking lot when labor's involved.  It's not uncommon.
>
> * * *
>
> Q.  Do you know of any other Local 26 members that have been issued an employer complaint for accidents that occur on the parking lot?

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

THE WITNESS:  I'm not aware of anybody having an accident in the parking lot besides Mr. Greene.

* * *

Q.   And does APM typically issue employer complaints when Local 26 members get in motor vehicle accidents in their personal vehicles?

THE WITNESS:  I would say that no, because we don't really usually have anybody getting into accidents similar to this situation. So I don't recall that many -- this occurring that many times, but this is the only time I recall this happening, so --

(Dkt. No. 103-2, p. 40-43, Sulzbach Dep. 41:7-21, 41:25-42:12, 42:18-43:17.)  In other words, Plaintiff was not singled out in any way when APMT issued the Employer Complaint.  Pretext cannot be shown by "merely denying the credibility of the employer's proffered reasons" for a decision.  *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010); *see also Rodriguez v. Int'l Bus. Machines*, 960 F. Supp. 227, 231 (N.D. Cal. 1997) ("Plaintiff's subjective belief that [his employer's] actions were discriminatorily motivated is not sufficient to withstand summary judgment."); *Barton v. Elexsys Int'l, Inc.*, 62 Cal. App. 4th 1182, 1192 (1998) ("[the employee's] belief, without more," does not create a triable issue of fact).  None of the proffered arguments by Plaintiff is specific and substantial evidence that APMT's non-discriminatory and non-retaliatory reason for placing him on non-dispatch to its terminal is pretextual, and the true reason for the adverse employment action is, in fact, to discriminate against him because of his disability.

Plaintiff also implies that Dr. Deutsch's October 2023 opinion was somehow influenced because he initially issued work restrictions in September 2023 that "mirrored" Dr. Coleman's restrictions. (Opp. at 7.) Plaintiff mischaracterizes the evidence to support this argument.

On September 30, 2023, Dr. Deutsch sent Williams an email which included his recommendation of "No driving in areas where lack of peripheral vision endangers Mr. Greene or others."  (Dkt. No. 99-3, p. 278, Williams Decl. ¶ 38, Ex. Z. )    It was not clear to Williams what Dr. Deutsch meant by that.  He  anticipated getting questions from the

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

employers about how to interpret that restriction and what they could do to accommodate it.  To make sure he understood what Dr. Deutsch intended that restriction to mean, Williams scheduled a call with him to get clarification. (Dkt. No. 99-3, p. 282, Williams Decl. ¶ 38, Ex. Z. )

During the call with Dr. Deutsch, Williams asked for clarification regarding that restriction, and Dr. Deutsch asked for more details about a Watchman's job duties, including the kind of driving a Watchman is required to do. The two discussed driving a bus or shuttle bus to transport dockworkers throughout the terminal and driving pickup trucks to perform roving security patrols. (Dkt. No. 99-3, p. 278, Williams Decl. ¶ 39. ) Williams never asked Dr. Deutsch to change his opinion or issue any particular work restriction. (*Id*.)

Dr. Deutsch wrote a written opinion regarding Plaintiff's functional work limitations dated October 12, 2023, based upon his review of Dr. Coleman's letters dated April 15, 2023, May 25, 2023, and September 7, 2023. In the October 12, 2023 letter, Dr. Deutsch stated Plaintiff was "precluded from working in any capacity that requires peripheral vision," including, "driving any vehicles on terminal property[,]" "performing any tasks that require verification of identification and conducting visual inspections[,] and "climbing ladders and gangways. (Dkt. No. 99-3, p. 303, Williams Decl. ¶ 41, Ex. aa.)

Based on the evidence, there is no basis to infer that Williams caused/influenced Dr. Deutsch to change his opinion.  He merely asked for clarification about a vague restriction that was subject to interpretation and would have undoubtedly led to confusion about what Plaintiff could and couldn't do.  More importantly, Plaintiff's own treating ophthalmologist, Dr. Coleman, ultimately reached the same conclusion as Dr. Deutsch: by April 2024, she opined that Plaintiff should not drive any vehicle.  (UF 29.)

Because there is no triable issue as to pretext, Plaintiff's discrimination claim fails.

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

**V.   PLAINTIFF FAILS TO PRESENT ANY SEVERE OR PERVASIVE CONDUCT BY AN APMT EMPLOYEE AND HIS HARASSMENT CLAIM FAILS**

It is axiomatic that for an employer to be liable for workplace harassment, the employer has to have some nexus to the alleged harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 789, 799 (1998).

Here, Plaintiff argues that the sufficiency of APMT's investigation into Plaintiff's accident in the parking lot, Charles Gray's statement to Plaintiff that "You have a history of getting in accidents," and that there was information concerning Plaintiff posted on bulletin boards, which APMT later directed be removed, constitutes unlawful harassment. (Dkt. No. 103, Opp. at 22:1-11.)  None of the alleged conduct rises to the level of sufficiently severe or pervasive to constitute actionable harassment.

As addressed in its Motion, APMT reviewed the security footage where Plaintiff drove into the wrong lane of traffic and collided head-on with a stationary vehicle. (UF 37.)  Plaintiff's complaint regarding the adequacy of investigation is moot, as the security video footage speaks for itself.  (UF 23.)  Nor does Mr. Gray's comment constitute actionable harassment.  Notwithstanding the fact that Mr. Gray allegedly made this comment ***once***, Plaintiff does not offer any evidence to show that Mr. Gray knew about his purported disability and vision issues when he made this comment.  As such, Plaintiff cannot demonstrate that Mr. Gray made this statement ***because*** of Plaintiff's alleged disability.  Finally, with respect to the alleged posting on the bulletin boards, Plaintiff testified that it was Luisa Gratz, ILWU Local 26 president, who posted the alleged notice on APMT's bulletin board and further admits that APMT directed the posting be removed.  (UF 41, 42, Dkt. No. 99-3, p. 30, 180, Pl. Dep. 77:4-10, 180:5-25.)  This conduct is not attributable to APMT.

In his Response to Separate Statement of Facts, Plaintiff claims that the incidents of alleged harassment described in APMT's brief are not "the entirety of the alleged harassment" and that "he was subjected to increased scrutiny."  These vague and conclusory allegations are insufficient to defeat a motion for summary judgment.  *See*

13

326841944v.2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and . . . **designate specific facts** showing that there is a genuine issue for trial.") (internal quotations omitted and emphasis added).

Simply put, Plaintiff does not identify any conduct sufficient to meet the severe or pervasive standard for a harassment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Martin v. Bd. of Trustees of Cal. State Univ.*, 97 Cal. App. 5th 149, 170 (2023). Plaintiff must show not only that he "subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, *i.e.*, that it was objectively hostile." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001).

As such, there is no triable issue of material fact whatsoever to support Plaintiff's claim for disability-based harassment.

## VI.    PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM FAILS

Plaintiff could not—and cannot—perform his essential driving duties, and has not identified a single accommodation that would have enabled him to perform that essential function. Instead, he (again) attempts to argue that driving is not an essential job duty and he should therefore be excused from doing it altogether. He also argues that because APMT temporarily accommodated him by restricting him to working only certain posts that did not require driving, "Plaintiff was capable of performing his work[.]" (Dkt. No. 103, Opp. at 23.) Plaintiff cites no supporting statutory authority or case law, and his arguments are unavailing.

As explained above in section II.A., driving is an essential function of the Watchman job. Employers are not required to exempt employees from performing essential job functions, reallocate essential functions to other employees, or eliminate the essential functions of any job as a reasonable accommodation. *See Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) ("The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees"); *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 375 (2015) ("elimination of an essential function is not a reasonable accommodation"). Even if an

14

326841944v.2

employer temporarily removes essential job duties as an accommodation, that does not create a legal obligation to continue to do so either temporarily or permanently. *See Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1224, (2006) ("Federal courts of appeals interpreting the ADA, upon which FEHA's accommodation requirements are modeled have similarly held . . . that an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position once it is informed the employee's disability has become permanent.").

What Plaintiff suggests is letting him pick and choose amongst the many tasks performed by a Watchman which ones he believes he can do and excuse him from performing all others. That is not the job of a Watchman. That is a job that currently does not exist and is not provided for in the CBA. APMT has no obligation to create a job that doesn't already exist to accommodate Plaintiff. *Watkins v. Ameripride Services*, 375 F.3d 821, 828 (9th Cir. 2004) (the employer "was not required to create a new position to accommodate [the employee.]").

Moreover, Plaintiff's accommodation request asks APMT to violate the CBA by allowing him to perform only limited duties of a Watchman. This request is unreasonable *per se*. *See Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 681 (9th Cir. 2001), as amended (Mar. 27, 2001) ("A plain reading of the ADA supports the conclusion that an accommodation that would compel an employer to violate a CBA is unreasonable.") While the holding in *Willis* was limited to bona fide seniority rights established in a CBA, the same reasoning applies in this case.

## VII. PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS FAILS

Plaintiff essentially argues that APMT should have done more during the interactive process, but fails to cite to any supporting evidence. The undisputed facts establish that APMT engaged in the interactive process when it met with Plaintiff to discuss his disability and request for accommodation, then ***granted*** his request to be

15

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

relieved of assignments that involved driving.  (UFs 17, 18, 19, 46, Dkt. No. 103-4, p. 22:24-27, 23:27-24:5, 24:26-25:5, 75:3-5.)

Also conspicuously missing from Plaintiff's opposition is the identification of what reasonable accommodation could have been made that would have permitted him to safely drive. The "interactive process" requirement only applies where the employee can perform essential job functions with or without accommodation.  *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 979-981 (2008).  ("The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made… [and thus,] we conclude that section 12940(n) imposes liability only if a reasonable accommodation was possible."); *Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128,1137 (N.D. Cal. 2004) ("there were no accommodations that could have possibly been consistent with the medical opinion that he was totally disabled from any employment. The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile."); *Paez v. Akima Support Operations LLC*, No. 2:21-cv-1920 DJC AC, 2024 WL 5047031, at *9 (E.D. Cal 2024 Dec. 9, 2024) ("a plaintiff cannot prevail on an interactive process claim unless he can identify an actual, available accommodation that could have arisen from the process and allowed plaintiff to resume employment."); *Neufeld v. Winco Holdings, Inc.*, No. 1:14-cv-1505 DAD-JLT, 2016 WL 815649, at *5 ("This section imposes liability only if a reasonable accommodation was possible. That is, the ability to perform the essential functions of a job—with or without a reasonable accommodation—is an element of a claim under section 12940(n).") (citations omitted). Accordingly, Plaintiff's interactive process claim fails.

## VIII.  PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATION FAILS

Plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish a causal link between his alleged protected activity (request for accommodation) and APMT's decision to place him on non-dispatch. . APMT filed its employer complaint because Plaintiff causes an accident at its terminal, and then later concurred with the

16

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

JWLRC's conclusion that Plaintiff could not safely perform all of the essential duties of a Watchman, either with or without reasonable accommodation, based upon the medical and factual record before it at the time. When a defendant has articulated a legitimate, non-discriminatory reason for an adverse action, the burden then shifts to plaintiff to submit specific and substantial evidence that the proffered non-retaliatory reason is pretextual, and the true reason for the adverse employment action is, in fact, retaliation for engaging in protected activity. *See Loggins v. Kaiser Permanente Int'l.*, 151 Cal. App. 4th 1102, 1109 (2007).

Here, Plaintiff has offered no evidence of pretext. Instead, he points to the "temporal relationship" between his request for accommodation and APMT's Employer Complaint. (Dkt. No. 103, Opp. at 26.) As stated above, Plaintiff woefully mischaracterizes APMT's PMK testimony in arguing that APMT singled him out when it issued an Employer Complaint for Plaintiff's accident in the parking lot. There's simply no evidence to support a finding of pretext. Accordingly, Plaintiff's retaliation claim fails.

## IX.    PLAINTIFF'S WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM FAILS

Plaintiff's wrongful termination claim is premised on his ADA and FEHA claims. Because his ADA and FEHA claims fail, so too does his derivative claim for wrongful termination. *See, e.g.*, *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) ("[I]f the claim for . . . discrimination fails, plaintiff's cause of action for wrongful termination in violation of public policy fails because it is derivative of plaintiff's statutory claim….")

## X.    PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES FAILS

For APMT to be liable for punitive damages, Plaintiff must prove by clear and convincing evidence that one of APMT's officers, directors, or managing agents personally engaged in oppressive, fraudulent, or malicious conduct towards Plaintiff. Cal. Civ. Code § 3294(b); *Basich v. Allstate Insurance Co.*, 87 Cal. App. 4th 1112, 1121

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

(2001) (clear and convincing evidence must be shown even in opposition to a motion for summary adjudication of punitive damages.)  Plaintiff cannot dispute that Clayton Brown, Charles Gray, Steve Naumovski, or Matt Fresenius were managing agent. Plaintiff's conclusory arguments to the contrary without citing to *any* supporting evidence that *any* of APMT's employees personally engaged in oppressive, fraudulent or malicious conduct towards Plaintiff, let alone an officer, director, or managing agent of APMT.  Thus, Plaintiff's punitive damages claim fails as a matter of law.

## XI.    CONCLUSION

For the foregoing reasons, APMT respectfully requests the Court grant its Motion for Summary Judgment in its entirety, or alternatively, partial summary judgment.

DATED: July 2, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By:*/s/ Dana L. Peterson*
Clifford 'Seth' Sethness
Dana L. Peterson
David J. Kim
Tabitha Kwon
Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, LBCT LLC, APM TERMINALS PACIFIC LLC, TOTAL TERMINALS INTERNATIONAL LLC, and SSA TERMINALS LLC

18

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2

## **Local Rule 11-6.2 Certification**

The undersigned, counsel of record for PMA, certifies that this brief contains 5,978 words, which complies with the word limit of L.R. 11-6.1.


By: */s/ Dana L. Peterson*
Dana L. Peterson

19

APMT'S REPLY TO PLAINTIFF'S OPPOSITION TO MSJ

326841944v.2