Marc Coleman, Esq., State Bar #110358
LAW OFFICES OF MARC COLEMAN
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: (562) 432-8188
marc@marccolemanlaw.com

Attorneys for Defendant ILWU LOCAL 26

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual;<br><br>               Plaintiff,<br>       v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, a Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive;<br><br>               Defendants | **CASE NO.: 5:25-cv-01359-KK (CTSx)**<br><br>[Assigned to the Honorable Kenly Kiya Kato– Courtroom #3]<br><br>**DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT [DKT. NO. 107]**<br><br>**Date:  July 16, 2026**<br>**Time: 9:30 a.m.**<br>**Place: Courtroom 3, 3rd Floor**<br><br>Complaint Filed: June 2, 2025<br>Trial Date:        September 28, 2026 |

1

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................2

II.   STATEMENT OF  FACTS..................................................................2

    A.    Greene Fails to Raise a Triable Issue as to the Essential
        Functions of the Watchmen's Position .................................................2

        1.    The Watchmen's Agreement Establishes the Exclusive
               Process by which Watchmen Obtain Work Assignments .......3

        2.    The Watchmen's Agreement Establishes the Essential
               Functions of a Watchmen's Position ....................................3

    B.    The Constantly Changing Nature of Watchmen Work
        Precludes Traditional Job Accommodation ....................................4

    C.    No Credible Evidence Establishes that Greene can Perform
        the Essential Functions of the Watchman Position...........................5

    D.    Greene Fails to Create a Genuine Dispute About his
        Proposed Accommodation Violating the Collective
        Bargaining Agreement ....................................................................7

    E.    Greene Offers no Evidence he is not a Direct Threat of
        Injury to Himself or Others.............................................................7

III.  ARGUMENT ......................................................................................7

    A.    Summary Judgment Standard ...........................................................7

    B.    Greene is not a Qualified Disabled Person Because
        He Cannot Perform the Essential Functions of the Job ...................9

i

C.     Greene's Accommodation Would Impermissibly Violate Legitimate Expectations of Local 26 Workers Under Their Collective Bargaining Agreement and Destroy the Dispatch System ........................................................................................ 11

D.     Greene's Palliative and Assistive Measures Will Not Allow Him to Perform the Essential Functions of the Job ........................ 12

E.     Greene Was a Direct Threat of Injury or Death to Himself and Others ................................................................................. 13

F.     Even if Greene Can Perform Some Aspects of Watchmen Assignments, This Does not Create a Genuine Issue of Material Fact ........................................................................... 13

IV.    CONCLUSION ........................................................................................ 14

ii

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Liberty Lobby, Inc.,*
       477 U.S. 242 (1986) ................................................................7, 8

*Bates v. United Parcel Service, Inc.,*
       511 F.3d 974 (9th Cir. 2007) (en banc) ........................................11

*Celotex Corp. v. Catrett,*
       477 U.S. 317 (1986) ...................................................................8

*Cripe v. City of San Jose,*
       261 F.3d 877, 888 N. 12 (9th Cir. 2001) .................................9, 10

*Galen v. Cnty. of L.A.*, 477
       F.3d 652 (9th Cir. 2007) .............................................................8

*Nigro v. Sears, Roebuck & Co.,*
       784 F.3d 495 (9th Cir. 2015) ........................................................8

*Oracle AM., Inc. v. Hewlett Packard Enter. Co.,*
       971 F.3d 1042 (9th Cir. 2020) ......................................................8

*Rohr v. Salt River Project Agricultural Improvement and Power District,*
       555 F.3d 850 (9th Cir. 2009) ...................................................9, 11

*Rorrer v. City of Stow,*
       743 F.3d 1025 (6th Cir. 2014) ..................................................9, 10

*S. Cal. Gas Co. v. City of Santa Ana,*
       336 F.3d 885 (9th Cir. 2003) ........................................................8

*Tolan v. Cotton*
(2014) 572 U.S. 650 (Per curiam) ........................................................7

iii

TABLE OF CONTENTS AND TABLE OF AUTHORITIES IN SUPPORT OF DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

*US Airways v. Barnett*,

   535 US 391 (2002) ..................................................................................11

## STATUTES

42 USC §12112(8)................................................................................... 11

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 56(e)(2)................................................. 8

iv

# I.

# **INTRODUCTION**

Plaintiff Enoch Greene ("Greene" or "Plaintiff") claims to have disputed 73 of the 76 Undisputed Facts by Defendant ILWU Local 26 ("Local 26"). In reality, when one scrutinizes the actual content of the alleged disputations, Greene fails to provide actual facts as opposed to allegations, argument, or speculation sufficient to generate a genuine issue of material fact as to any of Local 26's stated material facts. Because Greene fails to adequately controvert any material fact in Local 26's Motion for Summary Judgment, Local 26 is entitled Judgment as a matter of law based on its defenses. Specifically, Greene has not materially controverted Local 26's presentation that he is a direct threat to himself and others; that Greene's proposed accommodations necessarily violate express terms of the collective bargaining agreement between the parties ("the Watchmen's Agreement") and Greene is unable to perform the essential functions of the Watchmen position.

# II.

# **STATEMENT OF FACTS**

**A.    Greene Fails to Raise a Triable Issue as to the Essential Functions of the Watchmen's Position**

Both sides concur that Watchmen do not have "jobs" like most employees. They have work opportunities. Watchmen, including Greene, go through a daily dispatch process jointly administered by the Pacific Maritime Association ("PMA") and Local 26. Using a "low man out" system, the member with the lowest hours for the time period is dispatched first. (UF 7) Watchmen are given a start time and a terminal. They have a choice of five work opportunities at eight different terminals.

///

///

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

**1.      The Watchmen's Agreement Establishes the Exclusive Process by which Watchmen Obtain Work Assignments**

The Watchmen's Agreement, the negotiated Collective Bargaining Agreement between the PMA and Local 26, dictates the exclusive method by which Local 26 Watchmen are assigned work covered thereunder. (UF 6)

All Watchmen, including Greene, are required to obtain their work opportunities through the dispatch process as dictated by the terms of the Watchmen's Agreement. Greene does not dispute that The Watchmen's Agreement is a bona fide seniority-based system which precludes all Local 26 Watchmen covered thereunder from bargaining or accepting work assignments outside the process provided in the Watchmen's Agreement. (UF 7-8) Greene disputes UF 8 on the grounds that the fact that the parties operate a bona fide seniority-based system does not categorically prohibit his requested accommodations or prohibit Local 26 from participating in the interactive process (not in dispute) or evaluating reasonable accommodations under the ADA and FEHA. (See Greene's Response to UF 8) In that vein, Greene admits and approves Gratz's testimony that Watchmen are dispatched to terminals and timeframes, rather than specific assignments, and that assignments frequently change depending on operational needs. (See Greene Response to UF 8) None of these statements or the cited sections of the testimony of Local 26 President Luisa Gratz ("Gratz depo.") materially controvert Local 26's undisputed fact that the Watchmen's Agreement is a bona fide seniority system and that Watchmen are not permitted to bargain individually outside that system.

**2.      The Watchmen's Agreement Establishes the Essential Functions of a Watchmen's Position**

Gratz testified that the "M" language in the Watchmen's Agreement and Articles, 1, 2, and 7 of the Watchmen's Agreement constitute the essential functions of the Watchmen position. (UF 15-22) Greene's response to UF 16 attempts to dispute this point, claiming that the "M" language, etc. does not "as a matter of law or undisputed fact establish the

3

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

essential functions of every Watchmen assignment." This is not the point. Certainly no Watchman performs all of the duties set forth in the "M" language every day, he or she works at a specific terminal any more than any worker performs every essential function every day in any job. However, all Watchmen are expected and required to perform all job duties set forth in the "M" language should they be required to do so during their shift. The nature of essential functions do not require that all employees perform all functions daily in order to render them essential. Rather, Gratz has competently testified, and the parties have expressly agreed, that the Watchmen's Agreement "M" language constitutes the essential functions of the jobs at each specific terminal. No evidence by Greene controverts this fact. Nor does the fact that there may be other duties as assigned create a genuine dispute of fact.

**B.    The Constantly Changing Nature of Watchmen Work Precludes Traditional Job Accommodation**

Greene also does not dispute that Watchmen assignments consist of various "M" language job duties that are constantly changing throughout the shift. Greene quotes Gratz's testimony that Watchmen are not dispatched to specific jobs, there is no guarantee a Watchmen will perform any particular assignment, and Watchmen frequently perform multiple assignments during a single shift, depending on operational needs. (Gratz Decl. ¶9) Greene then claims that "these admissions directly undermine ILWU's contention that driving every vehicle, performing every transportation assignment, and completing every listed task constitute essential functions of every Watchmen assignment as a matter of law." (See Greene Response to UF 12)

This is not the point. The truth is that Watchmen, as Greene admits, are required to perform any and all tasks set forth in the "M" language and Articles 1, 2, and 7 of the Watchmen's Agreement because they are the main functions of the job. Nothing in Greene's presentation disputes, based on argument or evidence, that the "M" language and related Collective Bargaining provisions do not constitute essential functions of the job.

4

No evidence offered by Greene creates a genuine issue of fact that Defendants have, other than the one-day temporary accommodations given to Greene in this case, allowed Watchmen to bypass the requirements of the Watchmen's Agreement and/or negotiate their own deals. (UF 6, 8, 10, 11, 74, 75, and 76) Although Greene has been unclear about what exactly his proposed accommodation is, he is clearly prohibited by his doctors (see discussion, *infra*.) from driving any motor vehicle and both his doctor and Dr. James Deutsch concurred that he cannot be in active working areas of the terminal because of the hazard he creates. Thus, he cannot perform any function driving a motor vehicle, nor can he be present in working areas of the terminal leaving him only with the possibility of some inside or desk job.

The net effect of Greene's limitations is to require that Defendants create a job for him, something they are not legally obligated to do. Greene wants to step outside the dispatch function, outside the "low man out" hours requirement, outside the requirement that Watchmen must take the work assigned by the employers once they are placed in a terminal and outside the obligation to drive vehicles, patrol the yard and other such functions. This does not raise a genuine issue of triable fact because the Defendants are not legally required to create a job for Greene, but that is the only option which he is proposing. Such an option would clearly violate and ultimately destroy the collective bargaining process, as any individual with a doctor's note could require Defendants to create a job for them outside the collective bargaining process and ahead of all the other workers who are performing the essential functions of the job. Such a proposition would also take bargaining work away from the bargaining unit in contravention of the Collective Bargaining Agreement and the interests of the other members of the Union.

C.      **No Credible Evidence Establishes that Greene can Perform the Essential Functions of the Watchman Position**

At various places and in various forms, Greene contends that Dr. Anne Coleman, his treating doctor ("Dr. Coleman") has "concluded that Plaintiff could safely perform

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

Watchman duties with reasonable accommodations" and clarified that his driving restrictions were limited to oversize passenger vehicles, not all vehicle operation. (See e.g. Disputed Response to UF 25) Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." Under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene could work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. (UF 61-67) Additionally, Dr. James Deutch was the Joint Medical Examiner for PMA and Local 26. (UF 68) Greene does not dispute that Dr. Deutsch serves as the Joint Medical Examiner for PMA and Local 26. Greene refused to attend a fitness for duty examination with Dr. Deutsch and now claims to raise a genuine dispute of fact because Dr. Deutsch did not examine him and Dr. Deutsch's opinions conflict with those of Dr. Coleman. (See Greene's Response to UF 68-72)

Greene's evidentiary reliance on Dr. Coleman is utterly misplaced because there is total congruence between her determination and that of Dr. Deutsch that Greene cannot drive any motor vehicle and cannot be in working areas of the terminal because of the hazards involved. The fact that Dr. Deutsch may have added additional restrictions does not create a genuine dispute of fact because the essential facts are agreed upon, namely that Greene cannot perform the essential functions of the job because he cannot drive a motor vehicle or be in working areas of the terminal.

///

6

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

**D.     Greene Fails to Create a Genuine Dispute About his Proposed Accommodation Violating the Collective Bargaining Agreement**

As stated in the moving papers, Greene's proposed accommodation violates the terms of the Collective Bargaining Agreement in numerous ways. No evidence offered by Greene demonstrates any possibility to accommodate him otherwise and no such option was ever raised before the JPWLRC. Notably, by allowing Greene to bypass the dispatch system and work directly with the terminals, he is engaging in direct dealing in violation of the Collective Bargaining Agreement. By refusing work and generating side deals he necessarily violates the Collective Bargaining Agreement. No alternative offered by Greene for accommodation can avoid violating the bona fide provisions of the Collective Bargaining Agreement concerning dispatch, availability, and assignment of work.

**E.     Greene Offers no Evidence he is not a Direct Threat of Injury to Himself or Others**

Greene claims he was not injured, but the statement is in direct contradiction to his having reported that he had been injured in the accident on June 12, 2023 and that he was going to drive himself to the hospital. (UF 49 and Victor Gasset Declaration at ¶ 10) In addition to injuring himself in the LBCT accident on or about May 1, 2023, Dr. Coleman was likewise concerned about his safety should he be in working areas of the Port. No doctor has opined that Greene can safely work on terminal premises when cargo operations are underway.

**III.**

**ARGUMENT**

**A.     Summary Judgment Standards**

Facts are "material" if they are necessary to the proof or defense of a claim and are determined by referring to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine if a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inferences in the non-

7

---

moving party's favor. *Tolan v. Cotton* (2014) 572 U.S. 650, 655-659 (Per curiam). The non-moving party cannot manufacture a "genuine dispute" by relying on allegations in the pleadings. *Anderson*, *supra* at 251; *Oracle AM., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1049 (9th Cir. 2020).

While a trial court may not resolve issues of credibility to determine whether a fact is "genuinely disputed," a court may discount uncorroborated self-serving testimony where "it states only conclusions and not facts." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-498 (9th Cir. 2015). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, *supra* at 255.

The moving party has the initial burden of establishing the-absence of a material fact for trial. *Id*. at 252. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... , the court may ... consider the fact undisputed." *Fed. R. Civ. P. 56(e)(2).* Furthermore, "Rule 56[(a)]2 mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). Furthermore, the nonmoving party "must direct [the court's] attention to specific, triable facts. General references without pages or line numbers are not sufficiently specific." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (citations omitted). Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

///

///

8

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

**B.**    **Greene is not a Qualified Disabled Person Because He Cannot Perform the Essential Functions of the Job**

Greene argues that the "M" language in the Watchmen's Agreement and Articles 1, 2, and 7 do not establish as a matter of law what are the essential functions of the Watchmen's work opportunity. He claims to have shown triable issues of fact as to what are the essential functions of the Watchmen position. Local 26 does not maintain that the "M" language and the Watchmen's Agreement by themselves establishes the essential functions. However, Local 26 President Gratz testified based on her over 40 years of experience as a negotiator, President and Business Agent of Local 26 that the "M" language does constitute the essential functions of the job. This is competent testimony within her personal and professional knowledge.

Greene cites *Rorrer v. City of Stow*, 743 F.3d 1025, 1043-1045 (6th Cir. 2014); *Cripe v. City of San Jose*, 261 F.3d 877, 888 N. 12 (9th Cir. 2001) and *Rohr v. Salt River Project Agricultural Improvement and Power District*, 555 F.3d 850, 864 (9th Cir. 2009) for the proposition that a moving party must establish through competent evidence what the essential functions of the position are. Local 26 has met that burden through the testimony of Gratz and Victor Gasset, as well as the Collective Bargaining Agreement itself. Greene on the other hand has offered no evidence whatsoever that the stated essential functions in the "M" language and Articles 1, 2, and 7 are not in fact the essential functions of the Watchmen's job. He argues that because he was allowed on a temporary basis to do work for one day that was not directly assigned through the dispatch process, this somehow proves that the parties did not take the "M" language seriously, or that he was not required to perform such work. Not so. When he was unable to perform the assigned jobs, he was requested to "reap out" which he refused to do, and in some cases, the Employer allowed him to finish his shift, rather than firing him on the spot. (UF 34, 38, 39, and 40)

9

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

However, it is evident that the Defendants have strictly adhered to contract compliance with the Watchmen's Agreement with regard to the dispatching and assignment of Watchmen and have guarded against and prevented, as a matter of the Collective Bargaining Agreement itself, gimmicking, direct dealing, and violations of dispatch rules and procedures, or allowing individual members to negotiate their own deals with Employer signatories. (UF 74 and 75). With regard to SSA temporarily accommodating Greene, SSA Terminals, LLC wrote to Gratz on or about February 15, 2024, stating that it had allowed Greene a temporary assignment to an exit gate guard post, but that SSA recognized that it did not and could not unilaterally change a Watchmen's job classification with any degree of permanence, "since doing so would involve outright elimination of the other essential functions of the Watchmen position." Further, allowing Greene to perform a limited function would "have a substantial and adverse impact upon other bargaining unit members and alter, if not completely undermine, the bona fide seniority system in place." (UF 76)

The other major distinction between the Watchmen's job and those described in the cases cited by Plaintiff are that the Watchmen's job is not a "job" per se like policeman or fire fighter. In both *Rorrer v. City of Stow* and *Cripe v. City of San Jose*, the court found that the essential function presentation by Defendants was suspect because Plaintiff produced evidence that numerous individuals did not actually perform the work described in the essential functions as part of their normal job duties. They effectively controverted the employer's summary judgment showing through some employees performing certain job functions and not others alleged to be essential. Here, Watchmen are expected to perform all of the "M" language functions based upon the operational needs of the day. Greene offers no evidence whatsoever that individuals dispatched under the Watchmen's Agreement were somehow allowed to selectively omit certain "M" language functions from what they did if requested by the Employer. The consistent testimony from Gratz and the other Defendants has been that all Watchmen are expected to do any or all of the

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR
SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

"M" language functions upon assignment to a terminal. No competent evidence disputes this fact.

**C.      Greene's Accommodation Would Impermissibly Violate Legitimate Expectations of Local 26 Workers Under Their Collective Bargaining Agreement and Destroy the Dispatch System**

In Local 26's opening brief, Local 26 described that allowing Greene to be accommodated through selectively picking his work and/or getting some sort of specific job at a terminal would completely undermine the dispatch system and the legitimate expectations of other workers at Local 26. See *US Airways v. Barnett*, 535 US 391, 403-404 (2002). Evidence of this already occurred by the one-day allowance of Greene to work the gangway in lieu of his being able to perform his dispatch job. (UF 41)

Greene has failed to demonstrate any way in which his proposed accommodation of doing an office job outside the dispatch system and outside of the normal assignment of shifts would not impact the legitimate expectations of other union members or ultimately destroy the Collective Bargaining Agreement when workers seeking a more preferred job assignment exit the collective bargaining process de facto by creating their own side deals and direct dealing with the employers in violation of the Watchmen's Agreement.

In *Rohr v. Salt River Project Agricultural Improvement and Power District*, the Court of Appeal explained that essential functions are "fundamental job duties of the employment position…not including the marginal functions of the position." Citing *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc), the court in *Rohr* noted that the ADA requires that in assessing a position's essential functions, "consideration shall be given to the employer's judgment as to what functions of a job are essential" including any written job descriptions prepared before advertising or interviewing applicants for the job. 42 U.S.C. §12111(8). The Court reversed summary judgment because the Plaintiff demonstrated that he could perform the bulk of his job, which was mostly office work. He was limited in performing out-of-town and overnight

11

field assignments, but the Defendants own medical staff had opined that he was "physically able to perform the essential functions of his job with the accommodations as outlined." *Rohr* at 864. Here, Greene cannot perform the essential functions of his job because he cannot drive equipment or work in outside working areas. These are central job functions for Watchmen.

In *Cripe*, the court considered whether making forceable arrests and subduing fleeing suspects constituted an essential function of all specialized assignment positions in the San Jose Police Department. *Cripe* at 885. The plaintiffs in that case "introduced significant evidence that the making of such arrests is not an essential function of all specialized assignment positions."

Contrary to Greene's showing in this case, the record presents no competing evidence regarding the actual duties performed by Watchmen. Those are, as described, located in the "M" language and the Collective Bargaining Agreement. Nor is there flexibility historically as to whether individuals can avoid, decline or change assignments from what they were given through the dispatch process. Accordingly, Plaintiff has failed to raise a genuine issue of material fact with regard to the nature of the essential functions.

**D.      Greene's Palliative and Assistive Measures Do Not Allow Him to Perform the Essential Functions of the Job**

Plaintiff next attempts to argue that he proposed numerous accommodations designed to enable him to continue to perform Watchmen work "including transportation assistance, magnification devices, enlarged print materials, screen-reading software, optical character recognition technology, digital note-taking assistance, assignment modifications and later the worksite evaluations, assistive technology and low-vision resources." (Opposition brief at 18:24-19:2) Local 26 never opposed any of these palliative or assistive devices for Greene and he was free to use whatever devices would enable him to perform the essential functions of the job. But the essential point is that

12

these assistive devices do not allow Greene to drive a motor vehicle nor to be in working areas of the terminal property.

The Joint Parties met at least three times to talk about ways to accommodate Greene. Nothing they could identify and nothing identified by Greene would solve his blindness issues sufficiently to allow him to drive a motor vehicle and, in fact, he had two motor vehicle accidents for which he was clearly responsible, although he attempted to blame everybody but himself.

### E.    Greene Was a Direct Threat of Injury or Death to Himself and Others

Greene argues that he was not a direct threat based on his two vehicle related incidents alone. But, Local 26 introduced additional evidence, including that of Drs. Coleman and Deutsch, whose opinions coalesced around the fact that Greene could not safely drive a motor vehicle and should not be in working areas of the Port.

The mere fact that Greene "disputed both investigations, challenged the conclusions reached, requested witness statements, accident reports, investigative materials and video evidence (which he got) and presented evidence questioning whether all relevant information had been considered" does not create a triable issue of fact because there is no fact here that establishes anything other than Greene was a threat to himself and others. Moreover, he actually sustained injury during one of the accidents.  (UF 47)

### F.    Even if Greene Can Perform Some Aspects of Watchmen Assignments, This Does not Create a Genuine Issue of Material Fact

Greene's presentation is that, if allowed to create side-deals with Employers, bypass the dispatch system, and selectively work Watchmen assignments, he could do work at the Ports. This is not the same as performing the essential functions of the job, nor doing the Watchmen's job in any realistic way. Even if it was true that he can successfully do certain functions, he does not establish that he can safely perform the essential functions of Watchmen's work without violating the Watchmen's Agreement.

///

13

## IV.

## <u>CONCLUSION</u>

Because Greene fails to adequately controvert any material fact sufficient to create a genuine issue for trial, and Local 26 is entitled to judgment as a matter of law, Local 26 respectfully requests judgment be granted in favor of Local 26 on all claims.

Dated: July 2, 2026

Respectfully submitted,

LAW OFFICES OF MARC COLEMAN

By: /s/ Marc Coleman
        Marc Coleman
        Attorney for Defendant
        ILWU LOCAL 26, Union

14

## **Local Rule 11-6.2 Certification**

The undersigned counsel of record for Defendant ILWU Local 26 certifies that this brief contains 3,962 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 2, 2026

By:   */s/ Marc Coleman*
Marc Coleman

15

DEFENDANT ILWU LOCAL 26'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT