Marc Coleman, Esq., State Bar #110358
LAW OFFICES OF MARC COLEMAN
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: (562) 432-8188
marc@marccolemanlaw.com

Attorneys for Defendant ILWU LOCAL 26

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENOCH GREENE, an individual;<br><br>               Plaintiff,<br>    v.<br><br>LBCT LLC, a Limited Liability Company; PACIFIC MARITIME ASSOCIATION, a California Nonprofit Corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; ILWU LOCAL 26, Union; TOTAL TERMINALS INTERNATIONAL LLC, a Limited Liability Company; SSA TERMINALS LLC, a Limited Liability Company; MATSON NAVIGATION COMPANY INC., a Corporation; and DOES 1 through 50, inclusive;<br><br>               Defendants | **CASE NO.: 5:25-cv-01359-KK (CTSx)**<br><br>[Assigned to the Honorable Kenly Kiya Kato– Courtroom #3]<br><br>**DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>**Date:  July 16, 2026**<br>**Time: 9:30 a.m.**<br>**Place: Courtroom 3, 3rd Floor**<br><br>Complaint Filed: June 2, 2025<br>Trial Date:      September 28, 2026 |

Pursuant to Central District of California Rule 56-3, Defendant ILWU Local 26 submits this Response to Plaintiff's Statement of Genuine Disputes of Material Facts (Dkt.

1

No. 107-4) in support of its Motion for Summary Judgment and/or Partial Summary Judgment.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.     Local 26 is a signatory to the ILWU Local 26 Watchmen's Agreement 2019 to 2025, which governs the terms and conditions of employment for Local 26 Watchmen working in the Joint Ports of Los Angeles and Long Beach. ("the Watchmen's Agreement") Declaration of Luisa Gratz ("Gratz Decl.") at ¶2 | **Response to No. 1:** Undisputed that ILWU Local 26 is a signatory to the 2019–2025 Watchmen's Agreement, which governs the terms and conditions of employment for Local 26 Watchmen working in the Joint Ports of Los Angeles and Long Beach. Plaintiff disputes any implicit characterization that the Watchmen's Agreement, standing alone, defines the essential functions of every Watchman assignment, limits the availability of reasonable accommodations under the ADA or FEHA, or otherwise resolves the legal issues presented in this action. Those issues are disputed and are addressed by the evidence cited throughout Plaintiff's Opposition. |

**1.     Moving Party's Response**

Plaintiff does not dispute Local 26's Undisputed Fact ("UF") 1 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 1.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implicit characterization that the Watchmen's Agreement, standing alone, defines the essential functions of every Watchman assignment, limits the availability of reasonable accommodations under the ADA or FEHA, or otherwise resolves the legal issues presented in this action. Those issues are disputed and are addressed by the evidence cited throughout Plaintiff's Opposition." as improper and unresponsive.

2

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 1. | |
| 2.  Under the Watchmen's Agreement, Local 26 is the exclusive bargaining agent for all Watchmen operating at eight autonomous terminals by four signatory employers. The Watchmen's Agreement binds the employers and all Local 26 members to its terms under Article 1A. Gratz Decl. at ¶3 | **Response to No. 2:** Plaintiff does not dispute that, under the Watchmen's Agreement, ILWU serves as the exclusive bargaining representative for Watchmen working for participating employers within the Joint Ports of Los Angeles and Long Beach. Plaintiff disputes any implication that ILWU's status as the exclusive bargaining representative relieved it of its independent obligations under the ADA and FEHA, precluded reasonable accommodations as a matter of law, or required ILWU to reject Plaintiff's accommodation requests based solely on its interpretation of the Watchmen's Agreement. Those issues are disputed and are addressed by the evidence submitted in opposition to this motion. |

**2.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 2 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 2.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that ILWU's status as the exclusive bargaining representative relieved it of its independent obligations under the ADA and FEHA, precluded reasonable accommodations as a matter of law, or required ILWU to reject Plaintiff's accommodation requests based solely on its interpretation of the Watchmen's Agreement. Those issues are disputed and are addressed by the evidence cited throughout Plaintiff's Opposition." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 2.

3

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 3.      Luisa Gratz ("Gratz") is and has been since approximately January 1984 the President of Local 26 of the International Longshore and Warehouse Union ("Local 26"). Gratz Decl. at ¶1 | **Response to No. 3:** Plaintiff does not dispute that Luisa Gratz has served as President of ILWU Local 26 since approximately January 1984. |
| **3.      Moving Party's Response**<br><br>Plaintiff does not dispute Local 26's UF 3 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2). | |
| 4.      As President of Local 26, Gratz has been the sole negotiator since 1984 for Collective Bargaining Agreements with the Pacific Maritime Association on behalf of Local 26.  Gratz Decl. at ¶2 | **Response to No. 4:** Plaintiff does not dispute that, as President of ILWU Local 26, Gratz has served as the Union's principal negotiator for collective bargaining agreements with the Pacific Maritime Association since approximately 1984. |
| **4.      Moving Party's Response**<br><br>Plaintiff does not dispute Local 26's UF 4 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2). | |
| 5.      As President of Local 26 since 1984 and Business Agent for Local 26 since 1980, Gratz is the Local 26 representative, charged with enforcing the Watchmen's Agreement on a day-to-day basis. As such, she is intimately familiar with the terms of the Watchmen's Agreement and Watchmens' working conditions. Gratz Decl. at ¶4 | **Response to No. 5:** Plaintiff does not dispute that Gratz has served as President of ILWU Local 26 since approximately 1984 and as a Business Agent since approximately 1980, and that her responsibilities include administering and enforcing the Watchmen's Agreement on behalf of ILWU. Plaintiff disputes any legal conclusion or implication that ILWU's administration or enforcement of the Watchmen's Agreement relieved it of its independent obligations under the ADA and FEHA, authorized it to reject Plaintiff's requested accommodations, or otherwise establishes the legality of the |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | actions challenged in this litigation. Those issues are disputed and are addressed by the evidence submitted in opposition to this motion. |
|  | Declaration of Enoch Greene ¶ 47, Ex.A |
|  | Declaration of Enoch Greene ¶ 48, Ex.B, |
|  | Declaration of Enoch Greene ¶ 50, Ex.C, |
|  | Declaration of Enoch Greene ¶ 51, Ex.E |
|  | Declaration of Enoch Greene ¶ 55, Ex.F |
|  | Declaration of Enoch Greene ¶ 57, Ex.K |
|  | Declaration of Enoch Greene ¶ 58, Ex.L |
|  | Declaration of Enoch Greene ¶ 59, Ex.M |
|  | Declaration of Enoch Greene ¶ 60, Ex.N |
|  | Declaration of Enoch Greene ¶ 61, Ex.O |
|  | Declaration of Enoch Greene ¶ 62, Ex.P, |
|  | Declaration of Enoch Greene ¶ 62, Ex.Q |
|  | Declaration of Enoch Greene ¶ 65, Ex.S |
|  | Declaration of Enoch Greene ¶ 66, Ex.T |
|  | Declaration of Enoch Greene ¶ 69, Ex.W |

**5.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 5 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 5.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any legal conclusion or implication that ILWU's administration or enforcement of the Watchmen's Agreement relieved it of its independent obligations under the ADA and FEHA, authorized it to reject Plaintiff's requested accommodations, or otherwise establishes the legality of the actions challenged in this litigation. Those issues are disputed and are addressed by the evidence submitted in opposition to this motion." as improper and unresponsive.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 6.     The Watchmen's Agreement dictates the exclusive method by which Local 26 Watchmen are assigned work covered thereunder. The rules under the heading Registered Watchmen Rules (pages 137 to 138), Registered Watchmen Dispatch Procedures (pages 140-142), and Article 13 Watchmen's Agreement govern how Watchmen seeking jobs out of the Union dispatch hall, including Greene, are dispatched on a daily basis to different employers. Gratz Decl. at ¶5 | **Response to No. 6:** Plaintiff does not dispute that the Watchmen's Agreement establishes dispatch procedures governing how Watchmen obtain work assignments through the union dispatch hall. Plaintiff disputes, however, Defendant's characterization that the cited provisions establish the exclusive means by which Plaintiff's requested accommodations could be evaluated or implemented under the ADA and FEHA. Plaintiff testified that Watchmen call the dispatch center to identify the terminals where they are available to work, are dispatched to a terminal rather than a specific job assignment, and receive their actual work assignments upon arrival. Greene Dep. 14:1-25. Gratz likewise testified that Watchmen select terminals and time frames rather than specific assignments, that work assignments are made after arrival at the terminal, and that assignments frequently change during the course of a shift depending upon operational needs. Gratz Dep. 50:7-20; 51:10-18; 178:11-19. Accordingly, Plaintiff disputes any implication that the dispatch procedures themselves categorically foreclosed reasonable accommodations or established, as a matter of law, that no accommodation could be implemented consistent with the Watchmen's Agreement. Declaration of Enoch Greene ¶ 47, Ex.A Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 51, Ex.E |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Declaration of Enoch Greene ¶ 55, Ex.F |
| | Declaration of Enoch Greene ¶ 57, Ex.K |
| | Declaration of Enoch Greene ¶ 58, Ex.L |
| | Declaration of Enoch Greene ¶ 59, Ex.M |
| | Declaration of Enoch Greene ¶ 60, Ex.N |
| | Declaration of Enoch Greene ¶ 61, Ex.O |
| | Declaration of Enoch Greene ¶ 62, Ex.P, |
| | Declaration of Enoch Greene ¶ 62, Ex.Q |
| | Declaration of Enoch Greene ¶ 65, Ex.S |
| | Declaration of Enoch Greene ¶ 66, Ex.T |
| | Declaration of Enoch Greene ¶ 69, Ex.W |

**6.    Moving Party's Response**

Plaintiff does not dispute that the Watchmen's Agreement dictates the exclusive method by which Local 26 Watchmen are assigned work covered thereunder and that the Registered Watchmen Rules (pages 137 to 138) and Dispatch Procedures (pages 140-142), and Article 13 govern how Local 26 Watchmen, including Greene, are dispatched on a daily basis to different employers.

Plaintiff attempts to dispute UF 6 by denying that the relevant provision of the Watchmen's Agreement "establish the exclusive means by which Plaintiff's requested accommodations could be evaluated or implemented under the ADA and FEHA."

Plaintiff conflates the exclusive means by which Watchmen receive work assignments with the ADA/FEHA accommodation analysis. UF 6 does not mention the interplay between the ADA/FEHA accommodations analysis and the bona fide collectively bargained dispatch procedures. Local 26 agrees with the workings of the process as outlined by Greene and explained at UFs 7, 8, 9, 10, 11, 12, 13, 14, and 15.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 7.

| 7.    The Joint Parties (Local 26 and PMA) have agreed to a dispatch procedure whereby Watchmen are dispatched under the terms of the Watchmen's Agreement | **Response to No. 7: Undisputed** that Watchmen are generally dispatched through a work-equalization system based upon hours worked, with lower-hour |

7

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| on the basis of hours with the Local 26 member with the lowest hours being dispatched first. Gratz Decl. at ¶¶5 and 9 | members receiving priority in dispatch. Greene testified that Watchmen call the dispatch center to identify their terminal preferences and later receive dispatch assignments through the dispatch system. Greene Dep. 14:1-25. **Disputed** to the extent Defendant contends that the hours-based dispatch procedure itself foreclosed reasonable accommodations or required ILWU to reject Plaintiff's accommodation requests without an individualized assessment. Plaintiff further relies upon Gratz's testimony that Watchmen are dispatched to terminals and time frames, not specific job assignments, and that assignments frequently change depending upon operational needs. Gratz Dep. 50:7-20; 51:10-18; 178:11-19. |

**7.    Moving Party's Response**

Plaintiff does not dispute UF 7 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to dispute UF 7 by making a legal argument that "to the extent Defendant contends that the hours-based dispatch procedure itself foreclosed reasonable accommodations or required ILWU to reject Plaintiff's accommodation requests without an individualized assessment." No genuine dispute exists because UF 7 as written is a true statement and not disputed.

| | |
|---|---|
| 8.    The Watchmen's Agreement is a bona fide seniority-based system, which fairly and accurately reflects that all Local 26 Watchmen covered under the Agreement may not not bargain or accept work assignments outside the process provided in the Watchmen's Agreement. Specifically, Article 13 states: | **Response to No. 8: Undisputed** that the Watchmen's Agreement contains dispatch procedures, seniority provisions, and disciplinary provisions, including Article 13 governing violations of dispatch rules and procedures. Greene testified that dispatch is generally based upon hours worked and is governed by the Watchmen's Agreement and related |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| "Watchmen violating or gimmicking dispatch rules and procedures shall be subject to discipline up to and including deregistration." Gratz Decl. at ¶7 | dispatch procedures. Greene Dep. 14:1-25; 57:7-18. **Disputed** to the extent Defendant characterizes the Watchmen's Agreement as conclusively establishing a "bona fide seniority-based system" that categorically prohibited Plaintiff's requested accommodations or prohibited ILWU from participating in the interactive process or evaluating reasonable accommodations under the ADA and FEHA. Plaintiff further disputes any implication that Article 13 required ILWU to reject Plaintiff's accommodation requests without first conducting an individualized assessment. Gratz testified that Watchmen are dispatched to terminals and time frames rather than specific assignments, that assignments frequently change depending upon operational needs, and that accommodations were never individually evaluated despite Plaintiff's repeated requests. Gratz Dep. 50:7-20; 51:10-18; 89:16-91:2; 155:5-9; 156:6-8. |

**8.   Moving Party's Response**

Plaintiff does not dispute that Local 26's dispatch process is bona fide and Watchmen "may not bargain for or accept work assignments outside the collective bargaining process on threat of discipline up to and including deregulation." Moreover, Greene agrees that "Watchmen are dispatched <u>to terminals</u> and <u>time frames rather than specific assignments</u>, (and) <u>that assignments frequently change depending upon operational needs.</u>" (Emphasis added.)

Plaintiff attempts to create a material dispute of fact by disputing that the Watchmen's Agreement conclusively established a bona fide seniority system but offers no evidence whatsoever that the low hours dispatch system was ever violated, or that the dispatch requirement that once a Watchman accepted a dispatch, he or she could refuse to perform the assigned tasks or selectively avoid essential functions of the job described in the "M" language or elsewhere. Greene's statement that assignments vary and

9

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| frequently change during a given shift categorically undercuts his position that he could do only some tasks of his assigned shift and that a job accommodation was even possible, given the varied and ever-changing duties of the Watchman job. | |
| 9.     Under the Watchmen's Agreement, Watchmen are required to accept the job assignment on the terminal they are dispatched to. Watchmen who either refuse the job or are not available for dispatch are to be charged with eight hours for their non-availability. Gratz Decl. at ¶5 | **Response to No. 9: Undisputed** that, under the Watchmen's Agreement, Watchmen accepting dispatch are generally expected to report to the terminal to which they are dispatched and that the dispatch rules contain provisions governing availability and the charging of hours for non-availability. Greene testified that Watchmen call the dispatch center, identify the terminals where they are available to work, and, if dispatched, report to the assigned terminal for work. Greene Dep. 14:15-25. **Disputed** to the extent Defendant implies that these dispatch procedures categorically prohibited reasonable accommodations or prevented reassignment of duties after arrival at the terminal. Gratz testified that Watchmen are dispatched to terminals and time frames, not specific job assignments, and that assignments may change during a shift depending upon operational needs. Gratz Dep. 50:7-20; 51:10-18; 178:11-19. Plaintiff further testified that, after disclosing his disability, he reported to work and was reassigned to other duties. Greene Dep. 29:1-25; 33:14-21. |

**9.     Moving Party's Response**

Plaintiff does not dispute UF 9 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Greene improperly attempts to add new facts that "after disclosing his disability, he reported to work and was (temporarily) reassigned to other duties." Greene depo. at

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 29:1-25; 33:14-21. This information does not controvert UF 9.<br><br>The cited pages do not reflect any reassignment, although at 30:20-31:2, it appears that the Watchman Sergeants on duty that day (April 20, 2023) allowed Greene to finish his shift that day by working at the ship gangway and the NOIT (North Operation Information Technology) office in violation of the Watchmen's Agreement. UFs 38-42, 45, 74, 75, and 76. | |
| 10.    The dispatch rules under the Watchmen's Agreement are the only way in which "Hall Watchmen" i.e. assigned through the daily dispatch system are assigned. Gratz Decl. at ¶6 | **Response to No. 10: Undisputed** that Hall Watchmen obtain work assignments through the daily dispatch procedures established under the Watchmen's Agreement. Greene testified that Watchmen obtain work by calling the dispatch center, identifying the terminals where they are available to work, and receiving dispatch assignments through that process. Greene Dep. 14:1-25. **Disputed** to the extent Defendant implies that the dispatch procedures assigned Watchmen to specific job duties or categorically precluded reasonable accommodations. Greene testified that Watchmen report to the assigned terminal after dispatch and receive their work assignments thereafter. Greene Dep. 14:20-25. Grant likewise testified that registered Watchmen select a terminal and shift, not a specific job assignment, and that work assignments are assigned after arrival at the terminal. Grant Dep. 53:8-54:20. Sulzbach similarly testified that Watchmen are dispatched among multiple terminals under the collective bargaining agreement and that dispatch records identify the terminal worked, rather than a fixed assignment. Sulzbach Dep. 37:18-38:9; 58:12-24. Gratz likewise testified that Watchmen are dispatched to terminals |

11

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | and time frames, not specific job assignments, and that assignments may change during the course of a shift depending upon operational needs. Gratz Dep. 50:7-20; 51:10-18; 178:11-19. Declaration of Enoch Greene ¶ 47, Ex.A Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 51, Ex.E Declaration of Enoch Greene ¶ 55, Ex.F Declaration of Enoch Greene ¶ 57, Ex.K Declaration of Enoch Greene ¶ 58, Ex.L Declaration of Enoch Greene ¶ 59, Ex.M Declaration of Enoch Greene ¶ 60, Ex.N Declaration of Enoch Greene ¶ 61, Ex.O Declaration of Enoch Greene ¶ 62, Ex.P, Declaration of Enoch Greene ¶ 62, Ex.Q Declaration of Enoch Greene ¶ 65, Ex.S Declaration of Enoch Greene ¶ 66, Ex.T Declaration of Enoch Greene ¶ 69, Ex.W |

**10.    Moving Party's Response**

Plaintiff does not dispute UF 10 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to dispute UF 10 by adding information and argument which do not controvert UF 10.

Local 26 respectfully requests the Court disregard the section commencing at "**Disputed** to the extent Defendant implies that the dispatch procedures assigned Watchmen to specific job duties or categorically precluded reasonable accommodations. Greene testified that Watchmen report to the assigned terminal after dispatch and receive their work assignments thereafter. Greene Dep. 14:20-25. Grant likewise testified that registered Watchmen select a terminal and shift, not a specific job assignment, and that work assignments are assigned after arrival at the terminal. Grant Dep. 53:8-54:20. Sulzbach similarly testified that Watchmen are dispatched among multiple terminals under the collective bargaining agreement and that dispatch records identify the terminal worked, rather than a fixed assignment. Sulzbach Dep. 37:18-38:9; 58:12-24. Gratz

12

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| likewise testified that Watchmen are dispatched to terminals and time frames, not specific job assignments, and that assignments may change during the course of a shift depending upon operational needs." | |
| 11.    Hall Watchmen, including Greene, may not negotiate or bargain for their own special job deals outside the Watchmen's Agreement dispatch procedure. Gratz Decl. at ¶7 | **Response to No. 11: Disputed.** Plaintiff did not seek to negotiate "special job deals," but repeatedly requested reasonable accommodations through the JPWLRC process. Greene Dep. 15:14-15; 33:14-21. Gratz acknowledged that Plaintiff repeatedly requested accommodations, that none were approved, and that she considered no accommodations for Plaintiff. Gratz Dep. 89:16-91:2; 155:5-9; 156:6-8. Declaration of Enoch Greene ¶ 47, Ex.A Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 51, Ex.E Declaration of Enoch Greene ¶ 55, Ex.F Declaration of Enoch Greene ¶ 57, Ex.K Declaration of Enoch Greene ¶ 58, Ex.L Declaration of Enoch Greene ¶ 59, Ex.M Declaration of Enoch Greene ¶ 60, Ex.N Declaration of Enoch Greene ¶ 61, Ex.O Declaration of Enoch Greene ¶ 62, Ex.P, Declaration of Enoch Greene ¶ 62, Ex.Q Declaration of Enoch Greene ¶ 65, Ex.S Declaration of Enoch Greene ¶ 66, Ex.T Declaration of Enoch Greene ¶ 69, Ex.W |

**11.    Moving Party's Response**

Plaintiff professes to dispute Local 26's statement that "Hall Watchmen, including Greene, may not negotiate or bargain for their own special job deals outside the Watchmen's Agreement dispatch procedure." But the response does not actually dispute the accuracy of UF 11 as stated.

Local 26, the PMA, and employer representatives attempted through the JPWLRC to identify accommodations that would have allowed Greene to perform the essential

13

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| functions of his Watchmen job. However, no such accommodations were found, resulting in the JPWLRC collectively determining that Greene was unable to perform the essential functions of the job with or without reasonable accommodation. Plaintiff dislikes the characterization of "special job deals" instead insisting that Greene repeatedly requested reasonable accommodation for JPWLRC process. However, it is undisputed that Greene also asked for, and in some instances, was allowed to create his own "special job deal" outside the Watchmen's Agreement dispatch procedure when he was temporarily placed at the gangway in lieu of being able to perform his dispatch job as a result of Greene engaging in direct dealing with LBCT in violation of the Watchmen's Agreement. See UFs 41 and 42. Greene also requested to be assigned to the NOIT office independent of the JPWLRC process. UFs 45, 47, and 76.<br><br>Accordingly, Plaintiff's response does not directly controvert UF 11 but instead ignores Greene's several attempts to directly deal with employers, sometimes successfully, in contravention of the Watchmen's Agreement. In any event, Plaintiff does not dispute the substance of UF 11. | |
| 12.    Watchmen working under the Watchmen's Agreement are not dispatched to specific jobs. They are dispatched to a terminal with a start time. They are given the option of various employers who placed work orders to whom they can be assigned. Gratz Decl. at ¶9 | **Response to No. 12: Undisputed** that Watchmen are dispatched to terminals and start times rather than specific job assignments. Greene testified that Watchmen identify terminal preferences during dispatch and report to the assigned terminal after receiving their dispatch assignment. Greene Dep. 14:15-25. Grant likewise testified that registered Watchmen select a terminal and shift, not a specific job assignment, and that work assignments are made after arrival at the terminal. Grant Dep. 53:8-54:20. Gratz further testified that assignments may change during the course of a shift depending upon operational needs. Gratz Dep. 50:7-20; 51:10-18; 178:11-19. |

**12.    Moving Party's Response**

Plaintiff does not offer any facts in dispute, therefore UF 12 is undisputed.

14

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 13.    Once assigned to a work shift at a specific terminal, there is no guarantee that a Watchmen will work any specific job once assigned to an employer. In a given shift, Watchmen can and often do work various assignments over the course of one shift under Article 7B the Watchmen's Agreement. Gratz Decl. at ¶9 | **Response to No. 13: Disputed.** While Watchmen may perform different assignments during a shift depending upon operational needs, Defendant's characterization is incomplete and omits that Watchmen are dispatched to terminals rather than specific jobs, receive assignments after reporting to the terminal, and may be reassigned among a variety of posts during the course of a shift. Greene Dep. 14:20-25; 97:21-98:22; Grant Dep. 53:8-54:20; Gratz Dep. 50:7-20; 51:10-18. |

### 13.    Moving Party's Response

Plaintiff claims UF 13 is disputed because it is incomplete. He does not actually dispute UF 13 but merely provides supplemental facts which Local 26 agrees with and has itself stated elsewhere. See UFs 12, 14, 15, 20, 21, 22, and 24.

Since he does not contest the accuracy of UF 13, Plaintiff fails to raise a material factual dispute.

| | |
|---|---|
| 14.    Depending on the terminal's activity on a specific day, work activities frequently change on any terminal on most days for various reasons. Gratz Decl. at ¶9 | **Response to No. 14: Undisputed in part; disputed in part.** Plaintiff does not dispute that work activities and assignments may change depending upon terminal operations and operational needs. Plaintiff disputes any implication that he was unable to safely adapt to changing assignments or perform available work with reasonable accommodations. Plaintiff testified that he successfully performed numerous Watchman assignments, including rover, gangway, ID check, traffic control, rail radio room, and other posts, and could safely perform those assignments with reasonable accommodations. Greene Dep. 97:21- |

15

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 102:24; 136:15-139:6. Dr. Coleman likewise opined that Plaintiff could function safely and effectively at work with appropriate accommodations. Coleman Dep. 54:15-20; 54:23-55:3. |

**14.    Moving Party's Response**

Plaintiff does not dispute UF 14 as stated. Instead, "Plaintiff disputes any implication that he was unable to safely adapt to changing assignments or perform available work with reasonable accommodations." No citation to authority is offered for this statement. Plaintiff then posits "that he successfully performed numerous Watchman assignments, including rover, gangway, ID check, traffic control, rail radio room, and other posts, and could safely perform those assignments with reasonable accommodations." Citing Greene depo. at 97:21-102:24; 136:15-139:6.

The cited deposition sections do not support Greene's statements in dispute of UF 14. The Greene deposition at 97:21-102:24 simply explores Greene's knowledge "of the various duties of a Watchman." Greene depo. at 97:5-11. At that deposition section, Greene explains that rovers are required to drive pick-up trucks. Id. 97:21-98:3. He discusses the work of a "break rover." Id. 100:3-12; the work of a bus driver. Id. at 100:31-102:12, and a van driver. Id. at 102:13-17. Nowhere in this cited language does Greene testify that "he successfully performed" any of the described jobs of rover, bus driver, or van driver nor does he even mention that he ever worked doing components of "gangway, ID check, traffic control (or) rail radio room" nor does he offer any evidence whatsoever that he "could safely perform those assignments with reasonable accommodations."

The cited deposition passage at 136:15-139:6 likewise does not support the statements disputing UF 14. At 136:15, Greene is asked about a time he picked up a dispatch assignment but was told to "reap out" (call a replacement) because he could not safely perform the assignment.

Greene, at the cited section, testifies he was allowed to have an assignment as SSA where he would be escorted to various posts so he would not have to drive. Id. at 137:9-138:16. Greene testified he did not know how many times he had worked at the SSA Terminal between October 3, 2023, and December 26, 2023. Nothing in this testimony even mentions what job duties he performed, other than a front gate assignment and no testimony states that Greene "successfully performed numerous Watchmen assignments

16

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| including rover, gangway, ID check, traffic control, rail radio room and other posts" nor do any of the cited sections provide competent testimony that Greene could or did safely perform any of the listed Watchmen functions. Dr. Anne Coleman did not opine that "Plaintiff could function safely and effectively at work with appropriate accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment and Greene should not work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. | |
| 15.    Each employer has its own list of "Watchmen's duties" set forth in the Watchmen's Agreement as "M" language (Watchmen's Agreement at pages 78 to 93). Gratz Decl. at ¶10 and Exhibit 1 to  Local 26's Appendix of Evidence ("Appendix") | **Response to No. 14: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that work activities may change depending upon terminal operations and operational needs. Plaintiff disputes any implication that he was unable to safely respond or adapt to changing work assignments. Plaintiff testified that he successfully performed a variety of Watchman assignments, including rover, gangway, ID check, traffic control, rail radio room, and other posts, and could safely perform those assignments with reasonable accommodations. Greene Dep. 97:21-102:24; 136:15-139:6. Dr. Coleman likewise opined that Plaintiff could function safely and effectively at work |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | with appropriate accommodations. Coleman Dep. 54:15-20; 54:23-55:3. |

**15.    Moving Party's Response**

Plaintiff does not dispute UF 15 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff objects to UF 15 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6).

The cited deposition sections do not support Greene's statements in dispute of UF 15. The Greene deposition at 97:21-102:24 simply explores Greene's knowledge "of the various duties of a Watchman." Greene depo. at 97:5-11. At that deposition section, Greene explains that rovers are required to drive pick-up trucks. Id. 97:21-98:3. He discusses the work of a "break rover." Id. 100:3-12; the work of a bus driver. Id. at 100:31-102:12, and a van driver. Id. at 102:13-17. Nowhere in this cited language does Greene testify that "he successfully performed" any of the described jobs of rover, bus driver, or van driver nor does he even mention that he ever worked doing components of "gangway, ID check, traffic control (or) rail radio room" nor does he offer any evidence whatsoever that he "could safely perform those assignments with reasonable accommodations."

The cited deposition passage at 136:15-139:6 likewise does not support the statements disputing UF 14. At 136:15, Greene is asked about a time he picked up a dispatch assignment but was told to "reap out" (call a replacement) because he could not safely perform the assignment.

Greene, at the cited section, testifies he was allowed to have an assignment at SSA where he would be escorted to various posts so he would not have to drive. Id. at 137:9-138:16. Greene testified he did not know how many times he had worked at the SSA Terminal between October 3, 2023, and December 26, 2023. Nothing in this testimony even mentions what job duties he performed, other than a front gate assignment and no testimony states that Greene "successfully performed numerous Watchmen assignments including rover, gangway, ID check, traffic control, rail radio room and other parts" nor do any of the cited sections provide competent testimony that Greene could or did safely perform any of the listed Watchmen functions.

18

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Dr. Anne Coleman did not opine that "Plaintiff could function safely and effectively at work with appropriate accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene could work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 15. | |
| 16.     The "M" language establishes the agreed-upon essential functions for the Watchmen's duties at each terminal. Gratz Decl. at ¶10 and Exhibit 1 to the Appendix | **Response to No. 16: Disputed.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>The cited provisions identify terminal-specific duties and assignments, but do not establish, as a matter of law or undisputed fact, the essential functions of every Watchman assignment. The Watchmen's Agreement expressly recognizes that Watchmen may be directed to additional duties, that work assignments vary from terminal to terminal, and that Watchmen performing various duties during a shift are responsible only for the job being performed at that time. Watchmen's Agreement, Arts. 2(D), 2(L), 3(C). Plaintiff further relies upon the August 18, 2023 letter from Ryan Williams to Dr. Coleman, which states that the listed duties |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | were "not an exhaustive list of Watchmen's job duties." Ex. D1. Greene likewise testified that Watchmen performed numerous assignments and could be reassigned throughout a shift depending upon operational needs. Greene Dep. 97:21-102:24.<br><br>Declaration of Enoch Greene ¶ 61, Ex.O |

**16.     Moving Party's Response**

Plaintiff objects to UF 16 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lay the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and Union President and Business Agent for over 40 years.

Plaintiff disputes UF 16 but offers no evidence contradicting Gratz's Most Knowledgeable Person for Local 26 expertise, experience, and stating that the "M" language contains the essential functions of the Watchman's job at each terminal along with other contractual provisions. UFs 16, 17, 18, 19, 20, 21, 22, 24, and 25.

None of Plaintiff's citations materially dispute UF 16. The fact that Watchmen may work other duties as assigned does not disturb the undisputed fact that the "M" language and other cited CBA language constitutes the essential functions of the Watchman's job.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 16.

| 17.     Each terminal assignment, pursuant to the "M" language, includes the need to drive a motor vehicle, whether acting as security, transporting longshoremen, clerks or other persons on the terminal, escorting vehicles as needed and responding to emergencies as they occur, and writing reports and photographing incidents as | **Response to No. 17: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>The "M" language does not establish that every Watchman assignment at every terminal requires the operation of a motor vehicle or the performance of every listed duty. Rather, the Watchmen's Agreement |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| required.    Gratz Decl. at ¶10 and Exhibit 1 to Appendix | identifies numerous terminal-specific duties, many of which do not involve driving, including gangway watch, ID verification, monitoring video terminals, detainee watch, and other security assignments. Watchmen's Agreement, Arts. 1(B), 2(C)-(F), 2(L), 2(M), 3(C). Ryan Williams likewise acknowledged that the functions identified for Dr. Coleman's review were "not an exhaustive list of Watchmen's job duties." Ex. D1. Greene further testified that Watchmen performed a variety of assignments and could be reassigned throughout a shift depending upon operational needs, including ID check, gangway, rail radio room, traffic control, and rover assignments. Greene Dep. 97:21-102:24. Declaration of Enoch Greene ¶ 61, Ex.O |

**17.    Moving Party's Response**

Plaintiff objects to UF 17 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6), as well as over 40 years as Business Agent and Union President.

Plaintiff disputes UF 17 based on a misreading that Local 26 cited that all Watchmen do all the job duties set forth in the "M" language on each shift. This is not the case. The "M" language describes the range of essential functions that a Watchman may have to perform at each of eight terminals on any given day. Both sides agree that Watchmen are required to perform a variety of functions at each terminal and that, rather than a specific job, Watchmen are assigned to a terminal and a shift. Their actual work duties may change several times on a given shift due to operational needs and terminal activity. While Watchmen have a say in what terminal and shift they take, they do not get to pick and choose assignments during the day but must perform all Watchmen work codified in the "M" language and elsewhere in the Watchmen's Agreement. Plaintiff does not dispute any of these facts.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 18.    In addition to the "M" language, Articles 1, 2, and 7 of the Watchmen's Agreement set forth additional duties of Watchmen which are essential job functions. Gratz Decl. at ¶11 and Exhibit 1 to the Appendix | **Response to No. 18: Disputed.** Defendant improperly characterizes Articles 1, 2, and 7 of the Watchmen's Agreement as establishing the essential job functions of every Watchman assignment. Those provisions instead describe the duties Watchmen may perform, recognize that work assignments vary from terminal to terminal, authorize Employers to direct additional duties, and provide that Watchmen performing various duties during a shift are responsible only for the assignment being performed at that time. Watchmen's Agreement, Arts. 1(B), 2(D), 2(L), 2(M), 3(C), 7(B). Ryan Williams likewise acknowledged that the functions identified for Dr. Coleman's review were "not an exhaustive list of Watchmen's job duties." Ex. D1. Plaintiff further relies on Dr. Coleman's opinions that he could safely perform Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Enoch Greene ¶ 61, Ex.O |

**18.    Moving Party's Response**

Plaintiff claims that UF 18 is disputed but fails to set forth any evidence disputing UF 18. Specifically, Plaintiff contends that Articles 1, 2, and 3 do not constitute "the essential job functions of every Watchman assignment." While not every Watchman performs every identified essential function on every shift, the "M" language and Articles 1, 2, and 7 of the Watchmen's Agreement set forth essential job functions which each and every Watchmen are required to do if directed by the Employer due to the operational needs of the terminal. That Watchmen may be required to perform additional duties as directed does not create a material factual dispute. The essential fact that Watchmen are required to be able to perform all of the tasks set forth in the "M" language, Articles 1, 2, and 7 does not mean that they are the only job functions, nor

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| does the existence of additional job duties directed by the Employer create a material factual dispute.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 18. | |
| 19.    Under Article 1, "Watchmen may…be assigned to drive buses and/or vehicles, act as rovers, perform rail security, check ID's, prevent trespassers, etc." Gratz Decl. at ¶12 and Exhibit 1 to the Appendix | **Response to No. 19: Disputed.** Defendant selectively quotes Article 1 while omitting its permissive language. Article 1 provides that Watchmen "**may**" be assigned to perform certain duties, including driving buses or vehicles, acting as rovers, and performing rail security, rather than requiring every Watchman to perform each listed duty as an essential function of every assignment. Watchmen's Agreement, Art. 1(B). Plaintiff further relies on the Watchmen's Agreement provisions recognizing that assignments vary from terminal to terminal and that Watchmen may perform different duties during the course of a shift. Watchmen's Agreement, Arts. 2(L), 3(C). Greene likewise testified that Watchmen performed numerous assignments depending upon operational needs and could be reassigned during a shift. Greene Dep. 97:21-102:24. |

**19.    Moving Party's Response**

Plaintiff claims that UF 19 is disputed, but his response mirrors UFs 19 and 20, with the caveat that not every assignment requires the Watchman to perform all essential functions in a given shift. Local 26 agrees that assignments "vary from terminal to terminal and that Watchmen may perform different duties during the course of a shift."

Also, that "Watchmen perform numerous assignments depending upon operational needs and could be reassigned during a shift."

23

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 19. | |
| 20.   Article 2 defines the various Watchmen jobs, including being employed at the gangway of a ship to control the boarding of persons and for the protection of property against loss by theft and other causes directed by the employer. Article 2 also includes the duty of Watchmen to act as "rovers and bus drivers and vehicle operators and to be assigned to travel outside the terminal boundaries or within the facility to regulate vehicular and pedestrian traffic." Gratz Decl. at ¶13 and Exhibit 1 to the Appendix | **Response to No. 20: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Defendant selectively quotes Article 2 and omits the permissive language governing Watchmen assignments. Article 2 identifies multiple Watchman classifications and provides that Watchmen "**may**" be directed to additional duties, including, but not limited to, rover, bus driver, vehicle operator, and traffic control assignments. Watchmen's Agreement, Art. 2(B)-(F). Plaintiff further disputes any implication that every Watchman assignment requires the performance of every listed duty or that those duties constitute the essential functions of every assignment as a matter of law. The Watchmen's Agreement recognizes that work assignments vary from terminal to terminal and that Watchmen may perform various duties during a shift. Watchmen's Agreement, Arts. 2(L), 3(C); Greene Dep. 97:21-102:24. |

**20.   Moving Party's Response**

Plaintiff objects to UF 16 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lay the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and Union President and Business Agent for over 40 years.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff claims that UF 20 is disputed, but his response mirrors UF 19, with the caveat that not every assignment requires the Watchman to perform all essential functions in a given shift. Local 26 agrees that assignments "vary from terminal to terminal and that Watchmen may perform different duties during the course of a shift." Also, that "Watchmen perform numerous assignments depending upon operational needs and could be reassigned during a shift." Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 20. ||
| 21.    In addition to transporting individuals within the terminal, Watchmen are required to perform all duties associated with and in conjunction with rail security as designated by the Employer and to provide relief to all other Watchmen and also provide detainee and cabin watch in which shipboard personnel under detention are to be kept on the vessel. Gratz Decl. at ¶13 and Exhibit 1 to the Appendix | **Response to No. 21: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay. Defendant overstates Article 2 by characterizing various Watchman classifications and potential assignments as duties every Watchman is required to perform. Article 2 identifies multiple Watchman classifications and provides that Watchmen may be directed to perform additional duties as designated by the Employer, depending upon the assignment. Watchmen's Agreement, Arts. 2(B)-(G). Plaintiff further disputes any implication that every Watchman assignment requires transporting individuals, performing rail security, providing relief, or serving as a detainee or cabin watch. The Watchmen's Agreement recognizes that work assignments vary from terminal to terminal and that Watchmen may perform various duties during a shift. Watchmen's Agreement, Arts. 2(L), 3(C); Greene Dep. 97:21-102:24. |
| **21.    Moving Party's Response** ||

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff objects to UF 21 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years. Plaintiff disputes UF 21 based on his misreading that Local 26 claims that all Watchmen do all the job duties set for at UF 21 on each shift. This is not the case. However, all Watchmen must be able to do all duties set forth in UF 21 if and when called upon to do so during his or her assigned shift. Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 21. | |
| 22.    Article 7 of the Watchmen's Agreement requires Watchmen to transport individuals to and from the vessel. Gratz Decl. at ¶14 and Exhibit 1 to the Appendix | **Response to No. 22: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay. Defendant mischaracterizes Article 7. Article 7 does not establish that every Watchman is required to transport individuals to and from vessels as an essential function of every assignment. Rather, it recognizes that Watchmen may be shifted from one assignment to another for the same Employer at the same location and addresses circumstances in which a bus or van driver is assigned. Watchmen's Agreement, Art. 7(B)-(C). Plaintiff further relies upon the Watchmen's Agreement provisions recognizing that assignments vary by terminal and that Watchmen may perform various duties during a shift. Watchmen's Agreement, Arts. 2(L), 3(C); Greene Dep. 97:21-102:24. |
| 22.    **Moving Party's Response** Plaintiff objects to UF 22 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the | |

26

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years.<br><br>Plaintiff disputes UF 22 based on his misreading that Local 26 claims that all Watchmen do all the job duties set for at UF 22 on each shift. This is not the case. However, all Watchmen must be able to do all duties set forth in UF 22 if and when called upon to do so during his or her assigned shift.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 22. | |
| 23. Watchmen are required to maintain a valid California driver's license, California Guard Card, TWIC (Transportation Worker Identification Card), CPR/First Aid Card, and perform duties pursuant to Coast Guard requirements and regulations. Gratz Decl. at ¶15 and Exhibit 1 to the Appendix | **Response to No. 23: Disputed in part.** Plaintiff does not dispute that the Watchmen's Agreement requires certain qualifications and credentials, including maintaining a valid California driver's license, Guard Card, TWIC, and CPR/First Aid certification. Plaintiff disputes any implication that possession of those credentials establishes the essential functions of every Watchman assignment or that every assignment requires the performance of duties under Coast Guard requirements and regulations. The Watchmen's Agreement recognizes multiple Watchman classifications, varying assignments, and terminal-specific duties. Watchmen's Agreement, Arts. 2(B)-(M), 3(C). Plaintiff further relies upon Dr. Coleman's opinions that he could safely perform Watchman duties with reasonable accommodations notwithstanding restrictions on driving oversized passenger vehicles. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Enoch Greene ¶ 68, Ex.V |
| 23. **Moving Party's Response** | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute UF 23 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff claims to dispute UF 23 based on a misreading that Local 26 claims all Watchmen must do all duties described in UF 23 on each shift. This is not the case. Watchmen must be able to perform any or all of the duties set forth in UF 23 should the Employer require them to do so pursuant to the operational needs of the terminal that day.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 23.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. | |
| 24.  Watchmen must also prepare security reports, inventory security equipment, ensure that vehicular and equipment traffic is maintained at a safe speed and flowing smoothly in and out of the terminal and on the terminal, prepare security reports such as hazmat spills, accidents, broken seals, damaged equipment, health and safety issues, vehicle inspection logs, detainee and stowaway reports, daily log reports, and other reports as needed. These are common | **Response to No. 24: Disputed in part.** Plaintiff does not dispute that the Watchmen's Agreement identifies various reporting, safety, and security-related duties that may be performed at different terminals. Plaintiff disputes Defendant's characterization that these duties are common to every Watchman assignment or that they uniformly require the level of visual acuity asserted by Gratz. Plaintiff's treating ophthalmologist, Dr. Anne Coleman, repeatedly concluded that |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| duties across all terminals and these job functions require good visual acuity in order to accurately perform and safely complete these job functions. Gratz Decl. at ¶16 and Exhibit 1 to the Appendix | Plaintiff could safely perform Watchman duties with reasonable accommodations, including visual aids and restrictions on driving oversized passenger vehicles. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Plaintiff further relies upon the Braille Institute's low vision evaluation identifying assistive devices and technologies that would enable Plaintiff to perform visual tasks. Ex. C5. |

**24.    Moving Party's Response**

Plaintiff does not dispute UF 24 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff claims to dispute UF 24 based on a misreading that Local 26 claims all Watchmen must do all duties described in UF 24 on each shift. This is not the case. Watchmen must be able to perform any or all of the duties set forth in UF 24 should the Employer require them to do so pursuant to the operational needs of the terminal that day. Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 24.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.

| 25.    Assignments which require driving vehicles are essential job functions for | **Response to No. 25: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay. |
|---|---|

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Watchmen. Gratz Decl. at ¶16 and Exhibit 1 to the Appendix | Defendant's assertion that assignments requiring the operation of vehicles constitute essential job functions presents a disputed issue of fact. The Watchmen's Agreement uses permissive language regarding driving assignments, recognizes multiple Watchman classifications, and provides that work assignments vary from terminal to terminal and throughout a shift. Watchmen's Agreement, Arts. 1(B), 2(D), 2(L), 3(C). Plaintiff's treating ophthalmologist further concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations and clarified that his driving restrictions were limited to oversized passenger vehicles, not all vehicle operation. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Plaintiff also presented evidence that he successfully performed Watchman duties under accommodations that excluded bus and van driving assignments. Greene Dep. 136:15-139:6; Grant Dep. 41:14-42:6.<br>Declaration of Enoch Greene ¶ 61, Ex.O<br>Declaration of Enoch Greene ¶ 48, Ex.B,<br>Declaration of Enoch Greene ¶ 49, Ex.C,<br>Declaration of Enoch Greene ¶ 50, Ex.D,<br>Declaration of Nancyrose Hernandez ¶ 10, Ex.H, |

**25.    Moving Party's Response**

Plaintiff objects to UF 25 as hearsay and lacking foundation, but Luisa Gratz at paragraph 10 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's

30

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Agreement for Local 26 (UFs 1-6) and Union President and Business Agent for over 40 years.<br><br>Plaintiff disputes that the several job functions required by "M" language and Articles 1, 2, and 7 of the Watchmen's Agreement require Watchmen to safely drive a motor vehicle. Plaintiff offers no competent evidence or testimony to dispute UF 25. The Watchmen's Agreement uses the word "may" which Plaintiff wrongly construes as permissive language, when in reality, the term "may" refers in context to the fact that Watchmen do not necessarily perform all job functions in a given day but "may" only perform some and not others. Greene himself was assigned numerous jobs during a given assignment and Local 26 has stated the contractual imperative that all Watchmen must be able to perform the work set forth in the "M" language, Articles 1, 2, and 7 of the Watchmen's Agreement, including several driving assignments like rover, security, transporting longshoremen and others, escorting vehicles as needed, driving buses, performing rail security, etc. See UFs 17, 18, 19, 20, 21, 22, 24, and 25. Watchmen are required to accept the job assignment on the terminal they are assigned. UFs 9 and 12.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 23. | |
| 26.    As President of Local 26, Gratz sits as an ex-officio participant of the region's Area Maritime Security Committee-United States Coast Guard. This includes her attending meetings held within the Ports of Los Angeles and Long Beach to discuss various aspects of marine security. Gratz Decl. at ¶17 | **Response to No. 26: Undisputed in part; disputed in part.** Plaintiff does not dispute that Gratz serves as President of ILWU Local 26 and participates as an ex officio member of the Area Maritime Security Committee. Plaintiff disputes any implication that her participation in that committee qualifies her to render expert opinions regarding the essential functions of every Watchman assignment, Plaintiff's ability to perform those functions, or the availability of reasonable accommodations under the ADA or FEHA. See Coleman Dep. 54:15-20; 54:23-55:3. |

**26.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 26 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

31

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 26.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that her participation in that committee qualifies her to render expert opinions regarding the essential functions of every Watchman assignment, Plaintiff's ability to perform those functions, or the availability of reasonable accommodations under the ADA or FEHA." as improper and unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 26. | |
| 27.    There are significant National Security and regional security issues with Port Security. At the May 8, 2025, meeting of the Central California Area Maritime Security Committee (CCAMSC), the group discussed the fact that there were 15 breaches of security and 19 suspicious activity reports during the prior period which ended March 31, 2025. These included "shared or altered TWICs" and a "rash of fraudulent Mexican commercial | **Response to No. 27: Undisputed in part; disputed in part.** Plaintiff does not dispute that certain Watchman assignments require inspection of TWIC cards and other credentials. Plaintiff disputes any implication that he could not safely perform those duties with reasonable accommodations. Plaintiff testified that Watchmen verify that TWIC cards are valid, unexpired, and match the individual presenting them, that existing computer |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| driver's licenses." Yusen terminal has reported a number of fraudulent Mexican driver's licenses individuals appearing to possess fraudulent TWIC cards. These are deficiencies which Local 26 Watchmen are expected to catch when they review TWIC cards to admit individuals on the terminal. Gratz Decl. at ¶18 | systems assist with those inspections at certain terminals, and that he requested magnification devices and existing computer technology to perform those duties accurately. Greene Dep. 17:3-14; 28:1-23; 29:6-13. Plaintiff further testified that he opposed the "FlashPass" practice, under which Watchmen were instructed to admit individuals without conducting proper TWIC inspections because he believed it compromised terminal security. Greene Dep. 16:19-25; 17:12-21. Dr. Coleman likewise concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. |

**27.   Moving Party's Response**

Plaintiff does not dispute Local 26's UF 27 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 27.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that he could not safely perform those duties with reasonable accommodations. Plaintiff testified that Watchmen verify that TWIC cards are valid, unexpired, and match the individual presenting them, that existing computer systems assist with those inspections at certain terminals, and that he requested magnification devices and existing computer technology to perform those duties accurately." as improper and unresponsive.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 23. | |
| 28.    Under the Marine Transportation Security Act (MTSA), facilities are required to check TWIC cards for Federal Regulations (33 CFR 105.255 and 33 CFR 101.515). The United States Coast Guard has recommended that terminals check for valid commercial truck driving credentials at entrance gates. Gratz Decl. at ¶19 | **Response to No. 28: Undisputed in part; disputed in part.** Plaintiff does not dispute that federal regulations require terminals to verify TWIC credentials and maintain port security. Plaintiff disputes any implication that those regulatory requirements establish he could not safely perform TWIC inspection duties with reasonable accommodations. Plaintiff testified that Watchmen were responsible for verifying that TWIC cards were valid, unexpired, and matched the individual presenting them, that existing computer systems assisted with those inspections, and that he requested magnification devices and other assistive technology to accurately perform those duties. Greene Dep. 17:3-14; 28:1-23; 29:6-13. Plaintiff further testified that he opposed the "FlashPass" practice because it bypassed proper TWIC inspections and compromised terminal security. Greene Dep. 16:19-25; 17:12-21. Dr. Coleman likewise concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. |

28.    Moving Party's Response

34

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute Local 26's UF 28 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2). Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 28.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that those regulatory requirements establish he could not safely perform TWIC inspection duties with reasonable accommodations. Plaintiff testified that Watchmen were responsible for verifying that TWIC cards were valid, unexpired, and matched the individual presenting them, that existing computer systems assisted with those inspections, and that he requested magnification devices and other assistive technology to accurately perform those duties." as improper and unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. | |
| 29.    Transient individuals attempting to come on to terminal property is another access challenge, as is container theft reported by break-ins on inbound container terminals. Gratz Decl. at ¶20 | **Response to No. 29: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that terminals may face access-control and theft-related security concerns. Plaintiff disputes any implication that these generalized security concerns establish that he could not safely |

35

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | perform available Watchman assignments with reasonable accommodations. Plaintiff testified that he performed security-related assignments including ID check, gangway, rover, traffic control, rail radio room, and vendor gate duties, and that he could perform available assignments with accommodations. Greene Dep. 97:21-102:24; 136:15-139:6. Dr. Coleman likewise concluded that Plaintiff could function safely and effectively at work with appropriate accommodations. Coleman Dep. 54:15-20; 54:23-55:3. |

**29.    Moving Party's Response**

Plaintiff objects to UF 29 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years.

Plaintiff does not dispute Local 26's UF 29 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 29.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that these generalized security concerns establish that he could not safely perform available Watchman assignments with reasonable accommodations. Plaintiff testified that he performed security-related assignments including ID check, gangway, rover, traffic control, rail radio room, and vendor gate duties, and that he could perform available assignments with accommodations." as improper and unresponsive.

| | |
|---|---|
| 30.    Local 26 Watchmen are required to take and pass a Watchmen safety course. The Watchmen safety course requires good visual acuity Watchmen are required to: | **Response to No. 30: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation, and is hearsay. |

36

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| (1) look for signs of nervousness; (2) compare the person in the picture to the person presenting; and (3) evaluate changes in appearance such as beards, masks, hoodies, glasses, etc. and look for signs of tampering on the TWIC cards. Gratz Decl. at ¶21 and Exhibit 3 to the Appendix | Plaintiff does not dispute that Watchmen are required to complete safety training or that TWIC inspections require comparison of identification documents to the individual presenting them. Plaintiff disputes Defendant's assertion that these requirements establish he lacked the visual acuity to safely perform those duties. Plaintiff testified that he requested magnification devices and the use of existing computer systems to assist with TWIC inspections, opposed the "FlashPass" practice because it bypassed proper identification procedures, and sought to perform those duties accurately and in accordance with security protocols. Greene Dep. 16:19-25; 17:3-14; 28:1-23; 29:6-13. Dr. Coleman likewise concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. |

**30.    Moving Party's Response**

Plaintiff objects to UF 30 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years.

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 30.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's assertion that these requirements establish he lacked the visual acuity to safely perform those duties. Plaintiff testified that he requested magnification devices and the use of existing computer systems to assist with TWIC inspections, opposed the "FlashPass" practice because it bypassed proper identification procedures, and sought to perform those duties accurately and in accordance with security

37

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| protocols." as improper and unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 30. | |
| 31.    Local 26 is also required to adhere to the MARSEC (Marine Security Advisory Levels). In light of the Iranian conflict, the United States Coast Guard issued a bulletin reflecting the current MARSEC level remains at 1, given a lack of credible threats. However, the Coast Guard has recommended "collective vigilance across US ports and waterways in the physical domain and cyberspace is essential given the complexity of our Marine Transportation System (MTS)…and the vital role of maritime commerce to US economic prosperity and strategic mobility." Gratz Decl. at ¶22 and Exhibit 4 to the Appendix | **Response to No. 31: Disputed in part.** Plaintiff does not dispute that maritime security is important or that terminals are required to comply with applicable MARSEC requirements. Plaintiff disputes any implication that generalized Coast Guard security advisories establish he could not safely perform Watchman duties with reasonable accommodations. Plaintiff testified that he sought to ensure compliance with terminal security procedures, including opposing the "FlashPass" practice that bypassed proper TWIC inspections, and requested accommodations that would enable him to accurately perform those security functions. Greene Dep. 16:19-25; 17:3-14; 28:1-23. Dr. Coleman likewise concluded that Plaintiff could safely perform |

38

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. |

**31.   Moving Party's Response**

Plaintiff does not dispute Local 26's UF 31 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 31.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's assertion that these requirements establish he lacked the visual acuity to safely perform those duties. Plaintiff testified that he requested magnification devices and the use of existing computer systems to assist with TWIC inspections, opposed the "FlashPass" practice because it bypassed proper identification procedures, and sought to perform those duties accurately and in accordance with security protocols." as improper and unresponsive.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.

| 32.   On or about February 21, 2023, Local 26 was first notified by Plaintiff Enoch Greene ("Greene") that he was being treated by Anne L. Coleman, M.D., and that he would be off work until April | **Response to No. 32: Undisputed in part; disputed in part.** Plaintiff does not dispute that ILWU was notified on or about February 21, 2023 that Plaintiff was under the care of Dr. Anne Coleman and |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 2023. Gratz Decl. at ¶23 and Exhibit 5 to the Appendix | anticipated returning to work in April 2023. Plaintiff disputes any implication that this constituted the full extent of ILWU's knowledge regarding his disability or accommodation needs. Thereafter, Plaintiff repeatedly submitted medical documentation, requested reasonable accommodations, participated in the JPWLRC process, and provided updated medical opinions from Dr. Coleman regarding his ability to safely perform Watchman duties with accommodations. Exs. 14A, C1-C3; Greene Dep. 15:14-15; 33:14-21; Gratz Dep. 89:16-91:2. |
| | Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12,Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |

32.    **Moving Party's Response**

Plaintiff does not dispute Local 26's UF 32 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).
Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 32.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that this constituted the full extent of ILWU's knowledge regarding his disability or accommodation needs. Thereafter, Plaintiff repeatedly submitted medical documentation, requested reasonable accommodations, participated in the JPWLRC process, and provided updated medical opinions from Dr. Coleman regarding his ability to safely perform Watchman duties with accommodations." as improper and unresponsive.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 32. | |
| 33.    On or about April 15, 2023, Gratz received a letter from Greene attaching a copy of a letter from Anne Coleman, M.D. reflecting his vision deficiencies and inability to operate passenger vehicles, vans, or buses. Gratz Decl. at ¶25 and Exhibit 7 to the Appendix | **Response to No. 33: Disputed in part.** Plaintiff does not dispute that, on or about April 15, 2023, ILWU received Dr. Anne Coleman's medical letter describing Plaintiff's visual impairment and restrictions regarding the operation of passenger vans and buses. Plaintiff disputes any implication that Dr. Coleman concluded Plaintiff was unable to perform Watchman duties. To the contrary, Dr. Coleman subsequently clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly opined that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, |

41

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |

**33.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 33 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 33.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that Dr. Coleman concluded Plaintiff was unable to perform Watchman duties. To the contrary, Dr. Coleman subsequently clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly opined that Plaintiff could safely perform Watchman duties with reasonable accommodations" as improper and unresponsive.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 33.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 34.    On or about May 1, 2023, Greene wrote to Gratz notifying her that he is disabled and that he had been reassigned to a different job by Sergeant David Pannell than that dispatched to him. Gratz  learned that Greene had driven a pick-up truck while on duty under a working crane, and she advised the Sergeant on duty, David Pannell, to have Greene call a replacement since he was not able to safely perform that job. Driving under a working crane is forbidden under safety rules and  constitutes operation of his equipment in an unsafe manner. Gratz Decl. at ¶26, Declaration of David Pannell at ¶¶1-5, and Exhibit 8 to the Appendix | **Response to No. 34: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that, on or about May 1, 2023, he notified ILWU that he was disabled and had been reassigned to a different assignment than the one for which he had been dispatched. Plaintiff disputes Defendant's characterization of the May 1, 2023 incident, including the assertion that Plaintiff was unable to safely perform the assignment or that the incident established he could not perform Watchman duties with reasonable accommodations. Plaintiff immediately disclosed his disability, requested reasonable accommodations, and thereafter continued to work under accommodations. Exs. 7, 14A; Greene Dep. 15:14-15; 33:14-21; 35:11-25; 136:15-139:6. Dr. Coleman subsequently clarified Plaintiff's driving restrictions and opined that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C2-C3; Coleman Dep. 54:15-20; 54:23-55:3. |

**34.    Moving Party's Response**

Plaintiff objects to UF 34 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years.

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 34.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization of the May 1, 2023 incident, including the

43

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| assertion that Plaintiff was unable to safely perform the assignment or that the incident established he could not perform Watchman duties with reasonable accommodations. Plaintiff immediately disclosed his disability, requested reasonable accommodations, and thereafter continued to work under accommodations." as improper and unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Greene disputes the characterization of the May 1, 2023, incident and offers his deposition testimony at 15:14-15 which does not pertain to the issue; his testimony at 33:14-21, which also does not relate to the issue; 35:11-25 which likewise does not relate to the issue and 136:15-139:6 which discusses a different event on October 3, 2023 (Greene depo. at 138:17-23). In any event, nothing in Greene's response competently disputes UF 34. | |
| 35.  Driving under a working crane represents the danger of a container falling from the crane as which would crush the truck traveling underneath and constitutes a risk of injury or death. David Pannell at ¶¶4 and 5 | **Response to No. 35: Undisputed in part; disputed in part.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that operating a vehicle beneath an active crane may present safety risks. Plaintiff disputes any implication that the general dangers associated with crane operations establish that Plaintiff was unable to safely perform Watchman duties with reasonable |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | accommodations or that the May 1, 2023 incident resulted from Plaintiff's disability. Plaintiff thereafter requested reasonable accommodations, including restrictions on driving oversized passenger vehicles, and continued working under accommodations. Exs. 14A, C2-C3; Greene Dep. 33:14-21; 35:11-25; 136:15-139:6. |

**35.    Moving Party's Response**

Plaintiff objects to UF 35 as hearsay and lacking foundation, but David Pannell at ¶¶ 1-5 of his declaration lays the foundation based on his extensive experience as Steady Shift Sergeant at LBCT.

Plaintiff does not dispute Local 26's UF 35 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 35.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that the general dangers associated with crane operations establish that Plaintiff was unable to safely perform Watchman duties with reasonable accommodations or that the May 1, 2023 incident resulted from Plaintiff's disability. Plaintiff thereafter requested reasonable accommodations, including restrictions on driving oversized passenger vehicles, and continued working under accommodations." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 35.

| | |
|---|---|
| 36.    On or about May 1, 2023, Greene emailed Gratz stating that he had received harassment and discrimination based on being followed while he was driving a vehicle on May 1, 2023, by David Pannell who "harassed" him by accusing him of driving too slow and driving under the | **Response to No. 36: Undisputed in part; disputed in part.** Plaintiff does not dispute that he emailed Gratz on or about May 1, 2023 reporting that he had been subjected to harassment and discrimination after disclosing his disability. Plaintiff **disputes** Defendant's characterization of the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| cranes by following him around on the terminal.  Gratz Decl. at ¶27 and Exhibit 9 to the Appendix | incident and the implication that Plaintiff merely complained about being followed. The email reflects that Plaintiff contemporaneously reported disability discrimination, harassment, and safety concerns following his request for reasonable accommodations, thereby placing ILWU on notice of Plaintiff's allegations. Ex. 9; Greene Dep. 15:14-15; 33:14-21. |

**36.    Moving Party's Response**

Plaintiff does not dispute Local 26's Undisputed Fact UF 36 a as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 36.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff **disputes** Defendant's characterization of the incident and the implication that Plaintiff merely complained about being followed. The email reflects that Plaintiff contemporaneously reported disability discrimination, harassment, and safety concerns following his request for reasonable accommodations, thereby placing ILWU on notice of Plaintiff's allegations." as improper and unresponsive.
Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 36.

| | |
|---|---|
| 37.    On or about May 2, 2023, Greene requested reasonable accommodation by email directed to the Joint Port Watchmen's Labor Relations Committee ("JPWLRC"). Gratz Decl. at ¶28 and Exhibit 10 to the Appendix | **Response to No. 37: Undisputed in part; disputed in part.** Plaintiff does not dispute that, on or about May 2, 2023, he submitted a written request for reasonable accommodations to the JPWLRC. Plaintiff disputes any implication that the request was limited in scope or that ILWU thereafter meaningfully evaluated all requested accommodations. Plaintiff's request included, among other things, transportation assistance, magnification devices, assistive technology, enlarged |

46

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | print materials, and restrictions on driving oversized passenger vehicles. Ex. 10; Ex. 14A; Greene Dep. 33:14-21; Gratz Dep. 89:16-91:2; 155:5-9. |
| **37.    Moving Party's Response**<br><br>Plaintiff does not dispute Local 26's UF 37 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 37.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that the request was limited in scope or that ILWU thereafter meaningfully evaluated all requested accommodations. Plaintiff's request included, among other things, transportation assistance, magnification devices, assistive technology, enlarged print materials, and restrictions on driving oversized passenger vehicles." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 37. | |
| 38.    On or about May 2, 2023, Greene wrote to Victor Gasset complaining that he had been fired because he had requested accommodation due to his disability and asking for union representation and for a complaint to be filed against LBCT (Long Beach Container Terminal) and David Pannell. Gratz Decl. at ¶29, Victor Gasset Declaration at ¶4 and Exhibit 11 to the Appendix | **Response to No. 38: Undisputed in part; disputed in part.** Plaintiff does not dispute that, on or about May 2, 2023, he notified ILWU that he believed he had been subjected to disability discrimination, requested union representation, and sought assistance in pursuing a complaint regarding his treatment at LBCT. Plaintiff disputes any implication that ILWU's receipt of this correspondence satisfied its obligations under the ADA, FEHA, or its duty of fair representation. Ex. 11; Greene Dep. 15:14-15; 33:14-21; Gratz Dep. 101:21-22; 103:20-24. |
| **38.    Moving Party's Response** | |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute Local 26's UF 38 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 38.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that ILWU's receipt of this correspondence satisfied its obligations under the ADA, FEHA, or its duty of fair representation." as improper and unresponsive.<br><br>Victor Gasset is and has been the elected Vice-President of Local 26 and has assisted President Gratz in the operation of the Local, including "Dispatch, workplace issues and contracts." He has also been a Union Steward for over 7 years and serves on the Negotiations and Dispatch Committees. Gasset Decl. at ¶¶1 and 2. He properly testified and authenticated documents based on his <u>personal</u> knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration. | |
| 39.    Greene had not been fired from the job. He had been told to "reap out" (i.e. call a replacement) when he could not fulfill the job duties and go home. Gratz Decl. at ¶30, Victor Gasset Declaration at ¶5 and Exhibit 12 to the Appendix | **Response to No. 39: Disputed.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay. Plaintiff disputes Defendant's characterization of the events of May 1, 2023. Although Plaintiff may not have been formally terminated on that date, he was directed to leave work after disclosing his disability and requesting reasonable accommodations because he could not safely perform the reassigned duties without accommodation. Plaintiff thereafter promptly requested reasonable accommodations through the JPWLRC process and continued to seek to return to work with accommodations. Exs. 10, 14A; Greene Dep. 15:14-15; 33:14-21; 35:11-25. |
| **39.    Moving Party's Response** | |

48

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff objects to UF 39 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6) and President and Business Agent for over 40 years.<br><br>Victor Gasset is and has been the elected Vice-President of Local 26 and has assisted President Gratz in the operation of the Local, including "Dispatch, workplace issues and contracts." He has also been a Union Steward for over 7 years and serves on the Negotiations and Dispatch Committees. Gasset Decl. at ¶¶1 and 2. He properly testified and authenticated documents based on his <u>personal</u> knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration.<br><br>Plaintiff does not dispute Local 26's UF 39 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 39.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization of the events of May 1, 2023. Although Plaintiff may not have been formally terminated on that date, he was directed to leave work after disclosing his disability and requesting reasonable accommodations because he could not safely perform the reassigned duties without accommodation. Plaintiff thereafter promptly requested reasonable accommodations through the JPWLRC process and continued to seek to return to work with accommodations." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 39. | |
| 40.    Greene had refused to "reap out" and he requested to work another job.  Gratz Decl. at ¶31; Victor Gasset Declaration at ¶6; and Exhibit 13 to the Appendix | **Response to No. 40: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff disputes Defendant's characterization that he simply refused to "reap out." Plaintiff requested |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | reassignment to an available assignment he could safely perform after disclosing his disability and requesting reasonable accommodations. Plaintiff thereafter promptly initiated the reasonable accommodation process through the JPWLRC and continued to seek accommodations that would permit him to continue working. Exs. 10, 14A; Greene Dep. 15:14-15; 33:14-21; 35:11-25; Coleman Dep. 54:15-20; 54:23-55:3. |

**40.    Moving Party's Response**

Plaintiff objects to UF 39 as hearsay and lacking foundation, but Luisa Gratz at paragraph 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation based on her extensive experience as lead negotiator of the Watchmen's Agreement for Local 26 (UFs 1-6). She also testifies from personal knowledge.

Victor Gasset is and has been the elected Vice-President of Local 26 and has assisted President Gratz in the operation of the Local, including "Dispatch, workplace issues and contracts." He has also been a Union Steward for over 7 years and serves on the Negotiations and Dispatch Committees. Gasset Decl. at ¶¶1 and 2. He properly testified and authenticated documents based on his <u>personal</u> knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration.

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 40.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that he simply refused to "reap out." Plaintiff requested reassignment to an available assignment he could safely perform after disclosing his disability and requesting reasonable accommodations. Plaintiff thereafter promptly initiated the reasonable accommodation process through the JPWLRC and continued to seek accommodations that would permit him to continue working." as improper and unresponsive.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 40. | |
| 41.   On or about May 3, 2023, Gasset wrote to Gratz reflecting what had happened at Long Beach Container Terminal. Specifically, Greene had been temporarily placed at the gangway in lieu of his being able to perform his dispatched job and Local 26 members were complaining because of favoritism apparently reflected in Greene's treatment.  Gratz Decl. at ¶34; Victor Gasset Declaration at ¶3; and Exhibit 16 to the Appendix | **Response to No. 41: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that he was temporarily assigned to a gangway position following disclosure of his disability. Plaintiff disputes Defendant's characterization that this assignment reflected "favoritism." Rather, the temporary assignment demonstrates that accommodations were available and could be implemented. Plaintiff further disputes any implication that complaints from other union members justified denying or discontinuing reasonable accommodations. Gratz Dep. 62:17-64:17; 88:12-14; 93:1-94:15; Greene Dep. 136:15-139:6. |

**41.   Moving Party's Response**

Plaintiff objects to UF 41 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6).

Victor Gasset is and has been the elected Vice-President of Local 26 and has assisted President Gratz in the operation of the Local, including "Dispatch, workplace issues and contracts." He has also been a Union Steward for over 7 years and serves on the Negotiations and Dispatch Committees. Gasset Decl. at ¶¶1 and 2. He properly testified and authenticated documents based on his <u>personal</u> knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 41. | |
| 42. As to the temporary accommodation on May 3, 2023, at LBCT, this arrangement appeared to have occurred between LBCT and Greene entering into a private agreement in violation of the Watchmen's Agreement and having made unilateral changes as well as direct dealing between LBCT and Greene in violation of the Agreement. Gratz Decl. at ¶34; Victor Gasset Declaration at ¶7; and Exhibit 16 to the Appendix | **Response to No. 42: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay. Defendant's characterization that the temporary accommodation constituted a "private agreement," "direct dealing," or a "unilateral change" in violation of the Watchmen's Agreement is a disputed legal conclusion, not an undisputed fact. Plaintiff requested reasonable accommodations under the ADA and FEHA after disclosing his disability, and LBCT temporarily accommodated those requests by assigning Plaintiff to the gangway. Gratz admitted that union members objected to Plaintiff's accommodations because they believed they constituted direct dealing and preferential treatment, and that accommodations could not occur outside the JPWLRC process. Gratz Dep. 47:11-49:11; 57:17-58:2; 62:17-64:17; 93:1-94:15. Plaintiff further relies upon the evidence that the temporary accommodation enabled him to continue working safely. Greene Dep. 136:15-139:6. |

**42.    Moving Party's Response**

Plaintiff objects to UF 42 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6). She testified based on her personal knowledge of what happened.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Victor Gasset is and has been the elected Vice-President of Local 26 and has assisted President Gratz in the operation of the Local, including "Dispatch, workplace issues and contracts." He has also been a Union Steward for over 7 years and serves on the Negotiations and Dispatch Committees. Gasset Decl. at ¶¶1 and 2. He properly testified and authenticated documents based on his <u>personal</u> knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration.<br><br>Plaintiff does not dispute the substantive facts of UF 42 that LBCT and Greene entered into a private agreement to allow Greene to finish work on his shift at a gangway assignment in lieu of his assigned work, nor does Plaintiff dispute that this was direct dealing with a particular employee and that such direct deals violate the binding terms of the Watchmen's Agreement.<br><br>The parties were bound to negotiate collectively, through the JPWLRC, for any changes or modifications to the dispatch system and assignment of work, including any forms of reasonable accommodations. UFs 6, 7, 8, 9, 10, 11, 74, 75, and 76.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 42. | |
| 43.    On or about May 8, 2023, the Joint Parties convened a JPWLRC Meeting to discuss accommodating Greene's vision deficiencies. Gratz attended, as did several Union members and PMA members. Gratz Decl. at ¶36 and Exhibit 18 to the Appendix | **Response to No. 43: Undisputed in part; disputed in part.** Plaintiff does not dispute that the JPWLRC met on or about May 8, 2023 to discuss Plaintiff's request for reasonable accommodations. Plaintiff disputes any implication that the meeting satisfied Defendants' obligations under the ADA or FEHA or constituted a good-faith interactive process. Plaintiff requested numerous accommodations, including transportation assistance, magnification devices, assistive technology, and restrictions on driving oversized passenger vehicles, yet Gratz testified that accommodations could not occur outside the JPWLRC process and later acknowledged that no accommodations |

53

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | were ultimately approved. Ex. 18; Gratz Dep. 57:17-58:2; 89:16-91:2; 93:1-94:15; 155:5-9. |

**43.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 43 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 43.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that the meeting satisfied Defendants' obligations under the ADA or FEHA or constituted a good-faith interactive process. Plaintiff requested numerous accommodations, including transportation assistance, magnification devices, assistive technology, and restrictions on driving oversized passenger vehicles, yet Gratz testified that accommodations could not occur outside the JPWLRC process and later acknowledged that no accommodations were ultimately approved." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 43.

| | |
|---|---|
| 44.    At the JPWLRC meeting, Greene complained about difficulties he had about operating vans, including tight-maneuvering, hard difficult traffic patterns, and he requested to be reassigned to other positions besides driving the van or the bus. Gratz Decl. at ¶36 and Exhibit 18 to the Appendix | **Response to No. 44: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that, during the May 8, 2023 JPWLRC meeting, he discussed difficulties operating passenger vans and buses and requested reassignment to available non-driving assignments as a reasonable accommodation. Plaintiff disputes any implication that his accommodation requests were limited to reassignment or that the JPWLRC thereafter meaningfully evaluated all |

54

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | requested accommodations. Plaintiff also requested transportation assistance, magnification devices, assistive technology, enlarged print materials, and other accommodations to enable him to continue performing Watchman duties. Ex. 18; Ex. 14A; Greene Dep. 33:14-21; 39:2-25; 40:1-19; Gratz Dep. 89:16-91:2. |
| **44.    Moving Party's Response**<br><br>Plaintiff objects to UF 44 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge as a participant in the meeting. Gratz decl. at ¶ 36<br><br>Plaintiff does not dispute Local 26's UF 44 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 44.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that his accommodation requests were limited to reassignment or that the JPWLRC thereafter meaningfully evaluated all requested accommodations. Plaintiff also requested transportation assistance, magnification devices, assistive technology, enlarged print materials, and other accommodations to enable him to continue performing Watchman duties." as improper and unresponsive. | |
| 45.    Greene requested to be assigned to the NOIT (North Operations Information Technology) office but at the same time, he indicated that he may not be able to do that work there because the angles at the main gate at the NOIT compromised his ability to perform the function. Gratz Decl. at ¶36 and Exhibit 18 to the Appendix | **Response to No. 45: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that, during the interactive process, he discussed concerns regarding the configuration of the NOIT workstation. Plaintiff disputes Defendant's characterization that this demonstrated he could not perform the assignment. Rather, Plaintiff identified a specific workplace limitation and proposed a modification to |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | the workstation so he could safely perform the assignment, consistent with the interactive process. Greene Dep. 30:1-31:18; Ex. 18. Plaintiff further requested magnification devices, assistive technology, enlarged print materials, and other accommodations to enable him to perform Watchman duties. Ex. 14A; Coleman Dep. 54:15-20; 54:23-55:3. |

**45.    Moving Party's Response**

Plaintiff objects to UF 45 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge as a participant in the JPWLRC meeting. Gratz decl. at ¶ 36.

Plaintiff does not dispute Local 26's UF 45 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 45.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that this demonstrated he could not perform the assignment. Rather, Plaintiff identified a specific workplace limitation and proposed a modification to the workstation so he could safely perform the assignment, consistent with the interactive process." as improper and unresponsive.

The cited portions of Greene's deposition testimony at 30:1-31:18 does not show or pertain to requested accommodations offered by Greene at the JPWLRC meeting on May 8, 2023, but refer to conversations he had with Rosetta Bourda and David Pannell at LBCT on April 20, 2023. Greene depo. at 29:9-31:9.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 45.

| | |
|---|---|
| 46.    On May 8, Greene also complained to the JPWLRC that he may have to be transported himself as opposed to driving | **Response to No. 46: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay. |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| others around the terminals because when he worked nights when there was fog, or windshield wiper issues, or rain, it created vision difficulties for him and he was unable to do those jobs. Gratz Decl. at ¶36 and Exhibit 18 to the Appendix | Plaintiff does not dispute that, during the May 8, 2023 JPWLRC meeting, he discussed limitations related to driving under certain conditions, including fog, rain, and reduced visibility, and requested transportation assistance as a reasonable accommodation in those circumstances. Plaintiff disputes any implication that these limitations rendered him unable to perform Watchman duties generally. Rather, Plaintiff identified specific restrictions and proposed accommodations that would permit him to continue performing available assignments safely. Ex. 18; Exs. C1-C3; Greene Dep. 33:14-21; Coleman Dep. 54:15-20; 54:23-55:3. |

**46.    Moving Party's Response**

Plaintiff objects to UF 46 as hearsay and lacking foundation, but Luisa Gratz was present at the JPWLRC meeting and testifies based on her personal knowledge.

Plaintiff does not dispute Local 26's UF 45 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 45.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that these limitations rendered him unable to perform Watchman duties generally. Rather, Plaintiff identified specific restrictions and proposed accommodations that would permit him to continue performing available assignments safely." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 46.

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 47.    On or about May 10, 2023, Greene wrote to Gasset that among other things that he had just requested to be reassigned from the shuttle bus driver to another post due to my disability and medical condition and requesting that Gasset inform the personnel at Pier 400 that Greene should be reassigned. Gasset responded that he had no authority to intervene, given that the JPWLRC had not yet made any decisions and further, he was not fired, but if he was going to leave the terminal, he would need to call for a replacement. Gratz Decl. at ¶37; Victor Gasset Declaration at ¶9 and Exhibit 19 to the Appendix | **Response to No. 47: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.

Plaintiff does not dispute that, on or about May 10, 2023, he requested reassignment from a shuttle bus assignment because of his disability and requested union assistance. Plaintiff disputes any implication that ILWU adequately responded to his accommodation request. Rather, Gasset advised that he lacked authority to intervene pending JPWLRC action, despite Plaintiff's ongoing requests for reasonable accommodations. Ex. 19; Greene Dep. 33:14-21; Gratz Dep. 93:1-94:15; 101:21-22. |

**47.    Moving Party's Response**

Plaintiff objects to UF 47 as hearsay and lacking foundation, but Luisa Gratz testified based on personal knowledge. Gratz decl. at ¶37.

Victor Gasset properly testified and authenticated documents based on his personal knowledge and participation in issues concerning Greene's accommodation process as set forth in ¶¶ 3-10 of his declaration.

Plaintiff does not dispute Local 26's UF 47 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 47.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that ILWU adequately responded to his accommodation request. Rather, Gasset advised that he lacked authority to intervene pending JPWLRC action, despite Plaintiff's ongoing requests for reasonable accommodations." as improper and unresponsive.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 47. | |
| 48.   On or about May 22, 2023, the JPWLRC held a second meeting to discuss providing reasonable accommodation to Greene. During that meeting, Greene reiterated that he was not able to drive himself when the terminal was dark or on foggy days, bad weather, or rain, and someone would have to drive him around, also, that vehicle inspection reports were a struggle for him as part of office work that he had requested to do.   Gratz Decl. at ¶38 | **Response to No. 48: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.

Plaintiff does not dispute that, during the May 22, 2023 JPWLRC meeting, he identified specific limitations related to driving under certain environmental conditions and discussed difficulties completing certain vehicle inspection reports. Plaintiff disputes any implication that these limitations rendered him unable to perform Watchman duties generally. Rather, Plaintiff identified specific circumstances requiring accommodation and proposed transportation assistance and reassignment to available assignments as reasonable accommodations. Ex. 18; Exs. C1-C3; Greene Dep. 33:14-21; 39:2-25; Coleman Dep. 54:15-20; 54:23-55:3. |

**48.   Moving Party's Response**

Plaintiff objects to UF 48 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge (UF 48).

Plaintiff does not dispute Local 26's UF 48 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 48.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that these limitations rendered him unable to perform Watchman duties generally. Rather, Plaintiff identified specific circumstances requiring accommodation and proposed transportation assistance and reassignment to available

59

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| assignments as reasonable accommodations." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 48. | |
| 49.    On or about June 12, 2023, Gasset wrote to Gratz advising that he had received a call from Sergeant Emmitt Hall at LBCT stating that Greene had been in an accident involving a driverless Automated Guided Vehicle ("AGV") being piloted from the rear and that Greene had sustained an injury for which he was going to be able to drive himself to the doctor or hospital of his choice. Victor Gasset Declaration at ¶10 | **Response to No. 49: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that, on or about June 12, 2023, an incident occurred at LBCT involving an Automated Guided Vehicle ("AGV") and that Mr. Gasset was notified of the incident. Plaintiff disputes any implication that the occurrence of the incident established Plaintiff was unable to safely perform Watchman duties or that the incident was attributable to Plaintiff's disability. Plaintiff challenged the investigation, requested witness statements, video evidence, and other investigative materials, and raised concerns regarding unsafe working conditions and the adequacy of the investigation. Exs. E1, E4, E5; Greene Dep. 174:16-175:5. |

**49.    Moving Party's Response**

Plaintiff objects to UF 49 as hearsay and lacking foundation, but Victor Gasset testified based on personal knowledge. Gasset decl. at ¶ 10.

Plaintiff does not dispute Local 26's UF 49 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 49.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff

60

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| disputes any implication that the occurrence of the incident established Plaintiff was unable to safely perform Watchman duties or that the incident was attributable to Plaintiff's disability. Plaintiff challenged the investigation, requested witness statements, video evidence, and other investigative materials, and raised concerns regarding unsafe working conditions and the adequacy of the investigation." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 49. | |
| 50.    Greene caused the accident on June 12, 2023, by running head into a remotely controlled AGV. An AGV is large, about the size of a container chassis (40 feet) and 10 feet high on which containers can be temporarily placed. It moves very slowly, but Greene apparently could not see it and ran into it, even with his vehicle lights on. Gratz Decl. at ¶39 and Exhibit 20  to the Appendix | **Response to No. 50: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff disputes Defendant's characterization of the June 12, 2023 incident, including the assertion that Plaintiff caused the accident because of his disability or inability to see the AGV. Plaintiff challenged the investigation, requested witness statements, surveillance video, safety records, and other investigative materials, and identified unsafe working conditions and investigative deficiencies bearing on the cause of the incident. Exs. E1, E4, E5; Greene Dep. 174:16-175:5. The cause, circumstances, and significance of the June 12, 2023 incident remain genuinely disputed issues of material fact. Declaration of Enoch Greene ¶ 61, Ex.O (Pages 39-47). Declaration of Enoch Greene ¶  48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 62, Ex.P, Declaration of Enoch Greene ¶ 63, Ex.Q |
| **50.    Moving Party's Response** | |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff objects to UF 50 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration, the Declaration sections cited at UFs 1-6, and Exhibit 20 to the Appendix lay the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6). She also testified based on personal knowledge. Gratz decl. at ¶39.<br><br>Plaintiff disputes that he caused the accident on June 12, 2023, and challenged the investigation and requested investigation materials, including the actual video footage of the accident, which he received. LBCT filed an Employer Complaint. (UF 51) The Complaint and the accident were investigated by Gratz on behalf of Local 26 and after an investigative review, Local 26 and the Employer concluded that the accident was Greene's fault (UF 52), and that Greene was barred from further dispatch to LBCT (UF 55). The JPWLRC concluded that Greene had caused the accident. (UF 57 and Exhibit 32 to the Appendix)<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 50. | |
| 51.    LBCT filed an employer complaint 08-2023 against Greene for damaging company property and disregard of employer's interest at Pier E Container Terminal on June 11, 2023. Gratz Decl. at ¶40 and Exhibit 18 to the Appendix | **Response to No. 51: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that LBCT filed Employer Complaint No. 08-2023 arising from the June 2023 incident. Plaintiff disputes Defendant's characterization that the filing of the complaint establishes Plaintiff damaged company property or acted with disregard for the employer's interests. Plaintiff challenged the allegations, disputed the investigation and its conclusions, and requested witness statements, surveillance video, and other investigative materials concerning the incident. Exs. E1, E4, E5; Greene Dep. 174:16-175:5. Declaration of Enoch Greene ¶ 61, Ex.O |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | (Pages 39-47). Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 62, Ex.P, Declaration of Enoch Greene ¶ 63, Ex.Q |

51.    **Moving Party's Response**

Plaintiff objects to UF 51 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge. Gratz decl. at ¶ 40 and Exhibit 21 to the Appendix.

Plaintiff does not dispute Local 26's UF 51 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 51.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that the filing of the complaint establishes Plaintiff damaged company property or acted with disregard for the employer's interests. Plaintiff challenged the allegations, disputed the investigation and its conclusions, and requested witness statements, surveillance video, and other investigative materials concerning the incident." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 51.

| 52.    Gratz investigated the accident, watched the LBCT video, and reviewed information from Victor Gasset and determined that the accident was Greene's fault. Gratz Decl. at ¶40 and Marc Coleman Declaration at ¶4 | **Response to No. 52: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that Gratz reviewed information concerning the June 2023 incident. Plaintiff disputes Defendant's characterization that her investigation established Plaintiff was at fault. Plaintiff challenged the adequacy and conclusions of the investigation, requested witness statements, surveillance |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | video, and other investigative materials, and identified unsafe working conditions and investigative deficiencies bearing on the cause of the incident. Exs. E1, E4, E5; Greene Dep. 174:16-175:5. Whether Plaintiff was at fault for the incident presents a disputed issue of material fact. Declaration of Enoch Greene ¶ 61, Ex.O (Pages 39-47). Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 50, Ex.C, Declaration of Enoch Greene ¶ 62, Ex.P, Declaration of Enoch Greene ¶ 63, Ex.Q |

**52.    Moving Party's Response**

Plaintiff objects to UF 52 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6). She also testified based on her personal knowledge.

Plaintiff does not dispute Local 26's UF 52 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 52.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that her investigation established Plaintiff was at fault. Plaintiff challenged the adequacy and conclusions of the investigation, requested witness statements, surveillance video, and other investigative materials, and identified unsafe working conditions and investigative deficiencies bearing on the cause of the incident." as improper and unresponsive.

Plaintiff disputes that he caused the accident on June 12, 2023, and challenged the investigation and requested investigation materials, including the actual video footage of the accident, which he received. LBCT filed an Employer Complaint. (UF 51) The Complaint and the accident were investigated by Gratz on behalf of Local 26 and after

64

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| an investigative review, Local 26 and the Employer concluded that the accident was Greene's fault (UF 52), and that Greene was barred from further dispatch to LBCT (UF 55). The JPWLRC concluded that Greene had caused the accident. (UF 57 and Exhibit 32 to the Appendix)<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 52. | |
| 53.    On or about August 22, 2023, Greene was involved in a second accident, similar to the first, in which he drove his vehicle into another vehicle operated by the superintendent at APM Terminals (Pier 400). Gratz Decl. at ¶41 | **Response to No. 53: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that an incident occurred at APM Terminals on or about August 22, 2023 involving Plaintiff and another vehicle. Plaintiff disputes Defendant's characterization that the incident was "similar" to the June 2023 incident or that it establishes Plaintiff was unable to safely perform Watchman duties because of his disability. Plaintiff challenged the investigation and the conclusions drawn from the incident, and the circumstances, cause, and significance of the August 2023 incident remain genuinely disputed issues of material fact. Greene Dep. 174:16-175:5; Exs. E4, E5. Declaration of Enoch Greene ¶ 61, Ex.O (Pages 3-7 and Pages 35-38). Declaration of Enoch Greene ¶ 65, Ex.S, Declaration of Enoch Greene ¶ 66, Ex.T, Declaration of Enoch Greene ¶ 67, Ex.U |
| **53.    Moving Party's Response**<br><br>Plaintiff objects to UF 53 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead | |

65

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6). She also testified based on her personal knowledge. Plaintiff does not materially dispute UF 53 but disagrees with the characterization that the accident was similar. The parties are free to characterize what happened how they choose, but Greene does not dispute the material fact, undeniably evident in the video footage that he caused the accident by driving his vehicle into the truck of the APM Superintendent.<br><br>Like the prior accident, the Employer filed and Employee Complaint, Gratz investigated, including watching a video tape of the accident, and both parties-Local 26 and the PMA concurred that the accident was Greene's fault (UF 54).<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 53. | |
| 54.    Gratz investigated the accident, viewed the videotape, and saw that Greene was the cause of the accident, which was the subject of employer complaint 0018-2023. Gratz Decl. at ¶41, Marc Coleman Decl. at ¶5, and Exhibit 18  to the Appendix | **Response to No. 54: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that Gratz reviewed information concerning the August 2023 incident, including video footage. Plaintiff disputes Defendant's characterization that her review established Plaintiff caused the accident. Plaintiff challenged the circumstances of the incident and the conclusions reached during the investigation, and the existence of Employer Complaint No. 0018-2023 does not establish Plaintiff's fault. The cause, circumstances, and significance of the August 2023 incident remain genuinely disputed issues of material fact. Greene Dep. 174:16-175:5; Exs. E4, E5. Declaration of Enoch Greene ¶ 61, Ex.O (Pages 3-7 and Pages 35-38). Declaration of Enoch Greene ¶ 65, Ex.S, Declaration of Enoch Greene ¶ 66, Ex.T, |

66

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | Declaration of Enoch Greene ¶ 67, Ex.U |

**54.     Moving Party's Response**

Plaintiff objects to UF 54 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration, the Declaration sections cited at UFs 1-6, and Exhibit 41 to the Appendix lay the foundation for her testimony based on personal knowledge.

Plaintiff does not dispute Local 26's UF 54 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 54.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that her review established Plaintiff caused the accident. Plaintiff challenged the circumstances of the incident and the conclusions reached during the investigation, and the existence of Employer Complaint No. 0018-2023 does not establish Plaintiff's fault. The cause, circumstances, and significance of the August 2023 incident remain genuinely disputed issues of material fact." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 54.

| 55.     Based on the June 12, 2023 incident, Greene was placed on non-dispatch with LBCT based on the conclusion by LBCT and PMA that "Greene's dispatch to LBCT as a Watchman would currently pose a significant risk of substantial harm to the health and safety of himself and other persons on the terminal and that no reasonable accommodation can eliminate or reduce the risk to a safe level." Moreover, "due to his work restrictions, he is not currently able to perform the | **Response to No. 55: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that LBCT and PMA placed him on non-dispatch or that Exhibit 26 contains the quoted statements. Plaintiff disputes those conclusions in their entirety. Whether Plaintiff posed a significant risk of substantial harm, whether reasonable accommodations could reduce any alleged risk, and whether |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| essential functions of any Watchmen job assignment." Gratz Decl. at ¶45 and Exhibit 26 to the Appendix | Plaintiff could perform the essential functions of available Watchman assignments are central disputed issues in this action. Plaintiff's treating ophthalmologist repeatedly concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations, and Plaintiff presented evidence that he successfully worked under accommodations following these incidents. Exs. C1-C3; Greene Dep. 136:15-139:6; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Hernandez ¶¶ 11-18,  Ex.I-P<br>Declaration of Enoch Greene ¶ 61, Ex.O (Pages 3-7 and Pages 35-38).<br>Declaration of Enoch Greene ¶ 65, Ex.S, Declaration of Enoch Greene ¶ 66, Ex.T, Declaration of Enoch Greene ¶ 67, Ex.U |

## 55.     Moving Party's Response

Plaintiff objects to UF 55 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge. Gratz decl. at ¶45.

Plaintiff does not dispute Local 26's UF 55 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff improperly makes legal arguments and raises legal issues instead of offering material factual disputes.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes those conclusions in their entirety. Whether Plaintiff posed a significant risk of substantial harm, whether reasonable accommodations could reduce any alleged risk, and whether Plaintiff could perform the essential functions of available Watchman assignments are central disputed issues in this action. Plaintiff's treating ophthalmologist repeatedly concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations, and Plaintiff presented evidence that he successfully worked under accommodations following these incidents." as improper and

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 55. | |
| 56.    Gratz investigated the employer complaint from LBCT and the Collective Bargaining Agreement violation at Matson C-60 and any direct dealing in violation of the Watchmen's Agreement. Frank Angulo, who was lead Sergeant at Matson Terminal Berth C-60, provided an explanation that Greene was unable to perform the essential functions of the Watchman's job. Gratz Decl. at ¶46 and Exhibit 27 to the Appendix | **Response to No. 56: Disputed.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff disputes Defendant's characterization that Plaintiff's temporary accommodation constituted a violation of the Watchmen's Agreement or improper direct dealing. Plaintiff further disputes the assertion that Mr. Angulo's opinions established Plaintiff was unable to perform the essential functions of the Watchman position. Plaintiff requested reasonable accommodations under the ADA and FEHA, and the temporary accommodations implemented at Matson and other terminals demonstrated that accommodations could be implemented and permitted Plaintiff to continue working |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | safely. Gratz Dep. 47:11-49:11; 57:17-58:2; 62:17-64:17; 93:1-94:15; Greene Dep. 136:15-139:6; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Hernandez ¶¶ 11-18,  Ex.I-P |

**56.    Moving Party's Response**

Plaintiff claims to dispute UF 56 but offers no facts to support the disputation. Accordingly, UF 56 is undisputed as stated. FRCP §56(e)(2)(3).

Greene improperly attempts to introduce new facts not in dispute of UF 56. Such new facts are required to be set forth as "Additional Material Facts" with appropriate record citations.

The record citations offered by Plaintiff do not support Plaintiff's statement that "the temporary accommodations implemented at Matson and other terminals demonstrated that accommodations could be implemented and permitted Plaintiff to continue working safely." The cited testimony of Luisa Gratz at 47:11-49:11 restates Local 26's position that individual members cannot direct deal with employers to carve out and/or create set jobs taking bargaining unit work away from the Local 26 membership. At 57:17-58:2, Gratz reiterates that unilateral changes to the Watchmen's Agreement are unlawful. At 62:17-64:17, Gratz states that LBCT and Greene decided to bypass the dispatch procedure and place Greene at gangway watch was a contract violation. Accommodations must go through the JPWLRC process and Gratz was not contacted about LBCT's decision to move Greene to the gangway watch outside the Joint Process. At 93:1-94:15, Gratz reiterated that all accommodation requests affecting terms and conditions of employment must go through the JPWLRC. Nowhere does Gratz say or imply that any temporary accommodation given Greene was acceptable on a long-term basis absent JPWLRC approval.

Similarly, the Greene testimony at Greene depo. pages 136:15-139:6 discusses that he was temporarily assigned at SSA, but not that any permanent arrangement was possible or effective.

Lastly, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration

70

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 56. | |
| 57.    On or about February 27, 2024, Gratz received a letter from PMA that Greene had been found guilty of employer complaint number 8-23, which covered the damage to the remotely operated AGV at LBCT on June 12, 2023. Gratz Decl. at ¶50 and Exhibit 32 to the Appendix | **Response to No. 57: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that, on or about February 27, 2024, Gratz received correspondence advising that Employer Complaint No. 8-23 had been sustained. Plaintiff disputes any implication that the determination establishes Plaintiff's fault, that Plaintiff posed a direct threat, or that he was unable to perform Watchman duties with reasonable accommodations. Plaintiff consistently challenged the investigation, the conclusions reached, and the adequacy of the investigative process. Exs. E1, E4, E5; Greene Dep. 174:16-175:5; Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. |
| **57.    Moving Party's Response**<br><br>Plaintiff objects to UF 55 as hearsay and lacking foundation, but Luisa Gratz testified based on her personal knowledge. Gratz decl. at ¶50. | |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute Local 26's UF 57 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 57.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that the determination establishes Plaintiff's fault, that Plaintiff posed a direct threat, or that he was unable to perform Watchman duties with reasonable accommodations. Plaintiff consistently challenged the investigation, the conclusions reached, and the adequacy of the investigative process." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 57. | |
| 58.    On or about December 10, 2024, the JPWLRC met to again discuss accommodating Greene's ADA request. Based on the conclusions from Dr. Deutsch, the accidents which Greene had incurred, and the unavailability of any accommodation that would allow Greene to safely and efficiently perform the Watchmen's position, the parties concluded they were not able to accommodate Greene's request that he be given a specific job assignment. Gratz Decl. at ¶52 and Exhibit 34 to the Appendix | **Response to No. 58: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that the JPWLRC met on or about December 10, 2024 to discuss his request for reasonable accommodations. Plaintiff **disputes** Defendant's characterization of the meeting and the conclusions allegedly reached. Plaintiff did not request a "specific job assignment," but instead requested reasonable accommodations that would permit him to perform available Watchman assignments. Plaintiff further disputes the conclusions that no reasonable accommodation existed or that he could not safely perform Watchman duties. Dr. Coleman's opinions, the California Department of Rehabilitation's proposed accommodations, the Braille Institute's low-vision evaluation, and Plaintiff's |

72

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | successful performance of accommodated assignments all create genuine disputes of material fact. Exs. C1-C5; Ex. 34; Gratz Dep. 169:25-170:7; 177:22-180:1; Coleman Dep. 54:15-20; 54:23-55:3; Greene Dep. 136:15-139:6. Declaration of Enoch Greene ¶ 61, Ex.O Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D, Declaration of Nancyrose Hernandez ¶ 10, Ex.H, |

**58.   Moving Party's Response**

Plaintiff objects to UF 58 as hearsay and lacking foundation, but Luisa Gratz was present at the meeting and testified based on personal knowledge.

Plaintiff does not dispute that the JPWLRC met on December 10, 2024, to renew his request for reasonable accommodations and concluded that no accommodation would allow Greene to safely perform the essential functions of a Watchmen's position. Greene disputes the characterization of his accommodations requests as seeking a specific job assignment, but whether he sought a specific job assignment or simply wanted to be exempted from several work assignments performed by Watchmen is immaterial. The unavoidable point is that no identifiable accommodations would have allowed Greene to perform the essential functions of the Watchmen's position.

As a matter of law, the defendants were not required to eliminate essential functions of the Watchmen's job as a reasonable accommodation, nor permit Greene to violate express terms of the Watchmen's Agreement.

Lastly, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 58. | |
| 59.    Greene is and has been since legally blind since 2023. Deposition of Anne  Coleman, M.D., taken on April 20, 2026 ("Coleman depo.") at pages 11:13-12:7 and 22:4-12, Exhibit 35 to the Appendix | **Response to No. 59: Undisputed in part; disputed in part.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that Dr. Coleman diagnosed him as legally blind. Plaintiff disputes any implication that his legal blindness rendered him unable to safely perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations and clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles. Coleman Dep. 54:15-20; 54:23-55:3; Exs. C1-C3.<br>Declaration of Enoch Greene ¶ 61, Ex.O<br>Declaration of Enoch Greene ¶ 48, Ex.B,<br>Declaration of Enoch Greene ¶ 49, Ex.C,<br>Declaration of Enoch Greene ¶ 50, Ex.D,<br>Declaration of Nancyrose Hernandez ¶ 10, Ex.H, |
| **59.    Moving Party's Response** | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute Local 26's UF 59 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 59.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that his legal blindness rendered him unable to safely perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations and clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles." as improper and unresponsive.<br><br>Dr. Coleman did not "repeatedly opine(d) that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations and clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67). Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>To the extent that Dr. Coleman addressed the idea that assistance devices would greatly assist Greene with desk work and paperwork, those kinds of inside job assignments are a small portion of the work that all Watchmen are required to do. According to Dr. Coleman and Dr. Klein, Greene should not work outside during marine terminal operations due to safety concerns and may not drive any motor vehicles at all, thereby disqualifying him from doing the essential functions of his job. | |
| 60.    Dr. Anne Coleman, M.D. ("Dr. Coleman") is a medical doctor licensed since 1990, who is board-certified in | **Response to No. 60: Undisputed.** |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ophthalmology. Coleman depo. at 7:25-8:14 | |
| 61.    Dr. Coleman is employed at the Westwood Jules Stein Eye Institute in Los Angeles. Coleman depo. at 8:19-25 | **Response to No. 61: Undisputed.** |
| 62.    Dr. Coleman began treating Greene in 2016. Coleman depo. at 9:3-6 | **Response to No. 62: Undisputed.** |
| 63.    Dr. Coleman, during the course of Greene's treatment, determined that he should not drive any kind of motor vehicle. Coleman depo. at 9:17; 18:7-14 | **Response to No. 63: Disputed.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.

Defendant mischaracterizes Dr. Coleman's testimony. Dr. Coleman clarified that Plaintiff's driving restrictions were directed to oversized passenger vehicles, including vans and buses, not all motor vehicle operation. She further repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations. Coleman Dep. 18:7-14; 54:15-20; 54:23-55:3; Exs. C2-C3. Declaration of Enoch Greene ¶ 61, Ex.O Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D, Declaration of Nancyrose Hernandez ¶ 10, Ex.H, |

**63.    Moving Party's Response**

Plaintiff disputes the express finding of his treating doctor under oath. His claim of a disputed fact misrepresents Dr. Coleman's sworn testimony and falsely attempts to create a disputed material fact.

| 64.    Dr. Coleman diagnosed Greene with primary open angle glaucoma that is so severe, he meets the criteria for blindness | **Response to No. 64: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly relies upon evidence lacks foundation, and |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| in both eyes and he has no peripheral vision. Coleman depo. at 11:13-12:7 | is hearsay.<br><br>**Disputed**<br>Plaintiff does not dispute that Dr. Coleman diagnosed him with severe primary open-angle glaucoma and that he met the legal criteria for blindness. Plaintiff disputes Defendant's characterization that this diagnosis established he had no functional vision or was unable to perform Watchman duties. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations and clarified that his driving restrictions were limited to oversized passenger vehicles. Coleman Dep. 11:13-12:7; 54:15-20; 54:23-55:3; Exs. C2-C3. |

**64.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 64 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 64.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that this diagnosis established he had no functional vision or was unable to perform Watchman duties. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations and clarified that his driving restrictions were limited to oversized passenger vehicles." as improper and unresponsive.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. | |
| 65.    Greene's visual condition is permanent and there is no current medical procedure extant to regain his vision. Coleman depo. at 12:8-13 | **Response to No. 65: Undisputed in part; disputed in part.** Objection to UMF: The UMF improperly relies upon evidence lacks foundation, and is hearsay. <br><br> Plaintiff does not dispute that Dr. Coleman testified his glaucoma is permanent. Plaintiff disputes any implication that the permanence of his condition rendered him unable to safely perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations notwithstanding the permanent nature of his visual impairment. Coleman Dep. 54:15-20; 54:23-55:3; Exs. C2-C3. <br> Declaration of Enoch Greene ¶ 61, Ex.O <br> Declaration of Enoch Greene ¶ 48, Ex.B, <br> Declaration of Enoch Greene ¶ 49, Ex.C, <br> Declaration of Enoch Greene ¶ 50, Ex.D, <br> Declaration of Nancyrose Hernandez ¶ 10, Ex.H, |
| **65.    Moving Party's Response** | |

78

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff does not dispute Local 26's UF 65 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 65.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes Defendant's characterization that this diagnosis established he had no functional vision or was unable to perform Watchman duties. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations and clarified that his driving restrictions were limited to oversized passenger vehicles." as improper and unresponsive.<br><br>Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 65. |
| 66.    Greene's vision meets the standards for legal blindness. Coleman depo. at 22:4-12 | **Response to No. 66: Undisputed in part; disputed in part.** Plaintiff does not dispute that Dr. Coleman testified Plaintiff's vision meets the legal criteria for blindness. Plaintiff disputes any implication that this diagnosis rendered him unable to perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations notwithstanding his visual impairment. Coleman Dep. 54:15-20; 54:23-55:3; Exs. C2-C3. |

**66.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 66 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 66.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that this diagnosis rendered him unable to perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations notwithstanding his visual impairment." as improper and unresponsive.

Moreover, Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 66.

80

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 67.    Dr. Coleman did not consider a working marine terminal, involving cranes loading and unloading containers or with a lot of moving vehicles to be safe and hazard free such that Greene could work there. Coleman depo. at 27:22-28:17; 46:4-15. | **Response to No. 67: Disputed.** Objection to UMF: The UMF improperly relies upon evidence lacks foundation, and is hearsay.<br><br>Defendant mischaracterizes Dr. Coleman's testimony. Dr. Coleman did not testify that Plaintiff could never work at a marine terminal. Rather, she testified that Plaintiff could safely perform Watchman duties in a safe and hazard-free environment with reasonable accommodations and clarified that her concerns related to particular hazards and driving restrictions, not Plaintiff's ability to perform all Watchman assignments. Coleman Dep. 27:22-28:17; 46:4-15; 54:15-20; 54:23-55:3; Exs. C2-C3. |

**67.    Moving Party's Response**

Plaintiff does not dispute Local 26's UF 67 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 67.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that this diagnosis rendered him unable to perform Watchman duties with reasonable accommodations. Dr. Coleman repeatedly opined that Plaintiff could safely and effectively perform Watchman duties with appropriate accommodations notwithstanding his visual impairment." as improper and unresponsive.

Dr. Coleman did not conclude that Greene "could safely perform Watchman duties with reasonable accommodations." The cited passages of Coleman depo. at 54:15-20 and 54:23-55:3 were not provided with the opposition papers. See Declaration of Nancyrose Hernandez at Exhibit H. Regardless, under cross-examination, Dr. Coleman determined during the course of her treatment that Greene should not drive any kind of motor

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| vehicle (UF 63); that Greene's primary open angle glaucoma is so severe that he meets the legal test for blindness in both eyes (UF 66) and has no peripheral vision (UF 64); his condition is permanent (UF 65) and that a working marine terminal with moving equipment was not a hazard-free environment such that Greene should work there (UF 67).  Since driving vehicles on terminal premises during marine operations is an essential function of the Watchman's job and no accommodation would allow Greene to safely perform such work, Dr. Coleman's testimony does not support Greene's claims. <br><br> Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 67. | |
| 68.    Dr. James Deutsch was the joint medical examiner for the Pacific Maritime Association ("PMA") and ILWU Local 26. Gratz Decl. at ¶47 and Exhibit 28 to the Appendix | **Response to No. 68: Undisputed in part; disputed in part.** <br> Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay. <br><br> Plaintiff does not dispute that Dr. James Deutsch served as the joint medical examiner for PMA and ILWU Local 26. Plaintiff disputes any implication that Dr. Deutsch's role or opinions are dispositive of Plaintiff's ability to perform Watchman duties with reasonable accommodations, particularly where Dr. Deutsch did not examine Plaintiff in conjunction with his treating ophthalmologist and his opinions conflict with those of Dr. Anne Coleman, Plaintiff's long-time treating physician. Coleman Dep. 54:15-20; 54:23-55:3; Gratz Dep. 128:12-129:9. <br> Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, <br> Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez |

82

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |

**68.    Moving Party's Response**

Plaintiff objects to UF 68 as hearsay and lacking foundation, but Luisa Gratz testified based on personal knowledge at ¶47 of her declaration and Exhibit 28 at the Appendix.

Plaintiff does not dispute Local 26's UF 68 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 68.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that Dr. Deutsch's role or opinions are dispositive of Plaintiff's ability to perform Watchman duties with reasonable accommodations, particularly where Dr. Deutsch did not examine Plaintiff in conjunction with his treating ophthalmologist and his opinions conflict with those of Dr. Anne Coleman, Plaintiff's long-time treating physician." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 68.

| | |
|---|---|
| 69.    The Joint Parties (PMA/Local 26) had requested that Greene attend a fitness for duty examination with Dr. Deutsch to evaluate his vision, but Greene refused to do so. Gratz Decl. at ¶48 and Exhibit 30 to the Appendix. | **Response to No. 69: Disputed in part.** Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay. |
| | Plaintiff disputes Defendant's characterization that he simply "refused" to attend an examination with Dr. Deutsch or that the exam was identified to him as a "fitness for duty" examination. Plaintiff advised the JPWLRC that an additional |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | examination was unnecessary because he was already under the care of Dr. Anne Coleman, requested that PMA consult with his treating physician, and invoked the ADA process. Ex. D3. Plaintiff further disputes any implication that his decision relieved Defendants of their obligation to engage in the interactive process or evaluate reasonable accommodations based upon the medical information already provided by Dr. Coleman. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |

**69.     Moving Party's Response**

Plaintiff objects to UF 69 as hearsay and lacking foundation, but Luisa Gratz at ¶48 of her declaration testified based on personal knowledge.

Plaintiff does not dispute UF 69 as stated but disagrees with the characterization of Greene's refusal to attend an examination with Dr. Deutsch.

The dispute over the characterization of why Greene elected not to attend the requested examination is immaterial and does not create a disputed material fact. As such, UF 69 is not materially disputed.

Plaintiff attempts to create a disputed fact by adding information and argument not set forth in UF 69.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| disputes Defendant's characterization that he simply 'refused' to attend an examination with Dr. Deutsch or that the exam was identified to him as a 'fitness for duty' examination. Plaintiff advised the JPWLRC that an additional examination was unnecessary because he was already under the care of Dr. Anne Coleman, requested that PMA consult with his treating physician, and invoked the ADA process. Plaintiff further disputes any implication that his decision relieved Defendants of their obligation to engage in the interactive process or evaluate reasonable accommodations based upon the medical information already provided by Dr. Coleman." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 69. | |
| 70.    Greene should not drive any sort of motor vehicle and should not be present in areas where there is uncontrolled high traffic, which included areas where Greene would be working outside. Gratz Decl. at ¶48 and Exhibit 30 to the Appendix-Report by Dr. Deutsch | **Response to No. 70: Disputed.**<br>Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay.<br><br>Defendant improperly presents Dr. Deutsch's opinions as undisputed fact. Plaintiff disputes Dr. Deutsch's conclusions that Plaintiff should not operate any motor vehicle or be present in areas involving uncontrolled traffic. Those opinions conflict with the opinions of Plaintiff's treating ophthalmologist, Dr. Anne Coleman, who clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations. Exs. C2-C3; Coleman Dep. 54:15-20; 54:23-55:3. Plaintiff further disputes Defendant's characterization because Dr. Deutsch's evaluation was conducted without consultation with Dr. Coleman, despite |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Plaintiff's request that PMA communicate with his treating physician. Ex. D3. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B,  Declaration of Enoch Greene ¶ 49, Ex.C,  Declaration of Enoch Greene ¶ 50, Ex.D |

70.     Moving Party's Response

The statement in UF 70 is consistent with the conclusion of both Dr. Coleman and Dr. Deutsch. UFs 63, 64, 66, 67, 70, 71, 72, and Exhibit 30 to the Appendix. Plaintiff offers no evidence contrary or disputing UF 70 and it should therefore be deemed undisputed for the proposes of the motion. FRCP §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 70.

Local 26 respectfully requests the Court disregard the section commencing at "Defendant improperly presents Dr. Deutsch's opinions as undisputed fact. Plaintiff disputes Dr. Deutsch's conclusions that Plaintiff should not operate any motor vehicle or be present in areas involving uncontrolled traffic. Those opinions conflict with the opinions of Plaintiff's treating ophthalmologist, Dr. Anne Coleman, who clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly concluded that Plaintiff could safely perform Watchman duties with reasonable accommodations." and "Plaintiff further disputes Defendant's characterization because Dr. Deutsch's evaluation was conducted without consultation with Dr. Coleman, despite Plaintiff's request that PMA communicate with his treating physician." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 70.

| 71.     Greene is medically prohibited from climbing ladders or gangways or | **Response to No. 71: Disputed.** |

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| performing any tasks requiring verification or identification and conducting visual inspections. Gratz Decl. at ¶48 and Exhibit 30 to the Appendix-Report by Dr. Deutsch | Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay.<br><br>Defendant improperly presents Dr. Deutsch's opinions as undisputed fact. Plaintiff disputes that he was medically prohibited from performing all tasks involving visual inspections, identification verification, or gangway assignments. Dr. Coleman's opinions directly conflict with Dr. Deutsch's conclusions and provide that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations, including assistive technology and restrictions limited to oversized passenger vehicles. Exs. C2-C5; Coleman Dep. 54:15-20; 54:23-55:3. Plaintiff further relies upon the California Department of Rehabilitation's determination that he could continue performing his job with appropriate supports and accommodations. Ex. DOR Letter; Gratz Dep. 177:22-180:1. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |
| **71.   Moving Party's Response** | |

87

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| The statement in UF 71 is consistent with the conclusion of both Dr. Coleman and Dr. Deutsch. Plaintiff offers no evidence contrary or disputing UF 71 and it should therefore be deemed undisputed for the proposes of the motion. FRCP §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 71.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Defendant improperly presents Dr. Deutsch's opinions as undisputed fact. Plaintiff disputes that he was medically prohibited from performing all tasks involving visual inspections, identification verification, or gangway assignments. Dr. Coleman's opinions directly conflict with Dr. Deutsch's conclusions and provide that Plaintiff could safely and effectively perform Watchman duties with reasonable accommodations, including assistive technology and restrictions limited to oversized passenger vehicles." and "Plaintiff further relies upon the California Department of Rehabilitation's determination that he could continue performing his job with appropriate supports and accommodations." as improper and unresponsive. | |
| 72.   Greene's visual restrictions include climbing ladders, working around heavy machinery in uncontrolled hazardous areas and no driving motor vehicles of any kind. Coleman depo. at 76:17-77:2 and Exhibit 30 to the Appendix | **Response to No. 72: Disputed.**<br>Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay.<br>Defendant mischaracterizes both the medical record and Dr. Coleman's testimony. Plaintiff disputes that his medical restrictions categorically prohibited all motor vehicle operation, all work around heavy machinery, or all visual inspection duties. Dr. Coleman clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly opined that Plaintiff could safely perform Watchman duties in a safe and hazard-free environment with reasonable accommodations. Coleman Dep. 54:15-20; |

88

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | 54:23-55:3; 76:17-77:2; Exs. C2-C3. Plaintiff further relies upon the Braille Institute's low-vision evaluation and the California Department of Rehabilitation's recommendations identifying assistive technology and accommodations that would permit him to continue working. Ex. C5; Gratz Dep. 177:22-180:1. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |

**72.    Moving Party's Response**

The statement in UF 72 is consistent with the conclusion of both Dr. Coleman and Dr. Deutsch. Plaintiff offers no evidence contrary or disputing UF 72 and it should therefore be deemed undisputed for the proposes of the motion. FRCP §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 72.

Local 26 respectfully requests the Court disregard the section commencing at "Defendant mischaracterizes both the medical record and Dr. Coleman's testimony. Plaintiff disputes that his medical restrictions categorically prohibited all motor vehicle operation, all work around heavy machinery, or all visual inspection duties. Dr. Coleman clarified that Plaintiff's driving restrictions were limited to oversized passenger vehicles and repeatedly opined that Plaintiff could safely perform Watchman duties in a safe and hazard-free environment with reasonable accommodations." and "Plaintiff further relies upon the Braille Institute's low-vision evaluation and the California Department of Rehabilitation's recommendations identifying assistive technology and accommodations that would permit him to continue working." as improper and unresponsive.

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 73. On or about December 1, 2023, Gratz received a copy of the ADA evaluation done by Dr. James Deutsch of Enoch Greene in absentia, given that Greene refused to show for his appointment with Dr. Deutsch. Gratz Decl. at ¶48 and Exhibit 30 to the Appendix | **Response to No. 73: Disputed.** Objection to UMF: The UMF improperly relies upon evidence lacks foundation, violates Plaintiff's right to privacy, violates Best Evidence Rule, and is hearsay.<br><br>Defendant mischaracterizes both the nature of Dr. Deutsch's report and Plaintiff's response. Plaintiff disputes that the report constituted an "ADA evaluation" or that he simply refused to participate. Plaintiff advised the JPWLRC that he was already under the care of his treating ophthalmologist, Dr. Anne Coleman, requested that PMA consult with Dr. Coleman regarding his medical restrictions and accommodations, and invoked the ADA process. Ex. D3. Plaintiff further disputes the reliability and conclusions of Dr. Deutsch's report because it was prepared without an examination of Plaintiff and without consultation with his treating ophthalmologist, whose opinions directly conflict with Dr. Deutsch's conclusions. Exs. C1-C3; Coleman Dep. 54:15-20; 54:23-55:3. Declaration of Nancyrose Hernandez ¶ 10, Ex.H, Coleman Depo 29:23-30:10, 44:9-12, Declaration of Nancyrose Hernandez ¶ 16, Ex.I, Declaration of Nancyrose Hernandez ¶ 12, Ex.J, Declaration of Enoch Greene ¶ 48, Ex.B, Declaration of Enoch Greene ¶ 49, Ex.C, Declaration of Enoch Greene ¶ 50, Ex.D |
| **73. Moving Party's Response** | |

90

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff objects to UF 73 as hearsay and lacking foundation, but Luisa Gratz at ¶ 48 of her declaration lays the foundation for her personal knowledge.<br><br>Plaintiff does not dispute Local 26's UF 73 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).<br><br>Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 73.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Defendant mischaracterizes both the nature of Dr. Deutsch's report and Plaintiff's response. Plaintiff disputes that the report constituted an "ADA evaluation" or that he simply refused to participate. Plaintiff advised the JPWLRC that he was already under the care of his treating ophthalmologist, Dr. Anne Coleman, requested that PMA consult with Dr. Coleman regarding his medical restrictions and accommodations, and invoked the ADA process." and "Plaintiff further disputes the reliability and conclusions of Dr. Deutsch's report because it was prepared without an examination of Plaintiff and without consultation with his treating ophthalmologist, whose opinions directly conflict with Dr. Deutsch's conclusions." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 73. | |
| 74.    Local 26 has strictly adhered to contract compliance with the Watchmen's Agreement with regard to the dispatching and assignment of Watchmen. This includes the prohibition against violating the Watchmen's Agreement, chiseling, gimmicking, direct dealing, and violations of dispatch rules and procedures. This policy also prohibits Local 26 members on an individual basis attempting to negotiate their own individual deals with employers who are signatories to the Watchmen's Agreement. Gratz Decl. at ¶8 | **Response to No. 74: Disputed.**<br>Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Defendant's assertion that Local 26 "strictly adhered" to the Watchmen's Agreement is a disputed characterization, not an undisputed fact. Plaintiff further disputes Defendant's characterization that his requests for reasonable accommodations constituted "chiseling," "gimmicking," "direct dealing," or attempts to negotiate an individual employment arrangement. Plaintiff requested reasonable accommodations |

91

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  | under the ADA and FEHA through the JPWLRC process, while Gratz repeatedly testified that accommodations outside that process constituted direct dealing or unilateral changes and acknowledged that union members objected to Plaintiff's accommodations for those reasons. Gratz Dep. 47:11-49:11; 57:17-58:2; 62:17-64:17; 93:1-94:15; Exs. 10, 14A. |

**74.    Moving Party's Response**

Plaintiff objects to UF 74 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6).

Plaintiff does not dispute Local 26's UF 74 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 74.

Local 26 respectfully requests the Court disregard the section commencing at "Defendant mischaracterizes both the nature of Dr. Deutsch's report and Plaintiff's response. Plaintiff disputes that the report constituted an "ADA evaluation" or that he simply refused to participate. Plaintiff advised the JPWLRC that he was already under the care of his treating ophthalmologist, Dr. Anne Coleman, requested that PMA consult with Dr. Coleman regarding his medical restrictions and accommodations, and invoked the ADA process." and "Plaintiff further disputes the reliability and conclusions of Dr. Deutsch's report because it was prepared without an examination of Plaintiff and without consultation with his treating ophthalmologist, whose opinions directly conflict with Dr. Deutsch's conclusions." as improper and unresponsive.

Plaintiff claims that the fact that Local 26 has strictly adhered to the Watchmen's Agreement is a characterization and not a fact. This is incorrect. The fact is essential to why Local 26 has consistently prevented individual Watchmen and companies from entering into their own agreements thereby removing work from the bargaining unit and

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| carving out preferred assignments for individual Watchmen except through the JPWLRC process.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 73. | |
| 75.   Local 26 members are forbidden to enter into any side deals or agreements with any employer signatory to the Watchmen's Agreement outside of the dispatch system. Gratz Decl. at ¶8 and Exhibit 2 to the Appendix | **Response to No. 75: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that the Watchmen's Agreement generally prohibits Local 26 members from negotiating individual employment agreements outside the collective bargaining process. Plaintiff disputes any implication that his requests for reasonable accommodations constituted a prohibited side agreement or direct dealing. Plaintiff sought reasonable accommodations through the JPWLRC process established by Defendants and repeatedly requested that ILWU and PMA engage in the interactive process required under the ADA and FEHA. Exs. 10, 14A, 18; Gratz Dep. 47:11-49:11; 57:17-58:2; 93:1-94:15. |

**75.   Moving Party's Response**

Plaintiff objects to UF 75 as hearsay and lacking foundation, but Luisa Gratz at paragraphs 1 and 2 of her declaration and the Declaration sections cited at UFs 1-6 lays the foundation for her personal knowledge based on her extensive experience as lead negotiator, President and Business Agent since 1984 and her knowledge gleaned from her experience (UFs 1-6).

Plaintiff does not dispute Local 26's UF 75 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

93

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 75.<br><br>Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes any implication that his requests for reasonable accommodations constituted a prohibited side agreement or direct dealing. Plaintiff sought reasonable accommodations through the JPWLRC process established by Defendants and repeatedly requested that ILWU and PMA engage in the interactive process required under the ADA and FEHA." as improper and unresponsive.<br><br>Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 75. | |
| 76.    On or about February 15, 2024, SSA Terminals, LLC wrote to Gratz stating that although the company had granted Greene a temporary assignment to an exit gate guard post, the employer recognized that it did not and could not unilaterally change a watchmen's job classification with any degree of permanence "since doing so would involve outright elimination of the other essential functions of the Watchman position." Further, allowing Greene to perform a limited function would "have a substantial and adverse impact upon other bargaining unit members and alter, if not completely undermine, the bona fide seniority system in place." Gratz Decl. at ¶49 and Exhibit 31 to the Appendix | **Response to No. 76: Disputed in part.** Objection to UMF: The UMF improperly lacks foundation and is hearsay.<br><br>Plaintiff does not dispute that SSA temporarily accommodated him by assigning him to an exit gate position or that the February 15, 2024 letter contains the quoted statements. Plaintiff disputes the conclusions expressed in that letter that reasonable accommodations necessarily eliminated essential functions, undermined the seniority system, or could not lawfully continue. To the contrary, the temporary accommodation demonstrates that Plaintiff could successfully perform available Watchman duties with reasonable accommodations. Plaintiff further disputes any implication that he sought a permanent or preferential job assignment, rather than reasonable accommodations under the ADA and FEHA. Ex. 31; Greene Dep. 136:15-139:6; Gratz Dep. 62:17-64:17; 93:1-94:15; Coleman Dep. 54:15-20; 54:23-55:3. |

94

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
|  |  |

**76.    Moving Party's Response**

Plaintiff objects to UF 76 as hearsay and lacking foundation, but Luisa Gratz at ¶ 49 of her declaration and Exhibit 31 to the Appendix lays the foundation for her personal knowledge.

Plaintiff does not dispute Local 26's UF 76 as stated and thus it must be deemed undisputed for the purposes of the motion. F.R.C.P. §56(e)(2).

Plaintiff attempts to create a disputed fact by adding information and argument which do not controvert UF 76.

Local 26 respectfully requests the Court disregard the section commencing at "Plaintiff disputes the conclusions expressed in that letter that reasonable accommodations necessarily eliminated essential functions, undermined the seniority system, or could not lawfully continue. To the contrary, the temporary accommodation demonstrates that Plaintiff could successfully perform available Watchman duties with reasonable accommodations. Plaintiff further disputes any implication that he sought a permanent or preferential job assignment, rather than reasonable accommodations under the ADA and FEHA." as improper and unresponsive.

Plaintiff does not state a genuine issue of material fact here because he offers no competent evidence to controvert UF 76.

Dated: July 2, 2026

Respectfully submitted,

LAW OFFICES OF MARC COLEMAN

By:  */s/ Marc Coleman*
Marc Coleman

95

Attorney for Defendant
ILWU LOCAL 26

DEFENDANT ILWU LOCAL 26'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT